UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | Case No. 1:11-md-02293 (DLC)<br>ECF Case |
| | CLASS ACTION |
| This Document Relates to:<br><br>ALL ACTIONS | |

## APPLICATION TO APPOINT HAGENS BERMAN INTERIM LEAD COUNSEL

Plaintiffs[1] respectfully apply for an order appointing the law firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman" or "Proposed Interim Lead Counsel") as Interim Lead Counsel for the putative class. Federal Rule of Civil Procedure 23(g)(3) permits the Court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."

Hagens Berman has extensive experience in complex civil antitrust class action litigation and has led the investigation and initiated the antitrust claims that are the subject of this MDL. In doing so, Hagens Berman has already expended substantial resources researching and investigating this action and has shown a unique commitment to this case. For these reasons, and to assist in the efficient administration of this and all subsequently filed cases, the Court should appoint Hagens Berman as Interim Lead Counsel.

### I.    INTRODUCTION

We respectfully request the Court appoint Hagens Berman as Interim Lead Counsel for the following reasons:

---

[1]    "Plaintiffs" refers to the thirty-one named Plaintiffs in the cases for which Hagens Berman is counsel of record:  *Petru, et al. v. Apple Inc., et al.*, No .11-cv-03892-EMC (N.D. Cal.); *Gilstrap, et al. v. Apple Inc., et al.*, No. 11-cv-4035-EMC (N.D. Cal.); *Rossman v. Apple Inc., et al.***,** No. 11-cv-4192-EMC (N.D. Cal.);  *Ulbee v. Apple Inc., et al.***,** No. 11-cv-4490-DMR (N.D. Cal.); and *Horowitz v. Apple, Inc., et al.,* No.11-cv-5538-JCS (N.D. Cal.).

- Hagens Berman initiated this litigation and, more than any other counsel, thoroughly investigated, analyzed and cogently presented the underlying facts and operative legal theories before filing suit.  This was not a reflexive, cookie cutter filing based on a government announced investigation; we hired economists, retrieved historical pricing data and examined the industry for more than a year prior to filing.  We measured twice and cut once, whereas the follow-on complaints added no additional material facts, and indeed, some law firms hastily named defendants that should (and likely will) be dropped from a consolidated complaint.

- Hagens Berman did not stop investigating after filing suit; instead, Hagens Berman continued to investigate and develop substantial additional unique third-party evidence helpful to the class.

- Hagens Berman has the resources to lead this litigation, a nation-wide presence, including an office in New York, is recognized as one of the top law firms in the United States, and has extensive antitrust experience, specifically in consumer technology and media sector antitrust cases.  Hagens Berman served as co-lead counsel in *In re Visa Check/MasterMoney Antitrust Litig.*, No. 96-cv-05238 (E.D.N.Y.), a case with venue in New York, and one of the largest civil antitrust recoveries to date.

- Lawyers at Hagens Berman are trial lawyers – as well as litigators – and are able and willing to take this case to trial.  Hagens Berman's lawyers include former Assistant United States Attorneys, Assistant State Attorneys General, and Local Prosecutors.  We believe many cases require trial – or the realistic threat of a jury verdict – to reach a fair outcome for the class.  We have a history of trying (or taking to the eve of trial) class action cases, leading to superior results.  Hagens Berman is prepared to prosecute this case quickly and efficiently.

- With aggressive case management, this case could be brought to trial within eighteen months after a ruling on Defendants' anticipated motions to dismiss.

- Hagens Berman devoted extensive time successfully developing a leadership consensus among Plaintiffs' counsel.  Virtually all firms recognized Hagens Berman's leadership role in investigating and initiating this matter and agreed Hagens Berman should be a lead counsel.

As the Court is aware, Hagens Berman, Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), and Grant & Eisenhofer P.A., each represented to Judge George B. Daniels on November 30 and December 1, 2011, near unanimous agreement on the structure for appointment of two co-lead interim counsel.[2]  We stand behind our representations to Judge

---

[2]    Declaration of Steve W. Berman in Support of Application to Appoint Hagens Berman as Interim Lead Counsel ("Berman Decl."), Ex. B at 6-18, concurrently filed herewith.

