**ATTACHMENT C**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPLE, INC., et al.,<br><br>Defendants. | Civil Action No. 12-cv-2826 (DLC) |
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | Civil Action No. 11-md-02293 (DLC) |
| This document relates to:<br><br>ALL ACTIONS | CLASS ACTION |
| THE STATE OF TEXAS;<br>THE STATE OF CONNECTICUT; et al.<br><br>Plaintiffs,<br><br>v.<br><br>PENGUIN GROUP (USA) INC., et al,<br><br>Defendants. | Civil Action No. 12-cv-03394 (DLC) |

**JOINT ELECTRONIC DISCOVERY SUBMISSION No. 1**
**AND [PROPOSED] ORDER**

One or more of the parties to this litigation have indicated that they believe that relevant information may exist or is stored in electronic format, and that this content is potentially responsive to current or anticipated discovery requests. This Joint Electronic Discovery Submission and [Proposed] Order (and any subsequent ones) shall be the governing document(s) by which the parties and the Court manage the electronic discovery process in this action. The parties and the Court recognize that this Joint Electronic Discovery Submission No. 1 and [Proposed] Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Submission may become necessary as more information becomes known to the parties.

**General Provisions**

Throughout this Joint Electronic Discovery Submission and [Proposed] Order, text located in boxes are statements of the parties.

At several places in this document, where noted, each party has been asked to supply a unilateral statement regarding its ESI resources, plans for collection and review, and related issues. Those statements have been included here unchanged, and no party makes any representations regarding the accuracy of another party's unilateral statement. Nothing in a party's unilateral statement binds any other party in any way, limits any discovery that may be sought, or limits any objections that any other party may have in future proceedings and negotiations in the actions.

The parties agree that the provisions of this document apply to Settling Defendants, who are currently subject to a Court-ordered stay, except with respect to the document collection activities and reporting described in the parties' joint response at section 6(a) below, at item (3). Settling Defendants' document collection activities and reporting will be rescheduled after the expiration of the stay, by agreement of the parties. Settling Defendants agree to participate in further ESI planning for the remaining parties as described in this document, including by submitting their comments and objections to other parties' Custodian Lists, document collection and review plans, and the draft Specifications for Production of ESI and Hard Copy Documents, and participating in discovery planning meet-and-confer sessions where necessary.

**1. Brief Joint Statement Describing the Action**

This matter consists of three sets of actions: the "DOJ Action" (United States v. Apple, Inc. et al, Civil Action No. 12-cv-2826(DLC)), brought by the Department of Justice, Antitrust Division ("DOJ") against Apple, Inc. and seven publisher defendants alleging violation of the Sherman Act; the "Class Action" (In re Electronic Books Antitrust Litigation, Civil Action No. 11-md-02293 (DLC)), a set of private antitrust actions brought by individual plaintiffs against Apple, Inc. and publishers, which has been combined into a multidistrict litigation and for which the plaintiffs seek class action status; and the "State Action" (Texas et al v. Penguin Group (USA) Inc., et al,

Civil Action No. 12-cv-03394 (DLC)), in which the Attorneys General in 33 states allege violations of the Sherman Act and various state antitrust and trade laws.

All three sets of actions (referred to as the "actions" hereafter) are premised on the allegation that Apple, Inc. and publishers unlawfully conspired to raise the prices of electronic books ("ebooks") and end retail ebook price competition in the United States. Plaintiffs in the Class Action and State Action seek equitable relief and monetary damages; DOJ seeks only equitable relief.

(a) Estimated amount of Plaintiff(s)' Claims (Class Action and State Action):

___ Less than $100,000
___ Between $100,000 and $999,999
___ Between $1,000,000 and $49,999,999
_X_ More than $50,000,000
_X_ Equitable Relief
Other (if so, specify) ______

(b) Estimated amount of Defendant(s)' Counterclaim/Cross-Claims:

___ Less than $100,000
___ Between $100,000 and $999,999
___ Between $1,000,000 and $49,999,999
___ More than $50,000,000
___ Equitable Relief
___ Other (if so, specify): **N/A – No Counterclaims or Cross-Claims**

2. **Competence.** Counsel certify that they are sufficiently knowledgeable in matters relating to their clients' technological systems to discuss competently issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

3. **Meet and Confer.** Pursuant to Fed. R. Civ. P. 26(f), counsel are required to meet and confer regarding certain matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference). Counsel hereby certify that they have met and conferred to discuss these issues.

Dates of parties' meet and confer conferences: May 15, 2012 (in-person conference), June 8, 2012 (conference call), June 13, 2012 (conference call). On each occasion, all parties were represented.

4. **Unresolved Issues.** After the meet-and-confer conferences taking place on the aforementioned dates, the following issues remain outstanding or require court intervention: ___ Preservation; _X__ Search and Review; ___ Source(s) of Production; ___ Form(s) of

Production; ___ Identification or Logging of Privileged Material; ___ Inadvertent Production of Privileged Material; ___ Cost Allocation; and/or __X__Other (if so, specify). To the extent specific details are needed about one or more issues in dispute, describe briefly below.

At this time, there are three disputes that require court intervention:

1. **Date Range for Production:** The parties disagree as to the default date range of discoverable documents and data in the actions. The parties' proposals are below, and the parties will be prepared to address this issue at the June 22, 2012 conference with the Court.

Plaintiffs' Proposal: January 1, 2008 to April 11, 2012

Apple's Proposal: November 15, 2008 to April 11, 2012

Macmillan's Proposal: November 15, 2008 to November 15, 2010

Penguin's Proposal: November 15, 2008 to April 11, 2012

Settling Defendants' Proposal: Settling Defendants take no position on particular date ranges, but, as set forth below, object to producing documents beyond those previously produced, absent good cause shown, regardless of the date of the document.

2. **Penguin Dispute re ESI Sources:** Penguin disputes the statement in the parties' (otherwise joint) response at section 7(a), that parties may object to producing responsive information from any of the listed sources ("document servers, email servers and programs, …" etc.) only on grounds of burden or inaccessibility. Instead, Penguin seeks a stipulation or order that all parties may object to producing responsive information from any of the listed sources on any ground. Plaintiffs oppose this position, and seek to hold Penguin to the language as stated.

