U.S. DISTRICT COURT
FILED
JUL 25 2012
D.S.
S.D. OF N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re: Electronic Books Antitrust Litigation

*(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)*

1:11  Civ. MD-02293 (DLC) (MD)

- against -

**NOTICE OF APPEAL
IN A CIVIL CASE**

*(In the space above enter the full name(s) of the defendant(s)/respondent(s).)*

Notice is hereby given that Penguin Group (USA), Inc.
*(party)*

hereby appeals to the United States Court of Appeals for the Second Circuit from the Judgment of the U.S. District Court for the Southern District of New York
*(describe the judgment)*
denying Penguin Group (USA), Inc.'s motion to compel arbitration as to plaintiffs' federal claims and to stay proceedings pending arbitration

entered in this action on the 27 day of June, 2012.
*(date)   (month)   (year)*

Signature

Akin Gump LLP, 1333 New Hampshire Ave., NW
*Address*

Washington, DC 20036
*City, State & Zip Code*

DATED: July 24, 2012        (202) 887 - 4000
*Telephone Number*

NOTE: To take an appeal, this form must be received by the *Pro Se* Office of the Southern District of New York within thirty (30) days of the date on which the judgment was entered, or sixty (60) days if the United States or an officer or agency of the United States is a party.

*Rev. 05/2007*

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
IN RE: ELECTRONIC BOOKS ANTITRUST       :    11 MD 2293 (DLC)
LITIGATION                              :
                                        :    OPINION & ORDER
----------------------------------------:
                                        :
This Opinion and Order applies to the   :
following actions:                      :
                                        :
11 Civ. 5576 (DLC), 11 Civ. 5609 (DLC), :
11 Civ. 5621 (DLC), 11 Civ. 5707 (DLC), :
11 Civ. 5750 (DLC), 11 Civ. 5896 (DLC), :
11 Civ. 5898 (DLC), 11 Civ. 5976 (DLC), :
11 Civ. 6019 (DLC), 11 Civ. 6079 (DLC), :
11 Civ. 7507 (DLC), 11 Civ. 7534 (DLC), :
11 Civ. 7323 (DLC), 11 Civ. 8329 (DLC), :
11 Civ. 8608 (DLC), 11 Civ. 9016 (DLC), :
11 Civ. 9014 (DLC), 11 Civ. 9559 (DLC), :
11 Civ. 9560 (DLC), 11 Civ. 9561 (DLC), :
11 Civ. 9562 (DLC), 11 Civ. 9563 (DLC), :
11 Civ. 9564 (DLC), 11 Civ. 9565 (DLC), :
11 Civ. 9566 (DLC), 11 Civ. 9567 (DLC), :
12 Civ. 0476 (DLC).                     :
                                        :
----------------------------------------X
```

APPEARANCES:

For Plaintiffs:

Kit A. Pierson
Emmy L. Levens
Jeffrey B. Dubner
Cohen Milstein Sellers & Toll PLLC (DC)
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC 20005

John Douglas Richards
Cohen Milstein Sellers & Toll PLLC
14th Floor
88 Pine Street
New York, NY 10005

George W. Sampson
Hagens Berman Sobol Shapiro LLP (Seattle)
1918 8th, Avenue
Suite 3300
Seattle, WA 98101

Jeff D. Friedman
Shana Scarlett
Hagens Berman Sobol Shapiro LLP (CA)
715 Hearst Avenue, Suite 202
Berkely, CA 94710

Jason Allen Zweig
Hagens Berman Sobol Shapiro LLP (NYC)
One Penn Plaza, 36th Floor
New York, NY 10119

For Defendant Penguin Group (USA), Inc.:

Daniel Ferrel McInnis
David A. Donohoe
Allison Sheedy
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564

DENISE COTE, District Judge:

    Plaintiffs in this class action bring claims for violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 (the "Sherman Act"); violation of California's Cartwright Act, California Business and Professions Code §§ 16720, et seq.; violation of state antitrust and restraint of trade laws and consumer protection statutes; and unjust enrichment. The defendant Penguin Group (USA), Inc. ("Penguin") has moved to stay the proceedings and compel arbitration. For the following

2

reasons, the motion to stay the proceedings and compel arbitration of the Sherman Act claim is denied.

BACKGROUND

A comprehensive description of the facts in this matter are recounted in the Court's Opinion and Order of May 15, 2012, In re Elec. Books Antitrust Litig., 11 MD 2293 (DLC), 2012 WL 1946759 (S.D.N.Y. May 15, 2012), familiarity with which is presumed. Only those facts relevant to the disposition of this motion are recounted below. These facts are undisputed unless otherwise noted.

The plaintiffs are purchasers of electronic books or "eBooks." They bring this action on behalf of themselves and others who claim that they paid higher prices for their eBooks as a direct and foreseeable result of defendants' allegedly unlawful conduct. Penguin is one of the six largest publishing companies in the United States. The plaintiffs allege that Penguin and its co-defendants conspired from the Fall of 2009 until April 2010 to fix and raise eBooks prices through, inter alia, adopting the "agency" sales model for eBooks, and that this conspiracy in fact resulted in higher eBooks prices.

Penguin seeks to stay the proceedings and compel arbitration as to a subset of the putative class --

specifically, those plaintiffs who purchased their eBooks through the vendors Amazon.com ("Amazon") and Barnes & Noble. Penguin claims that the plaintiffs who purchased their eBooks through these vendors expressly agreed to arbitrate any disputes related to their purchases of eBooks, and are equitably stopped from denying that their claims against Penguin are subject to arbitration. Penguin does not seek to compel arbitration as to those plaintiffs who purchased their eBooks through other vendors besides Amazon and Barnes & Noble, such as defendant Apple, Inc. ("Apple").

The Terms of Use for the Amazon Kindle and for Barnes & Noble include mandatory arbitration clauses. The Amazon Kindle Terms of Use read in pertinent part:

