UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
THE STATE OF TEXAS, et al.,             :
                                        :         12 Civ. 3394 (DLC)
                            Plaintiffs, :   also file in: 11 MD 2293 (DLC)
             -v-                        :
                                        :         OPINION AND ORDER
PENQUIN GROUP (USA) INC., et al.,       :
                                        :
                            Defendants. :
                                        :
----------------------------------------X

Appearances:

For State plaintiffs:

Gabriel Gervey, pro hac vice
David Ashton, pro hac vice
Eric Lipman
Office of the Attorney General of Texas
Austin, Texas

For Penguin Group (USA) Inc.:

Daniel Ferrel McInnis
Larry Tanenbaum
Carolyn Perez
Akin Gump Strauss Hauer & Feld, LLP
Washington, D.C.


DENISE COTE, District Judge:

     Four related cases are before this Court alleging that

Apple, Inc. ("Apple") and five publishers conspired to fix

prices for certain electronic books, or "e-books," in violation

of the antitrust laws of the United States.  The publishers are

Penguin Group (USA), Inc. ("Penguin"), Hachette Book Group, Inc.

("Hachette"), HarperCollins Publishers LLC ("HarperCollins"),

Holtzbrinck Publishers LLC d/b/a MacMillan ("Macmillan"), and Simon & Schuster, Inc. ("Simon & Schuster").  A bench trial has long been scheduled to begin on June 3, 2013 ("June Bench Trial") in two of these cases:[1] United States v. Apple, Inc. et al., 12 Civ. 2826 (DLC), in which the United States (the "Government") brings claims for injunctive relief (the "DOJ Action"), and the instant action State of Texas et al. v. Penguin Group (USA), Inc. et al., 12 Civ. 3394 (DLC), in which thirty-three states and U.S. territories (the "States") bring claims as parens patriae for injunctive relief and damages (the "State Action").

At the time the June Bench Trial was scheduled, it was agreed that it would resolve claims for injunctive relief. Today, only two of the six defendants are scheduled to proceed to trial at the June Bench Trial.  Penguin entered into a stipulation of settlement with the Government in the DOJ Action on December 18, 2012, but has not settled with the States and remains a litigating defendant in the State Action.  Apple has

---

[1] The other two cases are: State of Texas, et al. v. Hachette Book Group, Inc., et al., 12 Civ. 6625 DLC, in which forty-nine states, the District of Columbia, and the U.S. Territories and Possessions the Virgin Islands, Puerto Rico, the Northern Mariana Islands, Guam, and American Samoa, bringing claims as parens patriae, have settled their claims against Hachette, HarperCollins, and Simon & Schuster ("Settlement Action"), and In re: Electronic Books Antitrust Litigation, 11 MD 2296 DLC, in which class action plaintiffs bring claims for damages ("Class Action").

not settled with either the Government or the States.  The four remaining publisher defendants will not be litigating the claims against them at the June Bench Trial, since they have settled with both the Government and the States.

On March 15, 2013, Penguin sought to exclude itself from the June Bench Trial, and moved for a jury trial on the States' claims.  Penguin contends that it never waived its right to have the States' monetary claims determined by a jury, and even if it had previously consented to the June Bench Trial as to equitable claims, its ensuing settlement with the Government lead Penguin to assume that "the parties and the nature of the claims being litigated have now changed to the type of legal claims to which [its] jury trial right attaches."  The States argue that Penguin voluntarily waived its right to a jury trial on the record and by its conduct, and that a jury trial should not be reinstated at this stage.  During a teleconference of April 15, 2013, the Court advised the parties that Penguin's motion was denied and that an Opinion explaining the reasons for that decision would follow.  This is that Opinion.


Background

The Class Action, which was consolidated before this Court on December 9, 2011, was the first of the four related e-books cases filed.  The Court appointed lead counsel by Order dated

December 21, 2011, a consolidated amended class action complaint was filed on January 20, 2012, and motion practice began on several submissions by the parties, including motions to dismiss by Apple and the publisher defendants.

Before these motions were decided, the DOJ Action and State Action were filed on April 11, 2012.  These developments affected the Class Action in several ways.  The DOJ Action is unique in two respects.  First, since the Government exclusively brings claims for injunctive relief, no party disputes that no jury right attaches to the DOJ Action.  Second, the Sherman Act grants priority status to the Government's claims.  It instructs that in antitrust actions commenced by the Government, "the court shall proceed, as soon as may be, to the hearing and determination of the case."  See 15 U.S.C. § 4.  No parties have disputed that the DOJ Action takes precedence, and as a result of its statutory priority, the DOJ Action may not be slowed as a result of any related e-books action.  In addition, the State Action would affect the claims of any individual class members residing in the plaintiff States because, under Section 4(c) of the Clayton Act, 15 U.S.C. § 15c, claims brought by state Attorneys General as parens patriae are duplicative of claims brought on behalf of class members who are residents of their states.

