UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | No. 11-md-02293 (DLC)<br>ECF Case |
| This Document Relates to:<br><br>ALL ACTIONS | <u>CLASS ACTION</u> |

**MEMORANDUM IN SUPPORT OF CLASS PLAINTIFFS'**
**MOTION FOR PRELIMINARY APPROVAL OF HARPERCOLLINS, HACHETTE**
**<u>AND SIMON & SCHUSTER SETTLEMENTS</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ..........................................................................................1

II.     PROCEDURAL HISTORY..........................................................................1

    A.      Plaintiffs' Investigations ...............................................................1

    B.      Litigation to Date .........................................................................2

    C.      Settlement Negotiations.................................................................2

III.    THE PROPOSED SETTLEMENT................................................................3

    A.      Consumer Compensation ..............................................................3

    B.      Payment of Class Counsel's Attorneys' Fees and Costs .........................3

    C.      Compensation to the State of Minnesota .................................3

    D.      Settlement Notice and Administrative Costs ...........................4

    E.      Release of Claims ........................................................................4

IV.     THE SETTLEMENT MEETS THE STANDARDS FOR JUDICIAL
        APPROVAL ...............................................................................................5

    A.      The Settlement Meets the Standard for Preliminary Approval.............................5

    B.      The Settlements Are Fair, Reasonable and Adequate................................6

        1.      The Complexity, Expense, and Likely Duration of the Litigation .............6

        2.      The Reaction of the Class to the Settlement ................................7

        3.      The State of the Proceedings and Amount of Discovery Completed ..........7

        4.      The Risk of Establishing Liability ................................................8

        5.      The Risk of Establishing Damages .............................................8

        6.      The Risks of Maintaining a Class Action Through Trial...........................9

        7.      The Ability of Defendants to Withstand a Greater Judgment....................9

        8.      The Range of Reasonableness of the Settlement Fund in Light of
             the Best Possible Recovery........................................................9

9.      The Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of All the Attendant Risks of Litigation ......................10

V.     THE PROPOSED NOTICE PLAN ...................................................................10

VI.    THE PROPOSED CONSUMER DISTRIBUTION PLAN................................11

VII.   THE PROPOSED CLASS MEETS ALL THE REQUIREMENTS OF RULE 23...........11

A.     Definition of the Proposed Class ..........................................................11

B.     Certification of the Proposed Class Is Proper for Settlement Purposes................11

1.      Plaintiffs Have Met All of the Prerequisites of Rule 23(a)........................12

a.     The Class Meets the Numerosity Requirement ............................12

b.     Questions of Law and Fact Are Common to the Class.................12

c.     Plaintiffs' Claims Are Typical of the Claims of the Class............13

d.     The Settlement Class Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.....................................15

2.      The Requirements of Rule 23(b)(3) Are Satisfied....................................16

a.     Common Questions Predominate with Respect to Antitrust Claims ...........................................................16

b.     A Class Action Is Superior to Other Forms of Adjudication.........17

C.     Proposed Class Counsel Will Fairly and Adequately Represent the Class ...........19

VIII.  CONCLUSION................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).................................................................................11, 12, 16, 17

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974).............................................................................................6

*Comcast Corp. v. Behrend*,
  __ U.S. __, 133 S. Ct. 1426 (2013)...............................................................................8, 9

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995)..............................................................................................12

*DeMarco v. Nat'l Collector's Mint, Inc.*,
  229 F.R.D. 73 (S.D.N.Y. 2005) ......................................................................................13

*Freeland v. AT&T Corp.*,
  238 F.R.D. 130 (S.D.N.Y. 2006) ....................................................................................14

*Iglesias-Mendoza v. LaBelle Farm, Inc.*,
  239 F.R.D. 363 (S.D.N.Y. 2007) ....................................................................................19

*In re Am. Bank Note Holographics, Inc.*,
  127 F.Supp.2d 418 (S.D.N.Y. 2001)...............................................................................12

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................................................7

*In re Catfish Antitrust Litig.*,
  826 F. Supp. 1019 (N.D. Miss. 1993)..............................................................................19

*In re Currency Conversion Fee Antitrust Litig.*,
  2006 U.S. Dist. LEXIS 81440 (S.D.N.Y. Nov. 8, 2006)..................................................5

*In re Flag Telecom Holdings, Ltd. Secs. Litig.*,
  574 F.3d 29 (2d Cir. 2009)..............................................................................................15

*In re J.P. Morgan Chase Cash Balance Litig.*,
  242 F.R.D 265 (S.D.N.Y. 2007) .....................................................................................13

*In re NASDAQ Market-Makers Antitrust Litig.*,
  169 F.R.D. 493 (S.D.N.Y. 1996) .......................................................................13, 15, 17, 19

*In re Natural Gas Commodities Litig.*,
   231 F.R.D. 171 (S.D.N.Y. 2005) ........................................................13

*In re Playmobil Antitrust Litig.*,
   35 F. Supp.2d 231 (E.D.N.Y. 1998) ........................................13, 16, 19

*In re Prestige Brands Holdings, Inc. Secs. Litig.*,
   2007 WL 2585088 (S.D.N.Y. Sept. 5, 2007).....................................14

