# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | No. 11-md-02293 (DLC) |
|---|---|

## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into this 20th day of June, 2013, by and between Defendants HarperCollins, Hachette, and Simon & Schuster and Class Plaintiffs individually and on behalf of a putative Settlement Class of e-books purchasers in the above-captioned Action.[1] This Settlement Agreement is intended by the Settling Parties to fully, finally and forever resolve, discharge, release and settle the Released Claims, upon and subject to the terms and conditions hereof. A separate agreement with the State of Minnesota in the form of an Assurance of Discontinuance pursuant to Minn. Stat. § 8.31, subd. 2(b) is being executed, which incorporates or refers to the consumer payments and notice and distribution plan described herein, and will be filed simultaneously in Minnesota state court ("State of Minnesota Settlement Agreement").

WHEREAS, Class Plaintiffs have alleged, among other things, that Settling Defendants, among other alleged co-conspirators entered into an alleged unlawful agreement to fix, maintain, inflate, or stabilize prices of E-books in violation of federal and state antitrust laws and seeking, among other relief, damages, injunctive relief and costs of litigation;

WHEREAS, Settling Defendants have denied and continue to deny: (1) each and all of the Claims and allegations of wrongdoing made by the Class Plaintiffs and the Settlement Class in the Actions and maintain furthermore that they have meritorious defenses; (2) all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Actions, and Settling Defendants vigorously contend that the factual allegations in the Class Plaintiffs' Complaint relating to them

---

[1] Defined terms used herein have the meaning ascribed to them in the Definition Section I below.

are materially inaccurate; and (3) the allegations that the Class Plaintiffs or any person in the

Settlement Class was harmed by any conduct by Defendants alleged in the Actions or otherwise;

WHEREAS, this Settlement Agreement does not constitute any admission by the Settling

Defendants that the law has been violated or of any issue of fact or law, other than that the

jurisdictional facts as alleged in the Complaint are true;

WHEREAS, the Settling Defendants and Class Plaintiffs have determined it to be in their

best interests to resolve this dispute and enter into this Settlement Agreement;

NOW, THEREFORE, **WITNESSETH:**

## I.   DEFINITIONS

As used herein:

A.   "Liaison States" means the States of Connecticut, Ohio and Texas in their

sovereign capacity and as *parens patriae* on behalf of Consumers residing therein.

B.   "Hachette" means Hachette Book Group, Inc., a Delaware corporation with its

principal place of business in New York, New York, its successors and assigns, and its

subsidiaries, and divisions, including its wholly-owned subsidiary, Hachette Digital, Inc. and its

affiliate Hachette Livre SA.

C.   "HarperCollins" means HarperCollins Publishers L.L.C., a Delaware limited

liability company with its principal place of business in New York, New York, its successors and

assigns, and its subsidiaries, and divisions.

D.   "Simon & Schuster" means Simon & Schuster, Inc., a New York corporation with

its principal place of business in New York, New York, its successors and assigns, and its

subsidiaries, and divisions, including its wholly-owned subsidiary, Simon & Schuster Digital

Sales, Inc.

3

E.      "Settling Defendants" means Hachette, HarperCollins, and Simon & Schuster collectively.

F.      "Settling Parties" means the Settling Defendants and the Class Plaintiffs collectively.

G.      "Complaint" means the Consolidated Amended Class Action Complaint filed on January 20, 2012 in *In re Electronic Books Antitrust Litigation*, No. 11-md-00293 (DLC) (Dkt. No. 47), including all predecessor complaints, related cases, and member cases.

H.      "Action" or "Actions" means *In re Electronic Books Antitrust Litigation*, No. 11-md-00293 (DLC) (Dkt. No. 47), including all predecessor complaints, related cases, and member cases.

I.      "Claims" means all claims, counterclaims, set-offs, demands, actions, rights, liabilities, costs, debts, expenses, attorneys' fees, and causes of action of any type, whether accrued in whole or in part, including, without limitation, past, present, and future claims arising under federal or state antitrust, unfair competition or consumer protections laws, or state common or equitable law, and that were asserted or that could have been asserted, known or unknown, against the Settling Defendants, the Settling Defendants' parent and affiliated entities and their officers, directors, employees and attorneys, arising from the facts, matters, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act set forth or alleged in the Class Plaintiffs' Complaint. For purposes of this paragraph, "affiliated entities" shall mean entities that are currently or were formerly controlling, controlled by or under common control with the Settling Defendants.

