UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

This Document Relates to:

| | |
|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | No. 11-md-02293 (DLC) ECF Case |
| THE STATE OF TEXAS, et al., Plaintiffs, v. PENGUIN GROUP (USA) INC., et al., | Civil Action No.12-cv-03394 |

12/9/2013

## [PROPOSED] ORDER AND STIPULATED INJUNCTION

WHEREAS, Plaintiff States[1] filed their Second Amended Complaint on May 11, 2012 and Settlement Class[2] filed its Complaint on January 20, 2012, with both Complaints alleging that Macmillan (as hereinafter defined) and others conspired to raise retail prices of E-books in violation of Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1; and Plaintiff States and Settlement Class ("Plaintiffs") and Macmillan, by their respective attorneys, have consented to the entry of this Order and Stipulated Injunction without trial or adjudication of any issue of fact or law;

AND WHEREAS, this Order and Stipulated Injunction does not constitute any admission

---

[1] "Plaintiff States" are the States and Commonwealths of Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Missouri, Nebraska, New Mexico, New York, North Dakota, Ohio, Pennsylvania, Puerto Rico, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

[2] "Settlement Class" includes all Consumers who resided in any State, Commonwealth or Territory of the United States, other than Plaintiff States, at the time of their E-book purchase.

by Macmillan that the law has been violated or of any issue of fact or law, other than that the jurisdictional facts as alleged in the Complaints are true;

AND WHEREAS, this Order and Stipulated Injunction shall be modified to take into account any changes, if any, made to the language of the United States Department of Justice's Final Judgment, as entered in *United States of America v. Apple, Inc., et al.*, Case No. 12-cv-2826, in the United States District Court for the Southern District of New York on August 12, 2013 (the "DOJ Final Judgment") so that the requirements of this Order and Stipulated Injunction are in substance the same as the DOJ Final Judgment.

AND WHEREAS, Macmillan agrees to be bound by the provisions of this Order and Stipulated Injunction pending its approval by the Court;

AND WHEREAS, Plaintiffs require Macmillan to agree to undertake certain actions and refrain from certain conduct for the purpose of remedying the loss of competition alleged in the Complaints;

AND WHEREAS, Macmillan has represented to Plaintiffs that the actions and conduct restrictions can and will be undertaken and that it will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of Macmillan, it is ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

This Court has jurisdiction over the subject matter of this action and over Macmillan. The Complaints state a claim upon which relief may be granted against Macmillan under Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1.

## II.  DEFINITIONS

As used in this Order and Stipulated Injunction:

A.  "Agency Agreement" means an agreement between an E-book Publisher and an E-book Retailer under which the E-book Publisher Sells E-books to consumers through the E-book Retailer, which under the agreement acts as an agent of the E-book Publisher and is paid a commission in connection with the Sale of one or more of the E-book Publisher's E-books.

B.  "Apple" means Apple, Inc., a California corporation with its principal place of business in Cupertino, California, its successors and assigns, and its parents, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.  "Counsel for Settlement Class" means Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll PLLC.

D.  "E-book" means an electronically formatted book designed to be read on a computer, a handheld device, or other electronic devices capable of visually displaying E-books. For purposes of this Order and Stipulated Injunction, the term E-book does not include (1) an audio book, even if delivered and stored digitally; (2) a standalone specialized software application or "app" sold through an "app store" rather than through an e-book store (*e.g.*, through Apple's "App Store" rather than through its "iBookstore" or "iTunes") and not designed to be executed or read by or through a dedicated E-book reading device; (3) a media file containing an electronically formatted book for which most of the value to consumers is derived from audio or video content contained in the file that is not included in the print version of the book; or (4) the electronically formatted version of a book marketed solely for use in connection with academic coursework.

E.  "E-book Publisher" means any Person that, by virtue of a contract or other relationship with an E-book's author or other rights holder, owns or controls the necessary copyright or other authority (or asserts such ownership or control) over any E-book sufficient to distribute the E-book within the United States to E-book Retailers and to permit such E-book Retailers to Sell the E-book to consumers in the United States. Named Publishers are E-book Publishers. For purposes of this Order and Stipulated Injunction, E-book Retailers are not E-book Publishers.

F.  "E-book Retailer" means any Person that lawfully Sells (or seeks to lawfully Sell) E-books to consumers in the United States, or through which a Named Publisher, under an Agency Agreement, Sells E-books to consumers. For purposes of this Order and Stipulated Injunction, Named Publishers and all other Persons whose primary business is book publishing are not E-book Retailers.

