CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | 11-MD-02293 (DLC) |
| This Document Relates to: | |
| ALL ACTIONS | |

**DEFENDANT APPLE INC.'S SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

PLAINTIFFS CANNOT SATISFY RULE 23'S STRICT COMMONALITY AND
PREDOMINANCE REQUIREMENTS THROUGH DR. NOLL'S REVISED, BUT
STILL DEEPLY FLAWED, REGRESSION ANALYSES ...........................................................4

CONCLUSION................................................................................................................12

**CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER**

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
  2005 WL 1300763 (N.D. Ill. 2005) ................................................................................. 5

*Bell Atl. Corp v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003) ....................................................................................... 11

*Blue Tree Hotels Inv. v. Starwood Hotels & Resorts*,
  369 F.3d 212 (2d Cir. 2004) ........................................................................................ 10

*Bohack Corp. v. Iowa Beef Processors, Inc.*,
  715 F.2d 703 (2d Cir. 1983) ........................................................................................ 10

*Bristol-Meyers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*,
  2000 WL 356412 (S.D.N.Y. Apr. 5, 2008) .................................................................... 6

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) ......................................................................................... 2

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ............................................................................................. 3, 9

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
  502 F.3d 91 (2d Cir. 2007) .......................................................................................... 10

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ................................................................................... 3, 10

*Ebbert v. Nassau Cnty.*,
  2008 WL 4443238 (E.D.N.Y. 2008) .............................................................................. 5

*Hickory Secs. Ltd. v. Repub. of Arg.*,
  493 F. Appx. 156 (2d Cir. 2012) .................................................................................. 11

*In re Hydrogen Peroxide*,
  552 F.3d 305 (3d Cir. 2009) ........................................................................................ 11

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
  522 F.3d 6 (1st Cir. 2008) ........................................................................................... 11

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013) ................................................................................ 3, 10

**TABLE OF CONTENTS** *(continued)*

<u>Page</u>

*McLaughlin v. American Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) ............................................................................................. 11

*STS Software Sys. Ltd. v. Witness Sys., Inc.*,
   2008 WL 660325 (N.D. Ga. 2008) ..................................................................................... 5

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ............................................................................................... 2, 3, 9

**CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER**

# PRELIMINARY STATEMENT

Plaintiffs' motion for class certification rested almost entirely upon the report of Dr. Roger G. Noll, who applied a faulty regression analysis based on a price-averaging methodology engineered to find injury for virtually all putative class members on individual purchases regardless of whether such injury actually exists. Even though Dr. Noll submitted his expert report several months ago, was deposed regarding his opinions, and disclaimed any further opinions to which he intended to testify at trial (*see* Richman Decl., Ex. A (Noll Dep.) at 241:13-242:1), he unveiled in his reply report a new econometric model for calculating a revised (and significantly lower) damages estimate.

Plaintiffs tout Dr. Noll's use of a "supercomputer" and seek to create the illusion that Dr. Noll has "fixed" the significant problems with his methodology. He has not. Dr. Noll's new analysis is incapable of demonstrating injury or allocating damages for each class member through common proof, because, among other reasons, it improperly lumps thousands of e-books together into broad categories to determine hypothetical categorical overcharge percentages that have *no basis in reality for any particular putative class member's actual e-book transactions*.[1] Dr. Noll's continued use of categorical overcharge estimates obscures important pricing differences for specific e-books within his broad, self-created categories, often resulting in findings of an overcharge where none existed in the "actual" world. His revised regression analyses, just like his prior analysis which he now apparently abandons, effectively *assumes* the facts to be *proven*—common injury and damages—through averaging. The Supreme Court, however, has decisively rejected such methods, which use "average[s] . . . to arrive at the entire

---

[1] For this and the other reasons outlined by Apple in its Opposition to Class Certification, *Daubert* briefing, and expert reports, which Apple incorporates herein, Dr. Noll's opinions related to class certification must be excluded.

class recovery—without further individualized proceedings." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011).  Plaintiffs are still impermissibly trying to treat the putative class "as a large, unified group that suffered a uniform, collective injury"—a "fictional composite" that masks "the disparate individuals behind the composite creation." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 345 (4th Cir. 1998).  That problem is readily apparent from a review of the available transaction history of the individual plaintiffs who filed suit against Apple.  An examination of their purchases reveals that Dr. Noll's category-averaging methodology generates an enormous number of false positives of overcharges, rendering Dr. Noll's methodology wholly unreliable to determine injury or damages for individual class members.  Sur-Reply Declaration Offered by Dr. Joseph Kalt ("Kalt Sur-reply Decl."), ¶ 33 and Fig. 6.

