CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

IN RE ELECTRONIC BOOKS ANTITRUST  :  No.  11-MD-02293 (DLC)
LITIGATION                        :       ECF Case
                                  :
                                  :
---------------------------------------------------------x

This Document Relates to:

ALL ACTIONS

---------------------------------------------------------x

### DEFENDANT APPLE INC.'S MEMORANDUM OF LAW IN OPPOSITION TO CLASS PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

LEGAL STANDARD................................................................................ 2

ARGUMENT ............................................................................................. 3

I.      This Court Should Not Hear Plaintiffs' Summary Judgment Motion Because It Has Already Prejudged The Very Issues That Motion Presents........................................ 3

II.     Plaintiffs' Motion Is Procedurally Defective And Fatally Premature .............................. 4

III.    Plaintiffs Cannot Use Offensive, Non-Mutual Collateral Estoppel To Establish Antitrust Injury Or The Amount Of Damages .................................................. 6

        A.      The Court's Prior Findings Cannot Be Given Preclusive Effect Unless They Were Necessary To Its Prior Judgment .............................................6

        B.      Plaintiffs' Proposed Findings Related To Injury And Damages Were Not Necessary To The Judgment In The DOJ Action And Therefore Cannot Be Given Collateral Estoppel Effect.................................................9

        C.      Findings That Were Made Under A Different Burden Of Proof Cannot Be Given Collateral Estoppel Effect ................................................12

        D.      Even If They Were Accepted, Plaintiffs' Proposed Collateral Estoppel Findings Would Not Carry Their Burden To Prove Conclusively That Every Putative Class Member Suffered Actual Injury .........................................14

IV.     Plaintiffs Have Not Met Their Heavy Burden To Conclusively Prove Antitrust Injury And The Amount Of Damages ............................................................ 16

        A.      Dr. Noll's Testimony Is Unreliable And Inadmissible .........................................16

        B.      Even If Dr. Noll's Opinions Were Admissible, They Would Not Entitle Plaintiffs To Summary Judgment ........................................................17

                1.      Summary Judgment Is Inappropriate Where It Turns On Expert Testimony.................................................................... 17

                2.      Dr. Noll's Opinions Do Not Satisfy Plaintiffs' Burden Of Conclusively Proving Antitrust Injury And The Amount Of Damages.................................................................... 19

                        a.      Plaintiffs Cannot Rely On Dr. Noll's Aggregated Damages Estimate To Establish The Amount Of Damages They Are Purportedly Owed ....................................................... 19

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

      b.    A Jury Must Resolve Significant Questions Regarding Dr. Noll's Credibility And Whether His Opinions Should Be Given Any Weight ................................................................ 21

C.    Genuine Disputes Of Material Fact Exist Regarding Antitrust Injury ................ 23

D.    Genuine Disputes Of Material Fact Exist Regarding The Amount Of Damages .................................................................................................... 27

CONCLUSION ............................................................................................................ 30

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ........................................................................................ 4, 5

*Apex Oil Co. v. DiMauro*,
    744 F. Supp. 53 (S.D.N.Y. 1990) ....................................................................... 16

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990) ............................................................................................ 15

*Bear, Stearns & Co. v. 1109580 Ontario, Inc.*,
    409 F.3d 87 (2d Cir. 2005) ............................................................................... 6, 7

*Bertrand v. Maram*,
    495 F.3d 452 (7th Cir. 2007) ................................................................................ 5

*Bieneman v. Chicago*,
    838 F.2d 962 (7th Cir. 1988) ................................................................................ 5

*Blades v. Monsanto Co.*,
    400 F.3d 562 (8th Cir. 2005) ................................................................................ 9

*Bogosian v. Gulf Oil Corp.*,
    561 F.2d 434 (3d Cir. 1977) ................................................................. 15, 23, 26

*Borawick v. Shay*,
    68 F.3d 597 (2d Cir. 1995) ................................................................................. 17

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008) ............................................................................................ 14

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ........................................................................ 14, 15

*Brown v. Cnty. of Nassau*,
    736 F. Supp.2d 602 (E.D.N.Y. 2010) ................................................................. 18

*Burch v. Goodyear Tire & Rubber Co.*,
    554 F.2d 633 (4th Cir. 1977) .............................................................................. 10

*Carrera v. Bayer Corp.*,
    727 F.3d 300 (3d Cir. 2013) ............................................................................... 14

*City of Tuscaloosa v. Hacros Chems., Inc.*,
    158 F.3d 548 (11th Cir. 1999) ............................................................................ 17

*Cnty. Asphalt, Inc. v. Lewis Welding & Eng'g Corp.*,
    444 F.2d 372 (2d Cir. 1971) ............................................................................... 18

*Cobb. v. Pozzi*,
    363 F.3d 89 (2d Cir. 2004) ............................................................................. 6, 13

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

## TABLE OF AUTHORITIES

Page(s)

*Colon v. BIC USA, Inc.*,
    199 F. Supp. 2d 53 (S.D.N.Y. 2001) ................................................................. 17

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013).................................................................... 20, 21, 24

*Congress & Empire Spring Co. v. Edgar*,
    99 U.S. 645 (1878) ...................................................................................... 18

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) .......................................................................... 19

*Courtney v. LaSalle State Univ.*,
    124 F.3d 499 (3d Cir. 1997) ......................................................................... 9

*Cuzco v. Orion Builders, Inc.*,
    262 F.R.D. 325 (S.D.N.Y. 2009).................................................................. 4, 5

*Daubert v. Merrell Dow Pharms.*,
    509 U.S. 579 (1993) .................................................................................... 17

*Dayton Power & Light Co. v. Pub. Utilities Comm'n*,
    292 U.S. 290 (1934) .................................................................................... 18

*Discover Financial Services v. Visa U.S.A. Inc.*,
    598 F. Supp. 2d 394 (S.D.N.Y. 2008) ............................................. 8, 9, 10, 16

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
    504 U.S. 451 (1992) .................................................................................... 23

*Fontenot v. Upjohn Co.*,
    780 F.2d 1190 (5th Cir.1986) .................................................................. 2, 18

*Freeland v. AT&T Corp.*,
    238 F.R.D. 130 (S.D.N.Y. 2006)................................................................... 16

*Gelb v. Royal Globe Ins. Co.*,
    798 F.2d 38 (2d Cir. 1986) .......................................................................... 12

*Geneva Pharms. Tech. Corp. v. Barr Labs Inc.*,
    386 F.3d 485 (2d Cir. 2004) ................................................................... 11, 13

*Georgia v. Pa. R.R. Co.*,
    324 U.S. 439 (1945) .................................................................................... 10

*Hanover Shoe, Inc. v. United Shoe Mach. Corp.*,
    392 U.S. 481 (1968) .................................................................................... 15

*Harris v. Provident Life & Accident Ins. Co.*,
    310 F.3d 73 (2d Cir. 2002) .......................................................................... 27

*Hoult v. Hoult*,
    157 F.3d 29 (1st Cir. 1998)......................................................................... 8, 9

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

## TABLE OF AUTHORITIES

Page(s)

*Howard Heiss Dental Laboratories Inc. v. Dentsply International, Inc.*,
   602 F.3d 237 (3d Cir. 2010) .................................................................. 7, 8, 9, 10, 11

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
   547 U.S. 28 (2006) ................................................................................................. 23

*In re Alcoholic Beverages Litig.*,
   95 F.R.D. 321 (E.D.N.Y. 1982).............................................................................. 24

*In re Auction Houses Antitrust Litig.*,
   193 F.R.D. 162 (S.D.N.Y. 2000)............................................................................ 23

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir. 2008) ................................................................................... 15

*In re Indus. Diamonds Antitrust Litig.*,
   167 F.R.D. 374 (S.D.N.Y. 1996)....................................................................... 15, 24

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
   739 F. Supp. 2d 576 (S.D.N.Y. 2010) ................................................................... 21

*In re Microsoft Corp. Antitrust Litig.*,
   355 F.3d 322 (4th Cir. 2004) ............................................................................. 7, 10

*In re OSB Antitrust Litig.*,
   No. 06-826, 2007 WL 2253425 (E.D. Pa. Aug. 3, 2007)....................................... 15

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   725 F.3d 244 (D.C. Cir. 2013)........................................................................... 10, 25

*In re Urethane Antitrust Litig.*,
   No. 04-md-1616, 2013 WL 2097346 (D. Kan. May 15, 2013)............................... 14

*J. Truett Payne Co., v. Chrysler Motors Corp.*,
   451 U.S. 557 (1981) ............................................................................................... 13

*Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*,
   744 F.2d 118 (D.C. Cir. 1984)................................................................................. 7

*Katz v. Carte Blanche Corp.*,
   496 F.2d 747 (3d Cir. 1974) .................................................................................... 6

*L.A. Mem. Coliseum Comm'n v. Nat'l Football League*,
   791 F.2d 1356 (9th Cir. 1986) ................................................................................ 16

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
   551 U.S. 877 (2007) ............................................................................................... 11

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
   523 U.S. 26 (1998) ................................................................................................... 1

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
   923 F. Supp.2d 511 (S.D.N.Y. 2013) ......................................................... 19, 21, 23

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

# TABLE OF AUTHORITIES

Page(s)

*Ligon v. City of New York*,
  736 F.3d 118 (2d Cir. 2013) ............................................................................................... 3, 4

*Liljeberg v. Health Servs. Acquisition Corp.*,
  486 U.S. 847 (1988) ................................................................................................................ 3

*Lindsey v. Normet*,
  405 U.S. 56 (1972) ............................................................................................................... 20

*Lutz v. United States*,
  685 F.2d 1178 (9th Cir. 1982) ............................................................................................. 19

*Maple Flooring Mfrs. Assn. v. United States*,
  268 U.S. 563 (1925) ............................................................................................................. 23

