```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :   11 MD 2293 (DLC)
IN RE: ELECTRONIC BOOKS ANTITRUST       :
LITIGATION                              :
                                        :   Related to all
--------------------------------------- X      matters
                                        :
THE STATE OF TEXAS, et al.,             :
                                        :
                       Plaintiffs,      :   12 Civ. 3394 (DLC)
              -v-                        :
                                        :
PENGUIN GROUP (USA) INC., et al.,       :   OPINION & ORDER
                                        :
                       Defendants.      :
                                        :
--------------------------------------- X
```

APPEARANCES

For the Defendant Apple Inc.

Theodore J. Boutrous, Jr.
Daniel G. Swanson
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, California 90071

Cynthia Richman
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036

Howard Heiss
Edward Moss
O'Melveny & Myers, LLP
1625 Eye Street, NW
Washington, DC 20006

For the State of Texas on Behalf of the Plaintiff States

Gabriel Gervey
David Ashton
Eric Lipman

Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711

For the State of Connecticut on Behalf of the Plaintiff States

Joseph Nielsen
Gary M. Becker
Office of the Attorney General of Connecitcut
55 Elm Street
Hartford, CT 06106


DENISE COTE, District Judge:

This Opinion addresses a motion to dismiss claims against Apple, Inc. ("Apple") following a trial on those claims. In an Opinion issued last July, this Court determined that plaintiff States, suing in parens patriae capacity, and the United States of America ("DOJ") had succeeded at trial in showing that Apple had violated the nation's antitrust laws. United States v. Apple Inc., 952 F. Supp. 2d 638, 645 (S.D.N.Y. 2013) ("Liability Opinion"). Apple now moves to dismiss the antitrust action filed by the States. Apple contends that the States lack standing to assert their claims against Apple or, at the very least, that the States should be required seek class certification under Rule 23 of the Federal Rules of Civil Procedure before seeking to recover damages from Apple due to its antitrust violations. For the following reasons, Apple's motion is denied.

BACKGROUND

In 2011 and 2012, thirty-one States, the District of Columbia, and the Commonwealth of Puerto Rico (collectively, the "States" and the "State Action"), DOJ and a putative class (collectively, "the Plaintiffs") brought three separate lawsuits against Apple and five major book publishing companies for violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 ("Sherman Act").[1]  The Plaintiffs alleged that Apple and the book publishers conspired to unlawfully raise the retail price for trade e-books.  All of the book publishers settled before a trial on liability that was held in June of 2013.  The Plaintiffs who participated in the liability trial were DOJ and the States.  Following the trial, this Court found that Apple had violated the Sherman Act in an Opinion issued on July 10.  A permanent injunction was entered against Apple on September 5. United States v. Apple, Inc., 11 MD 2293 (DLC), 2013 WL 4774755 (S.D.N.Y. Sept. 5, 2013).

The States are now engaged in litigation to recover damages for consumers in their jurisdictions who were harmed by Apple's violation of the Sherman Act.  The States and the class are scheduled to try their damages claims against Apple on July 14,

---

[1] In a fourth action, forty-nine States and certain U.S. Territories settled litigation against three of the five publishers.

2014.[2]  See generally In re Elec. Books Antitrust Litig., 11 MD

2293 (DLC), 2014 WL 1282298 (S.D.N.Y. Mar. 28, 2014).

On November 15, 2013, Apple filed this motion to dismiss

for lack of jurisdiction or, in the alternative, to compel the

States to seek class certification.  The motion was fully

submitted on December 13.  In this motion, Apple argues that the

States lack standing to pursue Apple for damages that will be

awarded to their citizens.


DISCUSSION

Apple appears to argue that the States lack both Article

III standing and standing pursuant to the judicially crafted

doctrine known as prudential standing.  Before separately

examining both of these challenges to the ability of the States

to pursue their claim for damages, it is important to consider

the current procedural posture of the case.  Connecticut v.