Daniels and believe it is important to do so, given that dozens of law firms worked together over many weeks, reached a consensus on structure and regardless of geography supported Hagens Berman to be lead counsel.  As such, Hagens Berman does not walk away from the compromise of two co-lead counsel, one from the California cases and one from the New York cases and affirms its commitment to this structure.

But if the Court believes selection of only one Interim Lead Counsel is more efficient and in the best interests of the putative class, Hagens Berman respectfully requests appointment as lead counsel, for the reasons fully described more below.

## II.   SUPPORT FOR APPOINTING HAGENS BERMAN INTERIM LEAD CLASS COUNSEL

Federal Rules of Civil Procedure Rule 23(g)(3) provides the Court authority to appoint interim counsel to act on behalf of a putative class before deciding class certification.[3]  Where, as here, multiple class actions are pending, appointment of class counsel is necessary to protect the interests of class members.[4]

In selecting lead or interim lead counsel, the Court should consider the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.[5]  The Court may also consider any other matter pertinent to counsel's ability to fairly represent the putative class.[6]

---

[3]   Fed R. Civ. P. 23(g)(3).

[4]   *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56 (E.D.N.Y. 2006); *see also* Manual for Complex Litigation, Fourth § 21.11 (2004).  The Court is exceptionally experienced in handling large, complex class action litigation, so we will not expend unnecessary pages to support the practice and need to appoint interim class counsel.

[5]   Fed. R. Civ. P. 23(g)(1)(A).

[6]   *Id.* at 23(g)(1)(B).

**A.      Hagens Berman Initiated This Antitrust Litigation After Extensive Industry Analysis, Including Economic Pricing Analysis and Recovering Historical Electronic Information**

On August 8, 2011, Hagens Berman initiated this antitrust litigation by filing *Petru, et al. v. Apple Inc., et al.*, No. 11-cv-03892-EMC, in the Northern District of California ("*Petru* Action" or "*Petru* Plaintiffs").  It is important to note that this action was not triggered by government officials (or Defendants) making a public announcement of an investigation into Defendants' conduct.  Frequently, such announcements are immediately followed by a slew of civil antitrust class action complaints.  In fact, even though the Connecticut and Texas Attorney Generals publicly acknowledged investigating the eBook industry in 2010,[7] no civil lawsuits were filed until Hagens Berman filed the *Petru* Action in August 2011.  Further, the United States Department of Justice did not officially acknowledge its investigation of the publishers until a few days ago – more than four months after Hagens Berman filed the *Petru* Action.[8]

In fact, the conduct giving rise to these actions occurred in the later part of 2009 and early 2010.  Hagens Berman's investigation commenced in or about April 2010, after market prices for titles of the eBooks that the publisher Defendants sold all went up by 30 to 50 percent – nearly simultaneously.  This highly suspicious pricing behavior caused Hagens Berman to start analyzing the market and developing the facts plead in the *Petru* Action.  Thus, this is not a situation where Hagens Berman simply won a foot race to the court house door.  A suggestion to the contrary is belied by the detailed facts plead in the *Petru* Action compared to the follow-on complaints.

The substance and presentation of the *Petru* Plaintiffs' allegations is the only complaint that shows extensive factual investigation and analysis involved in bringing these claims.

---

[7]      *Attorney General Investigates Potentially Anticompetitive E-Book Deals With Amazon And Apple*, State of Connecticut Office of the Attorney General (August 2, 2010), http://www.ct.gov/ag/cwp/view.asp?A=2341&Q=463894;  Jeffrey A. Trachtenberg and Yukari Iwatani Kane, *Texas Questions E-Book Publishers*, The Wall Street Journal  (June 2, 2010), http://online.wsj.com/article/SB10001424052748703961204575281173811063624.html.

[8]      Paul Eng, *Department of Justice Joins E-book Pricing Probe*, The Consumerist (Dec. 8, 2011), http://consumerist.com/2011/12/department-of-justice-joins-e-book-pricing-probe.html.

010260-11 490933 V2

Hagens Berman did not simply rely on public statements readily available when investigating

and presenting the *Petru* Plaintiffs' allegations.  Instead, Hagens Berman retained economists to

obtain and utilize historical pricing data in order to show price changes and the impact of

Defendants' conduct over time – before and after Defendants engaged in the alleged conspiracy.