3. **Lack of Macmillan Affiliate Information:** As noted in several places below, Defendant Verlagsgruppe Georg von Holtzbrinck (Macmillan's affiliate) has not yet included any information concerning its preservation of potentially relevant ESI or its plans for searching, collecting, and reviewing such ESI. Plaintiffs object and seek an order from this Court that it must submit the required information immediately, and in no event later than five business days after the order, in order for the parties to be able to maintain the agreed-upon schedule. Defendant Verlagsgruppe Georg von Holtzbrinck's position is that it has issued a litigation hold notice and is in the process of collecting the necessary information to be able to provide a complete and accurate description of its document preservation procedures, and will use all best efforts to provide the necessary information by the close of business on June 21, 2012.

As set forth below, to date, the parties have addressed the following issues:

**5. Preservation.**

(a) The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to: retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc.

<table>
<tr><td colspan="2">The parties agree that:<br><br>1. Each party will take reasonable and good faith steps to prevent the loss, destruction, alteration, overwriting, deletion, shredding, incineration, or theft of any document or data the party knows, or reasonably should know, falls within the scope of Fed. R. Civ. P. 26(b)(l). This includes all documents and data in the party's possession, custody, or control, except as noted in the following paragraph.<br><br>2. No party needs to preserve the following types of information, unless that party has a policy that results in routine preservation of such information:<br>(a) Transitory information such as Internet history, cookie files, cache files, and temporary files; and (b) data stored on a personal digital assistant (Blackberry, e.g.), including email, calendar data, contact data, and notes, provided that a copy of such information is routinely saved elsewhere.<br><br>Below, the parties provide the specific information requested in this item 5(a):</td></tr>
<tr><td>DOJ</td><td>DOJ has implemented a litigation hold notice describing the information in the possession, custody, and control of DOJ that may be discoverable in the actions. This written notice instructs all recipients to retain and not to destroy this information, and provides instructions on preserving the information where it can be collected for production. This hold notice was given to key personnel, including all members of the investigation team. All recipients were required to affirmatively respond to the notice stating whether they have documents or data covered by the notice and that they have complied with its instructions. In addition, DOJ sends periodic reminders of the hold requirements to the recipients.</td></tr>
</table>

| | |
|---|---|
| | DOJ is also subject to the requirements of the Federal Records Act and Antitrust Division Directive 2710.1(Procedures for Handling Division Document and Information), the provisions of which apply notwithstanding (or, where applicable, in addition to) any litigation hold notice.<br><br>The potentially relevant information that DOJ maintains consists of the information it collected during its 2010-2012 ebooks investigation, which includes Civil Investigative Demands ("CIDs"); documents and testimony produced from the Defendants and non-parties in response to those CIDs; and associated communications, including email. This information resides in: (1) a Summation Enterprise database, which contains image and data files, primarily for documents produced to DOJ by recipients of CIDs; (2) DOJ's email server (Microsoft Exchange 2003) which contains both discoverable and privileged/work-product communications; (3) a network document storage system (iManage), which contains exclusively or almost exclusively privileged/work-product documents; and (4) a set of shared document storage drives (R:), which (in relevant portion) contains primarily data produced to DOJ by recipients of CIDs. All these sources reside on live servers in DOJ's Washington, D.C. offices.<br><br>The individual at DOJ with primary responsibility for the preservation of material discoverable in these actions is Stephen Fairchild, a Trial Attorney with the Antitrust Division. |
| Class Plaintiffs | Class Plaintiffs have received written notice instructing preservation of all relevant documents that are related to the case, including electronically stored information, that are in their possession, custody and control. Class Counsel will continue to remind the Class Plaintiffs of their obligations to preserve relevant documents. Each Class Plaintiff is primarily responsible for the preservation of material in his or her possession that is discovery in these actions. |
| State Plaintiffs | The States of Texas and Connecticut have implemented litigation hold notices describing the information in their possession, custody, and control that may be discoverable in the actions. These notices instruct all recipients to retain and not destroy this information. These hold notices were given to key personnel, including members of the respective States' |

| | |
|---|---|
| | investigation team(s). The remaining State Plaintiffs are not likely to possess any documents or information that is not duplicative of Texas's and Connecticut's, and therefore would not have information that would be discoverable in the actions. |
| Apple | Apple has provided relevant custodians (which includes the custodians identified during the DOJ investigation phase as well as additional individuals) with a legal hold notice instructing recipients of their obligation to retain potentially relevant information.<br><br>Except for a database of documents collected during the DOJ investigation, Apple does not have a central repository of documents specific to this litigation or to ebooks in general. Potentially relevant ESI at Apple will vary by custodian, but may include emails, calendar information, spreadsheets, databases (including but not limited to Filemaker Pro documents), internal servers, and other electronic or hard copy documents relating to ebooks.<br><br>Apple's search and collection of potentially relevant ESI will vary for each Apple custodian. Therefore, Apple cannot specify at this juncture specific locations or volume of ESI. For example, the number and location of shared drives, if any, depends on the specific custodians identified for this litigation, In general, potentially relevant ESI may reside in (1) a hosted document review platform containing documents collected from Apple custodians during the DOJ investigation phase; (2) Apple's email servers; (3) email server back-up disks and tapes; (4) hard drives of Apple custodians' work computers; (5) back-ups of hard drives; (6) external drives potentially utilized by Apple custodians; (7) shared drives potentially utilized by Apple custodians; (8) back-ups of shared drives; (9) mobile devices, such as iPads, iPhones, and/or iPods; (10) internal servers potentially utilized by Apple custodians; (11) back-ups of internal servers potentially utilized by Apple custodians; and (12) instant message (iChat) conversations.<br><br>Apple does not intend to search email server back-ups because compressed data from back-up disks or tapes cannot be restored without additional processing and costs. Other back-up systems, such as for hard drives, share drives, and mobile devices will vary by custodian.<br><br>Most of the sources identified above are located in California, |

| | |
|---|---|
| | though relevant ESI may be located throughout Apple offices. The sources identified above likely contain a mix of material protected by the attorney-client privilege and the work-product doctrine, as well as non-privileged material.<br><br>The individual responsible for the preservation of discoverable material in this action is Beth Kellermann, litigation e-discovery manager at Apple. |
| Hachette | Hachette Book Group, Inc. and Hachette Digital, Inc. ("Hachette") has issued a litigation hold notice and regular reminders describing the documents and data that are potentially relevant to this litigation and the previous federal and state government investigations.<br><br>This notice has been provided to all personnel who may have relevant data as well as all personnel responsible for the electronically stored information routinely generated and stored by Hachette. The hold notice is updated regularly. The notice has been circulated to a distribution list that is far broader than the set of custodians likely to have information relevant to the actions.<br><br>The hold notice calls for recipients to retain any and all documents related to e-book related pricing lists, plans, market studies, forecasts, surveys, strategies, analysis and e-book pricing and distribution decisions, including but not limited to, documents that reflect a broad list of topics and categories of documents. The hold notice also defines "document" broadly, including but not limited to, a list of medium on which information can be stored.<br><br>Potentially relevant ESI at Hachette primarily exists in the form of emails, memoranda, reports, spreadsheets, presentations, calendar information, and related materials maintained by individual custodians.<br><br>Potentially relevant ESI is stored in many different databases and applications. Potentially relevant ESI generally is likely to be stored on Hachette's email servers, custodians' personal computer hard drives, and location-specific shared drives. Potentially relevant ESI also may be stored on other storage devices maintained by individual custodians, such as external hard drives, portable storage drives, mobile devices, or Internet-based document repositories.<br><br>All of the sources identified above are generally located |