> Disputes. Any dispute or claim relating in any way to your use of the Kindle, Reading Applications or Kindle Store, or the goods or services sold or distributed by Amazon or through the Kindle, Reading Applications or Kindle Store, will be resolved by binding arbitration, rather than in court, except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act and federal arbitration law apply to this agreement.
> \*\*\*
> The arbitration will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA's Supplementary Procedures for Consumer-Related Disputes. \*\*\* Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules. We will reimburse those fees for claims totaling less than $10,000 unless the arbitrator determines the claims are frivolous.
> \*\*\*

> <u>You and Amazon each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.</u> If for any reason a claim proceeds in court rather than in arbitration you and Amazon each waive any right to a jury trial.

(Emphasis supplied.) The Barnes & Noble Terms of Use provide:

> XVIII. DISPUTE RESOLUTION
> Any claim or controversy at law or equity that arises out of the Terms of Use, the Barnes & Noble.com Site or any Barnes & Noble.com Service (each a "Claim"), shall be resolved through binding arbitration conducted by telephone, online or based solely upon written submissions where no in-person appearance is required. In such cases, the arbitration shall be administered by the American Arbitration Association under its Commercial Arbitration Rules (including without limitation the Supplementary Procedures for Consumer-Related Disputes, if applicable), and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.
>
> Alternatively, at Barnes & Noble.com's sole option, a Claim (including Claims for injunctive or other equitable relief) may be adjudicated by a court of competent jurisdiction located in New York County, New York.
>
> <u>Any Claim shall be arbitrated</u> or litigated, as the case may be, <u>on an individual basis and shall not be consolidated</u> with any Claim of any other party whether <u>through class action proceedings</u>, class arbitration proceedings or otherwise.

(Emphasis supplied.) The Amazon and Barnes & Noble Terms of Use in effect in early 2010, when Penguin adopted the agency model, included similar arbitration clauses. Both sets of arbitration agreements contain waivers of

5

plaintiffs' right to pursue their claims through a class action.

Penguin filed its motion to stay proceedings and compel arbitration on March 2, 2012. The motion became fully submitted on April 13.

DISCUSSION

The Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), is "an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution." Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 121 (2d Cir. 2010) (citation omitted). "[W]hether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." Granite Rock Co. v. Int'l B'hood of Teamsters, 130 S.Ct. 2847, 2855 (2010) (citation omitted). "When deciding whether the parties agreed to arbitrate a certain matter courts generally should apply ordinary principles that govern the formation of contracts." Id. at 2856 (citation omitted).

Arbitration has been recognized as an effective vehicle for vindicating statutory rights, but only "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum. . . ." Mitsubishi Motors

6

Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985).  "[A]n agreement which in practice acts as a waiver of future liability under the federal antitrust statutes is void as a matter of public policy."  In re American Exp. Merchants' Litig., 667 F.3d 204, 214 (2d Cir. 2012) ("Amex III") (citation omitted).

In cases in which a large number of individuals have suffered an alleged wrong but the individual prospective damages awards are small, class action lawsuits may be the "the only economically rational alternative."  Id.  Accordingly, plaintiffs may successfully invalidate an arbitration agreement that contains a class action waiver on the grounds that the agreement would prevent them from "effectively vindicating" their federal statutory rights.  Id. at 216 (citation omitted).  The party seeking to invalidate the agreement "bears the burden of showing the likelihood of incurring [prohibitive] costs."  Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000).  Furthermore, "each waiver must be considered on its own merits, based on its own record, and governed with a healthy regard for the fact that the FAA is a congressional declaration of a liberal federal policy favoring arbitration agreements."  Amex III, 667 F.3d at 219 (citation omitted).

Here, even if the Amazon and Barnes & Noble arbitration agreements are otherwise enforceable in this action, they are invalid as to plaintiffs' Sherman Act claims because the plaintiffs have established that the agreements would prevent them from effectively vindicating their rights under the Sherman Act. This case falls squarely within the ambit of the Second Circuit's recent opinion in Amex III. In Amex III, the Second Circuit invalidated an arbitration agreement that contained a class action waiver on the grounds that the costs of pursuing the action through an individual arbitration, when compared with the size of the damages at issue, rendered arbitration prohibitively expensive. The plaintiffs in Amex III submitted detailed affidavits demonstrating that they faced costs "in the middle of the range" of $300,000 to $2 million, and a median recovery of only $5,252 in trebled damages. In re Am. Express Merchants' Litig., 554 F.3d 300, 316 (2d Cir. 2009) ("Amex I").