In light of these developments, the Court included all parties in the related e-books actions at the next conference, held on April 18, in order to discuss with all parties the manner in which these related actions should proceed.  At that conference, the Court in relevant part ordered the parties to submit a proposal for coordinated discovery and a proposed confidentiality agreement.  The parties filed a Joint Initial Report on June 20, which laid out the parties' respective proposed schedules, including that Apple proposed a trial in March 2013, and the plaintiffs jointly requested a trial in September 2013 ("June 20 Report").

On June 22, the Court held a conference at which all parties in the DOJ, State, and Class Actions participated ("June 22 Conference").  At this conference, the Court and the parties principally discussed the schedule that would govern these coordinated actions, including the extent to which the related cases could be tried together, and whether any coordinated trial would be before the Court or a jury.  The Court provided the parties with a proposed schedule based on the parties' June 20 Report, which presented two options for a trial date: (i) a June 3, 2013 trial with no summary judgment practice, or (ii) a later September 16, 2013 trial with preceding summary judgment practice.  The Court also noted its view that, "if all the interests can be accommodated, one trial is preferable here,"

and raised the issue of the potential collateral estoppel effect
of any ruling on the Government's claims in any first trial.
The Court also explained in detail its bench trial procedures,
including that there would be no summary judgment practice for
claims being tried by the Court.[2]

With the Court's bench trial practices in mind, the parties
discussed their preferences for the format of any trial moving
forward.  Apple and the Government both expressed a particular
desire for a fast trial in the DOJ Action and advised the Court
that that they would waive summary judgment practice in order to
have an expeditious June Bench Trial.  Penguin in relevant part
advised the Court that "a joint trial in June is not going to
work for us" because Penguin did not believe it was "practical"
and because it would not consent to forfeiting summary judgment

---

[2] The parties' pretrial submissions for this Court's non-jury
trials and hearings are nearly identical to summary judgment
submissions.  For non-jury proceedings, the Court takes direct
testimony from witnesses under a party's control through
affidavits submitted with the Pretrial Order.  At that same
time, the parties submit their exhibits including deposition
excerpts which constitute their evidence in chief.  The Court
prepares a draft opinion in advance of the bench trial based on
these submissions and the arguments of counsel in their trial
memoranda.  At the trial, the affiants swear to the truth of the
contents of their affidavits and are tendered for cross and
redirect examination and the other trial evidence is formally
received.  The Court's findings of fact and conclusions of law
incorporate all of this evidence.  Penguin has also filed a
motion to present live direct testimony of David Shanks and John
Makinson at the June Bench Trial.  That application had been
previously denied during a teleconference held on February 26,
2013, and this motion will be addressed at the final pretrial
conference.

practice if there was going to be a jury trial.  Penguin also
stated that insofar as the parties would "push forward with a
hyper schedule" for a June trial, and insofar as summary
judgment practice would be waived, it would request a bench
trial.

The States first raised the issue of participating in the
June Bench Trial towards the end of the June 22 Conference.  The
States told the Court and the other parties that they "would be
willing to entertain moving forward on the June trial schedule
on matters related to liability and injunction as a bench trial
if the Court feels it is appropriate to move forward in that
manner," but that they would need to confer with one another
before agreeing to forego a jury trial on those portions of the
State Action.  The Court expressed that the States' suggestion
at the time was "[v]ery creative[, v]ery helpful."

After considering several trial and schedule alternatives
presented by the parties, the Court finally ruled that that a
non-jury trial would begin on June 3, 2013 as to at least the
injunctive relief sought by the Government.  The Court also set
a schedule for coordinated discovery in the DOJ, State, and
Class Actions, which required all fact and expert discovery in
all actions -- including discovery on issues of liability that
could affect any later damages determination in the State Action
-- to be complete by March 22, 2013, in advance of the June

Bench Trial.  The Court acknowledged that "[w]ho will be participating in the non-jury trial is yet to be decided, but it will be at least DOJ and non-settling defendants, whoever they might be."

By scheduling order dated June 25, the Court inter alia confirmed the coordinated discovery schedule set at the June 22 Conference, set a schedule for summary judgment motion practice in the State and Class Actions to begin in September 2013, after the June Bench Trial, and set the pretrial order in the DOJ Action to be due on April 26, 2013.  The Court also ordered the parties to submit a new joint report on pretrial proceedings in the related actions in light of the Court's recent rulings.