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................17

*In re Telectronics Pacing Sys., Inc. Accufix Atrial "J" Leads Prods. Liab. Litig.*,
   172 F.R.D. 271 (S.D. Ohio 1997) ......................................................18

*In re Visa Check/Mastermoney Antitrust Litig.*,
   280 F.3d 124 (2d Cir. 2001)........................................................11, 16, 18

*In re Vitamin C Antitrust Litig.*,
   279 F.R.D. 90 (E.D.N.Y. 2012) ....................................................13, 17

*In re Vitamins Antitrust Litig.*,
   2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 31, 2000).........................5

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)...................................................................7

*Menkes v. Stolt-Nielsen S.A.*,
   270 F.R.D. 80 (D. Conn. 2010)...........................................................12

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002)...............................................................16

*Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*,
   2012 U.S. Dist. LEXIS 37720 (S.D.N.Y. Feb. 24, 2012).......................5

*Robinson v. Metro-North Commuter R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001)................................................................15

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011).................................................................17

*Wal-Mart Stores, Inc. v. Dukes*,
   __ U.S. __, 131 S. Ct. 2541 (2011).......................................................9

## FEDERAL STATUTES

15 U.S.C. § 15(c) ..........................................................................................................................14

## FEDERAL RULES

Federal Rules of Civil Procedure 23 .................................................................................... *passim*

## STATE STATUTES

Minn. Stat. § 8.31, subd. 2(b) .........................................................................................................3

# I.      INTRODUCTION

A Settlement Class consisting of Minnesota residents, submit this memorandum in support of the motion for preliminary approval of their settlement with defendants HarperCollins, Hachette, and Simon & Schuster.[1] The proposed settlement with these defendants provides for the payment of $2,119,000 for the benefit of Minnesota consumers. The proposed settlement is sufficiently fair, reasonable and adequate to justify providing notice to the affected consumers throughout Minnesota, provisionally certifying a class of purchasers of electronic books ("E-books") for settlement purposes, and initiating a procedure under which consumers may qualify for credits or checks. This settlement resolves claims brought against these defendants by residents of the state of Minnesota alleging an unlawful agreement to fix the prices of E-books in violation of state and federal antitrust law.

# II.      PROCEDURAL HISTORY

## A.      Plaintiffs' Investigations

Settlement Class Counsel began its investigation in about April 2010, after market prices for titles of the E-books that the publisher defendants sold all went up by 30 to 50 percent – nearly simultaneously. This pricing behavior caused Settlement Class Counsel to start analyzing the market and developing the facts pled in the first civil litigation filed, *Petru, et al. v. Apple Inc., et al.*, No. 11-cv-03892-EMC (N.D. Cal.). The *Petru* complaint contained extensive economic analysis of historical pricing data in order to show price changes and the impact of defendants' conduct over time – before and after defendants engaged in the alleged conspiracy. Class Counsel retained experts and investigators who, collectively, spent over 200 hours

---

[1]      Consistent with the settlement agreement, "Hachette" means Hachette Book Group, Inc., Hachette Digital, Inc. and Hachette Livre SA. "HarperCollins" means HarperCollins Publishers L.L.C. and "Simon & Schuster" means Simon & Schuster, Inc. and Simon & Schuster Digital Sales, Inc.

010260-11  609668 V1

analyzing the market, retrieving electronic pricing information, and conducting their analysis in order to present robust factual allegations in the *Petru* action. On December 9, 2011, the United States Judicial Panel on Multidistrict Litigation transferred all related actions to the Southern District of New York. On December 21, 2011, this Court appointed Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll PLLC as co-lead counsel for the plaintiff classes, after which they filed the Class Complaint.[2]

### B.      Litigation to Date

Defendants jointly moved to dismiss the class plaintiffs' Class Complaint. The Court denied the motions to dismiss on May 15, 2012, and the parties began several months of coordinated discovery. Class plaintiffs (in conjunction with the State Attorneys General in the coordinated litigation) obtained and analyzed more than 1.6 million documents and detailed transactional data from the six defendants and numerous third parties, and conducted more than 54 depositions in coordination with the U.S. Department of Justice ("DOJ"). The bench trial on liability with Apple Inc. began on June 2, 2013.

### C.      Settlement Negotiations

HarperCollins, Hachette, and Simon & Schuster settled with the Attorneys General of fifty-five States, Commonwealths, Territories and Possessions and moved for preliminary approval with this Court on August 29, 2012. This Court finally approved these settlements, which created a consumer fund in the amount of $69.04 million on February 8, 2013, although distribution has been held in abeyance while the States and the class continued litigation against the other defendants.

---

[2]      "Class Complaint" refers to Consolidated Amended Class Action Complaint, Jan. 20, 2012, ECF No. 47.

Class plaintiffs and HarperCollins, Hachette and Simon & Schuster began discussing possible resolution of the claims of Minnesota residents in October 2012. On April 16, 2013, a formal mediation session was held before Judge Kimba M. Wood. On June 20, 2013, the parties executed a formal Settlement Agreement, a copy of which is attached as Exhibit A.