J.      "Settlement Class" or "Consumers" means a putative class of natural persons who purchased E-books published by Named Publishers during the period from April 1, 2010 until

4

May 21, 2012, and who resided in Minnesota at the time of their E-book purchase that, subject to Court approval, shall be certified for settlement purposes only as to the Settling Defendants.

K.    "Class Plaintiffs" means Anthony Petru, Marcus Mathis, Christian Gilstrap, Cynthia J. Tyler, Thomas Friedman, Jeremy Sheppeck, Aloysius J. Brown, III, Anne M. Rinaldi, Laura J. Warner, Barbara Heath, Kathleen Linda Pitlock, Kathleen Weiss, Matthew A. Hosking, Diane Urbanec, Ed Macauley, Ronna Hamelin, James L. Nesmith, Lauren Albert, Sue Roberts, Shane S. Davis, Sue Ellen Gordon, Charles Leonard Pelton, Sr., Kimberly Whiteside Brooks, Steven D. Campbell, and Jessica Moyer.[2]

L.    "State of Minnesota" means the State of Minnesota in its sovereign capacity.

M.    "Distribution Plan" means the plan or method of allocation of the Settlement Account among Consumers who have not filed with the Court valid and timely requests for exclusion from this Settlement. The Distribution Plan will be submitted to the Court separate from the Settlement Agreement and is not part of this Settlement Agreement.

N.    "Effective Date" means the date on which this Settlement Agreement becomes effective. The Effective Date shall occur when all of the following conditions have been satisfied, unless one or more of such conditions is modified in a writing signed by the Settling Parties:

---

[2] For the avoidance of doubt, certain of these individuals (Marcus Mathis, Christian Gilstrap, Jeremy Sheppeck, Anne Rinaldi, Barbara Heath, Matthew A. Hosking, Diane Urbanec, Ed Macauley, Ronna Hamelin, Charles Leonard Pelton Sr., Kimberly Whiteside Brooks, Steven D. Campbell, and Jessica Moyer) reside in a State in which an action was already brought by the Attorneys General in their capacity as *parens patriae* under the authority of Section 4C of the Clayton Act, 15 U.S.C. § 15(c) and in which Final Judgment already has been entered. *See The State of Texas et al. v. Hachette Book Group, Inc. et al.*, Case No. 12-cv-6625 (DLC) (Feb. 8, 2013) (ECF No. 71) ("States Action"). Nor did these individuals file valid or timely requests for exclusion from the settlement agreements in connection with the States' Action. Consequently, these individuals are bound by the terms of the settlement agreements and Final Judgment entered in connection with the States' Action and have no remaining claims against HarperCollins, Hachette, or Simon & Schuster.

5

1.      Execution of this Settlement Agreement;

2.      Execution of the State of Minnesota Settlement Agreement.

3.      Entry by the Court of a Preliminary Approval Order (including preliminary certification of the Settlement Class for settlement purposes);

4.      Expiration of the period within which Consumers must exercise their rights to be excluded from the settlement;

5.      Final approval by the Court of the settlement embodied herein.

6.      Entry by the Court of the Final Judgment; and The Final Judgment shall have become Final (as defined in Q, below).

O.      "Escrow Agent" means the entity selected pursuant to Section V below.

P.      "E-book" means an electronically formatted book designed to be read on a computer, a handheld device, or other electronic devices capable of visually displaying E-books. For purposes of this Settlement Agreement, the term E-book does not include (1) an audio book, even if delivered and stored digitally; (2) a standalone specialized software application or "app" sold through an "app store" rather than through an E-book store (*e.g.*, through Apple Inc.'s "App Store" rather than through its "iBookstore" or "iTunes") and not designed to be executed or read by or through a dedicated E-book reading device; or (3) a media file containing an electronically formatted book for which most of the value to Consumers is derived from audio or video content contained in the file that is not included in the print version of the book.