G.  "Hachette" means Hachette Book Group, Inc., a Delaware corporation with its principal place of business in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, and partnerships, and their directors, officers, managers, agents, and employees.

H.  "HarperCollins" means HarperCollins Publishers L.L.C., a Delaware limited liability company with its principal place of business in New York, New York, its successors and assigns, and its subsidiaries, divisions, groups, and partnerships, and their directors, officers, managers, agents, and employees.

I.  "Including" means including, but not limited to.

J.  "Liaison Counsel for Plaintiff States" means the designated representatives for the Attorneys General of the States of Texas, Connecticut, and Ohio. All documents or information

received by Liaison Counsel for Plaintiff States pursuant to this Order may be shared with all Plaintiff States pursuant to confidentiality provisions contained herein.

K. "Macmillan" means (1) Holtzbrinck Publishers, LLC d/b/a Macmillan, a New York limited liability company with its principal place of business in New York, New York ("Holtzbrinck"), its successors and assigns, and its subsidiaries, divisions, groups, and partnerships, and their directors, officers, managers, agents, and employees; and (2) Verlagsgruppe Georg von Holtzbrinck GmbH ("VGvH"), a German corporation with its principal place of business in Stuttgart, Germany, its successors and assigns, and its divisions, groups, and partnerships, and their directors, officers, managers, agents, and employees. Where this Order and Stipulated Injunction imposes an obligation on an E-Book Publisher to engage in or refrain from engaging in certain conduct, that obligation shall apply to Macmillan individually and to any joint venture or other business arrangement established by Macmillan and one or more Named Publishers.

L. "Named Publishers" means Hachette, HarperCollins, Macmillan, Penguin, and Simon & Schuster.

M. "Penguin" means (1) Penguin Group (USA), Inc., a Delaware corporation with its principal place of business in New York, New York, (2) The Penguin Group, a division of U.K. corporation Pearson plc with its principal place of business in London, England; (3) The Penguin Publishing Company Ltd, a company registered in England and Wales with its principal place of business in London, England; and (4) Dorling Kindersley Holdings Limited, a company registered in England and Wales with its principal place of business in London, England; and each of their respective successors and assigns (expressly including Penguin Random House, a joint venture by and between Pearson plc and Bertelsmann SE & Co. KGaA, and any similar

joint venture between Penguin and Random House Inc.); each of their respective subsidiaries, divisions, groups, and partnerships; and each of their respective directors, officers, managers, agents and employees.

N. "Person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office, or other business or legal entity, whether private or governmental.

O. "Plaintiff States" means the States and Commonwealths of Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Missouri, Nebraska, New Mexico, New York, North Dakota, Ohio, Pennsylvania, Puerto Rico, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

P. "Price MFN" means a term in an agreement between an E-book Publisher and an E-book Retailer under which:

1. the Retail Price at which an E-book Retailer or, under an Agency Agreement, an E-book Publisher Sells one or more E-books to consumers depends in any way on the Retail Price, or discounts from the Retail Price, at which any other E-book Retailer or the E-book Publisher, under an Agency Agreement, through any other E-book Retailer Sells the same E-book(s) to consumers;

2. the Wholesale Price at which the E-book Publisher Sells one or more E-books to that E-book Retailer for Sale to consumers depends in any way on the Wholesale Price at which the E-book Publisher Sells the same E-book(s) to any other E-book Retailer for Sale to consumers; or

3. the revenue share or commission that the E-book Retailer receives from the E-book Publisher in connection with the Sale of one or more E-books to consumers depends in

any way on the revenue share or commission that (a) any other E-book Retailer receives from the E-book Publisher in connection with the Sale of the same E-book(s) to consumers, or (b) that the E-book Retailer receives from any other E-book Publisher in connection with the Sale of one or more of the other E-book Publisher's E-books.

For purposes of this Final Judgment, it will not constitute a Price MFN under subsection 3 of this definition if Macmillan agrees, at the request of an E-book Retailer, to meet more favorable pricing, discounts, or allowances offered to the E-book Retailer by another E-book Publisher for the period during which the other E-book Publisher provides that additional compensation, so long as that agreement is not or does not result from a pre-existing agreement that requires Macmillan to meet all requests by the E-book Retailer for more favorable pricing within the terms of the agreement.