As described in detail in Apple's Opposition brief and Dr. Joseph Kalt's reports, each e-book purchase must be considered separately to determine whether a particular customer was harmed by the shift to the agency method of selling e-books.  After the five publisher defendants shifted from a wholesale model of e-book-selling to an agency model in early 2010, the price of many e-books fell.  The prices for some other e-book titles rose, while others stayed flat, and still others fluctuated over time, even during the same day.  Proof of injury and damages in this case would require the precise transaction-by-transaction investigation for each purchaser barred by Rule 23's strict commonality, predominance, superiority, and manageability requirements.

While Plaintiffs' Reply in Support of Motion for Class Certification ("Reply") attempts to convince this Court that they need not establish that all class members were harmed by Apple's conduct, and that it is sufficient for them to merely show that many class members were

harmed and give an estimate of "total damages," Reply at 2-6,[2] their reading of the law cannot be squared with controlling Supreme Court and Second Circuit precedent. *See Dukes*, 131 S. Ct. 2541; *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013); *Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244 (D.C. Cir. 2013). As addressed below, those cases mandate denial of class certification here.[3]

In addition, Plaintiffs have not shown that individual damages are calculable on a classwide basis because their proposed proof—Dr. Noll's analysis—is inconsistent with their liability theory. Plaintiffs' liability theory is that more e-book titles would have been priced at $9.99 absent the agency agreements. *See generally* Dkt. 432 (Amended Complaint) ¶ 13 (referring to the pre-agency, "industry standard $9.99 price point"). But Dr. Noll admitted that he does not know how many predicted but-for prices in his model are $9.99, claiming it was not an important question for his analysis. Richman Decl., Ex. A (Noll Dep.) at 184:10-185:23; *see also id.* at 184:17-24. Dr. Noll does not appear to have changed his view in his Reply Report. In fact, in his new but-for world, hardly any e-books would have been priced at $9.99. Kalt Sur-reply Decl. ¶ 81. The Supreme Court recently made clear that "any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." *Comcast*, 133 S. Ct. at 1433 (2013) (internal quotation marks omitted). Because Dr. Noll's analysis is inconsistent with their liability theory, Plaintiffs' offered proof "cannot possibly establish that damages are susceptible of measurement

---

[2] *See also* Noll Reply Decl. at 16 ("the goal is simply to produce a calculation of total damages."). As described in the reports of Drs. Kalt and Orszag, Dr. Noll has not reliably estimated total damages in any event.

[3] Apple submits this sur-reply brief pursuant to this Court's 12/27/13 Order.

3

across the entire class for purposes of Rule 23(b)(3)." *Id.* Accordingly, class certification is inappropriate in this case.

## PLAINTIFFS CANNOT SATISFY RULE 23'S STRICT COMMONALITY AND PREDOMINANCE REQUIREMENTS THROUGH DR. NOLL'S REVISED, BUT STILL DEEPLY FLAWED, REGRESSION ANALYSES

Dr. Noll's original expert report improperly estimated e-book percentage overcharges based on average e-book prices over four-week periods. First, Dr. Noll averaged all transaction prices for a given e-book sold by a given retailer in a four-week period into a single four-week average price. Noll Decl. at 19. Next, Dr. Noll took e-book titles' averaged prices and aggregated the prices into broad categories that he created. Noll Decl. at 20. Dr. Noll misleadingly referred to these averaged and aggregated computations as "actual" prices, Noll Decl. at 24, even though they are really a fictional construct—they are not the actual prices consumers paid for particular e-books. Dr. Noll compared the so-called "actual" prices to the prices he predicted would have resulted "but for" Apple's entry into the market, in order to estimate an average percentage price increase. *Id.* Dr. Noll estimated the overcharge for each transaction by applying the average percentage overcharge to all the e-book transactions falling in a given category—misleadingly suggesting that he calculated actual damages transaction by transaction, when he actually had done nothing of the sort. *See* Kalt Decl. ¶¶ 117-120. Instead, he had merely averaged and aggregated e-book price data across broad categories of e-books, assuming that the adoption of the agency method of selling e-books similarly impacted all titles in these categories.

On December 18, 2013, less than seven weeks after Apple had deposed Dr. Noll and filed its opposition to Plaintiffs' class certification motion and *Daubert* motion, explaining the grave problems with his methodology, Dr. Noll submitted a reply report in which he indicates that he

4

had consultants at Ashenfelter and Ashmore run "two additional regressions." Noll Reply Decl. at 5. The first regression analysis was similar to his previous one, but instead of using four-week average e-book prices, he used one-week average prices. Noll Reply Decl. at 16-17. The second regression analysis supposedly used transaction-level data,[4] resulting in a 9% ($27 million) reduction from his previous damages estimate.[5] Noll Reply Decl. at 6.