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008) ................................................................................................ 14

*MedCom Holding Co. v. Baxter Travenol Labs.*,
  106 F.3d 1388 (7th Cir. 1997) ............................................................................................. 21

*Mendez v. The Radec Corp.*,
  260 F.R.D. 38 (W.D.N.Y. 2009) ............................................................................................ 5

*Minpeco, S.A. v. Conticommodity Servs., Inc.*,
  676 F. Supp. 486 (S.D.N.Y. 1987) ................................................................................. 13, 16

*Morales Elec. Contracting, Inc. v. Siemens Bldg. Techs., Inc.*,
  No. 09-CV-2743 (ADS) (ETB), 2012 WL 3779410 (E.D.N.Y. Aug. 30, 2012) .................... 17

*New York v. Hendrickson Bros.*,
  840 F.2d 1065 (2d Cir. 1988) .............................................................................................. 30

*Oneida Tribe of Indians of Wisconsin v. AGB Properties, Inc.*,
  No. 02-CV-233LEKDRH, 2002 WL 31005165 (N.D.N.Y. Sept. 5, 2002) ............................. 9

*Padillas v. Stork-Gamco, Inc.*,
  186 F.3d 412 (3d Cir. 1999) ................................................................................................ 17

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979) ............................................................................................................... 7

*Patterson v. Cnty. of Oneida*,
  375 F.3d 206 (2d Cir. 2004) .................................................................................................. 2

*Peritz v. Liberty Loan Corp.*,
  523 F.2d 349 (7th Cir. 1975) ................................................................................................. 5

*Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund*,
  214 F.3d 132 (2d Cir. 2000) .................................................................................................. 5

*Porterfield v. Burlington Northern, Inc.*,
  534 F.2d 142 (9th Cir. 1976) ............................................................................................... 19

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

## TABLE OF AUTHORITIES

Page(s)

*Rodriguez v. City of New York*,
    72 F.3d 1051 (2d Cir. 1995) .................................................................................. 27

*Schwarzschild v. Tse*,
    69 F.3d 293 (9th Cir. 1995) .................................................................................... 5

*Shady Grove Orthopedic Assocs. v. Allstate Ins.*,
    559 U.S. 393 (2010) ................................................................................................ 20

*Sherman v. Sokoloff*,
    No. 80 Civ. 6237, 1985 WL 2442 (S.D.N.Y. Sept. 5, 1985).................................. 18

*Sikes v. Teleline, Inc.*,
    281 F.3d 1350 (11th Cir. 2002) .............................................................................. 20

*Smith v. Bayer Corp.*,
    131 S. Ct. 2368 (2011)............................................................................................ 4

*Soto v. City of Sacramento*,
    567 F. Supp. 662 (E.D. Cal. 1983) ........................................................................ 2

*Standard Fire Ins. Co. v. Knowles*,
    133 S. Ct. 1345 (2013)............................................................................................ 4

*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010) ................................................................................... 11

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ................................................................................................ 4

*Torres Vargas v. Santiago Cummings*,
    149 F.3d 29 (1st Cir. 1998)............................................................................. 2, 3, 18

*United States v. One Carton Positive Motion Picture Film Entitled "491"*,
    248 F. Supp. 373 (S.D.N.Y. 1966) ........................................................................ 18

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*,
    373 F.3d 241 (2d Cir. 2004) ........................................................................... 2, 17, 18

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)................................................................................. 14, 20, 24, 25

*Wenger v. Wash. Dep't of Soc. Servs.*,
    No. CV-11-222-JLQ, 2012 WL 4471221 (E.D. Wash. Sept. 27, 2012) ................ 19

**Statutes**

15 U.S.C. § 15(a) ................................................................................................... 10

15 U.S.C. § 4 .......................................................................................................... 9

28 U.S.C. § 1407(a) ............................................................................................... 1

28 U.S.C. § 2072(b) ............................................................................................... 14

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

## TABLE OF AUTHORITIES

Page(s)

28 U.S.C. § 455(a) ................................................................................................. 3

**Other Authorities**

Restatement (Second) of Judgments § 27, cmt. h ...................................... 11

**Rules**

Fed. R. Civ. Proc. 23 .................................................................... 4, 5, 15

Fed. R. Civ. Proc. 23(c)(1)(A) ............................................................... 5

Fed. R. Civ. Proc. 23(c)(2) .............................................................. 1, 5

Fed. R. Civ. Proc. 23(c)(3) ................................................................... 5

Fed. R. Civ. Proc. 56(d) .................................................................... 21

Fed. R. Evid. 702 ............................................................................ 17

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

## PRELIMINARY STATEMENT

Plaintiffs' over-reaching motion is premature, procedurally improper, and meritless.[1] But more fundamentally, it should not be heard by this Court, which has already stated on the record that it has prejudged the very issues Plaintiffs seek to have it decide.  In its January 16, 2014 Order, this Court stated that "[c]onsumers of e-books—including Apple's own consumers— *suffered hundreds of millions of dollars in harm*, and the federal Government and the plaintiff States were forced to expend taxpayer money to bring the harm to an end."  12-cv-02826, Dkt. 437 at 62-63 (emphasis added).  Because the Court has already *assumed* precisely what Plaintiffs must conclusively *prove* on this motion, it cannot serve as an impartial arbiter and should recuse itself from hearing this motion.

Even if this Court were to hear Plaintiffs' motion, however, it would be compelled to deny it.  Plaintiffs put the cart before the horse, seeking hundreds of millions of dollars in damages on summary judgment on behalf of an uncertified and non-existent "class."  But Plaintiffs cannot represent this phantom "class" before it is even certified.  And their motion violates Rule 23(c)(2), which prohibits one-way intervention—a no-lose situation for putative class members who can remain in the class if the court rules in their favor, but opt out if the court makes an unfavorable merits ruling.

Plaintiffs' motion is equally doomed on the merits.  Plaintiffs cannot use the shortcut of collateral estoppel to relieve themselves of their heavy burden to *conclusively* prove individual injury and damages *as a matter of law*.  Collateral estoppel does not apply to findings that were unnecessary to the underlying judgment, and on which Apple had the burden of proof.

---

[1]  As set forth in its motion filed concurrently herewith, Apple is also exercising its right to have this litigation remanded to the districts in which the cases originated for all further proceedings.  This Court should therefore refrain from ruling on Plaintiffs' motion for summary judgment and defer to the originating districts.  *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 28 (1998) (citing 28 U.S.C. § 1407(a)).

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

Plaintiffs resort to collateral estoppel because their inadmissible expert testimony cannot establish individual injury or damages for every putative class member.  Apple's experts have dismantled Dr. Noll's conclusion regarding impact, his regression analysis, and the damages calculation flowing from his unreliable—and unpersuasive—model.  At minimum, these are issues that a jury must decide and that cannot be resolved on summary judgment.

For all of these reasons and others discussed below, Plaintiffs' motion should be denied.

## LEGAL STANDARD

A party moving for summary judgment must demonstrate entitlement to the judgment it seeks as a matter of law.  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246-47 (2d Cir. 2004).  The motion "may not be granted unless the court determines, *inter alia*, that there is no genuine issue of material fact to be tried," and the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004).  A plaintiff "cannot attain summary judgment unless the evidence that he provides on [dispositive] issue[s] is *conclusive*."  *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998) (emphasis added).  Plaintiffs must establish "beyond peradventure" all of the elements of their claims, *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986), and they may not prevail merely by pointing to an asserted absence of evidence from Apple.  *See Vt. Teddy Bear*, 373 F.3d at 246-47 (vacating order granting summary judgment for plaintiffs where defendant did not file an opposition to motion); *see also, e.g.*, *Soto v. City of Sacramento*, 567 F. Supp. 662, 685-86 (E.D. Cal. 1983) ("[M]erely asserting that the other side will be unable to carry its burden of proof is not adequate … [Movants] must show there are no disputed issues of material fact and that they are entitled to judgment as a matter of law.  Until they have done so, [the non-moving party] need not come forward with any evidence.").

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

## ARGUMENT

**I.**   **This Court Should Not Hear Plaintiffs' Summary Judgment Motion Because It Has Already Prejudged The Very Issues That Motion Presents**

As a preliminary matter, the Court should not hear Plaintiffs' motion because it has already announced its view on injury and damages in this case—precisely the issues on which Plaintiffs seek summary judgment.  The Court announced on January 13, 2014, that Apple's conduct "had an enormous impact on consumer prices for e-books" and that the evidence in the 2013 trial "showed [an] immediate and significant price rise … for the publishers' e-books."  12-cv-02826, Dkt. 441 at 43:17-24.  Three days later, in its order denying Apple relief from the monitorship imposed in the DOJ action, the Court expressed its view that ""[c]onsumers of e-books—including Apple's own consumers—*suffered hundreds of millions of dollars in harm*, and the federal Government and the plaintiff States were forced to expend taxpayer money to bring the harm to an end."  12-cv-02826, Dkt. 437 at 62-63 (emphasis added).

These unprompted statements demonstrate that the Court has already *decided* what Plaintiffs must "conclusive[ly]" *prove* on this motion.  *Torres Vargas*, 149 F.3d at 35.  The Court's "impartiality might," and will, "reasonably be questioned" if it decides, on summary judgment, issues it has openly and unambiguously prejudged against Apple.  28 U.S.C. § 455(a); *see also Ligon v. City of New York*, 736 F.3d 118, 123 (2d Cir. 2013) (per curiam) ("to perform its high function in the best way justice must satisfy the appearance of justice") (citation and quotation marks omitted).  The Court should therefore recuse itself from hearing Plaintiffs' motion, *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860-61 (1988), and grant Apple's concurrently filed motion to remand this litigation to the districts where it originated.  *See supra*, n.1.  If the Court does not remand, it should refer adjudication of this motion to a magistrate judge—without the possibility of review by the Court—or to another

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

district judge.  *Cf. Ligon*, 736 F.3d at 130 (reassigning case where district judge's "appearance of partiality [might] reasonably be questioned").