American Elec. Power Co., Inc., 582 F.3d 309, 333 (2d Cir.

2009).

The issue of standing is customarily raised at the initial

stages of a case.  In this litigation, however, no party

questioned the standing of the States to seek damages from the

---

[2] The class action, which has been certified, represents
consumers in jurisdictions other than the litigating States.
See In re Elec. Books Antitrust Litig., 11 MD 2293 (DLC), 2014
WL 1282293 (S.D.N.Y. Mar. 28, 2014).

publishers and Apple for a violation of the antitrust laws.
Indeed, each of the five publishers has settled with the States
and paid significant sums of money to them.  Apple first raised
the issue of the States' standing after a liability and
injunctive relief trial had been held between Apple and the
States and a judgment entered against Apple.  Because the issue
of standing implicates this Court's jurisdiction over the claims
raised by the States, Apple has not waived its right to raise
the issue even at this late date and this Opinion carefully
considers its challenge.  Id.

The issue of standing is generally resolved on the basis of
the pleadings.  At that stage, "general factual allegations of
injury resulting from the defendant's conduct may suffice."  Id.
(citation omitted).  But, on occasion, factual issues remain to
be explored, and in those circumstances, a court may draw on the
"evidence adduced at trial" to resolve the standing issue.
Gladstone Realtors v. Vill. of Bellwood, 441 U.S. 91, 115 n.31
(1979).  Since standing issues are "not mere pleading
requirements but rather an indispensable part of the plaintiff's
case, each element [of standing] must be supported in the same
way as any other matter on which the plaintiff bears the burden
of proof, i.e., with the manner and degree of evidence required
at the successive stages of the litigation."  Lujan v. Defenders
of Wildlife, 504 U.S. 555, 561 (1992).  Thus, while Apple and

the States have relied during their discussions of the standing
issue almost exclusively on the assertions made in the States'
complaint, this Opinion will also draw freely from the record
created at trial, and this Court's Liability Opinion, to address
the questions of injury, causation, and redressability that
underlie Apple's assertion that the States lack standing to seek
damages here.

"[S]tanding jurisprudence contains two strands: Article III
standing, which enforces the Constitution's case-or-controversy
requirement, and prudential standing, which embodies judicially
self-imposed limits on the exercise of federal jurisdiction."
Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004)
(citation omitted).  These two doctrines will be addressed in
turn.


I. Article III Standing

Apple contends that the States lack Article III standing to
maintain a damages action against Apple premised on its
involvement in the e-books price fixing conspiracy.  The duty to
examine the standing of a plaintiff to pursue a claim in federal
court arises from the Constitutional limitation of "federal
court jurisdiction to 'Cases' and 'Controversies.'"
Massachusetts v. E.P.A., 549 U.S. 497, 516 (2007).  These two
words confine federal courts to examining questions presented

"in an adversary context and in a form historically viewed as capable of resolution through the judicial process."  Id. (quoting Flast v. Cohen, 392 U.S. 83, 95 (1968)).  This constitutional context explains the function of the standing inquiry.  "[T]he gist of the question of standing is whether petitioners have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination."  Id. at 517 (citation omitted).

The ordinary test for Article III standing is well-established.

> From Article III's limitation of the judicial power to resolving "Cases" and "Controversies," and the separation-of-powers principles underlying that limitation, we have deduced a set of requirements that together make up the "irreducible constitutional minimum of standing."  The plaintiff must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision.