The experts and Hagens Berman lawyers and investigators spent over 200 hours analyzing the

market, retrieving electronic pricing information, and conducting their analysis in order to

present robust factual allegations in the *Petru* Action.[9]  This work product is reflected in the

*Petru* Plaintiffs' complaint, including the following economic charts:



---

010260-11  490933 V2

    9     Berman Decl., Ex. C at 8-9.



**Current Average eBook Prices**
**Nonfiction Titles**
**By Quarters Since Last Appearance on Bestseller List**

Quarters Since Last Appearance on Bestseller List
[0 represents current bestsellers; 1 represents books last appearing on the list 1, 2, or 3 months ago; etc.]



**Current Average eBook Prices**
**Fiction Titles**
**By Quarters Since Last Appearance on Bestseller List**

Quarters Since Last Appearance on Bestseller List
[0 represents current bestsellers; 1 represents books last appearing on the list 1, 2, or 3 months ago; etc.]

- 6 -



Percentage Price Premium
for Big Six vs. Non-Big Six eBooks
by Quarters Since Last Appearance on Bestseller List

No other Plaintiffs' counsel did this work or presented this information in their later-filed complaints.

Hagens Berman also went to lengths to allege in great detail not only price increases over time but the standardization of supra-competitive pricing effectuated by the conspiracy.[10] Moreover, Hagens Berman extensively depicted facts showing extant pricing competition for physical books compared to the stabilized prices Defendants' achieved through their coordinated activities.[11]  Once again, no other Plaintiffs' counsel presented anywhere near this degree of detailed factual allegations (demonstrating substantial investigation) in their complaints.

In crafting the complaint in the *Petru* Action, Hagens Berman also anticipated arguments Defendants may advance concerning antitrust jurisprudence, including *Illinois Brick*.[12]  To counter these arguments, the *Petru* Action alleges factual detail showing the publishers' role in

---

[10]  *Id*. at 22.

[11]  *Id*. at 23-26.

[12]  *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

setting retail prices under the agency model and retaining title to eBooks throughout the distribution chain.  Hagens Berman pled these facts, and others, to support the argument that consumers of eBooks are direct purchasers – instead of indirect purchasers.[13]  But Hagens Berman did not stop there.

Recognizing Defendants' coordinated move to the agency model was unprecedented and the extant technological characteristics of the eBook distribution system, Hagens Berman also sought to protect the putative class by alternatively pleading indirect purchaser classes based on state law.  To do so, Hagens Berman interviewed scores of consumers and ultimately filed indirect purchaser claims on behalf of twenty-eight state classes.[14]  No other firm expended the time and resources to do the same.  To date, approximately 421 consumers from forty-six states have contacted Hagens Berman concerning this case.

Finally, based on Hagens Berman's factual and legal analysis, it was inconsistent to allege Amazon, Inc. ("Amazon") entered into a horizontal conspiracy with the publisher Defendants and Apple to move to the agency model.  In fact, Amazon publicly fought the publisher Defendants' efforts to impose a switch to the agency model, going so far as to remove the purchase buttons for both eBooks and physical books published by Defendant Macmillan in January 2010.  Thus, Amazon's role in the events more plausibly made it a critical witness instead of a target of this suit, so Hagens Berman carefully named Defendants consistent with the facts.

In contrast to Hagens Berman's analysis of Amazon's role in these events, other firms who quickly filed complaints after the *Petru* Action allege Amazon entered into a horizontal conspiracy with the publisher Defendants to move to the agency model.[15]  Moreover, other firms who speedily filed cases after the *Petru* Action allege publisher Random House, Inc. ("Random

---

[13]   Berman Decl., Ex. C at 27-34.

[14]   Berman Decl., Ex. D at 38-40.

[15]   Berman Decl., Ex. E at 1-2.

House") conspired with the other publishers to move to the agency model.[16]  But Random House did not move to the agency model until nearly a year after the other Defendants all moved to the agency model in 2010.  These allegations are inconsistent with facts Hagens Berman uncovered during its investigation – both before and after filing the *Petru* Action.