| | |
|---|---|
| | throughout Hachette's offices or on its servers and likely contain material protected by the attorney-client privilege and the work-product doctrine (in addition to non-privileged material).<br><br>The individuals responsible for the preservation of discoverable material in this action are Carol Ross, General Counsel at Hachette Book Group, Inc. and Elise Solomon, Senior Counsel at Hachette Book Group, Inc. |
| HarperCollins | Upon receipt of a CID from the State of Texas, HarperCollins provided potentially relevant custodians with a legal hold notice instructing recipients of their obligation to retain potentially relevant information. Since the initial distribution of that notice, HarperCollins has updated the recipient list and circulated periodic reminders as appropriate (including upon receipt of a CID from the DOJ and the service of complaints in the actions). All such notices and reminders have been circulated to a distribution list that is far broader than the set of custodians likely to have information relevant to the actions, and required those recipients to retain any and all documents (including memoranda, correspondence, e-mails, computer files, audio recordings, and handwritten notes) dating from January 1, 2008 related to, among other things, the creation, marketing, sale, distribution, costs, or pricing of e-books.<br><br>Potentially relevant ESI at HarperCollins primarily exists in the form of emails, memoranda, reports, spreadsheets, presentations, calendar appointments and invitations, and related materials maintained by individual custodians. Other than any databases of documents collected during the governmental investigations, HarperCollins does not maintain a centralized document storage system.<br><br>Potentially relevant ESI generally is likely to be stored on HarperCollins email servers, the personal computer hard drives of custodians, and location- and department-specific shared drives. Potentially relevant ESI also may be stored on storage devices maintained by individual custodians, such as external hard drives, portable storage drives, mobile devices, or Internet-based document repositories.<br><br>All of the sources identified above are located throughout HarperCollins' offices and likely contain material protected by the attorney-client privilege and the work-product doctrine |

| | |
|---|---|
| | (in addition to non-privileged material).<br><br>The individual responsible for the preservation of discoverable material in this action is Trina Hunn, Assistant General Counsel at HarperCollins. |
| Macmillan<br><br>(Holtzbrinck Publishers, LLC d/b/a Macmillan) | Macmillan implemented a written litigation hold notice upon receipt of the first CID it received from the State of Texas. Reminder notices have been circulated within the company at several junctures, including upon receipt of CIDs from the State of Connecticut and DOJ, and upon service of the first Class Action complaint and the complaints in the DOJ Action and State Action.<br><br>All notices were circulated to a distribution list that is far broader than the set of custodians likely to have information relevant to the actions. The notices call for the preservation and retention of hard copy and electronic documents concerning a broad range of topics related to eBooks. The types of documents to be preserved and retained include, without limitation: correspondence, including e-mail and other electronic communications; information contained on computers and portable electronic devices; memoranda; reports; sales transaction records; data compilations; file folders and labels; calendars; diaries; telephone logs; handwritten notes; and information stored on removable media, such as discs or thumb drives.<br><br>The documents being preserved and retained are found in:<br><br>(1) an email server (Microsoft Exchange 2010[1]), which contains both discoverable and privileged/work-product communications;<br><br>(2) two network document storage servers, NYFile01 and NYFile09, both of which house a number of shared document storage drives, some containing discoverable material and some (such as Interwoven) containing privileged/work-product documents primarily because the drives are used exclusively by the Legal Department;<br><br>(3) a shared storage drive named FileSite, which resides on a separate server and contains privileged/work-product documents primarily because the drive is used exclusively by |

[1] Macmillan recently upgraded its email server from Microsoft Exchange 2003 to Microsoft 2010. No data or documents were lost during the upgrade.

| | |
|---|---|
| | the Legal Department; and<br><br>(4) individual document storage drives (C: and D:) and personal computers, portable devices, and removable media as described above, all of which contain both discoverable and privileged/work-product documents. Apart from the portable media which have no fixed location, all servers and databases reside in New York City.<br><br>The individuals responsible for data preservation are Amy Wolosoff and various IT personnel at Macmillan and Joel Mitnick and Alexandra Shear at Sidley Austin LLP. |
| Verlagsgruppe Georg von Holtzbrinck GmBH | Verlagsgruppe Georg von Holtzbrinck is in the process of collecting the necessary information to be able to provide a complete and accurate description of its document preservation procedures. |
| Penguin | Penguin issued a litigation hold notice and reminders which describe documents and data that are potentially relevant to this litigation and the previous federal and state government investigations. The litigation hold was sent to a broader group of people than the identified custodians including personnel responsible for the electronically stored information routinely generated and stored by Penguin.<br><br>The potentially relevant information that Penguin has identified to date include documents and data, both hard copy and ESI, collected over the previous investigations in response to federal and state government CIDs. This information is currently stored in a Ringtail Database , a document management application, as well as on peripheral storage devices. Hard copy documents are stored in file storage areas. This material is in the control of Penguin's counsel and, to the extent that it is ESI, resides on computer servers and peripherals located at the Washington, DC office of Penguin's counsel. The potentially responsive documents and data include information both discoverable and subject to privilege.<br><br>Potentially relevant documents and data, within the possession, custody, and control of Penguin, which has not yet been collected resides in the computer systems of Penguin, the personal hard drives and peripherals of the document custodians, as it is regularly kept in the course of business, as well as Penguin's various office hard copy |