In this case, the plaintiffs have presented similarly detailed affidavits demonstrating that, given the complexities of proving this particular antitrust violation, plaintiffs can expect at most a median recovery of $540 in treble damages, and face several hundred thousand dollars to millions of dollars in expert expenses alone. Plaintiffs have also demonstrated that they are likely to incur significant expenses in securing,

organizing, and maintaining documents, deposing witnesses, and in attorneys' fees, and that they face no guarantee of recovering any or all of these expenses. Plaintiffs have already expended $45,000 in expert expenses evaluating the claims and drafting the complaint. Plaintiffs' affidavits demonstrate that it would be economically irrational for any plaintiff to pursue his or her claims through an individual arbitration. Penguin has presented no serious argument to the contrary.

Penguin argues that the plaintiffs might pool resources and share the cost of expert fees. In Amex I, the Second Circuit described a similar proposition as "intriguing," but rejected it on the grounds that the plaintiffs in that action were not permitted to share information presented in any individual arbitration pursuant to a confidentiality provision in the relevant arbitration agreement. See id. at 318. Penguin notes that the Amazon and Barnes & Noble arbitration agreements contain no such confidentiality provisions.

This argument blinkers reality. The size of the prospective class in this case is enormous. Even if plaintiffs could share experts, these experts would still need to testify at each of potentially thousands or more individual arbitrations and be paid accordingly. Moreover, even if Penguin's suggestion

9

were practically feasible -- which it is not -- the Second Circuit noted in Amex I that "plaintiffs must include the risk of losing, and thereby not recovering any fees" when evaluating prospective costs. Id. Penguin has not demonstrated how plaintiffs could rationally account for this risk of losing and still go forward with individual arbitrations that will net them, at most, an average of $540.

Penguin questions plaintiffs' suggestion that some of their costs might be unrecoverable because Penguin would oppose reimbursement. Penguin notes that federal antitrust law mandates recovery of "the cost of suit" by prevailing claimants, 15 U.S.C. § 15(a), and there is "no reason to assume at the outset that arbitrators will not follow the law." Shearson/am. Express Inc. v. McMahon, 482 U.S. 220, 232 (1987). Declining to assume that arbitrators will fail to follow the law is not the same as engaging in a pragmatic accounting of the likely costs and benefits of bringing an individual arbitration and the incumbent risks. Amex III recognizes that plaintiffs in the real world will do the latter, and decline to arbitrate their claims if the economics are sufficiently stacked against them. See Amex III, 667 F.3d at 218. As discussed above, the plaintiffs in this case have demonstrated, convincingly, that it

would be economically irrational for them to pursue their claims through individual arbitrations.

Penguin notes that because Penguin has not sought to compel arbitration as to all the plaintiffs, class counsel will be going forward with their case regardless of the outcome of this motion. Penguin argues that the plaintiffs who are compelled to arbitrate may therefore obtain representation through class counsel. This argument is absurd. Penguin has not set forward any realistic argument as to how such an arrangement would possibly benefit class counsel when each individual plaintiff can anticipate such a small recovery through arbitration.

Penguin further argues that Amex III is wrongly decided. Amex III is Second Circuit precedent, and as Penguin acknowledges, this Court is obliged to give it controlling weight.

Penguin also seeks to compel arbitration as to plaintiffs' state law claims. The Court reserves judgment on this issue. In any event, even if Penguin could successfully compel this partial class of plaintiffs to arbitrate their state law claims, litigation of plaintiffs' federal claims would not be stayed. Penguin has not put forward any argument as to why a stay would be appropriate in these circumstances, and there is no reason to believe a stay would help avoid "piecemeal litigation" or avoid

11

"duplication of discovery or issue resolution." Admin. Comm. of The Time Warner, Inc. Benefit Plans v. Biscardi, 99 Civ. 12270 (DLC), 2000 WL 565210, at *2 (S.D.N.Y. May 8, 2000). For many of the reasons discussed above, it is highly unlikely that any such arbitrations would actually occur in practice.

## CONCLUSION

Penguin's March 5, 2012 motion to stay the proceedings and compel arbitration is denied as to plaintiffs' federal claims.

SO ORDERED:

Dated: New York, New York
       June 27, 2012

_____
DENISE COTE
United States District Judge

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | No. 11-md-02293 (DLC) ECF CASE |
| This Document Relates to: ALL ACTIONS | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 25, 2012, I caused a true and correct copy of the attached Notice of Appeal in Civil Case in the above-captioned proceeding to be served via electronic mail on all parties.

DATED: July 25, 2012

_____
Allison Sheedy
AKIN GUMP STRAUSS HAUER & FELD
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036-1564
Telephone: 202-887-4000
Facsimile: 202-887-4288
asheedy@akingump.com