By letter dated June 26, 2012, the States confirmed their desire to resolve all "issues related to liability and injunctive relief in our case" at the June Bench Trial concurrent with the DOJ Action.  On July 6, in accordance with the Court's June 25 Order, the parties executed and filed a revised Joint Initial Report governing the related actions ("July 6 Report").  The July 6 Report included a revised schedule of all pretrial deadlines, including that all fact and expert discovery will close before the start of the June Bench Trial, and explicitly noted the States' pending request to have "all issues of liability and injunctive relief in the State Action tried to the Court concurrently with the DOJ Action."

8

Neither Penguin nor any other party opposed the States' request
or otherwise responded.

On August 29, the States filed the Settlement Action as to
Hachette, HarperCollins, and Simon & Schuster.  On September 6,
the Court entered final judgment in the DOJ Action as to these
three defendants.  Still, no party had directly responded to the
States' waiver of their jury right and their proposal to resolve
liability and injunctive issues in the State Action at the June
Bench Trial.  At a September 10 teleconference regarding
preliminary approval of the States' settlements with Hachette,
HarperCollins, and Simon & Schuster, the Court indicated that
the issue of the States' participation in the June Bench Trial
should be finally determined.[3]

The States' role in the June Bench Trial was discussed in
detail and resolved at an October 26 teleconference ("October 26
Conference"), at which all parties appeared.  At this
conference, the Court aimed to "make sure that we understand
what is happening at the June trial as opposed to any damages
trial that might be held later," and to clarify whether the
motion to certify a class had to be resolved, and any opt-out
period closed, before the June Bench Trial, even if the class
action plaintiffs would not be participating therein.  The Court

---

[3] Penguin did not appear at that September 10 teleconference, but
was or is aware of the contents of the discussion, as made clear
by its citation to the transcript in its motion papers.

observed that, "I think I know that at the June trial, on the
plaintiffs' side of the table will be the DOJ and the States,"
and wanted to pose several questions "before I give my ruling."
The States clarified which state entities would be plaintiffs at
the June Bench Trial, and the class confirmed that it no longer
sought to participate.  The Court ultimately ruled, "Okay.  So
what we have then is DOJ and the States against Apple,
Macmillan, and Penguin."[4]

     At that point, the Court asked litigating defendants in the
DOJ and State Actions at the time -- Apple, Macmillan, and
Penguin -- to comment on the June Bench Trial and on how the
class's decision not to participate might affect the class
notice and opt-out schedule.  Counsel for Apple indicated that
he understood, "[w]e have 33 states in this litigation."
Counsel for Macmillan reiterated that the class would not
participate in "the trial that will be going forward by DOJ and
the States," and that the June Bench Trial would "get through
the injunctive relief trials of the DOJ and the liability
portion with respect to the states" before addressing claims
raised by the class.  When asked directly by the Court whether

---

[4] At the time of this conference, Penguin had not yet settled
with the DOJ and thus was a litigating defendant in both the DOJ
and State Actions.  Macmillan also had not yet settled with
either the Government or the States, and was at that time also a
litigating defendant in both actions.

it had anything to add to Macmillan's remarks, counsel for Penguin affirmed, "No, that's fine.  No, your Honor."

The Court then ruled that the class certification schedule would be untethered from the June Bench Trial, and made clear that the "liability case that will be tried" by the Government and the States is distinct from any issues that might be unique to the class, which would not be a part of the trial.  It also clarified on two occasions that there would be a separate trial to determine any damages amount.  At the close of the conference, when the Court asked the parties whether "anybody ha[s] an additional issue with respect to the topic of our trial date and subsidiary issues with respect to the trial date" and "ma[d]e sure that I haven't left any important issue unaddressed," no party raised any objections or otherwise responded.  Neither Penguin nor any other party disagreed with the Court's characterization of the June Bench Trial as a trial between the Government and the States on one hand and any non-settling defendants on the other that would address issues of liability and injunctive relief.

At the October 26 Conference, the Court also asked the parties to submit a stipulation reflecting a revised expert discovery schedule to which they had all agreed.  Even though the Court had ruled that the class would not participate in the June Bench Trial, it invited class plaintiffs to join the

litigating parties' discussions about an expert discovery schedule because the class "ha[s] experts on topics that are unrelated to the liability case that will be tried," and it would be useful to engage with the Government and States to address any issues that might arise.