### III.    THE PROPOSED SETTLEMENT

#### A.    Consumer Compensation

The primary component of the settlement is the payment to Minnesota residents who purchased E-books from any defendant publisher from April 1, 2010 to May 21, 2012. Pursuant to the Settlement Agreement, HarperCollins, Hachette and Simon & Schuster agree to pay the sum of $2,119,000 to compensate Minnesota class members. These funds, together with any accrued interest, will be distributed according to a joint distribution plan with the State Attorneys General settlements. If consumer funds remain after initial distribution, the Settlement Agreement contemplates such funds be reserved for additional future consumer distribution resulting from settlement or judgment. Any residue will be distributed *cy pres* to Reading is Fundamental, a non-profit organization dedicated to motivating children to become lifelong readers, or as otherwise directed by the Court.

#### B.    Payment of Class Counsel's Attorneys' Fees and Costs

HarperCollins, Hachette and Simon & Schuster agree to pay to Class Counsel for the Settlement Class $731,000 for their attorneys' fees, costs of investigation, litigation and other related costs. The award for attorneys' fees shall be paid into an account designated by Class Counsel, within ten days of preliminary approval of the settlement.

#### C.    Compensation to the State of Minnesota

Subject to separate Assurances of Discontinuance being filed simultaneously by the State of Minnesota in Minnesota state court pursuant to Minn. Stat. § 8.31, subd. 2(b), HarperCollins,

Hachette and Simon & Schuster agree to pay $25,000 each to the State of Minnesota for the costs of its investigation. These awards shall be paid directly to the State of Minnesota within fourteen days of the effective date of the settlement.

**D.      Settlement Notice and Administrative Costs**

HarperCollins, Hachette and Simon & Schuster previously each have made payments of $750,000 to the Settlement Cost Account established for their settlement of *The State of Texas, et al. v. Hachette Book Group, et al.*, No. 12-Civ-6625 (DLC) (S.D.N.Y.). The settling parties understand that sufficient funds remain in the Settlement Cost Account to cover the settlement administration costs and have agreed with the Liaison States that the funds in the Settlement Cost Account may be used for these purposes. This is particularly true, given that the parties anticipate joint notice to the class in conjunction with the Macmillan and Penguin settlements, and joint distribution to the class for all settlements to date.

**E.      Release of Claims**

The class shall release the claims of individual consumers who purchased E-books from any of the defendant publishers from April 1, 2010 to May 21, 2012, with the exception of claims of individual consumers who exercised the right to exclude themselves from the settlement. Claims are released against HarperCollins, Hachette and Simon & Schuster only, not any other defendant publisher or Apple.

Minnesota will also release their sovereign enforcement claims against HarperCollins, Hachette and Simon & Schuster that arise from the same course of conduct as alleged in the Class Complaint through a separate action to be filed in Minnesota state court.

- 4 -

## IV.     THE SETTLEMENT MEETS THE STANDARDS FOR JUDICIAL APPROVAL

## A.     The Settlement Meets the Standard for Preliminary Approval

Preliminary approval of this settlement does not require a full fairness hearing. Rather, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of [possible] approval, preliminary approval is granted."[3] "Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness."[4]

Here, the requirements for preliminary approval have been met. These three settling defendants settled with the Attorneys General of fifty-five States, Commonwealths, Territories and Possessions in August 2012. The class has continued to actively litigate against the remaining defendants. All counsel were well-informed of the issues; extensive investigations had been conducted by Class Counsel before settlement negotiations proceeded in earnest. Each side fully articulated its positions on numerous occasions. Ultimately, these negotiations resulted in the Settlement Agreement which is now submitted for this Court's approval.

The settlement has no "obvious deficiencies" nor does it grant preferential treatment. To the contrary, the settlement provides extra protections for consumers as no part of the $2,119,000 consumer funds will be used for attorneys' fees or administrative costs.[5] Finally, the settlement

---

[3]     *In re Currency Conversion Fee Antitrust Litig.*, No. 1409, 2006 U.S. Dist. LEXIS 81440, at *13 (S.D.N.Y. Nov. 8, 2006). All internal citations and quotations omitted and all emphasis added, unless otherwise indicated.

[4]     *Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*, No. 08 CV 321, 2012 U.S. Dist. LEXIS 37720, at *12 (S.D.N.Y. Feb. 24, 2012).

[5]     A separate fund for payment of attorneys' fees provides the beneficiaries of the settlement greater certainty because the amount of money each will receive is not reduced by an

amount for consumers undoubtedly is within the range of possible approval as it is a significant recovery and exceeds the percentage-of-damages recovery that was approved by the Court in the prior settlements due to the later stage of litigation.

**B.      The Settlements Are Fair, Reasonable and Adequate**

This Court has already spent copious time reviewing the settlements with these three defendants and the Attorneys General of fifty-five States, Commonwealths, Territories and Possessions. During that review, the Court found that the prior settlement satisfied the factors for final approval under *Grinnell*.[6] Given the similarity between that settlement and this, certainly the settlements should be seen as fair, reasonable and adequate. Plaintiffs address each of the *Grinnell* factors briefly below.[7]

**1.      The Complexity, Expense, and Likely Duration of the Litigation**

As this Court is aware, antitrust litigation is complex, expensive and likely to take years to reach resolution. And even after completion in the trial court, appeals are likely short of a settlement. Short of settlement, this litigation would likely take at least another year to complete – as class certification motions and some class discovery against HarperCollins, Hachette and

---

award of attorneys' fees. *In re Vitamins Antitrust Litig.*, No. 99-197, 2000 U.S. Dist. LEXIS 8931, at *21 n.3 (D.D.C. Mar. 31, 2000).