Q.      "Final" means: (1) final affirmance on an appeal of the Final Judgment, the expiration of the time for a petition for, or a denial of, a writ of certiorari to review the Final Judgment and, if certiorari is granted, the date of final affirmance for the Final Judgment following review pursuant to that grant; or (2) final dismissal of any appeal from the Final

6

Judgment or the final dismissal of any proceedings on certiorari to review the Final Judgment; or (3) if no appeal is filed, the time for the filing or noticing of any appeal from the Court's Final Judgment approving the Settlement Agreement has expired (i.e., thirty (30) days after entry of the Final Judgment). Any proceeding or order, or any appeal or petition for a writ of certiorari pertaining solely to the Distribution Plan and/or application for attorneys' fees, costs or expenses, shall not in any way delay or preclude the Final Judgment from becoming Final.

R.      "Final Judgment" means the judgment to be rendered by the Court in this matter, as to the Settling Defendants as described further below.

S.      "Including" means including, but not limited to.

T.      "Named Publishers" means Hachette, HarperCollins, Simon & Schuster, Holtzbrinck Publishers, LLC, d/b/a MacMillan, and Penguin Group (USA), Inc.

U.      "Notice Period" means the period during which notice shall be disseminated to Consumers. The Notice Period shall be a minimum of forty-five (45) days or such other time period set by the Court.

V.      "Notice Plan" means the plan specifying the manner and content of the program whereby Consumers are notified of this Settlement Agreement and informed of their rights to object to or exclude themselves from the settlement. The Notice Plan shall specify the manner in which Consumers are to be notified of this settlement, which shall consist, at a minimum, of direct notice to each Consumer whose e-mail address can be obtained voluntarily from E-book retailers.

W.      "Purchase" means a consumer's acquisition of one or more E-books as a result of a Sale.

X.      "Released Claims" shall mean all Claims as defined in Section VII.

7

Y.     "Releasees" means the Settling Defendants, the Settling Defendants' parent and affiliated entities, and their officers, directors, employees, and attorneys.

Z.     "Sale" means delivery of access to a Consumer to read one or more E-books (purchased alone, or in combination with other goods or services) in exchange for payment; "Sold" means to make or to have made a Sale of an E-book to a Consumer.

AA.     "Settlement Administration Costs" means all customary and reasonable costs to be paid in connection with the administration of this Settlement Agreement, including all reasonable costs and fees incurred (1) in compiling necessary Consumer information for direct notice as well as such notice by publication as may be needed to effectuate adequate notice, (2) in completing administrative tasks, (3) in processing and paying claims, including distributing credits and/or cash to Consumers, (4) for the employment of an Escrow Agent and/or claims administrator, and (5) to secure Court approval of the Settlement agreement, such as expert affidavits.

BB.     "Settlement Cost Account" shall mean the escrow account established by order of the Court on September 17, 2012, for the settlement of *State of Texas, et al. v. Hachette Book Group*, et al., 12-Civ-6625 (DLC) (Dkt. No. 221).

CC.     "Class Counsel" or "Counsel for Class Plaintiffs" means the designated representatives of Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll PLLC.

DD.     "Written Direction" means a written notification directed to the Escrow Agent and/or claims administrator relating to disbursements from the Settlement Account, signed by Class Counsel and counsel for the Settling Defendants. Each Written Direction shall include a certification by Class Counsel and counsel for the Settling Defendants that the instructions in the notification are being made pursuant to the Settlement Agreement.

8

## II.     AGREEMENT

A.      It is stipulated and agreed by and among Class Counsel and the Settling Defendants that, subject to Final Approval by the Court, the litigation initiated by the Complaint and the Released Claims shall be finally and fully compromised, settled and released, upon and subject to the terms and conditions of this Settlement Agreement.

B.      It further is stipulated and agreed by and among Class Counsel and the Settling Defendants that, subject to Final Approval by the Court, the Actions initiated by the Complaint are hereby dismissed with prejudice as to the Settling Defendants.