Q. "Purchase" means a consumer's acquisition of one or more E-books as a result of a Sale.

R. "Retail Price" means the price at which an E-book Retailer or, under an Agency Agreement, an E-book Publisher Sells an E-book to a consumer.

S. "Sale" means delivery of access to a consumer to read one or more E-books (purchased alone, or in combination with other goods or services) in exchange for payment; "Sell" or "Sold" means to make or to have made a Sale of an E-book to a consumer.

T. "Settlement Class" means all Consumers who resided in any State, Commonwealth or Territory of the United States, other than Plaintiff States, at the time of their E-book purchase.

U. "Simon & Schuster" means Simon & Schuster, Inc., a New York corporation with its principal place of business in New York, New York, its successors and assigns, and its

subsidiaries, divisions, groups, and partnerships, and their directors, officers, managers, agents, and employees.

V.   "Wholesale Price" means (1) the net amount, after any discounts or other adjustments (not including promotional allowances subject to Section 2(d) of the Robinson-Patman Act, 15 U.S.C. § 13(d)), that an E-book Retailer pays to an E-book Publisher for an E-book that the E-book Retailer Sells to consumers; or (2) the Retail Price at which an E-book Publisher, under an Agency Agreement, Sells an E-book to consumers through an E-book Retailer minus the commission or other payment that E-book Publisher pays to the E-book Retailer in connection with or that is reasonably allocated to that Sale.

### III.   APPLICABILITY

This Order and Stipulated Injunction applies to Holtzbrinck or VGvH, acting individually or in concert, and all other Persons in active concert or participation with Holtzbrinck or VGvH who receive actual notice of this Order and Stipulated Injunction by personal service or otherwise.

### IV.   REQUIRED CONDUCT

A.   For each E-book Retailer to whom Macmillan gave notice (pursuant to Section IV.A of the DOJ Final Judgment) that Holtzbrinck will no longer enforce any term or terms in any agreement that restrict, limit, or impede the E-book Retailer's ability to set, alter or reduce the Retail Price of any E-book or to offer price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books, except to the extent consistent with Section VI.B of this Order and Stipulated Injunction, Macmillan shall confirm to Liaison Counsel for Plaintiff States the name of the E-book Retailer and the date on which it gave notice. Macmillan will provide such confirmation within seven days after entry of this Order and Stipulated Injunction.

B. For each agreement between Holtzbrinck and an E-book Retailer that contains a Price MFN, Holtzbrinck shall confirm to Liaison Counsel for Plaintiff States the dates on which it notified the E-book Retailer that the E-book Retailer may terminate the agreement with thirty-days' notice and shall, thirty days after the E-book Retailer provides such notice, release the E-book Retailer from the agreement. Holtzbrinck will provide such confirmation within seven days after entry of this Order and Stipulated Injunction. For each such agreement that the E-book Retailer has not terminated within thirty days after entry of this Order and Stipulated Injunction, Holtzbrinck shall, as soon as permitted under the agreement, take each step required under the agreement to cause the agreement to be terminated and not renewed or extended.

C. Holtzbrinck shall notify the Liaison Counsel for Plaintiff States in writing at least sixty days in advance of the formation or material modification of any joint venture or other business arrangement relating to the Sale, development, or promotion of E-books in the United States in which Holtzbrinck and at least one other E-book Publisher (including another Named Publisher) are participants or partial or complete owners. Such notice shall describe the joint venture or other business arrangement, identify all E-book Publishers that are parties to it, and attach the most recent version or draft of the agreement, contract, or other document(s) formalizing the joint venture or other business arrangement. Within thirty days after Holtzbrinck provides notification of the joint venture or business arrangement, the Plaintiff States may make a written request for additional information. If the Plaintiff States make such a request, Holtzbrinck shall not proceed with the planned formation or material modification of the joint venture or business arrangement until thirty days after substantially complying with such additional request(s) for information. The failure of the Plaintiff States to request additional information or to bring an action under the antitrust laws to challenge the formation or material modification of the joint

venture shall neither give rise to any inference of lawfulness nor limit in any way the right of the Plaintiff States to investigate the formation, material modification, or any other aspects or activities of the joint venture or business arrangement and to bring actions to prevent or restrain violations of the antitrust laws.