As an initial matter, Apple objects to these new analyses that Apple did not have the opportunity to explore through deposition. At his first deposition, Dr. Noll admitted he had not "run regressions on individual transactions data," Richman Decl., Ex. A (Noll Dep.) at 157:2-3, and yet his new report claims to have done so, radically changing his damage estimate. Noll Reply Decl. at 5-6. Plaintiffs do not, and cannot, explain why these new analyses were not undertaken in Dr. Noll's initial report, especially given that Plaintiffs bear the burden of demonstrating class-wide impact and injury through common proof. *See Ebbert v. Nassau Cnty.*, 2008 WL 4443238, at *14 (E.D.N.Y. Sept. 26, 2008) ("no justification" provided "for [the expert's] omission of these opinions in his Initial Report, as required by Rule 26(a)(2)B)"); *see also STS Software Sys. Ltd. v. Witness Sys., Inc.*, 2008 WL 660325, at *2 (N.D. Ga. Mar. 6, 2008); *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 2005 WL 1300763, at *2 (N.D. Ill. Feb. 22, 2005). Allowing Dr. Noll to radically shift his analyses after Apple has already filed its opposition to class certification and supporting evidence is unduly prejudicial to Apple,

---

[4] While Dr. Noll describes his new damages model as a "transaction-level" analysis, his aggregation of prices into weekly groupings ignores information on specific days of sale. As a result, his model eliminates important transaction-specific information that is necessary for understanding and explaining e-book pricing. *See* Kalt Sur-reply Decl. ¶ 52.

[5] While Plaintiffs attempt to minimize the differences between Dr. Noll's new regression analysis and his original analysis, using individualized prices reduces alleged damages by almost $100 million after trebling, underscoring the substantial flaws with Dr. Noll's analysis.

5

especially given that this Court has denied Apple's request to depose Dr. Noll regarding these new, unanticipated analyses. Dkt. 502 (12/27/13 Order). Since this Court has foreclosed any additional deposition of Dr. Noll, Plaintiffs should not be able to able to sandbag Apple with new expert opinions based on information that was available to them before Dr. Noll issued his first report. *Carter v. Finely Hospital*, 2003 WL 22232844, *2 (N.D. Ill. Sept. 22, 2003) ("It is disingenuous to argue that the duty to supplement under Rule 26(e)(1) can be used as a vehicle to disclose entirely new expert opinions after the deadline established by the court under Rule 26(a)(2)(c). This is particularly true where, as here, the materials on which the new expert opinions are based were available to the Defendant prior to Plaintiff deposing her expert witness."); *see also Bristol-Meyers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 2000 WL 356412, at *2 (S.D.N.Y. Apr. 5, 2000) ("It is the responsibility of the attorney to ensure that the expert's report contains complete opinions that are properly and thoroughly set forth and supported; it should be the goal of the parties to eliminate surprise . . . .") (internal quotation marks omitted).

But even if this Court allows Plaintiffs to submit this new evidence, Dr. Noll's revised opinion does not alter the conclusion that Plaintiffs' proposed class cannot be certified under the strict requirements of Rule 23. Although Dr. Noll ran two new regression analyses, his report states that he intends to rely on his analysis examining individual transaction prices as a "preferred" method, Noll Reply Decl. at 6, and therefore Apple focuses here on that regression analysis. While Plaintiffs seek to create the appearance that Dr. Noll has "fixed" the problems with his methodology by looking at individual e-book prices, he continues to lump many thousands of e-books together into broad categories of his own creation to determine a hypothetical overcharge percentage. As explained above, there were *two* major averaging problems in Dr. Noll's initial regression analysis: (1) averaging individual transactions into 4-

6

week averages; and (2) computing average overcharges within broad categories of e-books and assuming that the alleged overcharge for that category applied to all of the many thousands of books within that category despite incontrovertible evidence to the contrary.  Dr. Noll's new analysis purports to address the first problem, *but does not attempt to address the second problem*.