## II.    Plaintiffs' Motion Is Procedurally Defective And Fatally Premature

Plaintiffs' motion seeking summary judgment on behalf of an uncertified putative class is procedurally improper.  Granting the motion before a class is certified and notice is given would violate due process and Rule 23's prohibition of one-way intervention.[2]

Although Plaintiffs purport to bring this motion on behalf of a class, no class has been certified and Plaintiffs represent only themselves.  *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013) ("[a] nonnamed class member is not a party to the class-action litigation *before the class is certified*") (quotation marks omitted).  Unless and until a class is certified and notice is given, members of the putative class are not parties to this action.  *See id.*; *Taylor v. Sturgell*, 553 U.S. 880, 894, 901 (2008).  These principles are "grounded in due process," as "implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23." *Taylor*, 553 U.S. at 900-01.  Thus, Plaintiffs "cannot legally bind members of the proposed class." *Standard Fire*, 133 S. Ct. at 1349; *see also Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2380 (2011) ("Neither a proposed class action nor a rejected class action may bind nonparties.").

For this reason, ruling on Plaintiffs' summary judgment motion before class certification invites one-way intervention—a no-lose situation for putative class members who can elect to remain in the class if the Court rules in their favor, but opt out if the Court makes an unfavorable merits ruling.  *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547-49 (1974).  The notice

---

[2]  That this Court has already made a ruling on the merits in the DOJ trial and Plaintiffs are seeking to apply the doctrine of collateral estoppel does not alter the conclusion that this motion is premature.  Plaintiffs' motion requests that this Court make another merits determination in this case with respect to the putative class, which has not been certified.  Plaintiffs and Apple disagree regarding the impact of collateral estoppel on this case.  Before this Court can make a determination on that issue, it must first determine whether a class should be certified and, if so, notice must be provided to the class and the opt-out period must have expired.  *See Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 336 (S.D.N.Y. 2009) (deferring decision on plaintiffs' summary judgment motion "until adequate notice has been sent to the potential class members").

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

provisions of Rule 23(c)(2) exist to prevent precisely this hazard.  *Id.* at 547 (1966 amendments to Rule 23 responded to criticism that "it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one"); 1966 Amendments to Rule 23, advisory committee note ("Under proposed subdivision 23(c)(3), one-way intervention is excluded.").  Class notice must advise the member that "the judgment," "[w]hether or not favorable to the class" will "include … those … who have not requested exclusion," and thus class notice and the opportunity to opt out *must precede* any judgment.  Fed. R. Civ. Proc. 23(c)(2)-(3)).

Therefore, "[a] court's decision on the merits … should ordinarily not occur before or simultaneous with a decision on class certification."  *Cuzco*, 262 F.R.D. at 335 (citations omitted).[3]  "[I]t is 'difficult to imagine cases in which it is appropriate to defer class certification until after decision on the merits.'"  *Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund*, 214 F.3d 132, 135 (2d Cir. 2000) (per curiam) (quoting *Bieneman v. Chicago*, 838 F.2d 962, 964 (7th Cir. 1988) (per curiam)); *see also*, *e.g.*, *Bertrand v. Maram*, 495 F.3d 452, 455 (7th Cir. 2007) ("Class-action status must be granted (or denied) early … to clarify who will be bound by the decision"); *Schwarzschild v. Tse*, 69 F.3d 293, 296 (9th Cir. 1995) (Rule 23 "clearly contemplates that the notice requirement will be met before the parties are aware of the district court's judgment on the merits").  Indeed, when a court rules on the merits before certification and notice to the class, a class may not be certified at all.  *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 354 (7th Cir. 1975) (because plaintiffs "affirmatively sought resolution on the merits prior

---

[3]  The only exception to this rule is where a defendant waives its objection to a decision on the merits prior to a decision on class certification, such as when a defendant moves for summary judgment pre-certification.  *See Mendez v. The Radec Corp.*, 260 F.R.D. 38, 45 (W.D.N.Y. 2009).  But Apple has consistently maintained that class certification must be determined before a determination on collateral estoppel.  *See* 12-cv-2826, Dkt. 338, Aug. 2, 2013 Scheduling Proposal ("Class plaintiffs have also raised the possibility of addressing collateral estoppel questions via a motion for summary adjudication.  While there is the potential for such a motion to be heard before the close of merits discovery, it should be scheduled (if brought) after a decision on class certification."); *see also* Fed. R. Civ. P. 23(c)(1)(A) ("court must determine" class certification "[a]t an early practicable time").

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

to certification in the face of objections by the defendants, they have themselves effectively precluded any class certification in this case"); *see also Katz v. Carte Blanche Corp.*, 496 F.2d 747, 762 (3d Cir. 1974).

### III.   Plaintiffs Cannot Use Offensive, Non-Mutual Collateral Estoppel To Establish Antitrust Injury Or The Amount Of Damages

Plaintiffs seek to extract hundreds of millions of dollars in damages from Apple based on nothing more than the shortcut of collateral estoppel.  Unable to shoulder their heavy burden based on actual evidence before the Court, Plaintiffs attempt to rely on 66 purported findings from the Court's July 10, 2013 Opinion that they assert are conclusively binding.  *See* Mem. 10-19; Separate Statement.  But the vast majority of the findings they seek to import from the DOJ action were unnecessary to the judgment there, and thus cannot relieve Plaintiffs of their burden to prove antitrust injury or the amount of damages.  *See* Mem. 12.  Moreover, those abstract and generalized findings would not establish the concrete and particularized harm to each individual putative class member that Plaintiffs must conclusively prove here.  In addition, many of Plaintiffs' proposed collateral estoppel findings relate to issues on which *Apple* bore the burden of proof in the DOJ trial and therefore cannot satisfy *Plaintiffs'* burden of proof in this case.  *See Cobb. v. Pozzi*, 363 F.3d 89, 113 (2d Cir. 2004) (collateral estoppel is inappropriate where burden of proof on issue was different in prior litigation).

### A.   The Court's Prior Findings Cannot Be Given Preclusive Effect Unless They Were Necessary To Its Prior Judgment

Offensive non-mutual collateral estoppel is permissible *only* where

(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005).  "In addition, a

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

court must satisfy itself that application of the doctrine is fair." *Id.* (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)).  Under this standard, it is not enough for the Court to have made findings relevant to the elements Plaintiffs must satisfy here.  Instead, those findings must have been "necessary to support a valid and final judgment" in the DOJ action.  *Id.*

Courts interpret the "necessary" prong of the collateral estoppel standard strictly.  For example, the Fourth Circuit has explained that the term "necessary" has precisely its ordinary meaning—"logically required," "essential," or "indispensable."  *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 327 (4th Cir. 2004) (quotation marks omitted).  In *Microsoft*, collateral estoppel "foreclose[d] relitigation of any fact that was 'supportive of' [a] prior judgment," which "swe[pt] so broadly that it might lead to inclusion of all facts that may have been 'relevant' to the prior judgment," risking "the very unfairness about which the Supreme Court was concerned in *Parklane*."  *Id.*; *see also Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, 744 F.2d 118, 124, 133 (D.C. Cir. 1984) (reversing broad application of "potentially dangerous" offensive collateral estoppel).  The court thus reversed the district court's order designating 350 prior findings as conclusively established, remanding for determination of those facts that were "critical and necessary" to the prior judgment.  *Microsoft*, 355 F.3d at 329.

In antitrust cases, courts evaluate the elements of the claim resolved by the prior judgment to determine whether particular findings were necessary.  For example, in *Howard Heiss Dental Laboratories Inc. v. Dentsply International, Inc.*, 602 F.3d 237 (3d Cir. 2010), private antitrust plaintiffs argued that a prior finding—made in a DOJ suit—that the defendant had "engaged in anticompetitive practices compelled an inference of antitrust injury" to the private plaintiffs.  *Id.* at 247.  Rejecting this application of collateral estoppel, the court held that no "inference of anticompetitive injury to the Plaintiffs" had been necessary to the finding of

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

liability in the DOJ action. *Id.* at 248. Even if an inference that plaintiffs had been injured could "be gleaned from the Government Case," that did "not mean that it was essential to" the judgment in the prior action. *Id.*

Likewise, in *Discover Financial Services v. Visa U.S.A. Inc.*, 598 F. Supp. 2d 394, 398 (S.D.N.Y. 2008), this Court rejected a request for broad application of collateral estoppel in a private antitrust suit. There, follow-on individual plaintiffs invoked collateral estoppel after Section 1 liability was adjudicated in an action brought by the DOJ, and the court denied the plaintiffs' broad request for "an order establishing as undisputed" both "the elements of Discover's § 1 claim" and 81 additional purported facts mined from the trial court and appellate decisions in the DOJ action. *Id.* at 401 (quotation marks omitted). Instead, it gave preclusive effect to a narrow set of key determinations: the scope of the relevant markets, that the defendants had power in the relevant markets, that the challenged policies were unlawful restraints of trade, and four specific mechanisms through which the challenged policies had "harmed competition and consumers." *Id.* The court limited its ruling to those "determinations" that were "required to satisfy the elements of the DOJ's antitrust action, and were thus necessary to support the judgment there." *Id.* at 400.