Lexmark Int'l, Inc. v. Static Control Components, Inc., 2014 WL 1168967, at *6 (U.S. Mar. 25, 2014) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

There are circumstances, however, in which a court may "short cut" the Lujan standing analysis and lessen a litigant's obligation "to meet[] all the normal standards for

redressability and immediacy." Am. Elec. Power Co., 582 F.3d at 337 (citing Massachusetts, 549 U.S. at 516-17). In Massachusetts, the Supreme Court described the power of the legislative branch to affect the Article III standing inquiry through the creation of a procedural right. 549 U.S. at 516-17. In Massachusetts, the procedural right at stake was created through a federal statute allowing litigants to challenge EPA actions. See 42 U.S.C. § 7607(b)(1). The Massachusetts Court observed that

> Congress has . . . authorized this type of challenge to EPA action. That authorization is of critical importance to the [Article III] standing inquiry: Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before . . . .
>
> When a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant.

Massachusetts, at 516, 518 (citation omitted). The Court noted, however, that in exercising its power to define injuries and articulate chains of causation that give rise to a case or controversy where none may have existed before, "Congress must at the very least identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring suit." Id. at 516.

Massachusetts is particularly apt since Congress has
specifically authorized the filing of an antitrust lawsuit by a
State as parens patriae to recover damages for injury to its
citizens.  Section 15c of Title 15, United States Code ("Section
15c"), provides in pertinent part:

> Any attorney general of a State may bring a civil
> action in the name of such State, as parens patriae on
> behalf of natural persons residing in such State, in
> any district court of the United States having
> jurisdiction of the defendant, to secure monetary
> relief as provided in this section for injury
> sustained by such natural persons to their property by
> reason of any violation of sections 1 to 7 of this
> title.[3]

15 U.S.C. § 15c (emphasis added).  A parens patriae action is a
vehicle through which a State seeks "to protect quasi-sovereign
interests."  Purdue Pharma L.P. v. Kentucky, 704 F.3d 208, 215
(2d Cir. 2013)(citation omitted).  "The parens patriae (i.e.,
'parent of the country') doctrine has its antecedent in the
common-law concept of the royal prerogative, that is, the king's
inherent power to act as the guardian for those under legal
disabilities to act for themselves."  Id. (citation omitted).

Section 15c further provides that the State may obtain
"monetary relief threefold the total damage sustained as
described" above, plus costs and a reasonable attorney's fee.
Id. at § 15c(a)(2).  Finally, the statute requires the State to

---

[3] Sections 1 to 7 are addressed to contracts and trusts in
restraint of trade.  See 15 U.S.C. §§ 1-3.

give notice of its parens patriae action to its citizens and an
opportunity to elect to exclude themselves from the claim for
monetary relief being made on their behalf by the State.  Id. at
§ 15c(b).

     As Apple recognizes, "the States have a quasi sovereign
interest in protecting their citizens from ongoing economic
harm."  See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel.,
Barez, 458 U.S. 592, 607 (1982) ("a State has a quasi-sovereign
interest in the health and well-being -- both physical and
economic -- of its residents in general").  In suing to recover
treble damages on behalf of their injured consumers the States
aim, inter alia, to deter further economic harm and to obtain
relief for the injury inflicted on their economies and their
citizens.  See BE & K Const. Co. v. N.L.R.B., 536 U.S. 516, 541
(2002) (Breyer, J., concurring in part)(referring to antitrust
"treble damages" as "a considerable deterrent").

     As articulated in their pleading, the States have
identified their own and their citizens' concrete injury from
Apple's conspiracy with the publishers to raise e-book prices.
In their Second Amended Complaint, the States allege that "[b]y
preventing the competitive pricing of e-books, Defendants have
deprived the Plaintiff States and their consumers of the
benefits of competition . . . ."  The States also allege that
"[a]s a direct and proximate result of the unlawful conduct

alleged above, the general economies of the Plaintiff States
have sustained injury . . . ."  They further contend that the
"Defendants' activities also had and continue to have a
substantial effect upon the trade and commerce within each of
the Plaintiff States."