In sum, the *Petru* Action demonstrates extensive, independent and thorough investigation, and the cases filed quickly thereafter do not – and some of these cases even allege claims and theories against Amazon and Random House inconsistent with the facts.

**B.      Hagens Berman Continues to Investigate and Develop Material Facts After Filing the Petru Action**

Even after filing the *Petru* Action, Hagens Berman continues to devote resources to investigating and developing the facts in this case.  Hagens Berman has done so notwithstanding the fact that no court has yet appointed us lead counsel.

Because Hagens Berman's continued investigation involves privileged work-product and confidential information, it submits a description of our continued investigatory efforts in our *Ex Parte In Camera* Declaration of Steve Berman in Support of Application to Appoint Hagens Berman as Interim Lead Counsel ("*Ex Parte In Camera* Berman Declaration"), concurrently filed herewith.

Based on Hagens Berman's market analysis, we are also in a position to submit the terms of potential attorney's fees.[17]  This is another factor appropriate for the Court's determination when appointing Interim Lead Counsel.[18]

**C.      Hagens Berman Will Devote the Resources Necessary to Aggressively Prosecute These Claims, Has Extensive Trial Experience, and Holds Leadership Roles in Complex Civil Antitrust Litigation**

Hagens Berman is a fifty-five lawyer firm, with offices in New York, Seattle, Washington D.C., Boston, Berkeley, Los Angeles, Phoenix, Minnesota and Colorado.  Since its founding in 1993, Hagens Berman has represented plaintiffs in a broad spectrum of complex,

---

[16]   Berman Decl., Ex. F.

[17]   *Ex Parte In Camera* Berman Declaration, ¶¶ 12-14.

[18]   Fed. R. Civ. P. 23(g)(1)(C).

multi-party antitrust cases.  The firm has been recognized in courts throughout the United States for its ability and experience in handling major complex litigation.[19]

We will devote the resources necessary to aggressively prepare a case for trial.[20]  To do so, we will rely on several of the firm's most experienced antitrust litigators and trial lawyers, including:

> **Steve Berman**:

Mr. Berman helped start the firm in 1993, and is the managing partner.  He has served as lead or co-lead counsel in antitrust, securities, consumer, products liability, employment class actions, and complex litigations throughout the country, including MDL actions throughout the country.  For example, Mr. Berman was the lead trial lawyer in *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.).  He tried the class case against four manufacturers and successfully argued the appeal from the trial before the First Circuit.  Mr. Berman was also the lead counsel in *New England Carpenters v. First DataBank*, *et al.*, No. 05-11148-PBS (D. Mass.), on behalf of a nationwide class of private payors that purchased prescription brand name drugs.  Hagens Berman achieved a $350 million settlement eleven days before trial was scheduled to start.  Mr. Berman was also lead counsel *In re Charles Schwab Corp. Secs. Litig.*, No. 08-cv-01510 (N.D. Cal.), a recent securities class action before the Honorable William Alsup, United States District Court, Northern District of California, that settled while arguing *in limine* motions for approximately $235 million or a 42.5% recovery for the federal class and an 80% recovery for the California class, once again on the eve of trial.

---

[19]   Berman Decl., Ex. A.

[20]   We note that all counsel in the actions originally filed in New York stipulated (and appear bound) to provide Defendants with sixty-days to file responsive pleadings from the filing of a consolidated complaint. *See, e.g.*, *Grover v. Macmillan et al.*, No.11-cv-5576-DLC, Stipulation and Order Concerning Responses to the Complaints, ECF No. 29, Sept. 9, 2011. (The same order was issued in nine other related cases in the Southern District of New York on the same day.)  Hagens Berman rejected Defendants' similar request.  This delay is too long.  The *Petru* Action was filed on August 8, 2011.  Defendants likely will have had six months or more to research and construct their motions – sixty more days is unnecessary.

Recently, in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 8:10ML2151 JVS (FMOx) (C.D. Cal.), Judge James V. Selna *sua sponte* identified Mr. Berman as a presumptive co-lead counsel when Judge Selna was assigned the Toyota MDL.