| | |
|---|---|
| | storage facilities.<br><br>Penguin has a Microsoft Office environment and its employees use the Office Suite of applications, as well as SQL and Access.<br><br>Following its standard procedures at the issuance of a litigation hold, identified custodians' ESI storage areas were copied and the copied ESI was retained, pending the termination of the hold. Document custodians are responsible for the retention of all materials described by the litigation notice. Documents are retained within the custodians' existing folder structure. File Shares and system drives subject to the litigation hold are treated in the same manner.<br><br>A full tape backup of the Microsoft Exchange servers and databases is conducted every night. There is no segregation of email accounts in this backup and it includes all objects within Outlook. A 30-day tape rotation cycle is used and, at the end of 30 days, a monthly tape is moved offsite and retained. Non- Exchange servers are subject to a monthly backup. Backup media is moved off-site and retained. The retention period is currently "in perpetuity." It was previously 7 years; the change took place in 2007.<br><br>The individual with the primary responsibility for the preservation of relevant information is Greg Granitto, counsel for Penguin. |
| Simon & Schuster | Simon & Schuster ("S&S") has issued a legal hold notice to potentially relevant custodians instructing recipients of their obligation to retain potentially relevant information. This hold notice has been regularly redistributed, and has been updated as appropriate. The notice has been circulated to a distribution list that is broader than the set of custodians likely to have information relevant to the actions.<br><br>The hold notice calls for recipients to retain any and all documents dating from January 1, 2008, related to the creation, marketing, sale, distribution or pricing of e-books, including, but not limited to, documents that reflect a broad list of categories of documents. The hold notice also broadly defines "document" to include any medium on which information can be stored.<br><br>Potentially relevant ESI at S&S primarily exists in the form of emails, memoranda, reports, spreadsheets, presentations, |

| | |
|---|---|
| | calendar information, and related materials maintained by individual custodians. Other than any databases of documents collected during the DOJ investigation, S&S does not maintain a centralized document storage system.<br><br>Potentially relevant ESI generally is likely to be stored on S&S email servers, custodians' personal computer hard drives, and location-specific shared drives. Potentially relevant ESI also may be stored on other storage devices maintained by individual custodians, such as external hard drives, portable storage drives, mobile devices, or Internet-based document repositories.<br><br>All of the sources identified above are located throughout S&S's offices and likely contain material protected by the attorney-client privilege and the work-product doctrine (in addition to non-privileged material).<br><br>The individual responsible for the preservation of discoverable material in this action is Emily Remes, Deputy General Counsel at Simon & Schuster. |

(b) State the extent to which the parties have disclosed or have agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications.

| |
|---|
| Currently, the parties agree that no party needs to disclose the date, specific content, or specific recipients of their respective litigation hold communications, although the nature of those communications is generally described above. However, each party reserves the right to demand such disclosure in the future, if a dispute arises as to the adequacy of another party's document preservation or production, potential spoliation, or the propriety of a claim of privilege or work product, or if other circumstances arise justifying such disclosure. |

(c) The parties anticipate the need for judicial intervention regarding the following issues concerning the duty to preserve, the scope, or the method(s) of preserving electronically stored information:

| |
|---|
| None at this time. |

## 6. Search and Review

(a) The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. Some of the approaches that may be considered include: the use and exchange of keyword search lists, "hit reports," and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc. To the extent the parties have reached agreement as to search and review methods, provide details below.

Each party has agreed to describe this information below.

Furthermore, the parties agree to review this information and work cooperatively to ensure that each party's plan for the identification, culling, search, review, and production of ESI in the actions is thorough, reasonable, and comports with all applicable rules. Toward that end:

(1) By July 6, 2012, the parties will exchange objections or requests for modification of any party's general plan stated in this Joint Electronic Discovery Submission No. 1 for the identification, culling, search, review, or production of ESI;

(2) The parties will meet and confer promptly thereafter to resolve any disagreements on those issues, and will complete the meet and confer process by July 18, 2012, unless the Court's intervention is required and, if necessary, submit an additional or revised Joint Electronic Discovery Submission;

(3) By July 31, 2012, each party that intends to use keyword search terms to produce ESI in the actions must (i) complete its collection of ESI from the custodians listed in its Custodian List and from any additional locations of potential responsive ESI (including shared drives and other shared resources), and (ii) provide a report of its document collection efforts and detailed search and review plan, including:

(a) the total amount of data collected;

(b) the amount of data collected per custodian;

(c) the approximate number or percentage of documents collected that are written (partially or entirely) in a language other than English, and an identification of all the foreign languages likely to be found in the collection;

(c) for parties intending to use keyword searches to cull potentially relevant

<table>
<tr><td colspan="2">documents for review or production, (i) a tally list of all terms that appear in the collection and the frequency with which the terms appear in the collection (both the total number of appearances and the number of documents in which each word appears); (ii) where necessary to understand any of these terms (such as project or code words related to ebooks), a glossary; (iii) a detailed description of the party's planned search methodology, including a full list of keyword terms to be used, stem searches, and combination (or Boolean) searches; and (iv) a description of the applications that will be used to execute the search; and<br><br>Macmillan (and possibly VGvH) intends to use a predictive coding process to search for and review ESI in the actions. By July 31, 2012, Macmillan and VGvH (if applicable) will provide additional information as outlined below.<br><br>(4) With this information, the parties will then meet and confer as needed to (a) finalize each party's ESI search, review, and production plan, and (b) develop a rolling document production schedule, discussed further in response to item 7(b) below.</td></tr>
<tr><td><u>DOJ</u></td><td>Because DOJ possesses only a limited universe of documents and data that may be discoverable in the actions, much of which was produced by parties and non-parties during its ebooks investigation, it will not need to use any keyword searching or other non-manual techniques to identify or produce potentially responsive material. When review is necessary to cull privileged or work-product documents from the productions, this will be done by manual review by attorneys and staff.</td></tr>
<tr><td><u>Class Plaintiffs</u></td><td>Class Plaintiffs possess only very limited documents and data – if any – that may be discoverable in the actions. Therefore, they will not need to use keyword searching or other non-manual techniques to identify or produce potentially responsive material. When review is necessary to cull privileged or work-product documents or duplicates from the productions, this will be done by manual review by attorneys and staff.</td></tr>
<tr><td><u>State Plaintiffs</u></td><td>The State Plaintiffs, in particular Texas and Connecticut, possess only a limited universe of documents and data that may be discoverable in the actions, much of which was produced by parties and non-parties during the investigation. As a result, no keyword searching or other non-manual techniques will be utilized to identify or produce potentially responsive material. When a review is necessary to cull privileged or work-product documents or duplicates from the productions, State Plaintiffs</td></tr>
</table>