On November 6, counsel for the Government, the States, class plaintiffs, Apple, Macmillan, and Penguin, signed the requested joint stipulation as to expert discovery ("November 6 Stipulation").  The stipulation specifically noted that this agreement did not pertain to experts and expert discovery related to either "damages in the States' action," or "damages, class certification, or liability in the class litigation," which would be separately negotiated by those parties.  The November 6 Stipulation was so ordered by the Court and filed.

On December 18, the Government and Penguin reached an agreement to settle the Government's claims against Penguin. The same day, the Government, States, class plaintiffs, Apple, Macmillan, and Penguin signed a joint stipulation stating in relevant part that the exchange of initial trial witness lists for the June Bench Trial would occur by February 15, 2013 ("December 18 Stipulation").  The December 18 Stipulation distinguished the liability and injunctive relief portions of the DOJ and State Actions as those issues to be tried at the June Bench Trial, and expressly clarified that, "[f]or the

avoidance of doubt, this stipulation does not pertain to the trial in the class litigation . . . or to any trial on damages in the States' action."  The December 18 Stipulation was also so ordered by the Court and filed.

On February 8, Macmillan settled with the Government, States, and Class Action plaintiffs.  At that point, Penguin remained the sole publisher defendant in the State Action.

Penguin failed to serve its initial witness lists by February 15, as required by the December 18 Stipulation.  In emails between the States and Penguin dated February 19, Penguin asserted that it was "not a party any more to the June 3 DOJ trial," and neither were the States nor the putative class. This was the first notice Penguin gave to the States that it sought to exclude itself from the June Bench Trial.  The States responded by referring Penguin to the portion of the October 26 Conference transcript in which the Court affirmed that "what we have then [at the June Bench Trial] is DOJ and the states against Apple . . . and Penguin."

By letter dated February 22, Penguin informed the Court for the first time that it objected to participating in a bench trial adjudicating the liability and injunctive relief portions of the States' claims.  The letter indicated that "[b]ecause Penguin had settled with DoJ, we naturally assumed that Penguin would not be presenting a full defense in the DoJ's June 3, 2013

bench trial regarding injunctive relief, as it would have no reason to do so," and requested that the Court clarify whether Penguin was a participant in the June Bench Trial.  The letter also noted that "requiring Penguin's participation in the June 3, 2013 bench trial may also implicate the issue of Penguin's Seventh Amendment right to a jury trial" because "consent of all parties is required to waive trial by jury on the issues demanded."

The States responded by letter dated February 25.  After holding a teleconference with the parties on February 26, the Court denied Penguin's request not to participate in the June Bench Trial by Order dated February 27 but invited Penguin to bring a motion.  Penguin filed the present motion requesting a jury determination of the States' claims on March 15.  It was fully submitted as of April 5.


Discussion

The Seventh Amendment guarantees that "the right of trial by jury shall be preserved" in suits at common law.  U.S. Const. amend. VII.  The right applies to "suits in which legal rights are to be ascertained and determined, in contradistinction to those where equitable rights alone are recognized, and equitable remedies are administered."  Chauffers, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 564 (1990) (citation

omitted).  A jury right also attaches to actions enforcing statutory rights, "if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." Curtis v. Loether, 415 U.S. 189, 194 (1974); Tull v. United States, 481 U.S. 412, 417 (1987).

There is no dispute that the claims raised in the State Action implicate the parties' right to a jury trial.  See Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 504 (1959) ("the right to trial by jury applies to treble damage suits under the antitrust laws").  The States timely demanded a jury trial for the State Action in their complaint.  Once a proper jury demand is made, all other parties affected by the demand may also rely on it.  See Dell'Orfano v. Romano, 962 F.2d 199, 202 (2d Cir. 1992); Rosen v. Dick, 639 F.2d 82, 91 (2d Cir. 1980). Plaintiffs' demand thus conferred the right to a jury on Penguin and other defendants in the State Action with respect to all issues triable as of right by the jury.

Even though the States bring both legal (damages) and equitable claims, the jury right "remains intact." Tull, 481 U.S. at 425 (citation omitted).  The jury right here attaches to the States' claims, including issues related to injunctive relief to the extent that they are based on the same finding of liability -- a "common issu[e] of fact." Wade v. Orange Cnty. Sheriff's Office, 844 F.2d 951, 954 (2d Cir. 1988); Heyman v.

15

Kline, 456 F.2d 123, 130 (2d Cir. 1972).  In order to protect parties' fundamental Seventh Amendment rights when both equitable and legal claims are asserted by the same plaintiff and are to be tried together, "principles of collateral estoppel prevent the judge from making findings of fact contrary to those of the jury." LeBlanc-Sternberg v. Fletcher, 67 F.3d 412, 432 (2d Cir. 1995); see Beacon Theatres, 359 U.S. at 504.  As a result, "the general rule is that the jury must be allowed to decide the legal claims prior to the court's determination of the equitable claims." Fletcher, 67 F.3d at 432.