[6]      *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974); *The State of Texas, et al. v. Hachette Book Group, Inc. et al.*, Transcript of February 8, 2013 Fairness Hearing for Final Approval of Settlements with HarperCollins, Simon & Simon and Hachette ("Fairness Hearing Tr."), No.12-cv-6625 (S.D.N.Y.).

[7]      The nine *Grinnell* factors to be considered by the Court at final approval are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463.

Simon & Schuster would proceed after the conclusion of the June bench trial against Apple. After class certification motions, summary judgment motions would be a certainty and then, possibly, a second trial between the class plaintiffs and this group of defendants. Settlement here ensures a quick and timely resolution of this action.

>   **2.      The Reaction of the Class to the Settlement**

Minnesota residents have not received notice of any settlement in this litigation (or any related litigation). While any analysis of this factor should be delayed until the class has been provided the opportunity to opt-out or object, a significant number of opt-outs or objections from Minnesota consumers is unexpected. In the defendants' settlements with the Attorneys General of fifty-five States, Commonwealths, Territories and Possessions, less than 100 individuals filed valid and timely notices of exclusion out of more than 23 million consumers who received notice.

>   **3.      The State of the Proceedings and Amount of Discovery Completed**

Although preparing this case through trial would require thousands more hours of discovery work for both sides, the parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."[8] "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."[9]

Here, a vast amount of litigation discovery has taken place in anticipation of the June 2013 trial on injunctive relief. Over 1.6 million documents have been produced and catalogued

---

[8]      *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

[9]      *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (alteration in original)

010260-11  609668 V1

by the plaintiffs, and fifty-onewitnesses have been deposed – nine of whom are employees of the HarperCollins, Hachette and Simon & Schuster defendants. Given the length of this litigation (over two years), and these defendants' settlements with the Attorneys General of fifty-five States, Commonwealths, Territories and Possessions, both sides were fully informed of the parties' positions and aware of the evidence expected to be presented in support of those positions.

### 4.        The Risk of Establishing Liability

In reviewing the prior settlements, the Court found there was a "fairly small" risk for those plaintiffs in establishing liability, once an illicit agreement has been established.[10] The same conclusion would apply to the putative class action case against HarperCollins, Hachette and Simon & Schuster.

### 5.        The Risk of Establishing Damages

Plaintiffs propose an allocation to Minnesota class members based on the work of Professor Abraham Wickelgren (who has proposed a damages model for the prior settlements with these defendants and the current settlements with Macmillan and Penguin). In its prior final approval of the settlements with HarperCollins, Hachette and Simon & Schuster and the Attorneys General of fifty-five States, Commonwealths, Territories and Possessions, this Court accepted Professor Wickelgren's calculations. Proving damages during litigation, however, presents a more significant litigation risk. A number of the economists who have offered reports in this litigation to date have focused on the pricing in the E-book industry and whether or not plaintiffs will be able to show damages. As demonstrated by the Supreme Court's recent opinion in *Comcast*, plaintiffs must present at class certification a damages model capable of measuring

---

[10]     Fairness Hearing Tr. at 7.

damages on a class wide basis.[11] A failure to do so – and to ensure that the model can withstand "rigorous analysis" – will mean that individual damage calculations will inevitably overwhelm questions common to the class.[12] And beyond the class certification motion, plaintiffs likely faced a *Daubert* challenge before their damages model was presented to a jury. The risk of establishing damages is a significant risk to be taken into account when considering this settlement.

### 6.   The Risks of Maintaining a Class Action Through Trial

As always, in a class action, a risk exists that either a class will not be certified in the first instance, or that a class will not be sustainable through trial. Recent case law from the Supreme Court such as *Dukes* and *Comcast* has only served to further these uncertainties.[13] Although plaintiffs are confident that a class would have been certified in this case, and that the case is amenable to trial on a class wide basis, the risk exists that this Court might disagree and the case could not continue as a class action through trial.

### 7.   The Ability of Defendants to Withstand a Greater Judgment

HarperCollins, Hachette and Simon & Schuster could withstand a larger judgment. Therefore, neither potential insolvency nor lack of ability to pay is a factor that needs to be considered, or accorded much weight in the Court's determination.

### 8.   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery

In approving the prior settlements with HarperCollins, Hachette and Simon & Schuster, the Court found the settlement funds were fair and reasonable under the circumstances of the

---

[11]   *Comcast Corp. v. Behrend*, __ U.S. __, 133 S. Ct. 1426, 1433 (2013).

[12]   *Id.*

[13]   *See Wal-Mart Stores, Inc. v. Dukes,* __ U.S. __, 131 S. Ct. 2541 (2011); *Comcast*, 133 S. Ct. at 1426.

case.[14] Here, the settlement with these three defendants on behalf of Minnesota residents provides for a higher amount of recovery, due to the later stage of litigation.[15] This settlement is well within the range of reasonableness.