## III.     MONETARY PAYMENTS

A.      Pursuant to a formula agreed to by the Settling Defendants in a separate agreement, the Settling Defendants agree to pay the sum of $2,119,000 for Consumer compensation for alleged actual losses arising from the acts alleged in the Complaint. The Settling Defendants further agree to pay $731,000 to cover Class Counsel's costs of investigation and litigation and other related costs as well as legal fees. These amounts shall be deposited with the Escrow Agent pursuant to mutually agreeable escrow instructions within ten (10) days of the Court entering the Preliminary Approval Order and together shall constitute the "Settlement Account." These payments by the Settling Defendants shall be the total amount to be paid by the Settling Defendants under this Settlement Agreement or in connection with the Released Claims. The Settling Defendants have also agreed to pay the State of Minnesota $75,000 in the State of Minnesota Settlement and that payment shall be made directly to the State within ten (10) calendar days after the later of (1) the date of approval of the Minnesota Settlement Agreement and (2) the Effective Date of this Agreement.

9

B.      The Settling Defendants previously have each made payments of $750,000 to the Settlement Cost Account established for their settlement of *State of Texas, et al. v. Hachette Book Group, et al*., 12-Civ-6625 (DLC). The Settling Parties understand that sufficient funds remain in the Settlement Cost Account to cover the Settlement Administration Costs and have agreed with the Liaison States that the funds in the Settlement Cost Account may be used for these purposes. The Settling Parties further agree that the terms of the settlement agreement between the Settling Defendants and the Liaison States shall govern (i) the disposition of any funds remaining in the Settlement Cost Account after the payment of all Settlement Administration Costs or, conversely, (ii) the allocation of responsibility for any Settlement Administration Costs that are not covered by the funds in the Settlement Cost Account.

C.      The Settling Defendants warrant that, as of the date of this Settlement Agreement, they are not insolvent, nor will their payments to the Settlement Accounts render them insolvent within the meaning of and/or for the purposes of the United States Bankruptcy Code. If a case is commenced with respect to any of the Settling Defendants under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the payment of the principal amount of the Settlement Account and any accrued interest, or any portion thereof, by or on behalf of any of the Settling Defendants, to be a preference, voidable transfer, fraudulent transfer or similar transaction, and if pursuant to an order of a court of competent jurisdiction monies paid by the Settling Defendants pursuant to this Settlement Agreement are either not delivered or are returned to the Settling Defendants or the trustee, receiver, or conservator appointed by a court in any bankruptcy proceeding with respect to the

10

Settling Defendants, the releases given and judgment entered in favor of the Settling Defendants pursuant to this Settlement Agreement shall be null and void.

D.      The payments hereunder do not constitute nor shall they be treated as payments in lieu of treble damages, fines, penalties, punitive recoveries or forfeitures.

E.      Except as otherwise provided in this Settlement Agreement, upon the Effective Date all remaining interest or right of the Settling Defendants in or to the Settlement Account shall be absolutely and forever extinguished.

## IV.      SETTLEMENT ADMINISTRATION

A.      The Escrow Agent for the Settlement Account shall be determined by Class Counsel, after consultation with the Settling Defendants, by separate written agreement. Other than maintaining an account to meet short-term obligations, the Escrow Agent shall invest the funds in the Settlement Account in obligations of, or obligations guaranteed by, the United States of America or any of its departments or agencies, to obtain the highest available return on investment, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then current market rates. The Escrow Agent shall bear all risks related to the investment of the escrow funds.

B.      The Escrow Agent shall not disburse the funds in the Settlement Account except by an order of the Court or pursuant to Written Direction.

C.      All funds held by the Escrow Agent shall be deemed to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until the funds shall be distributed pursuant to the Settlement Agreement and/or further order(s) of the Court.

11

D.      In addition to the Escrow Agent, Class Counsel, after consultation with the Settling Defendants, may employ a claims administrator in order to facilitate the provision of notice and to distribute and/or administer the distribution of the funds in the Settlement Account in accordance with the terms of this Settlement Agreement.