The notification requirements of this Section IV.C shall not apply to ordinary course business arrangements between Holtzbrinck and another E-book Publisher (not a Named Publisher) that do not relate to the Sale of E-books to consumers, or to business arrangements the primary or predominant purpose or focus of which involves: (i) E-book Publishers co-publishing one or more specifically identified E-book titles or a particular author's E-books; (ii) Holtzbrinck licensing to or from another E-book Publisher the publishing rights to one or more specifically identified E-book titles or a particular author's E-books; (iii) Holtzbrinck providing technology services to or receiving technology services from another E-book Publisher (not a Named Publisher) or licensing rights in technology to or from another E-book Publisher; or (iv) Holtzbrinck distributing E-books published by another E-book Publisher (not a Named Publisher).

D.   Macmillan shall furnish to the Liaison Counsel for Plaintiff States (1) within seven days after entry of this Order and Stipulated Injunction, one complete copy of each agreement, executed, renewed, or extended on or after January 1, 2012, between Holtzbrinck and any E-book Retailer relating to the Sale of E-books, and, (2) thereafter, on a quarterly basis, at the same times that such agreements are provided to the DOJ under the DOJ Final Judgment, each such agreement executed, renewed, or extended since Macmillan's previous submission of agreements to the Plaintiffs.

**V.   PROHIBITED CONDUCT**

A.   Until December 18, 2014, Holtzbrinck shall not restrict, limit, or impede an E-book Retailer's ability to set, alter, or reduce the Retail Price of any E-book or to offer price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books.

B.   Until December 18, 2014, Holtzbrinck shall not enter into any agreement with any E-book Retailer that restricts, limits, or impedes the E-book Retailer from setting, altering, or reducing the Retail Price of one or more E-books, or from offering price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books.

C.   Holtzbrinck shall not enter into any agreement with an E-book Retailer relating to the Sale of E-books that contains a Price MFN.

D.   Macmillan shall not retaliate against, or urge any other E-book Publisher or E-book Retailer to retaliate against, an E-book Retailer for engaging in any activity that Holtzbrinck is prohibited by Sections V.A, V.B, and VI.B.2 of this Order and Stipulated Injunction from restricting, limiting, or impeding in any agreement with an E-book Retailer. After the expiration of prohibitions in Sections V.A and V.B of this Order and Stipulated Injunction, this Section V.D shall not prohibit Holtzbrinck from unilaterally entering into or enforcing any agreement with an E-book Retailer that restricts, limits, or impedes the E-book Retailer from setting, altering, or reducing the Retail Price of any of Holtzbrinck's E-books or from offering price discounts or any other form of promotions to encourage consumers to Purchase any of Holtzbrinck's E-books.

E.   Holtzbrinck shall not enter into or enforce any agreement, arrangement, understanding, plan, program, combination, or conspiracy with any E-book Publisher (including another Named Publisher) to raise, stabilize, fix, set, or coordinate the Retail Price or Wholesale

Price of any E-book or fix, set, or coordinate any term or condition relating to the Sale of E-books.

This Section V.E shall not prohibit Holtzbrinck from entering into and enforcing agreements relating to the distribution of another E-book Publisher's E-books (not including the E-books of another Named Publisher) or to the co-publication with another E-book Publisher of specifically identified E-book titles or a particular author's E-books, or from participating in output-enhancing industry standard-setting activities relating to E-book security or technology.

F.  Holtzbrinck (and each officer of VGvH who exercises direct control over Holtzbrinck's business decisions or strategies) shall not convey or otherwise communicate, directly or indirectly (including by communicating indirectly through an E-book Retailer with the intent that the E-book Retailer convey information from the communication to another E-book Publisher or knowledge that it is likely to do so), to any other E-book Publisher (including to an officer of a parent of a Named Publisher) any competitively sensitive information, including:

    1.  its business plans or strategies;

    2.  its past, present, or future wholesale or retail prices or pricing strategies for books sold in any format (*e.g.*, print books, E-books, or audio books);

    3.  any terms in its agreement(s) with any retailer of books Sold in any format; or

    4.  any terms in its agreement(s) with any author.

This Section V.F shall not prohibit Holtzbrinck from communicating (a) in a manner and through media consistent with common and reasonable industry practice, the cover prices or wholesale or retail prices of books sold in any format to potential purchasers of those books; or

(b) information Holtzbrinck needs to communicate in connection with (i) its enforcement or assignment of its intellectual property or contract rights, (ii) a contemplated merger, acquisition, or purchase or sale of assets, (iii) its distribution of another E-book Publisher's E-books, or (iv) a business arrangement under which E-book Publishers agree to co-publish, or an E-book Publisher agrees to license to another E-book Publisher the publishing rights to, one or more specifically identified E-book titles or a particular author's E-books.