Notwithstanding very wide variation in prices within a given group after accounting for Dr. Noll's proffered explanatory factors, and without empirical investigation of the matter, Dr. Noll takes his category average overcharge to be the same for all of the individual transactions that make up the average.  Kalt Decl. ¶ 125 and Figures 25A and 25B; Kalt Sur-reply Decl. ¶¶ 18-19.  This approach is fundamentally flawed because it relies on aggregated data across broad categories and obscures important pricing differences for e-books within those categories.  Kalt Decl. ¶ 13.  Moreover, Dr. Noll's methodology improperly assumes that the overcharge percentage for each e-book in the same category is identical, and, in so doing, his analysis forgoes any examination of the "fact" he is supposed to "prove."  *Id*. ¶ 15.  As Dr. Kalt explains in his report, there is simply nothing in the data to suggest that all or almost all e-book prices behave in a sufficiently similar manner to justify measuring an average percent overcharge commonly by each of Prof. Noll's categories.  *Id*. ¶ 13. Nor does the use of a "supercomputer" to run the regression analysis rectify the problems with Dr. Noll's approach—the problem with his original analysis was a fundamental methodological flaw, not the computer he was using.  Because Dr. Noll's new methodology continues to ignore the fundamental problem of applying *category-average overcharges* that have no basis in reality for any given individual putative class member's purchase of particular e-books within those broad categories, it remains incapable of determining injury and damages in this case.  *See* Kalt Sur-reply Decl. ¶¶ 18-22.

7

Moreover, Dr. Noll's new model continues to be plagued with millions of false positives of overcharges. If a category-average overcharge is positive (as they almost all are according to Dr. Noll), then Dr. Noll's model will find that a consumer who purchased e-books falling within that category suffered damages, regardless of whether the consumer actually paid more for the specific e-book purchased. A comparison of the but-for transaction prices that Dr. Noll's new model yields with the actual prices paid by individual putative class members, however, demonstrates the fallacy of this approach. Seventeen of the twenty-one individual putative class members for whom data were available had transactions where the price they paid for an e-book was *less than* Dr. Noll's but-for price. *See* Kalt Sur-reply Decl. ¶ 33 and Fig. 6. ▮▮▮▮▮ for example, purchased 169 e-books from Defendant Publishers during the agency period. Dr. Noll's methodology would blindly apply his category-average overcharge to each of these e-book purchases and determine positive damages resulting from each of her 169 transactions. But examining the but-for prices of the individual purchases made by ▮▮▮▮▮ demonstrates that 70 percent, or 118 of her 169 purchases, were made at prices that were *lower than* the but-for price calculated by Dr. Noll.[6] Dr. Noll's model, simply put, cannot be used to reliably assess individual putative class members' claims.

Notably, Dr. Noll's reply report does not even pretend that his methodology is designed to *determine individualized harm*, but rather admits that it is attempting to provide an "*average percentage mark-up for e-books in [each] category*." Noll Reply Decl. at 5 (emphasis added).

---

[6] The fatal flaws with Dr. Noll's findings of false positives are explained in detail in Dr. Kalt's Sur-Reply Declaration ¶¶ 30-33.

He also candidly admits his "goal is simply to produce a calculation of *total damages*."[7]  Noll Reply Decl. at 16 (emphasis added).  Indeed, inextricably intertwined with Plaintiffs' reliance on Dr. Noll's flawed "total damages" opinion is their misguided attempt to convince this Court that Rule 23 does not require them to demonstrate harm to each of the putative class members through common proof, and rather that it is enough if they can merely show that many of them were harmed and provide some overall estimate of that harm.  Reply at 2-6.  Plaintiffs grossly misstate the law.  The Supreme Court, the Second Circuit, and numerous other courts have held that class certification is inappropriate where, as here, Plaintiffs cannot demonstrate injury to each putative class member through common proof.

The Supreme Court made clear in *Dukes* that, for a class to be certified, plaintiffs must show that they can prove the existence of individual injury and the amount of individual damages on a classwide basis.  *Dukes*, 131 S. Ct. at 2561.  Without these safeguards, class certification would deny the defendant its right to mount individual defenses challenging a class member's standing or the amount of any given class member's claimed damages.  *Id.*  The Supreme Court further explained in *Comcast* that a district court must determine in an antitrust class action "whether the methodology" set forth in the expert's report utilizes "just and reasonable inference[s]" and avoids "speculative" conclusions.  *Comcast*, 133 S. Ct. at 1433 (internal quotation marks omitted).  Otherwise, "*any* method of measure [would be] acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be," "reduc[ing] Rule 23(b)(3)'s predominance requirement to a nullity."  *Id*.

---

[7] While an estimate of "total damages" is not the relevant inquiry for class certification, which requires Plaintiffs to demonstrate that *each* plaintiff was harmed, Dr. Noll does not even provide a reliable estimate of "total damages."  *See* Kalt Sur-reply Decl. ¶ 10; Orszag Reply Report ¶ 77.