Plaintiffs ignore the elements of the DOJ's Sherman Act claim, and instead stitch together a patchwork of inapposite cases in an effort to obscure the necessity requirement. Citing *Hoult v. Hoult*, 157 F.3d 29 (1st Cir. 1998), they argue that any findings that are "central to the route that led the factfinder to the judgment reached" are "necessary." Mem. 12 (quoting *Hoult*, 157 F.3d at 32). But because the Court's finding of a Sherman Act violation would be sufficient to support the judgment even if the Court had not gone on to make the findings on which Plaintiffs rely, those findings are simply a *detour* from the logical "route that led the

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

[Court] to the judgment reached." *Hoult*, 157 F.3d at 32.[4]  Such findings—divorced from the elements of the claims being tried—cannot be given collateral estoppel effect.  *See Discover*, 598 F. Supp. 2d at 400; *Dentsply*, 602 F.3d at 248.  Contrary to Plaintiffs' suggestion, Apple does not argue that the excerpts from the Court's decision that Plaintiffs cite could have been avoided "'under some hypothetical resolution of'" the Sherman Act claim tried in the prior proceeding. Mem. 9 n.37 (quoting *Courtney v. LaSalle Univ.*, 124 F.3d 499, 504 (3d Cir. 1997)).  Its position is that those observations were not necessary to the Court's actual resolution of that claim.[5]

### B.   Plaintiffs' Proposed Findings Related To Injury And Damages Were Not Necessary To The Judgment In The DOJ Action And Therefore Cannot Be Given Collateral Estoppel Effect

None of the findings Plaintiffs invoke can relieve them of their burden to conclusively establish injury and damages.  At trial in the DOJ action, the Court resolved *only* the question whether "Apple conspired to restrain trade in violation of Section 1 of the Sherman Act."  12-cv-02826, Dkt. 326 ("Op.") 159.[6]  This was all the DOJ needed to prove, because 15 U.S.C. § 4 authorizes the department to "institute proceedings in equity to prevent and restrain" Sherman Act violations without any showing of injury or damages to particular consumers.  *Id; see also Blades v. Monsanto Co.*, 400 F.3d 562, 572 (8th Cir. 2005) ("proof of conspiracy is not proof of common injury"); Areeda & Hovenkamp, ¶ 355 ("When enforcing the antitrust laws via … suits in equity … the federal government prevails by showing a violation.").  By contrast, Plaintiffs

---

[4] Moreover, *Hoult* is inapposite.  There, the general verdict could theoretically have been based on either of two factual findings, one of which would have established an element in subsequent litigation and the other of which would not have.  *Id.* at 31-32.  The *Hoult* court thus considered whether an issue was *actually decided*, a different criterion for collateral estoppel.  *Oneida Tribe of Indians of Wisconsin v. AGB Properties, Inc.*, No. 02-CV-233LEKDRH, 2002 WL 31005165, at *7 (N.D.N.Y. Sept. 5, 2002), presents essentially the same situation.  There, the parties disagreed about *which* findings in a multi-factor analysis had formed the basis of the prior court's opinion, and the subsequent court gave preclusive effect to a factor that the court appeared actually to have relied on.  *Id.*  And in *Courtney v. LaSalle State Univ.*, 124 F.3d 499 (3d Cir. 1997), the defendant argued unsuccessfully that because the prior court could have reached the same conclusion by making findings that were different from the ones it actually made, the actual findings were not necessary to the judgment.  *Id.* at 504.

[5] Plaintiffs' cherry-picked treatise citations do not serve them any better.  Mem. 13.  It is beyond dispute that that trial resolved (pending appeal) only the "issue" of whether Apple violated Section 1 of the Sherman Act.

[6] Apple denies that it violated Section 1 of the Sherman Act.  *See* Response to Pls.' Statement of Facts, No. 76.

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

here must establish elements that were unnecessary to the DOJ's case.  Under the Clayton Act, only a specific "person who shall be injured" by an antitrust violation may bring suit, and to recover Plaintiffs must establish the "damages by [them] sustained."  15 U.S.C. § 15(a); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013) (private antitrust plaintiffs must demonstrate "more than common evidence the defendants colluded to raise … rates").  Because no proof of injury to any individual consumer was required at trial, findings purportedly establishing that fact were not necessary to the Court's prior judgment.[7]

Plaintiffs do not claim (nor could they) that injury to consumers is an element the DOJ must prove in a suit for injunctive relief under the Sherman Act.  But they do assert that the Court's "findings and judgment … relied in significant part on 'the fact that the conspiracy succeeded'" and purportedly resulted in "'higher prices'" for e-books "'across the board,'" causing "consumers [to] suffer[]."  Mem. 16.  As an initial matter, Plaintiffs' "relied in significant part" formulation merely replicates the "supportive of" standard that the court in *In re Microsoft* rejected.  355 F.3d at 327.  By ignoring the elements of the claim previously litigated, Plaintiffs suggest a radical departure from *Dentsply* and *Discover*, which hewed closely to the elements of the Sherman Act claims in prior government litigation to deny broad assertions of collateral estoppel in private suits.  *Dentsply*, 602 F.3d at 248 (comparing elements of private claim for 15 U.S.C. § 26 injunctive relief with elements of DOJ suit under Section 2 of Sherman Act); *Discover*, 598 F. Supp. 2d at 400 ("the determinations [given collateral estoppel effect] were required to satisfy the elements of the DOJ's antitrust action").

---

[7]  States must also prove injury to sue for injunctive relief as "persons" under Section 16 of the Clayton Act.  The threat of ongoing "[g]eneralized injury to the state economy"—as opposed to particular injury to any consumer— "has allowed states to seek an injunction" as parens patriae.  Areeda & Hovenkamp ¶ 355; *see Georgia v. Pa. R.R. Co.*, 324 U.S. 439, 462 (1945); *Burch v. Goodyear Tire & Rubber Co.*, 554 F.2d 633, 634-45 (4th Cir. 1977).  But findings of ongoing injury to the state that would support a state's suit for injunctive relief under the Clayton Act are irrelevant to the question whether a *particular* class member suffered antitrust injury or whether a state can bring a suit for damages as parens patriae.

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

Plaintiffs' outlandish assertion that the Court's generalized statements about anticompetitive effects were actually *necessary* to its finding of a violation of the Sherman Act is belied by the Opinion itself.  The Court condemned Apple's conduct under the *per se* rule, and acknowledged there was no "'need to study the reasonableness'" of that conduct "'in light of the real market forces at work,'" or to "'demonstrate the defendants' challenged behavior had an <u>actual</u> adverse effect on competition.'"  Op. 106 (quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007); *Geneva Pharms. Tech. Corp. v. Barr Labs Inc.*, 386 F.3d 485, 506-07 (2d Cir. 2004)); *see also* Op. 120 ("Plaintiffs have shown … that Apple participated in and facilitated a horizontal price fixing conspiracy.  As a result, they have proven a <u>per se</u> violation of the Sherman Act.").  Rather, the Court's finding of a *per se* violation turned on the *form* of Apple's arrangement with the Publisher Defendants, regardless of "'the reasonableness of the particular prices'" that the purported agreement engendered.  Op. 107 (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 326 n.4 (2d Cir. 2010)).

Nor can Plaintiffs rely on the Court's brief alternative rule of reason analysis.  The Court expressly stated that this analysis was not necessary to its judgment, explaining after announcing its *per se* finding that even "*[i]f it were necessary* to analyze th[e] evidence under the rule of reason, however, the Plaintiffs would also prevail."  Op. 120-21 (emphasis added).  Thus, the Court's rule of reason "determinations have the characteristics of dicta" that may not be given preclusive effect.  Restatement (Second) of Judgments § 27, cmt. h; *see Dentsply*, 602 F.3d at 248 ("we do not find that any inference of anticompetitive injury to the Plaintiffs was essential to our determination that Dentsply had committed an antitrust violation").  And even if the Court concluded that its rule of reason analysis reflected an "alternative, independently sufficient" ground necessary to the judgment, whether findings made pursuant to that analysis could be

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

given preclusive effect would depend on whether Apple actually obtains appellate review of the Court's rule of reason analysis. *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 45 (2d Cir. 1986).[8]

In any event, the Court did not find injury to particular consumers in its rule of reason analysis. The Court acknowledged that "the prices of e-books generally … *decreased* on average in the years following the introduction of the iBook Store," but faulted Apple for offering expert analysis of the causes of the decrease that was supposedly not "scientifically sound." Op. 122 n.61 (emphasis added). The Court did not purport to find what e-book prices would have been but-for the conspiracy, and it did not find *which* particular consumers were harmed by the transition to agency. Thus, the Court's findings do not conclusively establish injury to the individual consumers bringing this motion or the putative class members. Indeed, the evidence at trial demonstrated that some bestseller new releases—like Ted Kennedy's biography *True Compass*—decreased in price after the transition to agency. *See* Richman Decl. Ex. G at 2299:7-22. And the Court analyzed the effect of Apple's conduct over short time periods—sometimes considering only "a two-week period" after the transition to agency, and always limited to "specific events that unfolded … as 2009 became 2010." Op. 97, 158. Plaintiffs cannot extrapolate from these brief periods to cover *years* of e-book sales on which they base their proposed class definition and damages claims. *See* Dkt. 424 at 19 (damages period extends to May 21, 2012).

## C. Findings That Were Made Under A Different Burden Of Proof Cannot Be Given Collateral Estoppel Effect

Plaintiffs never acknowledge that many of their proposed collateral estoppel findings

---

[8] Under the framework set out in *Gelb*, true alternate findings may be deemed "necessary" to a judgment, but "if an appeal is taken and the appellate court affirms on one ground and disregards the other, there is no collateral estoppel as to the unreviewed ground." 798 F.2d at 45. Thus, even if the Second Circuit affirms the Court's judgment in the DOJ action, its disposition of the appeal could invalidate a later judgment based on rule of reason findings given collateral estoppel effect.

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

were made under a different burden of proof.  A "shift or change in the burden of proof can …

make collateral estoppel inappropriate." *Cobb. v. Pozzi*, 363 F.3d 89, 113 (2d Cir. 2004).  The

fairness concerns underlying this principle are obvious:  "To apply issue preclusion when the

burden of proof is heavier in the second litigation would be to hold, in effect, that the losing

party in the first action would also have lost had a significantly different burden been imposed."