These allegations in their pleading were borne out at the
liability trial.  Based on the evidence adduced by the States
and DOJ at that trial, this Court found that Apple and the
defendant publishers "worked together to achieve the twin aims
of eliminating retail price competition and raising the prices
for trade e-books."  Liability Opinion, 952 F. Supp. 2d at 686.
The result of that conspiracy was that "the actions taken by
Apple and the Publisher Defendants led to an increase in the
price of e-books."  Id. at 685.  As set out in the Liability
Opinion, Apple and the major publishers agreed to price caps for
e-books, and upon execution of the conspiracy the publishers
raised their e-book prices to those price caps.  They
"collectively priced 85.7% of their New Release titles sold
through Amazon and 92.1% of their New Release titles sold
through Apple within 1% of the price caps."  Id. at 682.

Based on this record, it is easy to conclude that the
States have Article III standing to bring this parens patriae
lawsuit against publishers and Apple for injunctive relief and
damages.  The States have met the test articulated in Lujan and

its progeny.  The States have both articulated and shown: 1) an injury in fact to their economies, 2) a causal connection between the injury and the conduct complained of, and 3) that it is likely that the injury will be redressed by a favorable decision.  Lujan, 504 U.S. at 560.

### 1. Injury in fact

The first prong of the Lujan test requires that a defendant suffer an "injury in fact."  Id.  "[A]n injury must be concrete, particularized, and actual or imminent."  Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013).

The States have demonstrated an injury in fact.  At the liability trial, the States demonstrated that Apple's price fixing conspiracy resulted in an e-books market devoid of price competition -- an injury that is "actual," not conjectural.  The plaintiffs demonstrated that e-book prices rose precipitously as the result of the price fixing conspiracy of which Apple was a part.  See Liability Opinion, 952 F. Supp. 2d at 682-85.  Courts have long found that harm to States' economies caused by restraints of trade in violation of the antitrust laws constitute injuries that are cognizable in federal court.  See, e.g., State of Ga. v. Pennsylvania R. Co., 324 U.S. 439, 451 (1945).

2. <u>Causation</u>

The causation requirement of the <u>Lujan</u> test "ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged conduct and is in large part designed to ensure that the injury complained of is not the result of the independent action of some third party not before the court." <u>Am. Elec. Power Co.</u>, 582 F.3d at 345 (citation omitted).  To meet this prong of the <u>Lujan</u> test, the injury alleged must be "fairly traceable to the challenged action."  <u>Amnesty Int'l USA</u>, 133 S. Ct. at 1147 (citation omitted).

The States have demonstrated causation between Apple's conduct and the injury to their economies.  As this Court explained in detail in the Liability Opinion, Apple was not just "a knowing and active member" of the price fixing conspiracy, it "forcefully facilitated it."  Liability Opinion, 952 F. Supp. 2d at 691.  Indeed, the "price fixing conspiracy would not have succeeded without the active facilitation and encouragement of Apple."  <u>Id.</u>

3. <u>Redressability</u>

Redressability requires "a substantial likelihood that the requested relief will remedy the alleged injury in fact."  <u>Jana-Rock Const., Inc. v. N.Y. State Dep't of Econ. Dev.</u>, 438 F.3d 195, 204 (2d Cir. 2006) (citation omitted).  "A party need only demonstrate that it would receive at least some relief to

establish redressability." Am. Elec. Power Co., Inc., 582 F.3d at 347 (citation omitted).

A portion of the relief that the States sought by filing this action they have already received, and will continue to receive for years into the future.  An injunction against Apple runs for five years.  The injunction ended practices at Apple that were essential to the conspiracy, required Apple to reform its antitrust law training and compliance processes, and put in place a monitor to report periodically for at least two years on Apple's progress in making those reforms.  See generally United States v. Apple Inc., 12 Civ. 2826 (DLC), 12 Civ. 3394 (DLC), 2014 WL 171159 (S.D.N.Y. Jan. 16, 2014).