Perhaps most notable is Mr. Berman's role as a special assistant attorney general for the states of Washington, Arizona, Illinois, Indiana, New York, Alaska, Idaho, Ohio, Oregon, Nevada, Montana, Vermont, and Rhode Island in the landmark Tobacco Litigation. That case resulted in the largest settlement in history, a settlement that occurred while Mr. Berman was in trial  in *State of Washington v. Philip Morris, et al.*

➢ **Jeff D. Friedman:**

Mr. Friedman is a member of Hagens Berman and former Assistant United States Attorney ("AUSA"), Criminal Division, for the United States Attorney's Office, Central District of California. As an AUSA, Mr. Friedman tried numerous jury trials and prosecuted complex white collar fraud cases and large narcotics organizations. Mr. Friedman's antitrust experience as lead or co-lead counsel in antitrust cases in the media and technology sector includes:  *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 10-cv-2143-CW (N.D. Cal.); *Pecover v. Electronic Arts, Inc.*, No. 08-cv-2820-RS (N.D. Cal.); and *In re eBay Sellers Antitrust Litig.*, No. 07-cv-1882-JF (N.D. Cal.).

➢ **George Sampson:**

George Sampson has practiced antitrust litigation for the past 27 years, first at the New York State Attorney General's office, and then at Hagens Berman. From 1984 to 1994 he served as an Assistant Attorney General in the Antitrust Bureau, rising to the position of Bureau Chief in 1992. In 1994 Mr. Sampson joined Hagens Berman in Seattle as a senior antitrust partner specializing in antitrust class actions, particularly in the economics of high tech industries. His notable cases include *In re Visa Check/MasterMoney Antitrust Litig.*, No. 96-cv-05238 (E.D.N.Y.), in which he served as co-lead counsel. Class certification in that case was affirmed by the Second Circuit and the case settled on the eve of trial for over $3 billion. Mr. Sampson

was also a lead attorney in the *In re Disposable Contact Lens Antitrust Litig.*, MDL No. 1030 (M.D. Fla. 1996), which settled for $78 million after six weeks of trial.  He has been admitted to practice in the Southern District of New York since 1979.

➢ **Shana Scarlett:**

Ms. Scarlett is a partner with Hagens Berman with extensive antitrust experience.  She is one of the team of litigators representing indirect purchaser plaintiffs in the *In re Optical Disk Drive Antitrust Litigation*, alleging a price fixing conspiracy to fix the prices of optical disk drives throughout the United States.  Ms. Scarlett also is also a key member of the *Pecover v. Electronic Arts, Inc*. litigation team, where Hagens Berman represents indirect purchasers against the video game company.  Ms. Scarlett was instrumental in the certification of a nationwide class of indirect purchasers under California law. Ms. Scarlett was also one of the team litigating the *In re eBay Seller Antitrust Litigation*, alleging numerous violations of the Sherman Antitrust Act by online auction giant, eBay.  Ms. Scarlett has received the Super Lawyers Rising Star Award in Northern California for 2009, 2010 and 2011

➢ **Jason Zweig:**

Mr. Zweig is Of Counsel and located in our New York office.  He has nearly ten years of antitrust experience.  Mr. Zweig was a member of the trial team in *High Fructose Corn Syrup Antitrust Litig.*, MDL No. 1087 (C.D. Ill.) ($531 million settlement on the eve of trial). Mr. Zweig also played significant roles in the following antitrust litigations: *Hydrogen Peroxide Antitrust Litig.*, MDL No. 1682 (E.D. Pa.) (nearly $100 million recovered); *Plastics Additives Antitrust Litig.*, No.03-CV-2038 (E.D. Pa.) ($46.8 million recovered); *NBR Antitrust Litig.*, No. 03-CV-1898 (W.D. Pa.) (recovered $34.3 million); and *Linens Antitrust Litig.*, No. 03-CV-7823 (S.D.N.Y.) (recovered approx. $11 million).  During law school, Mr. Zweig was a judicial intern to the Honorable Jed S. Rakoff.