| | |
|---|---|
| | will engage in such a review manually. |
| Apple | Each Apple custodian likely possesses a substantial number of emails, other electronic documents, and/or hard copy documents<br><br>Apple will interview custodians and other Apple personnel to identify the locations of discoverable documents and data within Apple's possession, custody, and control. Apple will collect hard copy documents from on-site and off-site storage locations identified by custodians. Apple will collect ESI in a forensically sound method.<br><br>Because of the potential large volume of ESI, Apple will use a document search software to search by keyword and other limits (such as date ranges) to identify the universe of potentially responsive documents among Apple custodians, subject to further disclosure to the parties. In some circumstances, Apple may also use a proprietary search tool to locate discoverable documents.<br><br>Apple will use a document hosting vendor to apply non-manual techniques to cull duplicates and material previously produced to the DOJ, including but not limited to the MD5 Hash standard within custodians. Apple will then manually review documents for attorney-client privilege, work-product, and responsiveness as well as to prepare documents for production. |
| Hachette | The documents already produced by Hachette during the investigations were extensive, burdensome to produce, the subject of negotiation, and we understand will be re-produced by the DOJ to all parties. Accordingly, Hachette does not believe that additional productions are necessary or merited without good cause shown.<br><br>Each Hachette relevant custodian likely possesses a large volume of documents, the majority of which are likely to be irrelevant to this case. Hachette expects to employ Applied Discovery, Inc. an e-discovery vendor, to assist with the collection of any potentially responsive ESI from relevant custodians (to the extent appropriate and as necessary given the already-significant document productions made by Hachette during the course of the governmental investigations). Hachette also expects to use the same e-discovery vendor to perform non-manual keyword searching to identify any potentially responsive documents and to exclude documents previously produced to the DOJ. Hachette then expects to manually review such documents for privilege |

| | |
|---|---|
| | and responsiveness prior to any production. |
| HarperCollins | HarperCollins has already undertaken extensive and burdensome document searches, reviews and productions during the governmental investigations, all of which were the subject of extensive negotiation between HarperCollins and the relevant governmental authorities. It is HarperCollins' understanding that all documents produced in the course of these investigations will be re-produced by DOJ to all parties in the actions. As such, HarperCollins does not believe that further searches and productions are necessary or justifiable without good cause shown.<br><br>Each HarperCollins custodian likely possesses a large volume of documents, the majority of which are likely to be irrelevant to these actions. To the extent appropriate and necessary given the already-significant document productions made by HarperCollins during the course of the governmental investigations, HarperCollins would likely employ FTI, an e-discovery vendor, to assist with the collection of any potentially responsive ESI from relevant custodians. HarperCollins would also likely use the same e-discovery vendor to perform non-manual keyword searches to identify any potentially responsive documents and to isolate duplicate documents and documents previously produced to the DOJ. HarperCollins would then manually review such documents for privilege and responsiveness prior to any production. |
| Macmillan<br><br>(Holtzbrinck Publishers, LLC d/b/a Macmillan) | Macmillan intends to use a predictive coding process to search for and review electronic documents in these cases. Macmillan is considering retaining a vendor named Epiq, subject to negotiation of an acceptable engagement agreement. Epiq uses a predictive coding technology called Equivio Relevance.<br><br>By the close of business on June 21, 2012, Macmillan will provide the parties with a brochure from Epiq summarizing its workflow for using the product and a Power Point presentation, entitled Equivio>Relevance Application Architecture, which provides additional background about the technology. Additionally, if Macmillan retains Epiq, Macmillan will promptly communicate to the parties a workflow chart that will specify each step of the process of Equivio Relevance as Macmillan proposes to use that program to produce ESI in the actions. This workflow chart should be produced as soon as it is available, but no later than June 29, 2012.<br><br>Thereafter, from time to time, Macmillan will meet and confer |

| | |
|---|---|
| | with the parties to exchange relevant information concerning the processes by which it will use predictive coding in the actions, including by identifying (i) the relevant document universe and how the seed set for the review process will be selected, (ii) whether, at various stages, documents will be reviewed by human reviewers or using sampling or automated techniques, (iii) how documents will be processed by the selection algorithm, (iv) how the training rounds will be conducted, (v) how exceptions and unreadable or unprocessable documents will be handled, and (vi) any statistical tests or confidence levels to be used. |
| Verlagsgruppe Georg von Holtzbrinck | Verlagsgruppe Georg von Holtzbrinck is in the process of collecting the necessary information to be able to provide a complete and accurate description of its anticipated document search and review procedures. |
| Penguin | Penguin anticipates the need to search a considerable volume of ESI, hard copy documents, and data.<br><br>Penguin will conduct interviews of document custodians and Penguin personnel to ascertain the locations of discoverable documents and data within its possession, custody, and control.<br><br>Hard copy documents will be collected from file storage locations identified by custodians. ESI will be collected using a forensically sound methodology from the Penguin computer system, shared drives, databases, hard drives and peripherals identified by custodians.<br><br>ESI will be subject to date restrictions, as agreed by counsel, and will be de-duped by custodian using a MD5 Hash standard.<br><br>ESI will be subjected to word search criteria using NUIX, a software application. Word search data and statistics will be provided per the ESI specifications agreed upon by all parties.<br><br>All available metadata will be retained and produced in accordance with ESI specification agreed upon by all parties. Back-up, archival, and legacy will not be searched but will be retained during the pending litigation.<br><br>Documents and data will be reviewed by attorneys employed by Penguin to identify responsive, non-privileged information for production.<br><br>Penguin will produce documents per agreed specifications. |

| | |
|---|---|
| Simon & Schuster | The documents already produced by S&S during the investigations were extensive, burdensome to produce, the subject of negotiation, and we understand will be re-produced by DOJ to all parties. Accordingly, S&S does not believe that additional productions are necessary or justifiable without good cause shown.<br><br>Each S&S relevant custodian likely possesses a large volume of documents, the majority of which are likely to be irrelevant to this case. To the extent appropriate and as necessary given the already-significant document productions made by S&S during the course of the governmental investigations, S&S expects to employ OmniX, an e-discovery vendor, to assist with the collection of any additional potentially responsive ESI from relevant custodians. If additional discovery is necessary, S&S would likely use the same e-discovery vendor to perform non-manual keyword searching to identify any potentially responsive documents and to cull duplicate documents and documents previously produced to the DOJ. S&S would then manually review such documents for privilege and responsiveness prior to any production. |

(b) The parties anticipate the need for judicial intervention regarding the following issues concerning the search and review of electronically stored information:

| |
|---|
| None at this time. |

## 7. Production

(a) **Source(s) of Electronically Stored Information.** The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information [e.g., email, word processing documents, spreadsheets, presentations, databases, instant messages, web sites, blogs, social media, ephemeral data, etc.]:

| |
|---|
| With the exception of Penguin (see Dispute #2, section 4 above), the parties agree to search and produce responsive documents and data from all of the following sources, to the extent those sources exist within the party's possession, custody, and control, or that of its individual custodians: document servers, email servers and programs (including any calendar, contact, note, and task information residing therein, and including personal email accounts), instant messaging servers, databases, Internet-based document repositories such as Sharepoint, |

repositories for audio and video records (including voicemail records, call logs, and text messages), local electronic devices (such as hard drives and disk drives of employees' desktop or laptop computers), portable devices (such as mobile phones, PDAs, iPads and tablets, thumb drives, portable hard drives, disks, CDs, and DVDs), and third-party hosted storage or platforms, including cloud storage. Nothing in this paragraph shall modify any provisions in the Initial Report concerning discovery of foreign documents or data.