The States may not unilaterally waive the jury right conferred on all parties in the State Action.  Instead, "[a] proper demand may be withdrawn only if the parties consent." Rule 38(d), Fed. R. Civ. P.  Penguin disputes that it ever consented to a waiver and, in light of its settlement with the Government, moves to exclude itself from the June Bench Trial and try its liability on the States' claims either at the June Bench Trial with a jury or in a separate, subsequent trial where any damages amount will be determined.

Pursuant to Rule 39(a), Fed. R. Civ. P., when a jury trial has been properly demanded, waiver by the parties or their attorneys of record may be made "by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record." A jury trial also "may be waived by

conduct of the parties." Royal American Managers, Inc. v. IRC Holding Corporation, 885 F.2d 1011, 1018 (2d Cir. 1989). The right to a jury is "fundamental," and "its protection can only be relinquished knowingly and intentionally." National Equip. Rental, Ltd. v. Hendrix, 565 F.2d 255, 258 (2d Cir. 1977). Any conduct said to constitute a waiver thus "must be clear and unequivocal, as waivers are never to be lightly inferred." Tiny-Wrap, Inc. v. Six L's Packing Co., Inc., 984 F.2d 65, 68 (2d Cir. 1993); see also Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937) (a court should "indulge every reasonable presumption against waiver"). In addition, the burden of proving that a waiver was knowing and intentional rests with the party attempting to enforce the purported waiver. See Hendrix, 565 F.2d at 258.

Even under this strict standard, it is clear that Penguin, along with all other litigating parties, knowingly and intentionally waived a jury determination of liability on the States' claims. Penguin knew that the States had proposed waiving a jury determination of the liability and injunctive portions of the State Action as early as the June 22 Conference. At that conference, understanding that the DOJ Action would move forward as a non-jury trial at the June Bench Trial, the States told the Court and the other parties that they "would be willing to entertain moving forward on the June trial schedule on

matters related to liability and injunction as a bench trial."
Both the States' letter of June 26 and the parties' July 6
Report, which Penguin signed, memorialized the States' request
to have a non-jury determination of the liability and injunctive
portions of its claims at the June Bench Trial.  Penguin does
not dispute -- nor can it -- that it was aware of the States'
intention to waive their right to a jury trial on these portions
of the State Action from at least June 2012.

Penguin and the other litigating parties had thus been on
notice for several months that the States sought to participate
in the June Bench Trial to resolve all liability and equitable
issues as to non-settling defendants when Penguin gave its
informed and voluntary consent to the States' proposed waiver at
the October 26 Conference.  At that conference, the Court
explicitly discussed with the parties "what the [June Bench
Trial] would look like."  The Court made clear early on that it
aimed to reach "clarity about who's going to be at the table and
what are the issues that [will be] tried."  When asked by the
Court "which states are going to be at the table" at the June
Bench Trial, counsel for the States responded that "it will be
the 33 parties represented by attorneys general who are in the
caption of the [State Action]. . . . Those entities . . . are
currently seeking to participate in the June 3rd trial."  Lead
class counsel also confirmed that the class plaintiffs "are not

planning on participating."  The parties conferred with the
Court on the record and agreed that the thirty-three plaintiff
entities represented in the State Action would participate in
the June Bench Trial and that the class plaintiffs would not.
The Court affirmed, "Okay, so what we have then is DOJ and the
states against Apple, Macmillan, and Penguin."

Any one of the three litigating defendants could have
objected or otherwise raised concerns related to the States'
participation in the June Bench Trial at that time.  Instead,
counsel for Apple and Macmillan both agreed that the June Bench
Trial would move forward as to the Government and the States.
Counsel for Macmillan further clarified that the June Bench
Trial would "get through the injunctive relief trials of the DOJ
and the liability portion with respect to the states" before
addressing claims raised by the class.  When asked directly by
the Court whether it had anything to add to Macmillan's remarks,
counsel for Penguin affirmed, "No, that's fine.  No, your
Honor."

Penguin's assent that it was "fine" with the proposed plan
constituted an intentional and explicit waiver.  It affirmed its
agreement with the trial plan of which it had been on notice
since June 2012 and which had just been outlined by the Court
and by Penguin's fellow litigating defendants -- namely, that

the June Bench Trial would address both equitable relief and the liability portion of the States' claims.