9.    **The Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of All the Attendant Risks of Litigation**

Any class action is attendant with a high amount of risk. This Court has already ruled that similar settlements between these defendants and the Attorneys General of fifty-five States, Commonwealths, Territories and Possessions in their *parens patriae* capacity was "in all respects fair, reasonable, and adequate and in the best interests of the Consumers in the Plaintiff States."[16] This settlement agreement provides for a larger percentage of recovery than these prior settlements due to the later stage of litigation, while avoiding the same or higher risks of litigation. This settlement equally deserves a finding of fairness, reasonableness and adequacy.

## V.    THE PROPOSED NOTICE PLAN

To maximize efficiency and to minimize the expense, notice to Minnesota consumers regarding the settlement with the HarperCollins, Hachette and Simon & Schuster defendants will be sent at the same time, in the same manner and in the same documents as the notice of settlement with the Macmillan and Penguin defendants. The proposed Consumer Notice Plan is attached as Exhibit D to the Motion for Preliminary Approval of the Macmillan and Penguin Settlements.[17] Because the plans are identical, plaintiffs do not repeat the discussion here.[18]

---

[14]    Final Judgment at 4, Feb. 8, 2013, ECF No. 279.

[15]    Expert Report of Abraham L. Wickelgren, Sept. 13, 2012, ECF No. 11-5.

[16]    Final Judgment at 4, ECF No. 279.

[17]    *See* Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Macmillan and Penguin Settlements and Proposed Consumer Notice and Distribution Plans, filed concurrently herewith.

[18]    *See id.*, section V.A.2.

- 10 -

## VI.     THE PROPOSED CONSUMER DISTRIBUTION PLAN

Again, to maximize efficiency and minimize the expense of distribution, plaintiffs, the litigating 33 State Attorneys General involved in the Macmillan and Penguin settlements, and the defendants have agreed to a combined distribution plan that will allow Minnesota residents to receive compensation from all five separate settlements (the settlements with HarperCollins, Hachette, Simon & Schuster, Macmillan and Penguin) at the same time and through the same manner. The proposed Consumer Distribution Plan is attached as Exhibit G to the Motion for Preliminary Approval of the Macmillan and Penguin Settlements. Because the plans are identical, plaintiffs do not repeat the discussion here.[19]

## VII.     THE PROPOSED CLASS MEETS ALL THE REQUIREMENTS OF RULE 23

### A.     Definition of the Proposed Class

HarperCollins, Hachette, Simon & Schuster Settlement Class consists of natural persons who purchased E-books published by the named publishers from April 1, 2010 until May 21, 2012, and who resided in Minnesota at the time of their E-book purchase.[20] Except for geographical distinctions, this class mirrors that of the *parens patriae* actions and other class settlements.

### B.     Certification of the Proposed Class Is Proper for Settlement Purposes

The Court must first determine whether the proposed settlement class is a proper class for settlement purposes.[21] The Court may certify a class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the prerequisites in Rule 23(a) –

---

[19]     *See id.*, section VI.A.2.

[20]     *See* Exhibit A (Settlement Agreement) at 4.

[21]     *See e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (courts examine whether the proposed class would be adequately represented and fairly treated by a class action settlement).

010260-11 609668 V1

numerosity, commonality, typicality and adequacy of representation – and one of the three requirements of Rule 23(b).[22] To establish a class under Rule 23(b)(3), plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[23] In certifying a settlement class, the court is not required to determine whether the action, if tried, would present intractable management problems.[24] Rather, whether to certify a class rests in the court's discretion.[25]

### 1.    Plaintiffs Have Met All of the Prerequisites of Rule 23(a)

Plaintiffs have satisfied the numerosity, commonality, typicality and adequacy of representation requirements under Rule 23(a).

### a.    The Class Meets the Numerosity Requirement

Based on information provided by six E-book retailers (Amazon, Barnes & Noble, Apple, Kobo, Sony and Google), it is estimated that the Minnesota class consists of approximately 449,000 class members,[26] which makes joinder of all settlement class members impracticable.[27]

### b.    Questions of Law and Fact Are Common to the Class

The Rule 23(a)(2) requirement that there be "questions of law or fact common to the

---

[22]   Fed. R. Civ. P. 23; *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001).

[23]   Fed. R. Civ. P. 23(b)(3).

[24]   *Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

[25]   *See In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 429 (S.D.N.Y. 2001) ("All aspects of settlement approval . . . rest in the sound discretion of the district court.").

[26]   *See* Declaration of Kim Schmidt, ¶ 7, filed concurrently herewith.