E.      If this Settlement Agreement is not approved or is terminated, canceled, voided or fails to become effective, all monies paid into the Settlement Account by each of the Settling Defendants, including any interest accrued thereon, shall be refunded to each of the Settling Defendants. In such event, the refund shall occur within twenty (20) business days of the cancellation, termination or voiding. In the case of disapproval by the Court, refund shall occur within five (5) business days of the Court's decision becoming Final, as defined in Section I.Q.

F.      If this Settlement Agreement is not approved or fails to become effective, the Class shall retain full rights to assert any and all causes of action against each of the Settling Defendants, including the right to amend the Complaint to include additional allegations, claims, causes of action and requests for relief and the Settling Defendants shall retain any and all defenses thereto.

G.      <u>Tax Treatment of Settlement Accounts</u>

1.      The Settling Parties and Escrow Agent agree to treat the Settlement Account as being, at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1(a). In addition, the Escrow Agent and, as required, Settling Parties shall jointly and timely make such elections as necessary or advisable to carry out the provisions of this Section IV.F, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)(2)(ii)), back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulation. It shall be the responsibility of the Escrow Agent

12

to timely and properly prepare and deliver the necessary documentation for signature by all necessary Settling Parties, and thereafter to cause the appropriate filing to occur.

2.      For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k) and (l)). Such returns (as well as the election described in Section IV.G.1) shall be consistent with this Section IV.G and in all events shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Account shall be paid out of the Settlement Account.

3.      All taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Account, including any taxes that may be imposed upon the Settling Defendants with respect to any income earned by the Settlement Account for any period during which the Settlement Account does not qualify as a "qualified settlement fund" for federal, state, or local income tax purposes ("Taxes") shall be paid out of the Settlement Account and in all events the Settling Defendants and their insurers shall have no liability or responsibility for such Taxes or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority in respect of such Taxes. Taxes shall be treated as, and considered to be, part of the Settlement Administration Costs and shall be timely paid by the Escrow Agent out of the Settlement Cost Account without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Class Plaintiffs any funds necessary to pay such amounts including the establishment of adequate reserves for any Taxes (as well as any amounts

13

that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)); the Settling Defendants and their insurers are not responsible and shall have no liability therefore or for any reporting requirements that may relate thereto. The Settling Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section IV.G. For purposes of this Section IV.G, references to the Settlement Account shall include the Settlement Account and any earnings thereon.

## V.    SETTLEMENT DISBURSEMENTS

A.    Subject to the terms of this Agreement and any order(s) of the Court, the Settlement Account shall be applied as follows: (1)  to pay any Fee and Expense Awards that are allowed by the Court; and (2) to distribute the balance of the Settlement Account to members of the Settlement Class who have not filed with the Court valid and timely requests for exclusion from this settlement, as allowed by the Agreement, any Distribution Plan, or order of the Court.

B.    Distribution to Consumers:

1.    Class Counsel will strive to devise a Distribution Plan that will maximize direct Consumer recovery, minimize any residue, and minimize administrative expenses consistent with the provision of fair, adequate and reasonable notice to Consumers. The Distribution Plan shall be devised by Class Counsel, after consultation with the Settling Defendants and Liaison States, and shall, at a minimum and to the extent practicable, provide Consumers with the option of receiving payment in the form of a check or a credit for the purchase of either print books or E-books. The Distribution Plan shall provide that credits may be used for any print book or E-book purchase, regardless of publisher. Unless otherwise ordered by the Court, credits may be applied to purchases for a period of one (1) year from the date they

14

are made available to Consumers. The Distribution Plan may also contain provisions for multiple

distributions, or a single, later distribution to Consumers if appropriate.

2.      Any amount remaining in the Settlement Account after redemption of all

cash and credits within the time period approved by the Court shall be distributed pursuant to

subsequent consumer distributions, if feasible or, if approved by the Court will be distributed by

Class Counsel for *cy pres* purposes to one or more charitable organizations whose purposes

relate to reading, literacy, or access by the public to electronic books.

3.      The Settling Parties agree and understand that any proposed Distribution

Plan is to be considered by the Court separately from the Court's consideration of the fairness,

reasonableness and adequacy of the settlement set forth in the Settlement Agreement, and any

order or proceedings relating to the Distribution Plan shall not operate to terminate or cancel this

Settlement Agreement or affect the finality of the Court's Final Judgment approving the

Settlement Agreement and the settlement set forth herein, or any other orders entered pursuant to

the Settlement Agreement.