## VI. PERMITTED CONDUCT

A.   Nothing in this Order and Stipulated Injunction shall prohibit Macmillan unilaterally from compensating a retailer, including an E-book Retailer, for valuable marketing or other promotional services rendered.

B.   Notwithstanding Sections V.A and V.B of this Order and Stipulated Injunction, Holtzbrinck may enter into Agency Agreements with E-book Retailers under which the aggregate dollar value of the price discounts or any other form of promotions to encourage consumers to Purchase one or more of Holtzbrinck's E-books (as opposed to advertising or promotions engaged in by the E-book Retailer not specifically tied or directed to Holtzbrinck's E-books) is restricted; *provided that* (1) such agreed restriction shall not interfere with the E-book Retailer's ability to reduce the final price paid by consumers to purchase Holtzbrinck's E-books by an aggregate amount equal to the total commissions Holtzbrinck pays to the E-book Retailer, over a period of at least one year, in connection with the Sale of Holtzbrinck's E-books to consumers; (2) Holtzbrinck shall not restrict, limit, or impede the E-book Retailer's use of the agreed funds to offer price discounts or any other form of promotions to encourage consumers to Purchase one or more E-books; and (3) the method of accounting for the E-book Retailer's promotional activity does not restrict, limit, or impede the E-book Retailer from engaging in any

form of retail activity or promotion.

### VII.   ANTITRUST COMPLIANCE

Within thirty days after entry of the DOJ Final Judgment, Macmillan shall have designated its general counsel or chief legal officer, or an employee reporting directly to its general counsel or chief legal officer, as Antitrust Compliance Officer with responsibility for ensuring Macmillan's compliance with this Order and Stipulated Injunction. Within thirty-seven days of the entry of the DOJ Final Judgment, Macmillan will confirm to Liaison for Plaintiff States that this designation has been made. The Antitrust Compliance Officer shall be responsible for the following:

A.   furnishing a copy of this Order and Stipulated Injunction, at the same time that a copy of the DOJ Final Judgment is furnished under Section VII.A. of the DOJ Final Judgment, to each of Holtzbrinck's employees engaged, in whole or in part, in the distribution or Sale of E-books and to each of VGvH's officers, directors, or employees involved in the development of Holtzbrinck's plans or strategies relating to E-books;

B.   furnishing a copy of this Order and Stipulated Injunction in a timely manner to each officer, director, or employee who succeeds to any position identified in Section VII.A of this Order and Stipulated Injunction;

C.   ensuring that each person identified in Sections VII.A and VII.B of this Order and Stipulated Injunction receives at least four hours of training annually on the meaning and requirements of the DOJ Final Judgment, this Order and Stipulated Injunction, and the antitrust laws, such training to be delivered by an attorney with relevant experience in the field of antitrust law;

D.   obtaining, within sixty days after entry of the DOJ Final Judgment and on each

anniversary of the entry of the DOJ Final Judgment, from each person identified in Sections VII.A and VII.B of this Order and Stipulated Injunction, and thereafter maintaining, a certification that each such person (a) has read, understands, and agrees to abide by the terms of this Order and Stipulated Injunction; and (b) is not aware of any violation of this Order and Stipulated Injunction or the antitrust laws or has reported any potential violation to the Antitrust Compliance Officer;

  E. conducting an annual antitrust compliance audit covering each person identified in Sections VII.A and VII.B of this Order and Stipulated Injunction, and maintaining all records pertaining to such audits;

  F. communicating annually to Holtzbrinck's employees and to all VGvH employees identified in Sections VII.A and VII.B of this Order and Stipulated Injunction that they may disclose to the Antitrust Compliance Officer, without reprisal, information concerning any potential violation of this Order and Stipulated Injunction or the antitrust laws;

  G. taking appropriate action, within three business days of discovering or receiving credible information concerning an actual or potential violation of this Order and Stipulated Injunction, to terminate or modify Macmillan's conduct to assure compliance with this Order and Stipulated Injunction; and, within seven days of taking such corrective actions, providing to Liaison Counsel for Plaintiff States a description of the actual or potential violation of this Order and Stipulated Injunction and the corrective actions taken;