9

In *In re Rail Freight*, the D.C. Circuit applied *Comcast*, holding that it is essential that plaintiffs "show that they can prove, through common evidence, that all class members were in fact injured by the alleged conspiracy" and noting that "[i]t is now clear . . . that Rule 23 not only authorizes a hard look at the soundness of statistical models that purport to show predominance—the rule commands it." *In re Rail Freight*, 725 F.3d at 252, 255.  Plaintiffs have no answer for *In re Rail Freight*, so they incorrectly attempt to dismiss one of its central holdings as dictum without explanation and otherwise ignore it.

There is no ignoring, however, that the Second Circuit has held for decades that an antitrust plaintiff has no standing to bring a claim unless the plaintiff demonstrates "injur[y] in its business or property' by reason of the violation . . . [and that] the violation was at least a material cause of the plaintiff's injury."  *Bohack Corp. v. Iowa Beef Processors, Inc.*, 715 F.2d 703, 710-11 (2d Cir. 1983); *see also Blue Tree Hotels Inv. v. Starwood Hotels & Resorts*, 369 F.3d 212, 220 (2d Cir. 2004) (citing numerous supporting cases and holding that "a private litigant seeking treble damages for such a violation under § 4 of the Clayton Act must … allege an antitrust injury."); *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) (antitrust plaintiffs must demonstrate "(1) a violation of antitrust law; (2) injury and causation; and (3) damages.").  Further, the Second Circuit has held that the fundamental rule that all plaintiffs must be able to demonstrate individual standing does not disappear simply because plaintiffs allege a class action.  *See Denney,* 443 F.3d at 263-64 ("The filing of suit as a class action does not relax this jurisdictional requirement" and "no class may be certified that contains members lacking Article III standing").  Notably, Plaintiffs do not cite a single Second

10

Circuit case supporting their unfounded argument that they need not demonstrate common impact to all class members to satisfy Rule 23's requirements.[8]

Further, numerous other courts have held that class certification in antitrust cases is improper unless plaintiffs meet their burden to demonstrate that each of the class members was harmed by the alleged conduct. *See e.g., In re Hydrogen Peroxide*, 552 F.3d 305, 311 (3d Cir. 2009) ("every class member must prove at least some antitrust impact [individual injury] resulting from the alleged violation"); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 28 (1st Cir. 2008); *Bell Atl. Corp v. AT&T Corp.*, 339 F.3d 294, 302 (5th Cir. 2003) ("[W]here fact of damage cannot be established for every class member through proof common to the class, the need to establish antitrust liability for individual class members defeats Rule 23(b)(3) predominance."). Again, Plaintiffs have no answer for these cases so they ignore them.

Plaintiffs have failed to meet Rule 23's commonality, predominance, and manageability requirements. Belatedly substituting their expert's flawed regression analysis for another flawed analysis does not change the fact that Plaintiffs have not put forward a way to demonstrate common injury or damages to each class member through common proof. Because a

---

[8] Indeed, Plaintiffs only cite one Second Circuit case in their entire reply brief—*Hickory Secs. Ltd. v. Repub. of Arg.*, 493 F. App'x 156, 159 (2d Cir. 2012). That case does not hold that it is proper to certify a class where class members were not injured. Such a finding would contradict controlling Second Circuit precedent. Instead, that case stands for the unremarkable premise that aggregate damages calculations are theoretically possible, at least in securities class actions. Of course, securities class actions permit a fraud-on-the-market theory of reliance to demonstrate injury that is not permitted elsewhere. *Basic Inc. v. Levinson*, 485 U.S. 224, 250 (1988). The Second Circuit has largely rejected the use of aggregate proof to show reliance, loss causation, or injury in non-securities contexts. *See McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 223-30 (2d Cir. 2008), partially abrogated on other grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008)).

determination of injury here would require an individualized examination of tens of millions of e-book purchases, Plaintiffs' proposed class cannot be certified.

## CONCLUSION

For all of the reasons set forth above and in Apple's Opposition brief, this case cannot proceed as a class action and this Court should deny Plaintiffs' motion for class certification.

Dated: Jan. 21, 2014

By: /s/ Theodore J. Boutrous, Jr.
Theodore J. Boutrous, Jr.

GIBSON, DUNN & CRUTCHER LLP
Theodore J. Boutrous, Jr.
Daniel G. Swanson
333 South Grand Avenue
Los Angeles, California  90071
Telephone:  213.229.7000

Cynthia Richman
1050 Connecticut Avenue NW
Washington, D.C. 20036
Telephone: 202.955.8500

O'Melveny & Myers LLP
Howard Heiss
Edward Moss
1625 Eye Street, NW
Washington, DC  20006
Telephone:  202.383.5380

*Attorneys for Defendant Apple Inc.*