*Id.* at 114 (brackets and quotation marks omitted).

This rule prevents Plaintiffs from relying on any of the Court's rule-of-reason findings

that Apple's conduct did not have pro-competitive effects.  The Court assigned Apple the burden

to prove pro-competitive effects at the 2013 trial.  Op. 106 ("'If the plaintiffs satisfy their initial

burden [to show adverse effect on competition], the burden shifts to the defendants to offer

evidence of the pro-competitive effects of their agreement.'" (quoting *Geneva Pharms.*, 386 F.3d

at 507)); *id.* at 121 ("Apple has not shown that the execution of the agreements had any pro-

competitive effects.").  By contrast, Plaintiffs bear the burden of proving injury and damages at

the upcoming trial, including the burden to show that any harm to consumers was not offset by

pro-competitive effects of Apple's conduct.  *See J. Truett Payne Co., v. Chrysler Motors Corp.*,

451 U.S. 557, 568 (1981); *Minpeco, S.A. v. Conticommodity Servs., Inc.*, 676 F. Supp. 486, 488-

90 (S.D.N.Y. 1987).  Because Apple has the right to litigate under the proper burden of proof,

any findings on the pro-competitive effects of Apple's conduct cannot be given preclusive effect.

The same principle would apply to any purported finding of antitrust injury to particular

consumers.  No party bore the burden to prove antitrust injury to individual consumers at the

2013 trial—it was neither an element of nor a defense to the government's claims.  Now that

Plaintiffs bear that affirmative burden, they must prove, using admissible evidence, that every

class member suffered injury as a result of Apple's conduct.  This they cannot do.

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

### D. Even If They Were Accepted, Plaintiffs' Proposed Collateral Estoppel Findings Would Not Carry Their Burden To Prove Conclusively That Every Putative Class Member Suffered Actual Injury

The Court's generic findings of "price increases" or ways in which "consumers suffered" did not and could not amount to a finding that any particular consumer suffered injury, much less that every consumer in the putative class did so.  Thus, even if Plaintiffs could rely on each of the Court's purported prior factual findings, they still could not prove (as they must to obtain summary judgment) that every putative absent class member suffered private antitrust injury.

Plaintiffs' assertion that they "need not show that every class member … was injured, so long as they can show widespread injury to the class," defies basic principles of due process.  Mem. 15 n.74.  To permit *actual recovery* by uninjured plaintiffs—on Plaintiffs' motion for summary judgment, no less—would clearly "abridge" Apple's substantive right not to pay uninjured plaintiffs, and impermissibly relieve Plaintiffs of their burden to establish liability to each class member.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342-43 (4th Cir. 1998).  Moreover, it would award uninjured consumers a windfall just because this case was brought as a class action, in violation of the Rules Enabling Act and due process.  28 U.S.C. § 2072(b); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231-32 (2d Cir. 2008), abrogated on other grounds by *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).  In addition, not requiring proof of injury to all class members would unfairly "dilute the recovery" of those consumers, if any, who have actually been harmed.  *Carrera v. Bayer Corp.*, 727 F.3d 300, 310 (3d Cir. 2013).[9]

Plaintiffs are also wrong that "an illegal price-fixing scheme presumptively impacts upon all purchasers of a price-fixed product in a conspiratorially affected market."  Mem. 15

---

[9] Plaintiffs' single post-*Dukes* case that appears to endorse a less demanding standard never even considers the constitutional and statutory impediments to granting actual recovery to uninjured class members.  *In re Urethane Antitrust Litig.*, No. 04-md-1616, 2013 WL 2097346, at *5-*6 (D. Kan. May 15, 2013).

14

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

(quotation marks omitted).  This supposed presumption relies on a tenuous reading of *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977), that the Third Circuit has subsequently rejected. In *Bogosian*, the court stated that "[w]hether or not fact of damage can be proven on a common basis … depends upon the circumstances of each case," and concluded that common proof of injury may have been possible based on the nature of the price fixing allegations in the case before it.  *Id.* at 455.  The Third Circuit has since made clear, though, that "[a]pplying a presumption of impact based solely on an unadorned allegation of price-fixing would … conflict with" Rule 23.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 326 (3d Cir. 2008); *see also In re OSB Antitrust Litig.*, No. 06-826, 2007 WL 2253425, at *7 (E.D. Pa. Aug. 3, 2007) ("Plaintiffs must show, exclusive of any 'short cut,' that they can prove actual classwide impact at trial.").  And consistent with due process, Plaintiffs may not rely on any "shortcut" at all to establish actual liability to individual class members on a motion for summary judgment. *Broussard*, 155 F.3d at 343.  Moreover, even Plaintiffs' cases recognize that the supposed presumption of impact is "at most, a general rule" that cannot hold where, as here, a multitude of "variables enter into setting prices in their industries."  *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 382 (S.D.N.Y. 1996).

Even if it were possible to prove that particular consumers were injured based on the Court's findings of generic price increases (it is not), Plaintiffs would still need to prove that those prices exceeded the levels that would have occurred in the but-for world and were not offset by gains from increased competition.   Where an antitrust violation "increase[s] competition," *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990), injury and damages are determined by offsetting an individual's gains resulting from the violation from her losses.  *See, e.g.*, *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 503-04 (1968);

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

*L.A. Mem. Coliseum Comm'n v. Nat'l Football League*, 791 F.2d 1356 (9th Cir. 1986). The offset requirement prevents "those who actually benefited from alleged [antitrust violations]" from receiving "windfall" damages. *Apex Oil Co. v. DiMauro*, 744 F. Supp. 53, 56 (S.D.N.Y. 1990); *see also Freeland v. AT&T Corp.*, 238 F.R.D. 130, 150 (S.D.N.Y. 2006) (Cote, J.) (plaintiff whose injuries are offset by gains "has suffered no economic harm," and "any damages awarded to such a plaintiff are pure windfall"); *Minpeco*, 676 F. Supp. at 488-89. Even if the Court had found that particular putative class members had been injured by price increases, it would still be unable to determine whether those consumers had suffered antitrust injury or damages until Plaintiffs present evidence showing that there were not offsetting benefits to any member of the class.[10]

Tellingly, Plaintiffs have not identified a single antitrust case in which classwide injury to consumers was established by collateral estoppel. *See* Mem. 18. Their facile reliance on *Discover*, 598 F. Supp. 2d at 397, is misplaced. In *Discover*, a single competitor in a highly concentrated market brought a follow-on suit after a DOJ action. The prior opinion relied exclusively on a rule of reason analysis, in which it identified harms to the specific private plaintiff as a basis for finding anticompetitive effects. *Id.* at 399. *Discover* in no way authorizes relieving an entire class of consumers of their burden to establish injury based on a prior finding that the defendant committed a *per se* Sherman Act violation.

## IV.   Plaintiffs Have Not Met Their Heavy Burden To Conclusively Prove Antitrust Injury And The Amount Of Damages

### A.   Dr. Noll's Testimony Is Unreliable And Inadmissible

As Apple has previously explained (Dkt. 445; Dkt. 514), Dr. Noll's testimony fails even

---

[10]   As discussed in Section III.C., *supra*, in its rule of reason analysis the Court shifted the burden of proof to Apple to demonstrate the existence of pro-competitive effects. Because Plaintiffs, not Apple, bear the burden to demonstrate injury and the amount of damages, these findings made under a significantly different and less favorable burden of proof cannot bind Apple in this proceeding.

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

the basic requirements for admissibility under *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence.[11]  For example, Dr. Noll ignores standard statistical measures undermining his conclusions, which remain in conflict with Plaintiffs' theory in this case.  Dkt. 445 at 7-8, 14-16; Dkt. 514 at 1-2.  And he assumes his conclusion by applying a common average overcharge to all transactions within the same broad e-book category without a basis for doing so.  Dkt. 445 at 18-19; Dkt. 514 at 3-6.  Dr. Noll's methodology cannot calculate individual damages.  But even if it could, the results would be inaccurate and unreliable because he fails to properly identify the but-for world.  Dkt. 445 at 10-13; Dkt. 514 at 6-9.  When Dr. Noll's opinions are properly excluded, Plaintiffs have *no* evidence showing classwide antitrust injury or damages and fail to meet their burden on summary judgment.

> **B.**    **Even If Dr. Noll's Opinions Were Admissible, They Would Not Entitle Plaintiffs To Summary Judgment**
>
> > **1.**    **Summary Judgment Is Inappropriate Where It Turns On Expert Testimony**

Plaintiffs cannot win a nine-figure summary judgment merely by pointing to an absence of evidence from Apple.  *Vt. Teddy Bear*, 373 F.3d at 246.  Instead, they must provide affirmative evidence conclusively proving that they are entitled to judgment as a matter of law.

---

[11]  Apple respectfully requests a pretrial *Daubert* hearing pursuant to Federal Rule of Civil Procedure 104(a) to determine whether expert testimony proffered by the parties is admissible prior to any ruling on Plaintiffs' motion for summary judgment.  The Second Circuit has repeatedly endorsed pretrial evidentiary hearings for evaluating expert evidence.  *See, e.g., Borawick v. Shay*, 68 F.3d 597, 608 (2d Cir. 1995) ("a pretrial evidentiary hearing is highly desirable to enable the parties to present expert evidence and to test credibility through cross-examination"); *Colon v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 70 (S.D.N.Y. 2001) (same).  In particular, *Daubert* hearings are frequently conducted to determine the admissibility of expert evidence in cases such as this one, which involve multiple expert witnesses, and where the testimony of those experts is technical and complex.  *See, e.g., Morales Elec. Contracting, Inc. v. Siemens Bldg. Techs., Inc.*, No. 09-CV-2743 (ADS) (ETB), 2012 WL 3779410 (E.D.N.Y. Aug. 30, 2012) (*Daubert* hearing necessary to evaluate admissibility of damages experts' opinions); *City of Tuscaloosa v. Hacros Chems., Inc.*, 158 F.3d 548, 564 n.21 (11th Cir. 1999) (admonishing district court in price-fixing case for excluding experts under *Daubert* without holding a hearing, and observing that "[w]hile *Daubert* hearings are not required by law or by rules of procedure, they are almost always fruitful uses of the court's time and resources in complicated cases involving multiple expert witnesses").  And "especially in the context of summary judgment," "failure to hold an *in limine* hearing [on expert evidence], … may be an abuse of discretion when the ruling on admissibility turns on factual issues."  *Colon*, 199 F. Supp. 2d at 70 (*citing Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999)).