At the damages portion of the trial, which will begin on July 14, the States seek further redress for the injury to their economies and to their citizens.  The treble damages the States seek will send a clear message that violation of the antitrust laws carries consequences.  Thus, the States meet the redressability prong even in the absence of the special solicitude that must be afforded to them under Massachusetts. As explained above, Massachusetts recognized that "a litigant to whom Congress has accorded a procedural right to protect his concrete interests . . . can assert that right without meeting all the normal standards for redressability." Massachusetts, 549 U.S. at 518.

While Apple appears to challenge the existence of Article III standing, it does not clearly explain why the States lack the standing dictated by the Constitution.  Apple appears on the one hand to concede that the States have standing to seek injunctive relief against Apple, but to contest that they have standing to seek damages arising from the same conduct by Apple. Apple fails to explain how this can be so.

Apple's concession that the States have standing to enter federal court to put an end to the harm that Apple imposed on their economies is incompatible with its argument that the States do not have standing to recover damages in response to that same harm.  The States have as concrete an interest in deterring future harmful antitrust violations by pursuing treble damages as they did in suing to stop such violations.  Apple has cited no authority to support the distinction it is advocating here between the standing to seek an end to an antitrust violation and the standing to seek damages for that violation.

In any event, to the extent there could be such a distinction, the States have clearly demonstrated that they have standing to bring a damages action.  It is explicitly authorized by 15 U.S.C. § 15c, and the Supreme Court has held that the creation of that procedural right by Congress is "of critical importance to the standing inquiry."  Massachusetts, 549 U.S. at 516.

Nothing in the cases upon which Apple relies in this motion suggests that the States do not have Article III standing. Apple principally cites decisions addressed to prudential standing, a separate doctrine which will be discussed below. The Article III standing case which it emphasizes, Hollingsworth v. Perry, 133 S. Ct. 2652 (2013), is inapposite.  In Hollingsworth, proponents of a California ballot initiative concerning same-sex marriage were denied standing to defend the constitutionality of that initiative because they lacked a "personal stake in defending its enforcement that is distinguishable from the general interest of every citizen of California."  Id. at 2663 (quoting Lujan, at 504 U.S. at 560-61).  By contrast, the States have a long recognized interest in protecting the health of their economies from antitrust injuries.  See Pennsylvania R. Co., 324 U.S. at 451.

## II.  Prudential Standing

Apple's principal argument in this motion is that the States do not have the requisite stake in a damages action against Apple to meet the prudential standing limitations on the maintenance of parens patriae actions.  Apple relies heavily on the analysis of prudential standing in Alfred L. Snapp & Son, 458 U.S. at 607 (lawsuit brought by Puerto Rico against Virginia apple growers for discrimination against Puerto Rican migrant

farmworkers), and Am. Elec. Power Co., 582 F.3d at 335-36 (lawsuit brought by eight states against utility companies as contributors to elevated carbon dioxide levels).  In both cases, the courts found that the parens patriae actions met the prudential standing requirements.

The prudential standing doctrine is not derived from Article III of the U.S. Constitution.  It is a judicially crafted doctrine.  See Lexmark, 2014 WL 1168967, at *6.  Thus, even when a plaintiff satisfies the standing requirements dictated by the Constitution, "a plaintiff may still lack standing under the prudential principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim."  Gladstone Realtors v. Vill. of Bellwood, 441 U.S. 91, 99-100 (1979).  While the Supreme Court has not yet "exhaustively defined" the doctrine, it has explained that it encompasses "at least three broad principles: "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."  Lexmark, 2014

WL 1168967, at *6 (quoting Elk Grove Unified Sch. Dist., 542 U.S. at 12).