Additionally, below is a chart showing recent antitrust matters in which Hagens Berman played a leadership role:

| HAGENS BERMAN'S RECENT ANTITRUST EXPERIENCE | | | | | |
|---|---|---|---|---|---|
| **Title** | **Court** | **Docket Number** | **Date Filed** | **Position of Hagens Berman** | **Results** |
| *In re Visa Check/ Mastercard Antitrust Litig.* | USDC E.D.N.Y. | 96-cv-05238 | 08/01/2002 | Co-lead counsel. | Settled for over $3 billion in cash and over $20 billion in injunctive relief, making it the largest antitrust settlement in history. |
| *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.* | USDC N.D. Cal. | 02-cv-1486 PJH | 10/23/2002 | Co-lead counsel for direct purchasers. | Over $325 million in settlement funds. |
| *In re Intel Corp. Microprocessor Antitrust Litig.* | D. Del. | MDL 1717 | 06/29/2005 | Co-lead Counsel. | Litigation pending. |
| *McDonough, et al. v. Toys "R" Us, Inc. et al.* | USDC E.D. Pa. | 06-0242-AB | 01/19/2006 | Co-lead counsel. | Litigation pending; class certified at 638 F. Supp. 2d 461 (E.D. Pa. 2009). |
| *In re Live Concert Litig.* | USDC C.D. Cal. | 06-ML-1745-SVW (RCx) | 04/19/2006 | Lead counsel. | Litigation pending; class certified at 247 F.R.D. 98 (C.D. Cal. 2007). |
| *In re Static Random Access Memory (SRAM) Antitrust Litig.* | USDC N.D. Cal. | 07-cv-01819-CW | 02/20/2007 | Executive Committee Member for direct purchasers. | Over $75 million in settlement funds to date. |
| *In re TFT-LCD Antitrust Litig.* | USDC N.D. Cal. | M 07-1827 | 04/20/2007 | One of eight "Tier 1" firms representing direct purchasers. | Over $450 million in settlement to date, litigation pending |
| *Pecover v. Electronic Arts, Inc.* | USDC N.D. Cal. | 08-cv-2820-CW | 06/05/2008 | Co-lead counsel for indirect purchasers | Nationwide class certified, litigation pending |

| *In re Optical Disk Drive Prods. Antitrust Litig.* | N.D. Cal. | 10-cv-2143-RS | 10/27/09 | Sole lead counsel for indirect purchasers | Litigation pending |
|---|---|---|---|---|---|

In addition, the Court may wish to consider the performance of proposed lead counsel applicants measured by percentage of recovery for class members and the efforts they undertook in past cases to get recoveries in the hands of those injured as opposed to being unclaimed which is often the case in class actions.

In this regard Hagens Berman proffers two examples of the vigor in which it represents classes in complex litigation. In the *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.), Hagens Berman was instrumental in obtaining over $340 million in recoveries recovered for the class, after successfully winning a "test-class" trial against three of the defendants. In settlements with AstraZeneca and several defendants included in the "Track Two" tranche of the litigation, consumer members of the classes will receive ***three times*** their actual damages during the heart of the liability period. In the settlement with defendant Bristol-Myers Squibb, consumer members of the classes will receive ***double*** their actual damages during that same period. In addition, by making substantial efforts to obtain relevant data from the Centers for Medicare and Medicaid Services, we ensured that most members of the consumer classes received their recovery with little inconvenience. The Medicare consumer classes were required to do nothing more than sign and return a simple claim card attesting to the fact that they made a percentage co-pay not covered by insurance for the drugs at issue, after which a check is sent for payment amounts automatically calculated by the claims administrator.

*In re Charles Schwab Corp. Secs. Litig.*, No. 08-cv-01510 (N.D. Cal.), a securities class action, provides another example of the zealousness with which Hagens Berman pursues recovery for class members. In that case, where Hagens Berman served as sole lead counsel, the Federal Class recovered approximately ***forty-two percent*** of their recognized losses, while the California Class recovered approximately ***eighty-two percent***. And we instituted a payment system so that checks were sent directly to most class members without the need to complete a

claim form of any kind.  As a result, 97 percent of the fund was dispersed during the initial

distribution, a nearly unheard-of statistic in the annals of large class action settlement

administrations.