If any party concludes that any of the sources of information listed above is inaccessible or that collection from or search of any of those sources would be unduly burdensome, the parties will meet and confer in an attempt to resolve the matter. Parties will use their best efforts to raise any such objections as soon as possible, so that they may be resolved in time to allow the affected parties to meet the July 31, 2012 deadline discussed at item 3 of the parties' joint response at section 6(a) above.

With respect to archive sources that may contain discoverable and responsive documents and data (whether residing on archive servers, backup tapes, or otherwise), the parties agree to describe such sources in this Joint Electronic Discovery Submission No.1 (in Item 5(a) above), including how such sources may be accessed and searched, even if the party objects to including such sources in its document collection and production. Plaintiffs reserve the right to demand collection and production from archive sources when warranted under applicable law and rules.

In addition to these sources of ESI, the parties agree to search and produce discoverable and responsive documents and data that exist in hard copy form, wherever they may reside, including libraries, filing and records departments, desks, cabinets, and warehouses or other archives.

In addition, the parties agree to ask each of their document custodians whether he or she maintains potentially responsive documents or data in any of the electronic or hard-copy sources listed above, whether at the person's office, home, or online.

(b) **Limitations on Production.** The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) identity of custodians; (iii) date ranges for which potentially relevant data will be drawn; (iv) locations of data; (v) timing of productions (including phased discovery or rolling productions); and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, they are described below:

Custodians: On June 20, 2012, the parties will exchange Custodian Lists, as described in section 4(a) of the Joint Initial Report. Each party will state any

initial objections to any other party's Custodian List by July 6, 2012, and the parties will seek to resolve those objections by July 18, 2012. To the extent any Defendant has been granted a stay by the Court, that Defendant's Custodian List must be served within 21 days of the expiration of that stay or any extension thereof. As discovery continues, the parties agree to modify their Custodian Lists as necessary, and each party retains the right to object to the inclusion or exclusion of any custodian based on developing information.

Date Range: The parties disagree as to the default date range of discoverable documents and data in the actions; see 7(f) below. However, whatever final default date range is determined or agreed to, the parties agree that any party may propose a different date range for any particular custodian or type of documents or data, when warranted. Any party proposing a different date range will inform the other parties of the new date range and state to which documents or custodian it proposes the new date range to apply, and the parties will seek to resolve any disputes on that issue.

Locations of Data; Timing of Productions: As noted above in response to Item 6(a), the parties intend to hold a series of meet-and-confer sessions to determine the appropriate limits of ESI collection and production, finalize each party's plan, and develop a schedule for the rolling production of documents intended to facilitate an orderly and manageable production and maintain the proposed case schedule.

Non-Party Productions: Discoverable and responsive documents and data in the possession, custody, and control of non-parties may be demanded by subpoena pursuant to Federal Rule of Civil Procedure 45. However, the parties agree that, subject to the provisions of the Initial Report and this Joint Electronic Discovery Submission No.1, discoverable and responsive documents and data in the possession, custody, and control of their attorneys will be produced by the parties in response to document requests directed to the parties, without need for a subpoena to the attorneys.

(c) **Form(s) of Production:**

1) The parties have reached the following agreements regarding the form(s) of production:

The parties have a working draft of the Specifications for Production of ESI and Hard Copy Documents. During the upcoming negotiations concerning document collection and production, the parties will work toward finalizing these specifications and alert the Court to any disputes arising therefrom.

All parties have agreed to produce documents and data according to these Specifications, when finalized. To the extent a party finds that production of any particular document or data according to the Specifications is impossible, impracticable, or entails significantly greater burden than expected, the party will inform the other parties and seek agreement to an acceptable alternative format.

2) Please specify any exceptions to the form(s) of production indicated above (e.g., word processing documents in TIFF with load files, but spreadsheets in native form):

When finalized, the Specifications for Production of ESI and Hard Copy Documents will address this issue.

3) The parties anticipate the need for judicial intervention regarding the following issues concerning the form(s) of production:

None at this time.

**(d) Privileged Material**

1) **Identification.** The parties have agreed to the following method(s) for the identification (including the logging, if any, or alternatively, the disclosure of the number of documents withheld), and the redaction of privileged documents, including documents located outside the United States that would be privileged under United States law:

On the date specified in the case schedule, each party agrees to serve all other parties with a log of all documents withheld from its production or produced in redacted form on ground of attorney-client privilege, attorney work-product, or other applicable privilege ("privilege log"). Such privilege log may consist of certain metadata fields for each of the listed documents, as long as it comports with all requirements herein. In addition, each party will serve a revised version of any privilege log served on DOJ or the States during a prior ebooks investigation, or certify that the party's previously produced privilege log remains accurate and complete.

Privilege logs must conform to Federal Rule of Civil Procedure 26(b)(5)

and section II(E) of the Pilot Project Standing Order and must include columns with at least the following information: (1) document date, (2) all document authors/senders and recipients; (3) form of the document (e.g., email, memo, letter); (4) brief description of the subject matter of the document, sufficient to enable another party's evaluation of the claim of privilege; (5) privilege claimed and basis therefor; and (6) for documents redacted rather than withheld entirely, the Bates number of the produced version. The logs must also contain a key identifying by name, position, and employer all attorneys and attorneys' agents (such as paralegals and litigation support staff) whose names appear on the logs. The privilege logs must be produced in text-searchable format.

If a party produces a privilege log based in whole or in part on metadata for the listed documents, it may redact any metadata information that discloses privileged information.