Penguin confirmed its waiver later in the conference as well, after the Court ruled that the class certification and opt-out period would not be decided until after the June Bench Trial.  In reaching its decision, the Court noted that the "liability case that will be tried" by the Government and the States at the June Bench Trial is distinct from issues that might be unique to the class, and thus might have a dramatic impact on the class.  All parties, including Penguin, agreed to push back the class certification period with this rationale in mind.

Finally, after the States had made clear for months that they intended to resolve their liability claims at the June Bench Trial concurrently with the DOJ Action; after the defendants had five months to contemplate the States' proposed waiver; and after a pointed discussion on the record at the October 26 Conference regarding the States' participation as a plaintiff in the June Bench Trial and the effect of the liability case that would be tried at the June Bench Trial on any future class action trial, all litigating parties, including Penguin, raised no objections and once more acquiesced to the agreements reached at the conference by stating, "No, your Honor, and thank you."  Neither Penguin nor the other litigating

defendants raised any "additional issue with respect to the topic of our trial date and subsidiary issues with respect to the trial date" with the Court, nor indicated that it felt the Court had "left any important issue unaddressed."

By so assenting on the record, Penguin and its fellow litigating defendants consented to the States' proposed waiver under the plain language of Rule 39(a).  Just because Apple and Macmillan spoke at greater length at the October 26 Conference does not suggest that Penguin was not completely involved the joint decision reached by the parties.  Instead, through its contributions to the discussion, Penguin explicitly agreed that the Court would determine issues of liability and equitable relief on the States' claims at the June Bench Trial.

Having knowingly and voluntarily waived its right to jury determination of its liability on the States' claims, Penguin may not now invoke a surrendered jury right to demand jury determination of the States' liability claims prior to or separate from those claims to be tried at the June Bench Trial. Penguin's changed circumstances post-settlement with the Government do not mean the Court now improperly "blend[s] with a claim, properly cognizable at law, . . . a demand for equitable relief in aid of the legal action;" instead, the waiver here was "dispensed with . . . by the assent of the parties entitled to it."  Beacon Theatres, 359 U.S. at 510 (citation omitted).

Penguin raises several arguments to contest that it unequivocally waived its right to a jury determination of its liability as to the States' claims.  As an initial matter, Penguin asserts that it was not aware that the States' claims would be tried concurrently with the DOJ Action at the June Bench Trial because the Court never issued a "formal order memorializing the States' participation" therein.  An order, however, need not be written to have judicial effect.  Pursuant to Local Civil Rule 6.2, an oral decision that "does not finally determine all claims for relief . . . shall constitute the [Court's] order."  Such is the case here.  That the Court (i) made clear at the outset of the October 26 Conference that it intended to decide issues related to the logistics of the June Bench Trial and (ii) so ordered the November 6 Stipulation only provides further clarity that the Court ruled that "what we have then is DOJ and the States against Apple, Macmillan, and Penguin" at the June Bench Trial.

Penguin also argues that it never affirmatively consented to a bench trial on the States' liability claims, and that a failure to object is insufficient to constitute a waiver of its right to a jury trial.  These arguments are unavailing, for several reasons.  First, this case does not involve a failure to object by "mere silence" or "ambiguity," as Penguin suggests.  As the States demonstrate, Penguin did more than state that it

had "nothing to add" in response to the Court's order that the
States' liability claims would be part of the June Bench Trial.
Penguin was part of a lengthy discussion regarding the parties
participating in and the issues to be tried by the Court in
June.  It was given numerous opportunities to raise any concerns
with the Court or the other litigating defendants in the State
Action as to these issues, and ultimately agreed that the other
litigating defendants' comments with respect to the States'
claims and the June Bench Trial were "fine."

        Penguin's consent on the record places the present case in
stark contrast to those on which Penguin relies in support of
its motion.  In those cases, the Second Circuit failed to find a
waiver where a party merely remained silent in response to a
Court notice that the trial would be non-jury, see Gargiulo v.
Delsole, 769 F.2d 77, 79 (2d Cir. 1985); Heyman, 456 F.2d at
129; where the conversation during which a waiver was said to
have been made could easily have been misconstrued as discussing
a preliminary injunction hearing rather than the trial, Heyman,
456 F.2d at 129; or where all relevant court records had been
lost, such that there was no record of "whether . . . counsel
affirmatively stipulated to a bench trial or merely fell silent
when the matter was discussed" during a teleconference, and the
Circuit thus was unable "to construct a waiver on so skimpy a
record" comprised of informal letters between counsel and

client, letters to the Court, and informal notes taken by the parties and Court during and after the conference call, Tiny-Wrap, 984 F.2d at 68.