[27]   *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity is presumed at a level of 40 members).

class" is "not a demanding standard" and "is established so long as the plaintiffs can identify some unifying thread among the [class] members' claims."[28] Commonality does not require a showing that all the questions raised by the class claims are identical; it is sufficient if a single common issue is shared by the class.[29] Antitrust price-fixing cases inherently present common legal and factual questions that satisfy the requirement of Rule 23(a)(2).[30]

Here, where plaintiffs allege an anticompetitive scheme to eliminate retail price competition and elevate retail prices for the sale of E-books, commonality is plainly present.[31]

### c.   Plaintiffs' Claims Are Typical of the Claims of the Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." By its terms, the rule only requires the named plaintiff's claims to be typical of the class. Typicality "does not require that the factual background of each named plaintiff's claim be identical to that of all class members."[32] "Rather, the named plaintiff must simply raise claims that arise from the same course of events as the class claims and make

---

[28]   *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 90 (D. Conn. 2010) (alteration in original).

[29]   *DeMarco v. Nat'l Collector's Mint, Inc.*, 229 F.R.D. 73, 80 (S.D.N.Y. 2005); *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 180 (S.D.N.Y. 2005) (noting that the "common question" requirement is a "low hurdle").

[30]   *See In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 509 (S.D.N.Y. 1996) ("Numerous courts have held that allegations concerning the existence, scope, and efficacy of an alleged antitrust conspiracy present important common questions sufficient to satisfy the commonality requirement of Rule 23(a)(2).") (collecting cases); *see also, e.g.*, *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 99 (E.D.N.Y. 2012) ("The most significant question posed by this lawsuit will generate common answers among all class members: did the defendants' price-fixing agreement cause an artificial increase in the market price of vitamin C?").

[31]   *See* Class Complaint, ¶¶ 10-20.

[32]   *In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D 265, 272-73 (S.D.N.Y. 2007). *See also In re Playmobil Antitrust Litig.*, 35 F. Supp.2d 231, 242 (E.D.N.Y. 1998) ("Typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff[s]. Personal traits or variables . . . are irrelevant to the typicality criterion.").

similar legal arguments to prove the defendant's liability."[33] The test for typicality is not

demanding,[34] and in the antitrust context, "will be established by plaintiffs and all class members

alleging the same antitrust violations by the defendants."[35]

Here, there are twenty-five proposed Settlement Class Plaintiffs.[36] The claims of these

representatives are typical of the claims of the entire Settlement Class. Each proposed Settlement

Class Plaintiff purchased E-books from one or more of the publisher defendants.[37] Each claims

that he or she was injured by paying unlawfully inflated and stabilized prices as a result of

defendants' anticompetitive scheme; each alleges a common course of unlawful conduct by

---

[33]   *In re Vitamin C*, 279 F.R.D. at 105.

[34]   *See, e.g.*, *In re Prestige Brands Holdings, Inc. Secs. Litig.*, No. 05-6924, 2007 WL 2585088, at *3 (S.D.N.Y. Sept. 5, 2007).

[35]   *Id.*; *see also, e.g., Freeland v. AT&T Corp.*, 238 F.R.D. 130, 141 (S.D.N.Y. 2006) (typicality satisfied because all class members' claims based on same conspiracy and legal theories).

[36]   The proposed Settlement Class Plaintiffs are those named in the Class Complaint: Anthony Petru, Marcus Mathis, Christian Gilstrap, Cynthia J. Tyler, Thomas Friedman, Jeremy Sheppeck, Aloysius J. Brown, III, Anne M. Rinaldi, Laura J. Warner, Barbara Heath, Kathleen Linda Pitlock, Kathleen Weiss, Matthew A. Hosking, Diane Urbanec, Ed Macauley, Ronna Hamelin, James L. Nesmith, Lauren Albert, Sue Roberts, Shane S. Davis, Sue Ellen Gordon, Charles Leonard Pelton, Sr., Kimberly Whiteside Brooks, Steven D. Campbell, and Jessica Moyer.

For the avoidance of doubt, certain of these individuals (Marcus Mathis, Christian Gilstrap, Jeremy Sheppeck, Anne Rinaldi, Barbara Heath, Matthew A. Hosking, Diane Urbanec, Ed Macauley, Ronna Hamelin, Charles Leonard Pelton Sr., Kimberly Whiteside Brooks, Steven D. Campbell, and Jessica Moyer) reside in a State in which an action was already brought by the Attorneys General in their capacity as *parens patriae* under the authority of Section 4C of the Clayton Act, 15 U.S.C. § 15(c) and in which Final Judgment already has been entered. *See The State of Texas et al. v. Hachette Book Group, Inc. et al.*, Case No. 12-cv-6625 (DLC) (Feb. 8, 2013) (ECF No. 71) ("States Action"). Nor did these individuals file valid or timely requests for exclusion from the settlement agreements in connection with the States' Action. Consequently, these individuals are bound by the terms of the settlement agreements and Final Judgment entered in connection with the States' Action and have no remaining claims against HarperCollins, Hachette, or Simon & Schuster.

[37]   Class Complaint, ¶¶ 22-47.

defendants directed against all class members; and each asserts the same theory of antitrust liability.[38] Nothing more is required by Rule 23(a)(3).