4.      The Distribution Plan shall be submitted to the Court for approval in

connection with Class Counsel's Motion for Preliminary Approval of the Settlement and

Preliminary Certification of a Class for Purposes of Settlement ("Motion for Preliminary

Approval").

C.      Distribution of Compensation to Class Counsel: Subject to Court approval, Class

Counsel shall be reimbursed and paid solely out of the Settlement Account for their expenses

and/or attorneys' fees. Settling Defendants agree not to object to a Fee and Expense Award up to

$731,000 on behalf of Class Counsel, but this Settlement shall not be contingent upon the award

15

of any particular amounts and under no circumstances shall Settling Defendants be responsible for the payment of any amounts other than those set forth in Section III.

## VI.    NOTICE AND SETTLEMENT HEARING

A.    Class Counsel shall file the Motion for Preliminary Approval with the Court by June 21, 2013. The motion shall request entry of a preliminary approval order (the "Preliminary Approval Order"). Such Preliminary Approval Order shall include, among other things: (1) the preliminary approval of the settlement set forth in this Settlement Agreement as fair, reasonable and adequate and in the best interests of Consumers; (2) the preliminary certification of a Settlement Class for purposes of settlement; (3) approval of a Notice Plan, including when the Notice shall be disseminated and the length of the Notice Period, (4) approval of a Distribution Plan that includes the time period during which eligible Consumers can object, exclude themselves, and/or obtain credits and/or a check, and (5) a schedule for a hearing by the Court after notice is given (the "Settlement Hearing") to approve the settlement of the litigation initiated by the Complaint, as set forth herein. At least five (5) days prior to filing their Motion for Preliminary Approval, Class Counsel shall provide a copy of such motion (including all exhibits and attachments of such motion) to the Settling Defendants for review and comment.

B.    Class Counsel will provide the Settling Defendants a substantially final copy of the Notice Plan, including the Notice, at least five (5) business days prior to filing the Motion for Preliminary Approval.

C.    Class Counsel shall disseminate Notice of the Settlement Agreement to potentially affected Consumers as soon as practicable after entry of the Preliminary Approval Order. The Settling Parties contemplate a Notice Period of at least forty-five (45) days, unless another time period is set by the Court.

16

D.      Within thirty (30) days following the conclusion of the Notice Period, Class

Counsel shall file with this Court a motion seeking entry of a Final Approval Order and

Judgment: (1) fully and finally approving the Settlement as fair, reasonable and adequate;

(2) finding that the notice given to the Class constitutes the best notice practicable under the

circumstances and complies in all respects with the requirements of Rule 23 of the Federal Rules

of Civil Procedure and due process; (3) directing that the Actions be dismissed with prejudice as

to Settling Defendants and, except as provided for herein, without costs; (4) discharging and

releasing the Releasees from all Released Claims; (5) permanently barring and enjoining the

institution and prosecution, by Class Plaintiffs and members of the Settlement Class, of any other

action against the Releasees in any court asserting the Released Claims; (6) determining pursuant

to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing entry of a final

judgment as to Settling Defendants; and (7) containing such other and further provisions

consistent with the terms of this Agreement to which the parties expressly consent in writing.

E.      At the Settlement Hearing, Class Counsel also will request that the Court approve

their application for a Fee and Expense Award to be paid from the Settlement Account.

## VII.    RELEASED CLAIMS

A.      In consideration of the monetary provisions contained in this Settlement

Agreement, each Class Plaintiff and member of the Settlement Class who did not timely file with

the Court a valid request for exclusion from this settlement will be deemed, upon the Effective

Date, to have (and by operation of the Final Judgment shall have), fully, finally, and forever

released the Releasees from all Claims, known or unknown, foreseen or unforeseen, that were

17

asserted or could have been asserted against Settling Defendants. The Final Judgment shall be deemed *res judicata* as to any such released Claim.