  H. furnishing to Liaison Counsel for Plaintiff States, on a quarterly basis, at the same times as such copies are provided to the DOJ under the DOJ Final Judgment, electronic copies of any non-privileged communications with any Person containing allegations of Macmillan's noncompliance with any provisions of this Order and Stipulated Injunction;

I.  maintaining, and furnishing to the Liaison Counsel for Plaintiff States, on a quarterly basis, at the same times as such logs are provided to the DOJ under the DOJ Final Judgment, a log of all oral and written communications, excluding privileged or public communications, between or among (1) any of Macmillan's officers, directors, or employees involved in the development of the Holtzbrinck's plans or strategies relating to E-books, and (2) any person employed by or associated with another Named Publisher, relating, in whole or in part, to the distribution or sale in the United States of books sold in any format, including an identification (by name, employer, and job title) of the author and recipients of and all participants in the communication, the date, time, and duration of the communication, the medium of the communication, and a description of the subject matter of the communication (for a collection of communications solely concerning a single business arrangement that is specifically exempted from the reporting requirements of Section IV.C of this Order and Stipulated Injunction, Macmillan may provide a summary of the communications rather than logging each communication individually); and

J.  providing to Liaison Counsel for Plaintiff States annually, on or before the anniversary of the entry of the DOJ Final Judgment, a written statement as to the fact and manner of Macmillan's compliance with Sections IV, V, and VII of this Order and Stipulated Injunction.

### VIII.  COMPLIANCE INSPECTION

A.  For purposes of determining or securing compliance with this Order and Stipulated Injunction, or of determining whether the Order and Stipulated Injunction should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the Plaintiff States, including consultants and other persons retained by the Plaintiff States, shall, upon written request of an authorized representative of Liaison Counsel for

Plaintiff States, and on reasonable notice to Macmillan, be permitted:

    1.    access during Macmillan' office hours to inspect and copy, or at the option of the Plaintiff States, to require Macmillan to provide to the Liaison Counsel for Plaintiff States hard copy or electronic copies of all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Macmillan, relating to any matters contained in this Order and Stipulated Injunction; and

    2.    to interview, either informally or on the record, Macmillan's officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Macmillan.

    B.    Upon the written request of an authorized representative of Liaison Counsel for Plaintiff States, Macmillan shall submit written reports or respond to written interrogatories, under oath if requested, relating to any of the matters contained in this Order and Stipulated Injunction as may be requested. Written reports authorized under this paragraph may, in the sole discretion of the Plaintiff States, require Macmillan to conduct, at their cost, an independent audit or analysis relating to any of the matters contained in this Order and Stipulated Injunction.

    C.    No information or documents obtained by the means provided in this Section shall be divulged by the Plaintiffs to any person other than an authorized representative of the Plaintiff States, except in the course of legal proceedings to which one or more of the Plaintiff States are a party (including grand jury proceedings), or for the purpose of securing compliance with this Order and Stipulated Injunction, or as otherwise required by law.

    D.    If at the time information or documents are furnished by Macmillan to the Liaison Counsel for Plaintiff States, Macmillan represents and identifies in writing the material in any

such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Macmillan marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the Plaintiffs shall give Macmillan ten calendar days' notice prior to divulging such material in any civil or administrative proceeding.

E.  Liaison Counsel for Plaintiff States will make reasonable good-faith efforts to coordinate inspections and demands under Paragraphs A and B above with the United States Department of Justice.

F.  Plaintiffs will make reasonable good faith efforts to conform their interpretation of the terms of this Order and Stipulated Injunction to the DOJ's interpretation of the DOJ Final Judgment.

## IX. RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Order and Stipulated Injunction, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## X. NO LIMITATION ON GOVERNMENT RIGHTS

Nothing in this Order and Stipulated Injunction shall limit the right of the Plaintiff States to investigate and bring actions to prevent or restrain violations of the antitrust laws concerning any past, present, or future conduct, policy, or practice of Macmillan.

## XI. EXPIRATION OF ORDER AND STIPULATED INJUNCTION

Unless this Court grants an extension, this Order and Stipulated Injunction shall expire five years from the date of the entry of the DOJ Final Judgment.

So ordered.

*Denise Cote*

December 6, 2013

SO ORDERED this _____ day of _____, 2013.

_____
Hon. Denise Cote
United States District Judge
Southern District of New York