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

*See id.* at 246-47; *Torres Vargas*, 149 F.3d at 35; *Fontenot*, 780 F.2d at 1194.

A moving party generally cannot satisfy this heavy burden when issues turn on expert opinion testimony.  "[I]f the court admits [expert] testimony, then it is for the jury to decide whether any, and if any what, weight is to be given to the testimony."  *Congress & Empire Spring Co. v. Edgar*, 99 U.S. 645, 658 (1878); *see also United States v. One Carton Positive Motion Picture Film Entitled "491"*, 248 F. Supp. 373, 375 (S.D.N.Y. 1966) (fact finder must decide how much weight to afford expert testimony, which is "subject to the test of cross-examination" at trial).  And "even if entitled to some weight," expert opinions "have no such conclusive force that there is error of law in refusing to follow them."  *Dayton Power & Light Co. v. Pub. Utilities Comm'n*, 292 U.S. 290, 299 (1934); *see also Sherman v. Sokoloff*, No. 80 Civ. 6237, 1985 WL 2442, at *4 (S.D.N.Y. Sept. 5, 1985) (refusing to grant judgment as a matter of law because jury may reject "expert's conclusion based on an evaluation of credibility, or on the ground that his opinions were based on unrealistic assumptions").

Thus, "[w]here expert testimony is necessary to resolve an issue of fact, summary judgment is inappropriate."  *One Carton*, 248 F. Supp. at 375.  Indeed, "even if a plaintiff offers expert testimony on a claim and the defendant does not have its own expert, the defendant is still generally entitled to overcome a summary judgment motion by a plaintiff and require plaintiff to have the factfinder evaluate the expert testimony to determine whether the plaintiff has met his or her burden."  *Brown v. Cnty. of Nassau*, 736 F. Supp.2d 602, 620 (E.D.N.Y. 2010).

This rule applies with obvious force where the Plaintiffs must prove the amount of damages.  "[N]either a court, nor a jury, is bound to accept an expert witness' opinion, … as to the amount of damages, regardless of whether he is in any way contradicted or impeached."  *Cnty. Asphalt, Inc. v. Lewis Welding & Eng'g Corp.*, 444 F.2d 372, 379 (2d Cir. 1971) (citations

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

omitted).  Even in the absence of contradiction or impeachment, a fact finder is not bound to accept a plaintiff's expert's opinion as to the amount of damages because the jury may disbelieve the witness and award a lower damages award.  *See Lutz v. United States*, 685 F.2d 1178, 1186 (9th Cir. 1982); *Wenger v. Wash. Dep't of Soc. Servs.*, No. CV-11-222-JLQ, 2012 WL 4471221, at *2 (E.D. Wash. Sept. 27, 2012) (denying summary judgment as to amount of damages, noting "fact-finder enjoys great independence when determining damages, and is not bound to accept an expert witness' opinion, even if the expert is not contradicted or impeached").  *Cf. Porterfield v. Burlington Northern, Inc.*, 534 F.2d 142, 146-47 (9th Cir. 1976) (allegedly inadequate damage award not to be overturned where it results from credibility judgments by trier of fact).  "The question of damages … is for the jury.  The jury can assess the qualifications, experience, assumptions, and conclusions of Plaintiffs' … expert."  *Wenger*, 2012 WL 4471221, at *3; *see also Liberty Media Corp. v. Vivendi Universal, S.A.*, 923 F. Supp.2d 511, 531 (S.D.N.Y. 2013) ("Credibility determinations are the province of the jury, and it is appropriate for damages awards to reflect credibility determinations regarding the damages calculations of experts.").

Here, Plaintiffs have the burden to prove the existence of antitrust injury and the amount of damages.  *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007).  Because a reasonable jury could find that Plaintiffs have not proven the existence of classwide injury or could return a damages verdict in a lower amount than that offered by Plaintiffs' expert, summary judgment is inappropriate.

> ### 2.  Dr. Noll's Opinions Do Not Satisfy Plaintiffs' Burden Of Conclusively Proving Antitrust Injury And The Amount Of Damages
>
> #### a.  Plaintiffs Cannot Rely On Dr. Noll's Aggregated Damages Estimate To Establish The Amount Of Damages They Are Purportedly Owed

Plaintiffs have not come close to satisfying their onerous burden of proving conclusively

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

the amount of damages they are supposedly owed.  Plaintiffs have not put forth any calculation of their own individual damages, and at this stage they may move for summary judgment *only* on their own behalf.  *See supra* Section II.  Moreover, Plaintiffs could not rely on Dr. Noll's total damages calculation to establish even the amount of damages owed to the putative class. Plaintiffs seek summary judgment in the amount of $280,254,374.  Mem. 4.  This damages figure, however, purportedly reflects the damages suffered by the putative class, the *State* Plaintiffs, members of the armed forces, *and* purchasers whose locations are unknown.  Richman Decl. Ex. D at Exhibit 3.  And Plaintiffs certainly are not entitled to move for summary judgment on behalf of the State Plaintiffs—separate parties who are not members of any putative class.

In addition, Dr. Noll's damages model purports to calculate only aggregate damages, providing no method for calculating how much harm was suffered by the individual class members.  *See* Dkt. 455 at 16-18; Dkt. 514 at 6-7.  But the class action device "leaves the parties' legal rights and duties intact and the rules of decision unchanged" (*Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393, 408 (2010) (plur. opn. of Scalia, J.)), and may not "serve to lessen the plaintiffs' burden of proof" (*Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1365 (11th Cir. 2002), abrogated on other grounds by *Bridge*, 553 U.S. 639).  As the Supreme Court held in *Comcast Corp. v. Behrend*, Plaintiffs must prove actual, individual damages, rather than averages or estimates.  133 S. Ct. 1426, 1433 (2013); *see also Dukes*, 131 S. Ct. at 2561.  They have not done so.  Thus, this Court should deny their motion because granting summary judgment would impermissibly relieve Plaintiffs of their burden to prove damages and violate Apple's due process right to defend itself against individual putative class members' claims and challenge the amount of damages they seek.  *See Dukes*, 131 S. Ct. at 2561; *Lindsey v. Normet*, 405 U.S. 56, 66 (1972).

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

> **b.    A Jury Must Resolve Significant Questions Regarding Dr. Noll's Credibility And Whether His Opinions Should Be Given Any Weight**

Dr. Noll's conclusions and testimony are unreliable, and if they are not excluded, Apple has the right to demonstrate their fundamental flaws to a jury.   "[J]uries have been given significant latitude to alter the amount of damages proposed by experts while still relying on the models developed by those experts."  *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 739 F. Supp. 2d 576, 604 (S.D.N.Y. 2010); *see also MedCom Holding Co. v. Baxter Travenol Labs.*, 106 F.3d 1388, 1398 (7th Cir. 1997) (district court's finding that jury was unable to revise an expert's model to downwardly adjust amount of damages awarded "denigrates the historic and practical abilities of the jury"); *Liberty Media*, 923 F. Supp. 2d at 531 (refusing to reject damages award where jury discounted plaintiffs' experts' damages calculation by 10% to reflect credibility determination); *see also supra* Section IV.B.1.  Because the amount—if any— of damages Plaintiffs may recover is a jury question, Plaintiffs cannot win summary judgment.

There are ample reasons why a jury would be likely to discount or disregard Dr. Noll's testimony.[12]  For example:

| FLAW | CONSEQUENCE |
|---|---|
| The "within R-squared" statistic reveals substantial variation in price around Dr. Noll's average prices that his model cannot explain. Dkt. 445 at 14-15; Dkt. 514 at 2. | A reasonable jury could reject his model as not a good fit for the data. |
| Dr. Noll admitted he does not know or regard as important how many predicted but-for prices in his model would be $9.99.  *See* Dkt. 445 at 15-16 (citing Richman Decl. Ex. J 184:10-185:23); Dkt. 514 at 2.  In Dr. Noll's but-for world *almost no e-books would have been priced at $9.99.*  Dkt. 538 at Fig. 18.  Dr. Noll's model thus conflicts with Plaintiffs' liability theory.  Dkt. 432 ¶ 13. | A jury could reject or reduce Dr. Noll's damages calculation because it conflicts with Plaintiffs' theory of liability.  *See Comcast*, 133 S. Ct. at 1433. |
| Dr. Noll's model applies the same average overcharge to all | A  jury  could  conclude  that |

---

[12]   All of the following bases for discrediting Dr. Noll's opinions exist even though Apple was denied the opportunity to re-depose Dr. Noll regarding his revised expert report, which forms the entire basis of Plaintiffs' summary judgment motion for hundreds of millions of dollars.  To fully and fairly oppose this motion, Apple requires an opportunity to depose Dr. Noll regarding his revised opinions. Fed. R. Civ. Proc. 56(d).