It is well-established that the limitations on parens patriae standing set forth in cases like Snapp are prudential in nature.  See, e.g., Massachusetts, 549 U.S. at 540 n.1 (Roberts, C.J., dissenting) (describing the "requirements for parens patriae standing" as "prudential"); Republic of Venezuela v. Philip Morris, Inc., 287 F.3d 192, 199 n.* (D.C. Cir. 2002) ("[T]he doctrine of parens patriae is merely a species of prudential standing.") (citation omitted); Serv. Emps. Int'l Union Health & Welfare Fund v. Philip Morris, Inc., 249 F.3d 1068, 1073 (D.C. Cir. 2001) (same); Maryland People's Counsel v. F.E.R.C., 760 F.2d 318, 321 (D.C. Cir. 1985) (parens patriae standing limitations are "prudential . . . element[s] that the courts must dispense with if Congress so provides").

Because prudential standing is a judicially crafted doctrine, "Congress may, by legislation, expand standing to the full extent permitted by Art. III, thus permitting litigation by one who otherwise would be barred by prudential standing rules." Gladstone Realtors, 441 U.S. at 100 (citation omitted); see also Warth v. Seldin, 422 U.S. 490, 501 (1975) ("Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules. . . .  [S]o long as [Article III standing] is satisfied, persons to whom Congress

18

has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others").

In light of this authority, Apple's reliance on prudential standing principles to challenge the standing of the States to bring this parens patriae action is unavailing.  Through the passage of Section 15c, Congress has authorized the States to bring this antitrust action in parens patriae.  As a result, so long as they have shown they have standing under Article III, the standing inquiry is at an end.  It is noteworthy that Apple has not cited any decision rejecting a State's lawsuit brought under Section 15c, or more broadly, any decision by a court invoking the prudential standing doctrine to examine a parens patriae action where there is an express statutory authorization for filing that lawsuit in federal court, much less a decision dismissing such an action.

Because the prudential standing doctrine has no role to play in analyzing the standing of the States to bring their antitrust lawsuit, it is unnecessary to discuss either Snapp or American Electric Power.  Suffice it to say, however, that neither decision suggests that the States lack standing to bring a claim for relief due to injuries suffered to their economies from Apple's illegal conduct.

Apple contends in a footnote that there may be a lurking issue about the proper measurement of damages.  It contends that the States must "prove the amount of damages allegedly suffered by their economies, <u>not</u> the amount of damages allegedly suffered by certain citizens within their respective jurisdictions."  The measurement of damages is not an issue of standing.  In any event, Apple is incorrect.  Congress has authorized the States to recover damages on behalf of their citizens.  Section 15c provides that the States are entitled to present a damages calculation premised on the injuries incurred by their citizens when they paid inflated prices for e-books.  15 U.S.C. § 15c(a)(1).

In sum, the States have Article III standing.  Congress has abrogated any prudential standing <u>parens patriae</u> requirements through the enactment of Section 15c.  Apple's motion to dismiss is denied.


III. <u>Class Certification</u>

Apple argues that the States should be required to seek class certification under Rule 23 of the Federal Rules of Civil Procedure.  Apple urges the Court to read the requirements of Rule 23 into Section 15c and contends that the failure to graft the requirements of Rule 23 onto Section 15c's procedures would violate due process.

Rule 23 applies to class actions.  It permits one or more members of a class to sue as a representative party on behalf of all members of a class where the named plaintiffs' claims are typical of those belonging to class members and where other procedural prerequisites are met.  Fed. R. Civ. P. 23.  Section 15c parens patriae actions are not class actions.  Cf. Mississippi ex rel. Hood v. AU Optronics Corp., 134 S. Ct. 736, 744 (2014) (lawsuit by a State is not a class action, and therefore not subject to the Class Action Fairness Act of 2005). As a statutory matter, therefore, Section 15c actions are not subject to the procedures set forth in Rule 23 that apply to class actions.  Moreover, the Clayton Act contains no provision incorporating Rule 23's requirements onto Section 15c, as the Supreme Court has recognized.  See Illinois v. Abbot & Assocs., 460 U.S. 557, 573 n.29 (1990).  Not surprisingly, therefore, Apple cites no authority for the proposition that Rule 23 applies to Section 15c actions.