**D.      Hagens Berman Will Aggressively Push This Case to Trial**

      Hagens Berman has no fear in taking complex civil litigation to trial, including class

actions, and is one of the few Plaintiffs' firms in the United States that has often done so.[21]

Hagens Berman believes, with aggressive case management, this case could be prepared for trial

within 18 months of this Court's denial of Defendants' anticipated motions to dismiss.  Reasons

this case could be prepared for trial on such a schedule include:

- Defendants are likely to have already produced a significant amount of core documents to government authorities investigating Defendants' antitrust violations.  As a first order of discovery, Defendants should be ordered to produce these documents.

- Based on Hagens Berman's investigatory efforts, we have already identified many of the Defendants' key employees who are likely witnesses to the events here.  Documents for these employees can be targeted and depositions scheduled.

- We currently estimate noticing 45 depositions – approximately six for each Defendant and up to ten third party depositions.

- Our investigation also shows that many, if not all, of the Defendants likely utilize an industry standard for recording and managing transactional data in the distribution chain, namely ONIX, which stands for Online information eXchange.  If this standardization of data format is confirmed, the retrieval and use of industry data (e.g., titles, imprints, units and pricing) for microeconomic analysis likely will be more manageable and will require less time to both produce and use.

**E.      Plaintiffs' Counsel Reported a Consensus to Judge Daniels Supporting Hagens Berman to Be Appointed Lead Counsel**

      Following Judge Daniels' instruction on September 22, 2011, Plaintiffs' counsel spent

weeks working to establish a leadership structure endorsed by a consensus of Plaintiffs' counsel.

---

[21]    *See In re Neurontin Mktg., Sales Practices, and Prods. Liab Litig.*, MDL No. 1629 (D. Mass.); *Williams v. The Boeing Company*, No. C98-761 P (W.D. Wash.); *In re Burlington N. & Santa Fe Railway Co. Emp. Settlement Agreements Litigation*, MDL No. 1418 (W.D. Wash.); *In re Pharm. Indus. Average Wholesale Price Litig.*, No. 01-CV-12257-PBS.

As we previously submitted to the Court, three firms submitted letters to Judge Daniels, two on November 30 and one on December 1, 2011, detailing these efforts and results.[22]

Each firm indicating its intent to seek appointment as interim lead counsel represented that almost universal agreement existed that it was appropriate to have two lead counsel, one from the West Coast filed cases and one from the East Coast filed cases.  Hagens Berman received express support from all but one firm who filed a case in California and each of the two East Coast firms seeking a co-lead position – Cohen Milstein and Grant & Eisenhofer – recognized Hagens Berman's leadership role in investigating and initiating this litigation.[23]

We readily recognize this form of self-selection is in no way binding on the Court. Rather, we point to these facts to demonstrate that while there may have been significant disagreement among New York counsel as to which firm should play a co-lead role, Hagens Berman has been roundly recognized by the Plaintiffs' counsel filing cases in California and New York as receiving support to lead this litigation.

### III.   CONCLUSION

Hagens Berman respectfully submits that it has the highest Rule 23(g) score of all firms that have filed an eBooks case.  Its score in that regard is attested to by the fact nearly all firms, even those arguing for appointment, recognize that Hagens Berman should be appointed lead counsel.

DATED:  December 19, 2011                    HAGENS BERMAN SOBOL SHAPIRO LLP

                                             By _____/s/ Steve W. Berman_____
                                                STEVE W. BERMAN (*Pro Hac Vice*)

                                             1918 Eighth Avenue, Suite 3300
                                             Seattle, WA  98101
                                             Telephone:  (206) 623-7292
                                             Facsimile:   (206) 623-0594
                                             steve@hbsslaw.com

---

[22]   Berman Decl., Ex. B.

[23]   *Id*. at 6-18.

Jeff D. Friedman (*Pro Hac Vice*)
Shana E. Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

Jason A. Zweig (JZ-8107)
HAGENS BERMAN SOBOL SHAPIRO LLP
One Penn Plaza, 36th Floor
New York, NY 10119
Telephone:  (212) 752-5455
Direct:  (212) 786-7347
Facsimile:  (917) 210-3980
jasonz@hbsslaw.com

*Attorneys for Petru Plaintiff Group*

010260-11  490933 V2

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2011, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

/s/ Steve W. Berman
STEVE W. BERMAN

010260-11  490933 V2