The parties agree that the following documents need not be produced or described on a privilege log, if those documents are protected from disclosure in the actions by the attorney-client privilege, work-product protection, or other applicable privilege:

(1) as of April 7, 2010, a party's communications with or between its in-house or external litigation counsel or their employees or agents concerning any regulatory or governmental investigation concerning ebooks or the actions;

(2) as of April 7, 2010, work product created by a party's in-house or external litigation counsel or their employees or agents in anticipation of litigation with any governmental or private party concerning ebooks;

(3) internal communications (including email) between or among DOJ attorneys, staff, and consultants working at the direction of those attorneys, or State attorneys, staff, and consultants working at the direction of those attorneys;

(4) internal memoranda, status reports, notes, and other work product created by DOJ attorneys, staff, and consultants working at the direction of those attorneys, or State attorneys, staff, and consultants working at the direction of those attorneys;

(5) drafts of documents such as pleadings, other filings, discovery requests and responses, correspondence, and other intermediate work product created by DOJ attorneys, staff, and consultants working at the direction of those attorneys; State attorneys, staff, and consultants working at the direction of those attorneys; Class Action attorneys, staff, and consultants working at the direction of

| those attorneys; or Defendants' in-house counsel and external attorneys, staff, and consultants working at the direction of those attorneys;<br><br>(6) communications between DOJ attorneys, staff, and consultants working at the direction of those attorneys; State attorneys, staff, and consultants working at the direction of those attorneys; and /or Class Action attorneys, staff, and consultants working at the direction of those attorneys.<br><br>Nothing in the provisions above prevents any party from challenging any claim of privilege or other protection asserted by another party. The parties further agree that these provisions supersede the provisions of section II(D) of the Pilot Project Standing Order. |
|---|

2) **Inadvertent Production / Claw-Back Agreements.** Pursuant to Fed R. Civ. Proc. 26(b)(5) and F.R.E. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents (e.g. "quick-peek" agreements, on-site examinations, nonwaiver agreements or orders pursuant to F.R.E. 502(d), etc.):

| See the parties' Stipulated Protective Order (Docket 149), at section 12. |
|---|

3) The parties have discussed a 502(d) Order. Yes_X_; No__.

The provisions of any such proposed Order shall be set forth in a separate document and presented to the Court for its consideration.

| No party proposes any 502(d) Order. |
|---|

(e) **Cost of Production.** The parties have analyzed their clients' data repositories and have estimated the costs associated with the production of electronically stored information. The factors and components underlying these costs are estimated as follows:

i. **Costs:**

| DOJ | DOJ will incur costs in terms of time spent by its attorneys and staff in preparing documents for production, and in the partial dedication of shared resources (such as server |
|---|---|

| | |
|---|---|
| | space). However, the cost of DOJ's litigation production is not "billed" or readily communicated in terms of dollars, nor DOJ does routinely calculate such cost per litigation. |
| Class Plaintiffs | Class Plaintiffs anticipate minimal costs associated with the production of electronically stored information. |
| State Plaintiffs | The State Plaintiffs will incur costs in terms of time spent by its attorneys and staff in preparing documents for production, and in the partial dedication of shared resources (such as server space). However, the cost of the State Plaintiffs' litigation production is not "billed" or readily communicated in terms of dollars, nor do the State Plaintiffs routinely calculate such cost per litigation. |
| Apple | Apple expects to incur significant costs associated with the production of ESI. While the precise amount is unknown because it is unclear what, if any, additional ESI Apple will need to produce, the total cost would include document hosting fees for a document hosting vendor, time and fees for vendors, staff, and attorneys collecting additional ESI, and time and fees spent by attorneys and staff in reviewing and preparing documents for production. Other costs, such as staffing and other resource allocations internal to Apple are not readily communicated in terms of dollars. |
| Hachette | Hachette has already incurred significant costs as a result of the government investigations. Hachette is unable to provide a future cost estimate at this time given that it has already produced a significant volume of documents during the governmental investigations and the volume of additional non-duplicative documents that may be sought by plaintiffs from Hachette, if any, remains unclear. The documents already produced by Hachette during the investigations were extensive, burdensome to produce, the subject of negotiation, and we understand will be re-produced by Hachette to all parties. Accordingly, Hachette does not believe that additional productions are necessary or merited without good cause shown.<br><br>Nevertheless, it is likely Hachette will face significant costs in this litigation. The total cost largely depends on the amount of additional ESI that may be collected, reviewed, and produced. Costs associated with these tasks include |

| | |
|---|---|
| | document hosting fees assessed by a document hosting vendor, time and fees for vendors, staff, and attorneys collecting additional ESI, and time and fees spent by attorneys and staff in reviewing and preparing documents for production. Costs in the form of internal burden on Hachette are also uncertain, but are also likely to be substantial. |
| HarperCollins | HarperCollins has already incurred significant costs as a result of the government investigations. The document searches, reviews and productions by HarperCollins during those investigations were extensive, burdensome, and the subject of considerable negotiation. All documents produced during those investigations are expected to be re-produced by DOJ to all parties in the actions. Accordingly, HarperCollins does not believe that additional productions are necessary without good cause shown.<br><br>Nevertheless, it is likely HarperCollins will face significant costs in this litigation. The total cost, which HarperCollins is unable to estimate at this time, largely depends on the volume of additional non-duplicative documents (if any) that may be sought by plaintiffs from HarperCollins and the corresponding amount of additional ESI that may be identified, collected, reviewed, and produced in response to any such requests. Costs associated with these tasks include document hosting fees assessed by a document hosting vendor, time and fees for vendors, staff, and attorneys collecting additional ESI, and time and fees spent by attorneys and staff in reviewing and preparing documents for production. Some of these same tasks are also likely to impose substantial costs on HarperCollins' business, particularly as they require the dedication of time and effort from potentially relevant custodians. |
| Macmillan<br><br>(Holtzbrinck Publishers, LLC d/b/a Macmillan) | Macmillan will incur costs in terms of time spent by in-house counsel and IT support personnel related to the identification, preservation, collection, and transmission of responsive information. Macmillan will incur similar costs in terms of time spent by outside counsel and IT support personnel employed by counsel, as well as by third-party vendors. Macmillan will incur substantial costs in terms of attorney time spent to review responsive material and to prepare such material for production. These costs will be billed to Macmillan periodically as both flat-fee charges and hourly billed charges, depending on the nature and |