Here, the record is clear.  Penguin "affirmatively agree[d]" on the record with the statements of its fellow litigating defendants referencing the States' participation at the June Bench Trial.  Heyman, 456 F.2d at 129; see Tiny-Wrap, 984 F.2d at 68.  The transcript of the October 26 Conference also clearly indicates that the discussion regarding which parties and what issues would be tried at the June Bench Trial was not merely raised by the Court "in passing" but was a central focus of the conference.  See Heyman, 456 F.2d at 129. Penguin also does not deny that it was aware since at least June 2012 that the States sought to have the liability and injunctive portions of the State Action tried concurrently at the June Bench Trial.  See Tiny-Wrap, 984 F.2d at 68.

Penguin's argument is also unavailing because its conduct demonstrated its waiver of a jury trial.  Parties may also waive a jury trial by their conduct, so long as that conduct constitutes a "clear and unequivocal" waiver.  Id.; see also Royal American Managers, 885 F.2d at 1018.  Penguin contends that the Second Circuit has generally found waivers by conduct only in instances where a party objects on the day of trial or actually participates in a bench trial without objection.  See

24

Royal American Managers, 885 F.2d at 1011, 1018-19; Phlo Corp.
v. Stevens, No. 00 Civ. 3619 (DC), 2001 WL 1313387 at *2
(S.D.N.Y. Oct. 25, 2001).  Because the trial is still several
weeks away, Penguin suggests that its conduct cannot establish a
waiver of its fundamental jury right.  While it is true that
this Circuit has deemed participation in a bench trial to be
"clear and unequivocal" conduct constituting a jury waiver, it
has never found that participation in a bench trial or objecting
on the day a bench trial begins is a necessary requirement;
nothing suggests that other conduct cannot also represent a
sufficiently "clear and unequivocal" waiver.

        Here, it is not just Penguin's assent at the October 26
Conference that constitutes a waiver under Rule 39(a) but also
its conduct in the ensuing months that demonstrated it knowingly
and intentionally waived jury determination of its liability on
the States' claims, in several ways.  First, Penguin signed two
separate stipulations after the October 26 Conference which
confirmed that the States' liability claims would be heard by
the Court in June: the November 6 and December 18 Stipulations.

        The parties also commenced an aggressive coordinated
discovery stage -- which is now complete -- and have sacrificed
summary judgment practice in support of an expedited schedule in
preparation for the June Bench Trial.  In addition, although
Penguin stated at the June 22 Conference that it would not

25

forfeit summary judgment practice if claims against it were to be determined by a jury, Penguin has conspicuously failed to request or otherwise mention a summary judgment schedule as to the States' legal claims in the four months since it settled with the DOJ and "assumed" that it was no longer participating in the bench trial.  In fact, after the October 26 Conference, Penguin failed to mention in any communications with the Court either: its right to a jury as to the States' claims, its assumption that it was no longer participating in the June Bench Trial after settling with the Government, or its assumption that the nature of the claims had changed post-settlement so as to attach, or re-attach, a jury right.  It was not until February 2013 -- two months after Penguin had reached a settlement with the DOJ, and just days after Macmillan had settled with the States -- that Penguin first raised any concerns as to its participation in the June Bench Trial.

Penguin contends that the two-month period between settling with the Government and raising this issue should not be construed as indicating informed consent.  Penguin insists that it "objected as soon as it became clear that the parties had different understandings of who was to participate in the DOJ trial," and suggests that the delay reveals Penguin's unfortunate but "genuine misunderstanding" that it had no further claims to defend against at the June Bench Trial.

Without doubt, a miscommunication or misunderstanding does not constitute an express waiver of a constitutional right.  <u>Cf</u>. <u>Heyman</u>, 456 F.2d at 129.  Penguin's waiver, however, was not constructed out of any miscommunication; it was made clear by Penguin's statements on the record at the October 26 Conference and its consistent and informed conduct over a span of several months.

Finally, in the alternative, Penguin asks the Court to exercise its discretion under Rule 39(b), Fed. R. Civ. P., and order a jury to decide issues of liability on the States' claims either at the June trial or at a separate, second trial linked to any damages determination.  Penguin contends that the landscape changed after the October 26 Conference when it settled with the Government on December 18, 2012, and that, in light of its "materially changed post-settlement circumstances," the parties and issues now being litigated at the June Bench Trial are those "to which Penguin's jury trial right attaches." It argues that any efficiency considerations related to the potential collateral estoppel effect of the June Bench Trial or a separate damages trial "vanished" after Penguin settled with the DOJ, and that the prejudice to Penguin would far outweigh any efficiencies that might support moving forward with a non-jury trial on the States' claims.