### d.   The Settlement Class Plaintiffs Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class."[39] Courts generally consider two factors when analyzing the adequacy of the named plaintiffs: "(1) absence of conflict and (2) assurance of vigorous prosecution."[40] This inquiry focuses "on uncovering conflicts of interest between named parties and the class they seek to represent."[41] Certification will only be defeated by "fundamental" conflicts,[42] and courts reject efforts to defeat certification "by raising the possibility of hypothetical conflicts or antagonisms among class member" that are not "apparent, imminent, and on an issue at the very heart of the suit."[43]

The proposed Settlement Class Plaintiffs readily meet the requirements of Rule 23(a)(4). They have no interests antagonistic to the unnamed class members; rather, they share the same interest in proving and recovering the damages caused by defendants' conspiracy. Additionally, they have demonstrated that they can and will pursue the action vigorously, having reviewed pleadings, submitted declarations in opposition to Penguin's motion to compel arbitration, and

---

[38]   *Id.*

[39]   Fed. R. Civ. P. 23(a)(4).

[40]   *Robinson v. Metro-North Commuter R.R. Co*., 267 F.3d 147, 170 (2d Cir. 2001).

[41]   *In re Flag Telecom Holdings, Ltd. Secs. Litig*., 574 F.3d 29, 35, 40-41 (2d Cir. 2009).

[42]   *Id.* at 33, 35.

[43]   *In re NASDAQ*, 169 F.R.D. at 514.

responded to discovery requests.[44] In sum, the Settlement Class Plaintiffs have demonstrated they can and will represent the class fairly and adequately.

### 2.     The Requirements of Rule 23(b)(3) Are Satisfied

The proposed class's claims also must meet the standards of Rule 23(b)(3), which requires the plaintiff to show that questions of law or fact common to the members of the class "predominate over any questions affecting only individual members and class [treatment is] superior to other available methods for the fair and efficient adjudication of the controversy."[45]

### a.     Common Questions Predominate with Respect to Antitrust Claims

"In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."[46] "Class-wide issues predominate if resolution of some of the legal or factual questions . . . can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."[47] Unless "it is clear that individual issues will overwhelm the common questions," the predominance requirement is satisfied.[48] The Supreme Court has stated that this test is "readily met in certain cases

---

[44]     *See, e.g.*, Declaration of Kit A. Pierson in Support of Plaintiffs' Opposition to Defendant Penguin Group (USA), Inc.'s Motion to Stay Proceedings and Compel Arbitration, Mar. 30, 2012, ECF No. 112, Exhibits N-GG (submitting declarations from 20 of the class representatives opposing Penguin's motion to compel arbitration).

[45]     *Amchem*, 521 U.S. at 615, 623

[46]     *In re Visa Check*, 280 F.3d at 136 (alterations in original).

[47]     *Moore v. PaineWebber, Inc*., 306 F.3d 1247, 1252 (2d Cir. 2002).

[48]     *In re Playmobil*, 35 F. Supp. 2d at 245.

alleging . . . violations of the antitrust laws,"[49] because "the existence and effect of the conspiracy are the prime issues in the case and are common across the class."[50]

This case is a classic example. The overwhelming focus of plaintiffs' evidence and theory of the case is defendants' conscious commitment to a common scheme to elevate the prices of E-books, and each individual defendant's participation in that scheme. The documents, testimony, and data demonstrate that defendants agreed to raise retail prices for E-books and eliminate retail price competition – and each piece of evidence focuses on the actions of defendants, rather than the actions of any individual class member.[51] Such evidence "will not vary among class members."[52] Proof of defendants' violation of the antitrust laws not only is an element on which common issues predominate, but is itself sufficiently significant to cause common issues to predominate.[53]

        **b.**        **A Class Action Is Superior to Other Forms of Adjudication**

Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The Second Circuit has identified four factors which guide the superiority analysis:

---

[49]   *Amchem*, 521 U.S. at 625.

[50]   *In re Vitamin C*, 279 F.R.D. at 109; *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011) (*en banc*) (predominance requirement satisfied by allegations of a price-fixing scheme and resultant inflated prices), *cert. denied*, *Murray v. Sullivan*, _U.S._, 132 S. Ct. 1876 (2012); *In re NASDAQ*, 169 F.R.D at 518 (collecting cases).

[51]   *See, e.g.*, Class Complaint, ¶¶ 5, 6, 18-19, 70, 79-82 (using public statements of defendants to demonstrate their coordinated activities); ¶¶ 84-89 (using pricing data common to the class to demonstrate injury and damages to the class); ¶¶ 152, 164 (showing meetings between publisher defendants to implement the E-book price fix – evidence common to the class).

[52]   *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 279 (S.D.N.Y. 1999).

[53]   *See, e.g.*, *In re Vitamin C*, 279 F.R.D. at 109.

>    (A) the interest of the members of the class in individually
>    controlling the prosecution or defense of separate actions; (B) the
>    extent and nature of any litigation concerning the controversy
>    already commenced by or against members of the class; (C) the
>    desirability or undesirability of concentrating the litigation of the
>    claims in the particular forum; and (D) the difficulties likely to be
>    encountered in the management of a class action.[54]

The Court should balance, "in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication."[55]

 This case plainly satisfies the four factors outlined in *In re Visa Check*. First, no class member has demonstrated any interest in litigating his or her claims individually. And even if they had such an interest, as the Court recognized in denying Penguin's motion to compel arbitration, the value of an individual claim is too small for individual class members to prosecute separate and expensive actions.[56] As to the second, third and fourth factors, as is clear from the pending joint settlements with 33 State Attorneys General, in their *parens patriae* capacity, and the Penguin and Macmillan defendants, and notwithstanding the State of Minnesota's parallel investigation, plaintiffs have coordinated the litigation and settlement of the actions with these governmental entities.