B.      The Settling Parties expressly agree that they do not intend this Settlement Agreement nor any documents executed or submitted pursuant to this Settlement Agreement to be construed as a release or otherwise affect any rights Class Plaintiffs have or may have against any other entity whosoever, including Holtzbrinck Publishers, LLC, d/b/a MacMillan, Penguin Group (USA), Inc., Apple, Inc., or any of their parents, affiliated entities, officers, directors, employees, or attorneys. The Final Judgment approving this Settlement Agreement shall include a provision that this Settlement Agreement and anything done pursuant thereto shall not constitute a release except as to Releasees, and the Class Plaintiffs and Consumers reserve their rights as aforesaid.

C.      To the fullest extent permitted by law, the Settling Parties each expressly waive any right or benefit available to them under Section 1542 of the California Civil Code, which provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor," and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to Section 1542 of the California Civil Code or that otherwise may limit the extent or effect of the release.

## VIII.   COOPERATION AND IMPLEMENTATION

A.      The Settling Parties, and their respective counsel, agree to cooperate fully to implement the terms and conditions of this Settlement Agreement.

18

1727988.1

B.      This Settlement Agreement shall not be used or construed by any person as an admission of liability by the Settling Defendants to any party or person, or be deemed evidence of any violation of any statute or law or admission of any liability or wrongdoing by the Settling Defendants or of the truth of any of the claims or allegations contained in the Complaint.

## IX.      AGREEMENT VOIDABLE

A.      This Settlement Agreement shall only be voidable pursuant to this Section IX.

B.      If, during the Notice Period, members of the Settlement Class who otherwise would be represented by Class Counsel have filed with the Court valid and timely requests for exclusion from this settlement, Class Counsel shall promptly provide the Settling Defendants with all the requests for exclusion. Each of the Settling Defendants has the option to withdraw from this Settlement Agreement if the total dollar value of the exclusions from the Settlement Class exceeds 10% of the amount of the settlement to be distributed to Consumers pursuant to this Settlement Agreement. The Settling Defendants must exercise their options to withdraw from this Settlement Agreement, as set forth in this Paragraph, no later than ten (10) business days after receiving information regarding the total number of exclusions from this settlement. The withdrawal of one of Settling Defendants shall have no effect on the Settlement Agreement as to other Settling Defendants, provided, however, that any payments or other obligations herein will be reduced or adjusted accordingly to reflect any such withdrawal based on the dollar amount each Settling Defendant has agreed to contribute to this settlement.

C.      This Agreement is void if the settlement embodied herein (including all related motion papers relating to preliminary or final approvals) is not approved by the Court.

## X.      BENEFIT AND BINDING EFFECT

A.      The terms of this Settlement Agreement shall be binding on, and shall inure to the benefit of the Settling Parties and their successors. The Settling Parties expressly disclaim any intention to create rights under this Settlement Agreement which may be enforced by any other person under any circumstances whatsoever.

## XI.      MISCELLANEOUS

A.      The Settling Defendants may file the Settlement Agreement and/or the Final Judgment in any action that may be brought against it in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment, bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

B.      Class Counsel are expressly authorized by Class Plaintiffs and the State of Minnesota to take all appropriate action required or permitted to be taken pursuant to this Settlement Agreement to effectuate its terms.

C.      Each counsel or other person executing the Settlement Agreement or any of its Attachments on behalf of any party hereto warrants that such person has full authority to do so.

D.      This Settlement Agreement contains the entire agreement and understanding of the Settling Parties and supersedes any prior agreements or understandings. There are no additional promises or terms of this Settlement Agreement other than those contained herein. This Settlement Agreement shall not be modified except in writing signed by Class Counsel and counsel for the Settling Defendants or by their authorized representatives.

E.      All dates and time periods in this Settlement Agreement shall be calculated pursuant to the Federal Rules of Civil Procedure. All such dates and time periods may be

20

modified if mutually agreed upon, in writing, signed by Class Counsel and counsel for the Settling Defendants or by their authorized representatives.

      F.      The Settlement Agreement shall be deemed to have been mutually prepared by the Settling Parties hereto and shall not be construed against any of them solely by reason of authorship.