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

| FLAW | CONSEQUENCE |
|---|---|
| e-book titles within broad e-book categories without an economic basis for assuming the prices would have been affected in the same way.  Dkt. 445 at 16-19; Dkt. 514 at 3-6 (citing Dkt. 481 ¶¶ 121-124). | Plaintiffs have not proven injury to all consumers in the class. |
| Dr. Noll's use of average overcharges results in millions of false positives, including for the named representatives' transactions. Dkt. 445 at 18; Dkt. 514 at 5-6 (citing Dkt. 538 ¶¶ 30-33, Fig. 6). | A jury could reasonably consider false positives to reach a lower award than the amount calculated by Dr. Noll's model and conclude that Plaintiffs have not proven injury to all consumers in the class. |
| Dr. Noll admitted undertaking no independent factual study of the "but-for" world, and claimed that such an analysis "has no relevance to [his] report."  Richman Decl. Ex. J 88:13-20.  He simply assumed that all 33 million paid sales made through the iBook Store would have occurred (*id.* at 95:17-96:13) despite evidence that Apple would not have entered the e-books market absent agency.  Dr. Noll failed to consider whether the publishers would have moved to agency or the size of Amazon's market share.  *Id.* at 87:2-10, 83:12-20, 90:24-91:12.   He did not factor into his analysis that Barnes & Noble would have exited the market absent the switch to agency.  Dkt. 445 at 12; Dkt. 514 at 8-9 (citing 12-cv-2826, Dkt. 320 at 2204:17-2205:2). | A jury could conclude that Dr. Noll substantially overstates the harm to consumers based on his failure to take into account these and other important factors in the but-for world. |
| Dr. Noll cannot explain much of the coding in his regression analysis.   He acknowledged that it was "perfectly conceivable" that the coding was inconsistent with his instructions.  Richman Decl. Ex. J 240:21-241:2. | A jury could discredit the results generated by Dr. Noll's conceivably erroneous coding. |
| Dr. Noll defended a method of calculating damages that he did not actually use in his original declaration, but then in his modified analysis, abandoned that testimony and adopted the approach actually employed in his original calculations.  Dkt. 538 ¶¶ 17-18. | A jury could discount Dr. Noll's results because he is inconsistent about what calculation methodology is correct. |
| Dr. Noll's damages estimate is significantly higher than Dr. Wickelgren's, yet Dr. Noll could not testify that Dr. Wickelgren's analysis was irrelevant or unreliable.  Richman Decl. Ex. J at 226:24-227:2, 230:11-231:1.  Dr. Noll testified that he had not even looked at Dr. Wickelgren's estimate and was "not curious" about it. *Id.* at 227:3-7; *see also* Dkt. 445 at 9-10; Dkt. 514 at 10. | A jury could discount Dr. Noll's estimate and arrive at a number closer to Dr. Wickelgren's. |

In short, even if Dr. Noll's opinions were admissible, a jury would have to decide what—

if any—weight to afford them in light of the serious flaws that Apple will develop through cross-

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

examination.  *See Liberty Media Corp.*, 923 F. Supp. 2d at 531.  Dr. Noll's error-ridden analysis falls far short of the conclusive proof Plaintiffs need to prevail on summary judgment.

### C.     Genuine Disputes Of Material Fact Exist Regarding Antitrust Injury

Even if Plaintiffs could use Dr. Noll's flawed testimony to prove antitrust injury and damages (they cannot), they still would not be entitled to summary judgment:  The testimony of Apple's expert, Dr. Joseph Kalt, creates genuine issues of fact regarding the existence of antitrust injury.  According to Plaintiffs, "logic and economics predict[] … and the evidence showed" that the conspiracy would raise retail e-book prices across the board.  Mem. 18.  Plaintiffs wrongly assume antitrust impact may be presumed in this instance, and their attempts to explain away the genuine disputes created by Dr. Kalt's opinions fail.

1.  Plaintiffs may not rely on any presumption of antitrust impact.  As explained above, the supposed presumption of antitrust impact resulting from a price-fixing conspiracy stems from an improper reading of *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977), and has been disavowed by the Third Circuit.  *See supra* at 15.  Moreover, "[l]egal presumptions that rest on formalistic distinctions rather than actual market realities"—like the presumption Plaintiffs divine—"are generally disfavored in antitrust law."  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 466-67 (1992).  Instead, courts must "resolve antitrust claims on a case-by-case basis, focusing on the 'particular facts disclosed by the record.'"  *Id.* at 467 (quoting *Maple Flooring Mfrs. Assn. v. United States*, 268 U.S. 563, 579 (1925)); *see also, e.g.*, *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45-46 (2006) (rejecting presumption of market power).

A presumption of impact is particularly inappropriate in the trade e-books market, where products are not uniform and their prices move in varying directions and magnitudes.  The cases Plaintiffs rely on relate to markets with homogenous products or services.  *See In re Auction Houses Antitrust Litig.*, 193 F.R.D. 162, 167 (S.D.N.Y. 2000); *In re Alcoholic Beverages Litig.*,

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

95 F.R.D. 321, 327 n.4 (E.D.N.Y. 1982).  But where products are differentiated, as here, "the question of impact must be dealt with individually." *In re Alcoholic Beverages*, 95 F.R.D. at 327 n.4.  Indeed, Dr. Kalt explained that "[t]he basic economics of differentiated products (like book titles) teach that the prices of such products do not necessarily respond in unison to changes in supply and demand conditions."  Dkt. 481 ¶ 88(c).  Dr. Kalt's analysis demonstrating the churning in e-book prices proves this point: e-book prices fluctuate even after accounting for Dr. Noll's factors that purportedly capture the only measurable "structural features of the market that may have caused differential effects on prices" (Richman Decl. Ex. D at 13).  *See* Dkt. 481 at Figs. 10A-10F, 11A-11C, 12A-12F, 13A-13F, 15A-15B, 16A-16B, 25A-25B, 26; Dkt. 538 at Figs. 8A-8B, 9, 10, 12.  A presumption of impact is inappropriate in light of the myriad "variables [that] enter into setting [e-book] prices." *In re Indus. Diamonds*, 167 F.R.D. at 382.

2.  Dr. Kalt's opinions directly contradict Dr. Noll's conclusions regarding "widespread" injury.  Plaintiffs incorrectly assert that there is no dispute that the injury resulting from the conspiracy was "widespread," pointing to the increase in *average* prices for a subset of e-books. Mem. 15, 19-21.  Dr. Kalt's testimony, however, criticizes Dr. Noll's use of averages and defeats any inference of "widespread" injury.  First, examining averages does not provide evidence of injury and damages for individual class members.  *See Comcast*, 133 S. Ct. at 1433; *Dukes*, 131 S. Ct. at 2561 (prohibiting Trial By Formula based on averages that would deny defendant right to present individual defenses); *see also* Dkt. 445 at 16-19; Dkt. 514 at 3-7; Dkt. 481 ¶¶ 121-24, 139, App. A at A-3-A-6; Dkt. 538 ¶¶ 7, 23, 26-33, 55, Fig. 6.  And Plaintiffs' expert at trial admitted that his "estimate … for the average price" of e-books after the switch to agency could not show the post-agency price of any particular title.  Richman Decl. Ex. E at 1493:23-1494:4. Dr. Kalt made clear that further analysis is needed to show the fact or magnitude of impact to

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

individuals, especially where there is "extreme diversity of consumers and products (titles) in the e-book marketplace.  A more granular analysis is required here."  Dkt. 481 ¶ 86.

Second, Plaintiffs cannot assume an increase in average e-book prices was caused by the alleged conspiracy without controlling for the increase in average e-book prices caused by heightened competition among e-readers.  Dkt. 538 ¶¶ 88-89.

Third, Dr. Kalt's analyses showing millions of "false positives" flowing from Dr. Noll's methodology debunk his conclusions regarding widespread injury.  *See* Dkt. 481 at Figs. 33, 34A-34B, 35A-35B; Dkt. 538 at Figs. 2A-2F, 4, 5; *see also, e.g.*, *Dukes*, 131 S. Ct. at 2554 (disregarding testimony of plaintiffs' expert where he could not calculate percentage of employment decisions actually affected by stereotyped thinking); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 254 (D.C. Cir. 2013) (soundness of expert's damages model is called into question by its propensity to produce false positives).

3.  Plaintiffs seriously misconstrue Apple's burden in asserting that Dr. Kalt provided "no opinion or analysis of how many books actually had overcharges, what percent of new releases and bestsellers were moved to the caps in the agency agreements, or how much average prices increased."  Mem. 21.  Apple does not have the burden to put forth such evidence on *Plaintiffs' motion for summary judgment*, and Dr. Kalt's analysis shows that Dr. Noll's opinions do not reliably satisfy Plaintiffs' burden.  Dr. Kalt expressly stated that the pre- and post-agency price distributions do "not permit the conclusion that *all* prices rose upon the shift to agency marketing—much less that all prices moved up by the same percentage amount."  Dkt. 538 ¶ 6.

4.  Plaintiffs' suggestion that Dr. Kalt conceded common impact because his figures reveal an upward shift in the "level of the range within which the graphed e-books varied" is wrong.  Mem. 20 (emphasis omitted).  Acknowledging shifts in price distributions after the

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

switch to agency says nothing about the changes in transaction prices of any specific e-book or whether an individual paid more (or less) for a given title because of the agency agreements.

That is particularly true where, as here, the market is characterized by churning and dispersion.  Plaintiffs quote *Bogosian* to claim that an increased price range demonstrates classwide impact (Mem. 20 (quoting *Bogosian*, 561 F.2d at 455)), but ignore that that observation was premised on the existence of an industry price structure (*Bogosian*, 561 F.2d at 455).  The figures from Dr. Kalt's analysis highlighted by Plaintiffs show that no price structure exists here:  Different titles' prices occur at the upper end of the range at different times, with the same true for the lower end of the range.  Dkt. 481 at Figs. 25A, 25B.  These figures and Dr. Kalt's analyses showing price dispersion and churning among e-books contradict any assertion by Plaintiffs of the existence of price structure.  *See id.* at Figs. 10A-10F, 11A-11C, 12A-12F, 13A-13F, 15A-15B, 16A-16B, 25A-25B, 26; Dkt. 538 at Figs. 8A-8B, 9, 10, 12. Furthermore, Dr. Kalt's analyses contradict assertions by Plaintiffs that $9.99 was the "industry standard" price prior to agency marketing.  Dkt. 538 at Fig. 18.