To require the States to seek certification of a class would also override the express intent of Congress.  In enacting the Hart-Scott-Rodino Antitrust Improvements Act ("Act"), Congress intended to permit the States to enforce federal antitrust laws without having to navigate the requirements of Rule 23.  As the Second Circuit has explained, Section 15c was

directed toward remedying inadequacies in the existing
scheme of enforcement which affected the usefulness of
private consumer class actions and were barriers to
suits brought by small consumers.  The basic problems
addressed were the difficulty of achieving class
certification of consumer actions pursuant to Federal
Rules of Civil Procedure, Rule 23, and the complexity
of measuring and distributing damages in class
actions.  In effect, the thrust of Title III of the
Act was to overcome obstacles to private class actions
through enabling state attorneys general to function
more efficiently as consumer advocates.

In re Grand Jury Investigation of Cuisinarts, Inc., 665 F.2d 24,

35 (2d Cir. 1981) (citation omitted); see also State of N.Y. by

Vacco v. Reebok Int'l Ltd., 96 F.3d 44, 46 (2d Cir. 1996)

("Congress empowered state attorneys general to investigate and

prosecute antitrust abuses on behalf of consumers stymied by

Rule 23's certification and notification hurdles").[4]

Apple argues the Act violates due process by allowing

parens patriae actions to proceed without requiring the States

to move for class certification.  Apple points to the fact that

Rule 23's requirements are "grounded in due process."  Taylor v.

Sturgell, 553 U.S. 880, 901 (2008).

There is no basis to find that the Act is unconstitutional

because Congress adopted the mechanism of a parens patriae

---

[4] It is also not true, as Apple contends, that the injured
parties are the sole "real parties in interest" and that this
action is indistinguishable from a class action.  As explained
above, the States are suing not merely to vindicate the rights
of their injured citizens, but also for relief from the injury
to their quasi-sovereign interests in the welfare of their
economies.

action to recover damages for citizens of the various States.
The fact that Rule 23's own provisions are grounded in due
process does not mean that the Act does not also comport with
the constitutional imperative of due process.  Congress enacted
Section 15c with Rule 23's provisions well in mind.  It enacted
notice and opt-out provisions to ensure that no consumer is
forced to be bound by any decision should he or she desire to
sue independently.  And Apple's interests are protected by the
statute's requirement that damages be proved and assessed only
by a "reasonable system," subject to court oversight.  15 U.S.C.
§ 15d.  Given these provisions, it is not surprising that none
of the Supreme Court or Second Circuit cases which have
commented on Section 15c's lack of Rule 23 protections has
raised any constitutional concerns.  See, e.g., Illinois v.
Abbott & Associates, Inc., 460 U.S. 557, 573 n.29 (1983); Reebok
Int'l Ltd., 96 F.3d at 46; In re Grand Jury Investigation of
Cuisinarts, 665 F.2d at 35.

Apple's sole authority for suggesting that its due process
rights are being violated is Pfizer, Inc. v. Lord, 522 F.2d 612
(8th Cir. 1975).  Pfizer predates the Act, and was addressed to
parens patriae actions where none of the procedural safeguards
of the (not yet enacted) Act were in place.  See id. at 616
(discussing the importance of "notice and an opportunity [for a

party] to participate in or exclude themselves from the litigation.").

Finally, in the related class action this Court certified a class on March 28, 2014.  See In re Elec. Books Antitrust Litig., 11 MD 2293 (DLC), 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014).  In doing so, the Court carefully examined and rejected each of the challenges brought by Apple against certification. None of those challenges gave cause for any concern that Apple's due process rights are at stake from an effort to obtain damages for its violation of the federal antitrust laws.


CONCLUSION

Apple's November 15, 2013 motion to dismiss the States' Action for lack of standing, or to compel the States to seek class certification, is denied.


        SO ORDERED:

Dated:    New York, New York
          April 15, 2014



                    _____
                              DENISE COTE
                    United States District Judge