| | |
|---|---|
| | source of the particular charge. |
| Verlagsgruppe Georg von Holtzbrinck | Verlagsgruppe Georg von Holtzbrinck is in the process of collecting the necessary information to be able to provide a complete and accurate description of the costs that it will incur in collecting, reviewing, and producing documents. |
| Penguin | Penguin has already incurred significant costs as a result of the government investigation, and will incur significant expense associated with further discovery, including collection, processing, review, and production of ESI, as well as the logging of privileged material. Penguin can only estimate these costs at this point and has initially budgeted $500,000 for these expenses. |
| Simon & Schuster | S&S has already incurred significant costs as a result of the government investigations. S&S is unable to provide a future cost estimate at this time given that it has already produced a significant volume of documents during the governmental investigations and the volume of additional non-duplicative documents that may be sought by plaintiffs from S&S, if any, remains unclear. The documents already produced by S&S during the investigations were extensive, burdensome to produce, the subject of negotiation, and we understand will be re-produced by DOJ to all parties. Accordingly, S&S does not believe that additional productions are necessary or justifiable without good cause shown.<br><br>The total cost for any additional productions largely depends on the amount of additional non-duplicative ESI that may be sought from S&S, and the volume of material that may be identified, collected, reviewed, and produced. Costs associated with these tasks would include document hosting fees assessed by a document hosting vendor, time and fees for vendors, staff, and attorneys collecting additional ESI, and time and fees spent by attorneys and staff in reviewing and preparing documents for production. Such tasks are likely to impose substantial costs. |

ii. **Cost Allocation.** The parties have considered cost-shifting or cost-sharing and have reached the following agreements, if any:

| |
|---|
| Each party agrees to bear its own costs of discovery, without prejudice to |

any application for costs pursuant to 15 U.S.C. §§ 15, 15a, or 15c.

iii. **Cost Savings.** The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:

The parties have briefly discussed the idea of using a common electronic discovery vendor or a shared document repository, but no party has put forth any specific proposal for such an arrangement.

DOJ security policy does not typically allow it to join in such arrangements. DOJ believes that such an arrangement in this case, at least involving DOJ, is likely to be unworkable.

(f) The parties anticipate the need for judicial intervention regarding the following issues concerning the production of electronically stored information:

See paragraph 4 above regarding the default date-range dispute and Penguin's dispute regarding the sources of ESI to be produced.

**8. Other Issues:**

None at this time.

The preceding constitutes the agreement(s) reached, and disputes existing, (if any) between the parties to certain matters concerning electronic discovery as of this date. To the extent additional agreements are reached, modifications are necessary, or disputes are identified, they will be outlined in subsequent submissions or agreements and promptly presented to the Court. This Stipulation is effective upon execution by the parties, without regard to filing with the Court, and may be signed in counterparts.

The next scheduled meet-and-confer conference to address electronic discovery issues, including the status of electronic discovery and any issues or disputes that have arisen since the last conference or Order, shall take place: Shortly after July 6, 2012, at which time the parties will have served their objections to Custodian Lists and ESI plans, as provided above at section 6(a), item 1.

The next scheduled conference with the Court for purposes of updating the Court on electronic discovery issues has been scheduled for ____________ . Additional conferences, or written status reports, shall be set every 3 to 4 weeks, as determined by the parties and the Court, based on the complexity of the issues at hand. An agenda should be submitted to the Court four (4) days before such conference indicating the issues to be raised by the parties. The parties may jointly seek to adjourn the conference with the Court by telephone call 48 hours in advance of a scheduled conference, if the parties agree that there are no issues requiring Court intervention.

___ Check this box if the parties believe that there exist a sufficient number of e-discovery issues, or the factors at issue are sufficiently complex, that such issues may be most efficiently adjudicated before a Magistrate Judge.

Additional Instructions or Orders, if any:

**STIPULATED AND AGREED TO:**

Dated: June 15, 2012 By: [signature: Carrie A. Syme]

Mark W. Ryan
Daniel McCuaig
Carrie A. Syme
U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
(202) 532-4753
mark.w.ryan@usdoj.gov

*On behalf of the United States*

By: ______________________
Eric Lipman (EL6300)
Gabriel Gervey
David Ashton
Assistant Attorneys General
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711
(512) 463-1579
eric.lipman@texasattorneygeneral.gov

*On Behalf of the Plaintiff States*

By: [signature]

W. Joseph Nielsen
Gary M. Becker (GB8259)
Assistant Attorneys General
Office of the Attorney General of Connecticut
55 Elm Street
Hartford, CT 06106
(860) 808-5040
Joseph.Nielsen@ct.gov

*On Behalf of the Plaintiff States*

By: ______________________

Steve W. Berman (*Pro Hac Vice*)
Jeff Friedman
Shana Scarlett
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

*On Behalf of the Class Plaintiffs*

By: [signature]

Kit A. Pierson (pro hac vice)
Jeffrey Dubner (pro hac vice)
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Avenue NW
Suite 500, West Tower
Washington, D.C. 20005
(202) 408-4600
kpierson@cohenmilstein.com

*On Behalf of the Class Plaintiffs*

By: [signature]

Shepard Goldfein
Clifford H. Aronson
Paul M. Eckles
C. Scott Lent
Matthew M. Martino
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036
(212) 735-3000
shepard.goldfein@skadden.com

*On behalf of Defendant HarperCollins Publishers L.L.C.*

By: ______________________

James W. Quinn
Yehudah L. Buchweitz
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000
james.quinn@weil.com
yehudah.buchweitz@weil.com

Helene D. Jaffe
Proskauer Rose LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000
hjaffe@proskauer.com

Martha E. Gifford
Law Office of Martha E. Gifford
137 Montague Street #220
Brooklyn, NY 11201
(718) 858-7571
giffordlaw@mac.com
*On behalf of Defendants Simon & Schuster, Inc. and Simon & Schuster Digital Sales, Inc.*

By: ______________________

Joel M. Mitnick
John J. Lavelle
Alexandra Shear
David J. Carey
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5300
jlavelle@sidley.com

*On behalf of Defendants Holtzbrinck Publishers, LLC d/b/a Macmillan and Verlagsgruppe Georg von Holtzbrinck GmbH*

By: ______________________

Walter B. Stuart
Samuel J. Rubin
Freshfields Bruckhaus Deringer US LLP
601 Lexington Avenue
New York, NY 10022
(212) 277-4000
walter.stuart@freshfields.com

*On behalf of Defendants Hachette Book Group, Inc. and Hachette Digital, Inc.*

By: ______________________________

Daniel Ferrel McInnis
David A. Donohoe
Allison Sheedy
Gregory J. Granitto
Akin Gump Strauss Hauer & Feld, LP
1333 New Hampshire Ave., NW
Washington, DC 20036
(202) 887-4000
dmcinnis@akingump.com

*On behalf of Defendants Penguin Group (USA), Inc. and the Penguin Group*

By: ______________________

Daniel S. Floyd (*Pro Hac Vice*)
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7000
dfloyd@gibsondunn.com

*On behalf of Defendant Apple, Inc.*

Dated: __________, 20___

SO ORDERED:

______________________________
Denise L. Cote
United States District Judge