Although Rule 39(b) relates to reinstating a jury trial when a jury has not been properly demanded, the rule has been construed also to encompass circumstances where a jury was properly demanded but later waived.  See, e.g., Cascone v. Ortho Pharm Corp., 702 F.2d 389, 392 (2d Cir. 1983); Tanvir v. Laporte, 169 F.R.D. 292, 294 (S.D.N.Y. Nov. 15, 1996).  A court, however, must "approach each application under Rule 39(b) with an open mind and an eye to the factual situation in that particular case."  Cascone, 702 F.2d at 392 (citation omitted).  Here, allowing jury determination of liability on the States' claims at this late stage would be both impractical and prejudicial.

As an initial matter, it is clear that Penguin never made a conditional waiver.  Penguin did not agree to have its liability on the States' claims determined at the June Bench Trial only if it did not settle with the Government.  Nor did Penguin otherwise indicate to the Court that a settlement with the Government would change its views as to whether a non-jury trial in the State Action was appropriate prior to this motion practice.  Instead, Penguin indicated at the October 26 Conference that it was "fine" moving forward with the Court determining issues of liability on the States' claims at the June Bench Trial.  Penguin did not mention its "changed post-settlement circumstances" to other parties or to the Court until

28

nearly two months after it had settled out of the DOJ Action,
until it was suddenly the only publisher defendant remaining in
the State Action.

Moreover, it is not true, as Penguin suggests, that no
parties would suffer prejudice as a result of the Court either
ordering a jury determination of Penguin's liability in the
State Action at a June trial, or allowing Penguin to excuse
itself from any June trial to try its liability in the State
Action at a separate, later trial.  To the contrary, all parties
would be severely impacted by either of these proposals.  The
parties have made enormous efforts over the past five months to
prepare for a bench trial in accordance with the Court's
established procedures for such proceedings.  Penguin makes its
request after the close of an ambitious discovery schedule,
after initial witness lists have been exchanged, after the
parties have waived summary judgment practice, and when its
motion only became fully submitted weeks before the parties'
pretrial order and motions in limine are due.

Penguin claims to be prepared to move forward with a jury
trial concurrently with the June Bench Trial, but that
suggestion is simply impractical.  As previously described, jury
and non-jury cases follow drastically different procedures under
this Court's individual practices, including that the Court
takes direct testimony in a bench trial by affidavit rather than

live, and the Court prepares a draft opinion with findings of
fact prior to the start of a bench trial based on the parties'
pretrial submissions.

Penguin's settlement in the DOJ Action also had no effect
on the nature of the States' claims to be adjudicated by the
Court at the June Bench Trial.  The Government and the States
each claim that Apple entered into a conspiracy with publishers
to fix prices of certain e-books.  The nature of the
conspiracies alleged necessarily means that evidence bearing on
the intent of the publishers, even of those alleged conspirators
who have settled claims, will be relevant at trial.  The Court
will not at this stage force the parties to conduct a second
liability trial resting on duplicative evidence.[5]

The record described above demonstrates that Penguin
conspicuously and voluntarily waived its right to a jury trial
during the October 26 Conference, and that all litigating
parties clearly understood that the States' claims would be
addressed at the June Bench Trial.  Penguin's purported
unilateral reliance on a groundless assumption that its status
and the States' participation in the June trial changed as a

---

[5] That the Court contemplated a second, later trial to determine
any damages amount in the State Action also does not render
appropriate Penguin's exclusion from a liability determination
at the June Bench Trial.  In fact, several defendants --
including Apple and Macmillan -- have expressed that it is
unlikely a second trial will ever be necessary.

result of its settlement in the DOJ Action does not support reinstating a jury as to the States' claims here.  Cf. Sewell v. Jefferson Cnty. Fiscal Court, 863 F.2d 461, 465 (6th Cir. 1988) ("inadvertence or mistaken impression is not sufficient to relieve the party from the effects of an otherwise valid waiver of a jury trial"); accord Bellmore v. Mobil Oil Corp., 783 F.2d 300, 307 (2d Cir. 1986) ("something beyond the mere inadvertence of counsel is required to relieve a party from its waiver" (citation omitted)) (applying Rule 39(b), Fed. R. Civ. P.).


CONCLUSION

     Penguin's March 15, 2013 motion for a jury trial on the States' claims is denied.


     SO ORDERED:

Dated:     New York, New York
           April 24, 2013

                                   _____
                                        DENISE COTE
                              United States District Judge