 The ability to concentrate these claims in a single forum also demonstrates the superiority of a class action. It would be enormously inefficient – for both the Court and the

---

[54]   *In re Visa Check*, 280 F.3d at 133.

[55]   *In re Telectronics Pacing Sys., Inc. Accufix Atrial "J" Leads Prods. Liab. Litig.*, 172 F.R.D. 271, 290 (S.D. Ohio 1997).

[56]   Opinion & Order at 9, June 27, 2012, ECF No. 190 ("Plaintiffs' affidavits demonstrate that it would be economically irrational for any plaintiff to pursue his or her claims through an individual arbitration. Penguin has presented no serious argument to the contrary.").

parties – to fracture this case into countless individual actions.[57] The parties and the Court expended considerable time to arrive at and maintain an expeditious and efficient discovery and trial schedule coordinating the DOJ, Class and State Attorneys General actions, a schedule that would be completely undone were this action stripped of its class nature and individual consumers forced to begin litigation. Even if such a course of action were possible, it would not be desirable, as it would consume substantial judicial and private resources.[58]

## C.    Proposed Class Counsel Will Fairly and Adequately Represent the Class

Pursuant to Rule 23(g), a court must appoint class counsel, who can "fairly and adequately represent the interests of the class."[59] The court evaluates counsel according to (1) their work in identifying and investigating plaintiffs' claims, (2) their experience in similar litigation, (3) their knowledge of applicable law, and (4) the resources they will commit to prosecuting the action.[60]

These criteria are met by the two proposed class counsel firms, Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll PLLC. Both firms are composed of highly experienced counsel with decades of experience litigating antitrust class actions.[61] They have vigorously and effectively prosecuted this case on behalf of the class, conducting a

---

[57]   *See, e.g.*, *In re NASDAQ*, 169 F.R.D. at 527 ("Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would be neither 'fair' nor 'an adjudication' of their claims.").

[58]   *In re Playmobil*, 35 F. Supp. 2d at 249; *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1034 (N.D. Miss. 1993).

[59]   Fed. R. Civ. P. 23(g)(1)(B).

[60]   Fed. R. Civ. P. 23(g)(1)(A)(i); *see Iglesias-Mendoza v. LaBelle Farm, Inc.*, 239 F.R.D. 363, 375 (S.D.N.Y. 2007).

[61]   *See* Application to Appoint Hagens Berman Interim Lead Counsel, Dec. 19, 2011, ECF No. 19; Application of Cohen Milstein Sellers & Toll PLLC Seeking Appointment to Represent Consolidated Putative Class, Dec. 19, 2011, ECF No. 11.

comprehensive pre-filing investigation, preparing and filing detailed amended complaints,

retaining experts to evaluate the economic realities of this case, opposing and defeating

defendants' motions to dismiss and to compel arbitration, and collaborating closely with DOJ

and the Plaintiff States in executing an accelerated discovery schedule, including by taking

several key depositions.

## VIII.   CONCLUSION

For the foregoing reasons, the plaintiffs respectfully request that the Court (1) grant

preliminary approval of the Settlement Agreement with HarperCollins, Hachette and Simon &

Schuster, the Consumer Notice Plan and the Consumer Distribution Plan; (2) grant conditional

class certification for settlement purposes only; and (3) order that notification to eligible

consumers may begin within thirty (30) days of the Court's Order. A proposed Preliminary

Approval Order for the Court's consideration is appended as Exhibit B.

DATED: June 21, 2013                    HAGENS BERMAN SOBOL SHAPIRO LLP


                                        By _____/s/ Jeff D. Friedman_____
                                            JEFF D. FRIEDMAN (*Pro Hac Vice*)

                                        Shana Scarlett (217895) (*Pro Hac Vice*)
                                        HAGENS BERMAN SOBOL SHAPIRO LLP
                                        715 Hearst Avenue, Suite 202
                                        Berkeley, CA 94710
                                        Telephone: (510) 725-3000
                                        Facsimile: (510) 725-3001
                                        jefff@hbsslaw.com
                                        shanas@hbsslaw.com

Steve W. Berman (*Pro Hac Vice*)
George W. Sampson (GS-8973)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
george@hbsslaw.com

Kit A. Pierson (*Pro Hac Vice*)
Jeffrey Dubner (4974341)
COHEN, MILSTEIN, SELLERS & TOLL, PLLC
1100 New York Avenue, N.W.
South Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
KPierson@cohenmilstein.com
jdubner@cohenmilstein.com

Douglas Richards (JR6038)
COHEN, MILSTEIN, SELLERS & TOLL, PLLC
88 Pine Street
14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-774
DRichards@cohenmilstein.com

*Co-Lead Counsel for Plaintiffs*

010260-11  609668 V1

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2013, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

/s/ Jeff D. Friedman
JEFF D. FRIEDMAN

010260-11  609668 V1