      G.      The captions contained in this Settlement Agreement are inserted only as a matter of convenience and in no way define, limit, extend, or describe the scope of this Settlement Agreement or the intent of any provision hereof.

      H.      This Settlement Agreement may be executed in one or more counterparts. Scanned signatures, digital signatures or signatures received by facsimile shall be treated the same as originals for the Settlement Agreement and any written, agreed modification thereof. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

      I.      The Settlement Agreement and any related documents shall be subject to, governed by and construed, interpreted and enforced pursuant to the laws of the State of New York.

      J.      The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Settlement Agreement and the Settling Parties hereby submit to the exclusive jurisdiction of the Court for purposes of implementing and enforcing this Settlement Agreement.

      K.      Any and all notices, requests, consents, directives, or communications by any party intended for any other party shall be in writing and shall, unless expressly provided otherwise herein, be given personally, by express courier, or by postage prepaid mail, or by

21

facsimile or electronic transmission followed by postage prepaid mail, and shall be addressed as

follows:

> For Class Plaintiffs and the State of Minnesota
> Jeff Friedman
> Hagens Berman Sobol Shapiro LLP
> 1918 Eighth Avenue, Suite 3300
> Seattle, WA 98101
>
> Kit A. Pierson
> Cohen Milstein Sellers & Toll PLLC
> 1100 New York Avenue NW
> Suite 500, West Tower
> Washington, D.C. 20005

For HarperCollins:

> Clifford H. Aronson, Esq.
> Skadden, Arps, Slate, Meagher & Flom
> 4 Times Square
> New York, NY 10036-6522

For Hachette:

> Paul Yde, Esq.
> Freshfields Bruckhaus Deringer US LLP
> 701 Pennsylvania Avenue, NW
> Suite 600
> Washington, DC 20004

For Simon & Schuster:

> Yehudah L. Buchweitz, Esq.
> Weil Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, New York 10153-0119

Any one of the Settling Parties may, from time to time, change the address to which such notices,

requests, consents, directives, or communications are to be delivered, by giving the other Settling

Parties prior written notice of the changed address, in the manner herein above provided, ten (10)

calendar days before the change is effective.

**Agreed to by:**

**HarperCollins**

_____

Clifford H. Aronson, Esq.
Skadden, Arps, Slate, Meagher & Flom
4 Times Square
New York, NY 10036-6522

**Hachette**

_____

Paul Yde, Esq.
Freshfields Bruckhaus Deringer US LLP
701 Pennsylvania Avenue, NW
Suite 600
Washington, DC 20004

**Simon & Schuster**

_____

Yehudah L. Buchweitz, Esq.
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153-0119

**Class Plaintiffs**

_____

Jeff Friedman
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101

Kit A. Pierson
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW
Suite 500, West Tower
Washington, D.C. 20005

23

**Agreed to by:**

**HarperCollins**

Clifford H. Aronson, Esq. + *Paul M. Eckles, Esq.*
Skadden, Arps, Slate, Meagher & Flom
4 Times Square
New York, NY 10036-6522

**Hachette**

Paul Yde, Esq.
Freshfields Bruckhaus Deringer US LLP
701 Pennsylvania Avenue, NW
Suite 600
Washington, DC 20004

**Simon & Schuster**

Yehudah L. Buchweitz, Esq.
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153-0119

**Class Plaintiffs**

Jeff Friedman
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101

Kit A. Pierson
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW
Suite 500, West Tower
Washington, D.C. 20005

23

**Agreed to by:**

**HarperCollins**

_____

Clifford H. Aronson, Esq.
Skadden, Arps, Slate, Meagher & Flom
4 Times Square
New York, NY 10036-6522

**Hachette**

_____

Paul Yde, Esq.
Freshfields Bruckhaus Deringer US LLP
701 Pennsylvania Avenue, NW
Suite 600
Washington, DC 20004

**Simon & Schuster**

_____

Yehudah L. Buchweitz, Esq.
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153-0119

**Class Plaintiffs**

_____

Jeff Friedman
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101

Kit A. Pierson
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW
Suite 500, West Tower
Washington, D.C. 20005

23

1727988.1