Given the absence of a price structure, and because Dr. Noll's modeling fails to fully describe the relevant characteristics of individual transactions, the shift in the range of prices referenced by Plaintiffs does not explain whether any, much less all or almost all, e-books experienced higher prices as a result of agency marketing.  Dkt. 538 ¶¶ 52-55, 62.  In fact, even after accounting for Dr. Noll's and Plaintiffs' assertions regarding the availability of e-books at retailers, Dr. Kalt's analyses show that "the [price] 'did not rise' category continues to apply in the first four weeks of agency marketing to tens of thousands of titles and over a million class-members transactions."  *Id.*

\*       \*       \*

Plaintiffs attempt to ignore these and Dr. Kalt's other critiques of Dr. Noll's analysis.

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

But the conflicting expert testimony on this issue precludes summary judgment. *See Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 79 (2d Cir. 2002) ("[W]here … conflicting expert reports [are] presented, courts are wary of granting summary judgment." (citation and quotation marks omitted)); *see also, e.g.*, *Rodriguez v. City of New York*, 72 F.3d 1051, 1063-64 (2d Cir. 1995) (reversing summary judgment where expert opinions conflicted).

### D. Genuine Disputes Of Material Fact Exist Regarding The Amount Of Damages

Contrary to Plaintiffs' assertion (Mem. 21), even if the Court were to exclude the opinions of Apple's expert, Jonathan Orszag, a jury could award damages in an amount other than $280,254,374, the estimate provided by Dr. Noll.  As noted above, a jury can discount partially or completely an expert's damages model.  Plaintiffs have not carried their burden, where, at minimum, Apple has cast considerable doubt on the reliability of Dr. Noll's opinions. *See supra* Section IV.B.2.b.  It is the province of the jury to resolve these disputes and determine the appropriate amount of damages to award in this case.

Moreover, Dr. Kalt offered several critiques exposing fundamental flaws in Dr. Noll's damages calculation.  For example, Dr. Kalt explained that Dr. Noll applies a common average overcharge to all e-book titles within broad e-book categories he created, without an economic basis for doing so.  *See* Dkt. 481 ¶¶ 121-124; Dkt. 538 ¶ 7.  In fact, the pricing divergence within Dr. Noll's broad e-book categories undermines his assumption that the same average percentage overcharge applied to all post-agency transactions in each category.  Dkt. 538 ¶¶ 23, 26, 39-43, Figs. 8A-8B.  His methodology produces millions of false positives (see *id.* ¶¶ 29-33), which a reasonable jury could consider in reaching a damages award below Dr. Noll's estimate.

Mr. Orzsag's testimony also creates genuine disputes regarding the appropriate amount of damages in this case.  Plaintiffs disingenuously attempt to twist certain opinions of Mr. Orszag

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

and Dr. Burtis into concessions "that the conspiracy caused overcharge between 15% (Mr. Orszag) and 17% (Dr. Burtis)." Mem. 25. They claim that a review of Mr. Orszag's backup materials revealed that the exact percentage overcharge he calculated was 14.9%, which supposedly amounts to $231,381,037.90 in total damages. *Id.* at 26. Thus, according to Plaintiffs, summary judgment should be granted to prevent the jury from considering any amount of damages below $231,381,037.90. *Id.* at 27. Plaintiffs are wrong.

As an initial matter, Mr. Orszag did not concede that Apple's conduct caused a 15% overcharge. The 15% calculation was the result of an analysis performed by Mr. Orszag, *correcting Dr. Noll's model* to estimate econometrically an agency effect relative to an assumed control group, *before incorporating other factors necessary to estimate actual damages to consumers* (or the overcharge). *See* Richman Decl. Ex. A ¶ 41 ("[s]traightforward modifications to Professor Noll's calculation result in a likely average agency effect in the range of 15 percent (excluding other factors that cannot possibly be included in the econometric analysis)"). And Mr. Orszag did not accept Dr. Noll's methodology even with these corrections. He maintained that any measure of damages must be based on the difference between actual prices and what the prices would have been in the but-for world, and Dr. Noll's did not properly specify the but-for world. *See* Richman Decl. Ex. C at 46:8-19 (the $231.8 million figure is "not an appropriate calculation, because it's not an appropriately defined but-for world").

For example, in Dr. Noll's but-for world, e-book retailers would sell e-books and e-readers at or below cost and, overall, would be unprofitable. Richman Decl. Ex. A ¶ 126. Mr. Orszag concluded that absent the conspiracy "either e-book prices from the Publisher Defendants would have increased at least by 12.9% (relative to Professor Noll's benchmark) or device prices would not have decreased by an equivalent amount." *Id.* ¶ 127. Incorporating

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

these factors, Mr. Orszag concludes that "damages to consumers were no larger than approximately 1.9 percent of e-book sales by Publisher Defendants—which would imply damages of approximately $28 million" (*id.* ¶ 128), a far cry from the $231 million figure Plaintiffs claim Mr. Orszag "conceded."

Contrary to Plaintiffs' claim, Mr. Orszag's 12.9% adjustment is not a "separate opinion," unrelated to the calculation of overcharges. Mem. 26. Rather, the 12.9% adjustment is integral to the calculation of the damages suffered by consumers. Mr. Orszag opined that following the introduction of the iPad, ███████████████████████████████████████████████████████ ██████████████████████████████. *Id.* ¶ 60. As a result, e-book prices from the Publisher Defendants would have increased in the absence of the conspiracy. *See id.* ¶ 127. Dr. Noll's corrected model does not capture the fact that his benchmark e-book prices do not reflect appropriate but-for prices. Richman Decl. Ex. C 43:12-15, 44:6-19 (when asked if Mr. Orszag would still calculate a 15% price increase for the Defendant Publishers if there were no procompetitive effects, he responded, "You can't do that, because it's not an appropriate but-for world. You haven't properly accounted for what would happen to e-book prices."); *id.* at 44:25-45:7 ("you can't construct a but-for world that doesn't make any economic sense"). Mr. Orszag's opinion on but-for prices is central to quantifying damages.

Likewise, Plaintiffs' assertion that "Dr. Burtis conceded at trial that she calculated the conspiracy caused approximately 17% overcharge" (Mem. 22) is a gross mischaracterization of her testimony. Plaintiffs highlight the following testimony elicited from Dr. Burtis by Apple:

> Q:  Now, did you ever calculate the extent to which the defendant publishers' prices went up on an average in the six months after April 1, 2010 compared to the six months before?

> A:  Yes.  It's about 17 percent.

Mem. 22-23 (quoting Richman Decl. Ex. G at 2298:21-24). This observation compared average

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

prices of certain e-books before and after the switch to agency.  Dr. Burtis did not purport to calculate damages, which are measured by "the difference between the prices actually paid and the prices that would have been paid absent the conspiracy."  *New York v. Hendrickson Bros.*, 840 F.2d 1065, 1077 (2d Cir. 1988).  Not even Plaintiffs' expert claims that average prices during the six months preceding agency constituted the but-for world.  12-cv-2826, Dkt. 314 at 1485:16-1488:2, 1490:5-22.  And Dr. Burtis's opinion was that prices would have been higher but for agency.  Thus, his testimony that in the six months after the switch to agency the Defendant Publishers' average prices increased approximately 17% compared to the six months prior says nothing about damages, much less injury suffered by individual class members or effects on the e-book market.[13]

Plaintiffs' attempt to eliminate genuine disputes rests on a mischaracterization of the testimony of Apple's experts.  Dr. Burtis did not purport to calculate damages or overcharges caused by Apple's conduct.  And Mr. Orszag plainly disputes the ability of Dr. Noll's methodology to accurately calculate damages, and thus disputes his damages calculation.  Such disputes are not properly resolved on summary judgment.

## CONCLUSION

For these reasons, if this Court elects to hear Plaintiffs' motion for summary judgment (it should not), the Court should deny the motion.

---

[13]  In a footnote, Plaintiffs assert that "Dr. Burtis admitted [the Defendant Publishers' price] increase was due to the adoption of the agency model."  Mem. 23 n.112 (citing Richman Decl. Ex. F at 2235:11-14).  Again, the testimony cited focused only on *average* prices of publisher defendants' e-books in the actual world, and did not purport to compare actual prices *with the prices that would have existed absent the switch to agency*, the relevant calculation.  Moreover, the 17% increase in average prices was for the *Publisher Defendant's* e-books, only—her testimony does not concern "industry-wide" effect or amount to an admission of "widespread" individual injury.  In fact, Dr. Burtis went on to explain that not even all of the Publisher Defendants' prices increased.  12-cv-2826, Dkt. 322 at 2298:20-2299:20.  Her limited observation cannot reasonably be read to concede that Plaintiffs are entitled to more than $260 million in damages.

CONTAINS MATERIAL DESIGNATED AS HIGHLY CONFIDENTIAL PER PROTECTIVE ORDER

Los Angeles, California
Dated: February 21, 2014

GIBSON, DUNN & CRUTCHER LLP

By: _____
      Theodore J. Boutrous, Jr.

Theodore J. Boutrous, Jr.
Daniel G. Swanson
333 South Grand Avenue
Los Angeles, California  90071
Telephone:  213.229.7000
Cynthia E. Richman
1050 Connecticut Avenue NW
Washington, D.C. 20036
Telephone: 202.955.8500

O'Melveny & Myers LLP
Howard Heiss
Edward Moss
1625 Eye Street, NW
Washington, D.C.  20006
Telephone:  202.383.5380

*Attorneys for Defendant Apple Inc.*