UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------- X
                                       :
                                       :        11 MD 2293 (DLC)
IN RE: ELECTRONIC BOOKS ANTITRUST      :
LITIGATION                             :        Related to all
                                       :            matters
-------------------------------------- X
                                       :
THE STATE OF TEXAS, et al.,            :        12 Civ. 3394 (DLC)
                                       :
                     Plaintiffs,       :
         -v-                           :        OPINION & ORDER
                                       :
PENGUIN GROUP (USA) INC., et al.,      :
                                       :
                     Defendants.       :
                                       :
-------------------------------------- X


APPEARANCES

For Apple Inc.

Theodore J. Boutrous, Jr.
Daniel G. Swanson
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, California 90071

Cynthia Richman
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036

Howard Heiss
Edward Moss
O'Melveny & Myers, LLP
1625 Eye Street, NW
Washington, DC 20006

For the State of Texas on Behalf of the Plaintiff States

Eric Lipman
Gabriel Gervey

David Ashton
Kayne Stavast-Piper
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711

For the State of Connecticut on Behalf of the Plaintiff States

W. Joseph Nielsen
Gary M. Becker
Office of the Attorney General of Connecticut
55 Elm Street
Hartford, CT 06106

For the Class Plaintiffs

George W. Sampson
Sean R. Matt
Hagens, Berman, Sobol, Shapiro, LLP
1918 Eighth Avenue, Suite 330
Seattle, WA 98101

Jeff D. Friedman
Shana Scarlett
Hagens, Berman, Sobol, Shapiro, LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710

Kit A. Pierson
Jeffrey Dubner
Cohen, Milstein, Sellers & Toll, PLLC
1100 New York Avenue, N.W., South Tower, Suite 500
Washington, D.C. 20005

Douglas Richards
Cohen Milstein, Sellers & Toll, PLLC
88 Pine Street, 14th Floor
New York, NY 10005


DENISE COTE, District Judge:

On February 21, 2014, the defendant Apple, Inc. ("Apple")

filed a motion for suggestion of remand to the Judicial Panel

for Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. §

1407(a) ("Section 1407(a)").  Apple requests that the class action and the States' _parens patriae_ action be remanded for trial to the Northern District of California and the Western District of Texas, respectively.  For the following reasons, the motion is denied.


BACKGROUND

Before setting forth the background against which this motion for remand must be assessed, it is helpful to give a brief overview of the litigation.  Following this overview, some of the parties' many statements and actions during the more than two year period of this litigation that are relevant to the resolution of this motion are described.

Four related lawsuits have been filed against Apple and five book publishers[1] for fixing the prices of certain e-books in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 ("Sherman Act").  One of the actions was filed by the United States of America ("DOJ") in this district against Apple and the Publisher Defendants.  _United States v. Apple Inc._, 12 Civ. 2826 (S.D.N.Y.) (the "DOJ Action").  A second action is a settlement

---

[1] The five publishers are Hachette Book Group, Inc. ("Hachette"), HarperCollins Publishers, LLC ("HarperCollins"), Holtzbrinck Publishers, LLC d/b/a Macmillan ("Macmillan"), Penguin Group (USA), Inc. ("Penguin"), and Simon & Schuster, Inc. ("Simon & Schuster") (collectively, "Publisher Defendants").

action brought by forty-nine States and five territories, filed in this district against publishers Hachette, HarperCollins, and Simon & Schuster.  State of Texas, et al. v. Hachette Book Grp., Inc., et al., 12 Civ. 6625 (S.D.N.Y.) ("Settlement Action").  A third action is being litigated by thirty-three states and U.S. territories against Apple, Penguin, and Macmillan.  State of Texas v. Penguin Grp. (USA) Inc., 12 Civ. 3394 (S.D.N.Y.) (the "States' Action").  And a fourth action is a consolidated class action by private plaintiffs against Apple and the Publisher Defendants.  In re Electronic Books Antitrust Litig., 11 MD 2293 (S.D.N.Y.)(the "class action").

A liability and injunctive relief bench trial was held in June of 2013 in the DOJ Action and States' Action.  Prior to that trial, each of the Publisher Defendants settled.  As a result, Apple was the sole defendant at the trial.  Apple was found liable in an Opinion issued on July 10, 2013.  United States v. Apple, Inc., 952 F. Supp. 2d 639 (S.D.N.Y. 2013) (the "Liability Opinion").  The class action and the States' Action are scheduled for a joint damages trial on July 14, 2014.  This motion by Apple for a suggestion of remand seeks to separate that trial into two trials and to move those trials to California and Texas.  A more detailed description of the history of this litigation follows.

The Filing of the States' Action and the Class Action

On August 9, 2011, the first putative class action in the e-books litigation was filed by Anthony Petru in the Northern District of California.  Petru et al. v. Apple, Inc., et al., No. 11 Civ. 3892 (N.D. Cal.).  Subsequently, several substantially similar class actions were filed in the Southern District of New York ("SDNY Class Actions"), and the Northern District of California ("California Class Actions").  On August 16, plaintiffs in the SDNY Class Actions filed with the JPML a "Motion to Transfer and Consolidate Related Antitrust Actions to the Southern District of New York," pursuant to Section 1407(a). On December 9, the JPML transferred the California Class Actions, "pursuant to 28 U.S.C. § 1407," to this Court "for coordinated or consolidated pretrial proceedings."  The JPML explained that the "actions involve common questions of fact, and that centralization under Section 1407 in the Southern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation."

On December 21, this Court entered a case-management order which consolidated the transferred cases for pre-trial purposes and appointed Hagens Berman, LLP and Cohen Milstein Sellers & Toll, PLLC co-lead counsel.  Subsequently, substantially similar putative class actions were transferred to this Court by the

JPML pursuant to Section 1407 and this Court's case-management order.

On January 20, 2012, the class plaintiffs filed a Consolidated Amended Class Action Complaint in this district.  A motion to dismiss that pleading was denied on May 15.  In re Elec. Books Antitrust Litig., 859 F. Supp. 2d 671, 673 (S.D.N.Y. 2012).  Apple answered the Consolidated Complaint on May 29, and therein stated that "Apple admits that venue is proper in this district."

On April 11, two coordinated government actions were filed.  Attorneys general from 16 states and territories filed a parens patriae action against Apple, Macmillan, Penguin, and Simon & Schuster ("States' Action") in the Western District of Texas, pursuant to Section 4C of the Clayton Act, 15 U.S.C. § 15c ("Section 4C").  State of Texas et al. v. Penguin Group (USA) Inc. et al., No. 12 Civ. 0324 (W.D. Tex. Apr. 11 2012).  On that same day, DOJ filed its complaint, seeking injunctive relief against Apple and the five Publisher Defendants, in the Southern District of New York.  On the day of filing, DOJ advised the Court by letter that it had reached a settlement with three of the Publisher Defendants.  DOJ explained that it would be following the Tunney Act procedures to give members of the public an opportunity to comment on the settlement.  See 15 U.S.C. § 16(b)-(h).  On April 12, following receipt of letters

6

from other parties to the litigation, the Court scheduled a conference for April 18.

On April 12, Penguin notified the JPML that the States' Action was a potential tag-along action related to the actions pending in this Court.  By letter of April 16 to this Court, on which Apple, the Publisher Defendants, class counsel, DOJ counsel, and the Western District of Texas court were copied, the States wrote that they "will not contest transfer of the State Action to the Southern District of New York pursuant to the statutes governing multidistrict litigation, <u>specifically 28 U.S.C. § 1407(h)</u>." (Emphasis added.)  No party to this litigation objected to a transfer of the States' Action pursuant to Section 1407(h).  Section 1407(h), as further described below, provides for a transfer for trial.

On April 18, the JPML transferred the States' Action "under 28 U.S.C. § 1407 to the Southern District of New York for the reasons stated in the order of December 9, 2011."  The transfer order did not indicate pursuant to which sub-provision of 28 U.S.C. § 1407 the States' Action was transferred.  Pursuant to JPML Rule 7.1(b),[2] the JPML ordered that the execution of the

[2] Rule 7.1(b) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation provides that when the JPML identifies a tag-along action that should be transferred for coordination or consolidation with an existing MDL, that the JPML should issue a Conditional Transfer Order, and "[t]he Clerk of the Panel shall serve this order on each party to the litigation but

transfer order "shall be stayed 7 days from the entry thereof"
to permit any objections.  Neither the States nor any other
party objected to the transfer, and on April 26, the JPML issued
a "Conditional Transfer Order Finalized," stating that
"[i]nasmuch as no objection is pending at this time, the stay
is lifted."

Meanwhile, all parties to this litigation attended the
April 18 conference.  Various scheduling issues were addressed,
including a schedule for the Tunney Act proceedings.  Apple
urged the Court to decide the pending motion to dismiss the
class action and not to defer a decision until the defendants
had an opportunity to move to dismiss the complaints filed in
the government actions.  Apple also indicated its desire that
the DOJ case against Apple be "decided on the merits . . . as
soon as feasible."  During a discussion of scheduling, one of
the Publisher Defendants observed that the claims for damages
would "remain in this Court" in any event.  Another of the
Publisher Defendants explained that two of the Publisher
Defendants had already settled in principal with the States,

---

shall not send the order to the clerk of the transferee district
court until 7 days after its entry."  This stay provision is
intended to allow time for interested parties to object to
transfer pursuant to Rule 7.1(c), which provides that that
"[a]ny party opposing the transfer shall file a notice of
opposition with the Clerk of the Panel within the 7-day period."

that another one was in "settlement mode," and that everyone anticipated that the States' Action would be transferred to this Court.  The three settling Publisher Defendants desired a stay of discovery pending completion of their settlement agreements.

The States attended the April 18 conference, even though their action was not yet in this venue.  After describing the joint investigation they had undertaken with DOJ for two years, attorneys general for Texas and Connecticut expressed the desire of the States to coordinate their litigation with DOJ and the class.

On May 17, the States filed a Second Amended Complaint in this Court.  Through that filing, 17 additional states and territories that were not parties to the Western District of Texas action joined for the first time.  Apple answered the States' Second Amended Complaint on June 22.  The answer admitted that "venue is appropriate in this judicial district." Apple has never sought to amend that pleading.

Scheduling of Liability Trial

The motion to dismiss the consolidated class action complaint having been denied, a conference was held on June 22, to set the overall schedule for the litigation.  DOJ, the States, the class plaintiffs, and all defendants were present. Under the Sherman Act, the DOJ Action, which would be tried to the Court, had priority.  See 15 U.S.C. § 4.  While the DOJ

Action did not seek an award of damages, the States' Action and the class action did.  As a result, the parties in those two actions were entitled to a trial by jury and to bring summary judgment motions before trial.[3]

At the conference, the Court proposed having one trial, to begin on June 3, 2013 if there were no summary judgment practice, and on September 16, 2013, if there were summary judgment practice.  The Court expressed its view that "there are enormous efficiencies for one and all for having a single trial."  Apple, however, stated its preference that the DOJ's injunctive relief and liability case proceed first, as a bench trial, so as to resolve those issues more quickly, and, Apple hoped, to put an expeditious end to what it viewed as the impact of the pendency of the litigation on the e-book market.  As Apple explained at the conference:

> [W]e believe, obviously with your Honor conducting a
> trial, it would be much more efficient.  We could get
> it done more quickly because –– and so that is a
> streamlined trial, narrower focus, focused on the
> issues that really matter to this market.

---

[3] Since this Court's procedures for non-jury trials largely mimic those for filing summary judgment motions, as this Court explained to the parties on June 22, there is customarily no summary judgment motion practice before a bench trial.  See Liability Opinion, 952 F. Supp. 2d at 645.

Apple also stated that the disposition of the liability and
injunctive relief trial might make a second trial unnecessary.
Apple explained that:

> [W]e believe if we had a DOJ trial, which we believe
> could be done very efficiently in front of the Court,
> that the result of that trial would be that there
> would be a way to resolve the other matters without
> the need for a second trial, that there are provisions
> in the rules, obviously for collateral estoppel, prima
> facie case.  It would then be an issue how we would do
> it through any kind of alternative dispute resolution
> means . . . .[4]

When asked by the Court whether it desired to engage in summary
judgment practice, Apple stated that "[i]f in fact all of the
matters were put together [for one trial] with the damages and
other issues, we would want an opportunity to file summary
judgment."

   At the June 22 conference, no party suggested that it had a
right to or expected to return to any other venue for a trial or
that there would be any need, after one trial to determine
liability, to hold multiple trials to determine damages.

---

[4] Counsel for Publisher Defendant Macmillan echoed Apple's
statement that a second trial would not be necessary, stating:

> I also believe, as [Apple counsel] represented, that we
> will all find a way, based on the results of the [DOJ]
> bench trial, to dispose of the remaining claims that are
> still out there . . . .  I think it is extremely unlikely
> that a second trial would ever occur.  So in terms of
> efficiency, I think what we are really talking about is one
> bench trial from which the parties will then negotiate
> whatever they are going to negotiate.

Because the DOJ trial would be a bench trial, both DOJ and Apple sought an expedited trial on liability, and Apple wanted to file a summary judgment motion before any jury trial on damages, the Court abandoned its proposal that there be one trial.  The Court stated that the liability and injunctive relief components of the litigation would be tried first, with the remaining elements of the litigation tried thereafter if necessary.  The Court explained that it would "convert[] . . . the June 3rd trial into a non-jury trial and those parts of this litigation that require a jury trial and summary judgment practice will be split off . . . ."  A schedule for coordinated discovery in the DOJ Action, States' Action and the class action was set.  All fact and expert discovery in all actions, including discovery on issues that could affect any later damages determinations in the States' Action, was to be completed by March 22, 2013.  At the conference, the State of Texas suggested that the States might join DOJ at the June 2013 bench trial, and committed to advising the Court "in a few days by letter" of the States' decision.

A June 25 scheduling order set the date for the liability and injunctive relief trial at June 3, 2013.  By letter of June 26, the States advised the Court that they would participate in the June 3 trial alongside DOJ.  They wished to resolve all "issues related to liability and injunctive relief in our case" at that trial.  At no point did Apple or any other party object

to the States' Action liability trial proceeding alongside the DOJ trial.

On August 29, forty-nine states filed the Settlement Action against Hachette, HarperCollins, and Simon & Schuster.  The action was filed in this district.  On September 6, the Court entered final judgment in the DOJ Action as to these three defendants.

In a lengthy conference of October 26, 2012, addressed to pre-trial scheduling and discovery matters, the Court addressed many of the procedural issues in the litigation.  The parties confirmed that DOJ and the States, but not the class, would participate in the June bench trial.  As of that time, the defendants at trial were expected to be Apple and two of the Publishers.  Just before that conference, Apple had proposed that the briefing on class certification be postponed.  As a result, the Court inquired of Apple at the conference "why Apple doesn't care whether . . . an opt-out period has closed" before the liability trial.  Apple stated that "[w]e think it makes sense to have [class certification] handled after [the liability trial]," and said that any "one-way benefit" to the class plaintiffs from concluding the liability trial prior to the end of the opt-out period for any certified class "is not a particular concern of ours here."  After hearing from the

parties, the Court agreed to "untether" the class certification
briefing from the liability trial.

All parties at the October 26 conference contemplated a
single damages trial to follow the liability trial.  The Court
referred to the damages trial in the singular when it stated
that "I want to make sure that we understand what is happening
at the June trial as opposed to any damages trial."  No party
interjected that more than one damages trial was being
contemplated.

On February 26, 2013, a conference was held in connection
with Penguin's application for a separate jury trial to
determine liability.  The Court set a schedule for briefing on
Penguin's application, and observed that in addition to the June
bench trial "there would be a second trial with a jury that
would be addressed to damages."

On April 26, the parties submitted a joint proposed pre-
trial order, which manifested the parties' understanding that
any trial on damages would occur in this venue.  The proposed
order stated that "[i]f Plaintiff States are successful in
establishing liability as to Penguin and Apple during the June 3
trial, the Court will set a trial date to resolve issues related
to monetary relief on Plaintiff States' claims."  Apple signed
the proposed order.

14

A three week bench trial was held on the question of Apple's liability from June 3 to June 20, 2013.  DOJ and the States participated.  Following the trial, by Opinion and Order of July 10, this Court found that Apple had violated the Sherman Act.  Liability Opinion, 952 F. Supp. 2d at 645.

Scheduling of Damages Trial

Through an Order issued on July 10, the parties were instructed to submit by August 2, 2013 their joint or separate "proposals as to completion of discovery and a schedule for any trial on damages."

Apple's August 2 submission proposed "a single October 2014 jury trial on remaining issues of liability and damages" in the States' Action and class action in the event the Court did not stay all of the litigation pending Apple's appeal from the Liability Opinion.  Apple made a detailed proposal for organizing the two actions "with the objective of avoiding duplication of efforts in the States' action and class action." Apple concluded by stating,

> [t]he Court should stay the second phase of trial in the States' action [pending Apple's appeal].  In the alternative, this Court should resolve class certification first, and then hold a joint jury trial on all remaining issues in the States' action and the class action.

(Emphasis added.)  While Apple proposed a single damages trial date of October 6, 2014, the States and the class requested a damages trial date of April 7, 2014.

A conference of August 9 was addressed to the crafting of the injunction against Apple, Apple's application for a stay pending appeal, and a schedule for any litigation going forward. The class plaintiffs and the States opposed Apple's request for a stay but agreed with Apple that, in the event the stay were denied, a schedule should be set for a single trial before this Court.  Counsel for the class stated that the "single trial" would determine "the entirety of the matter, for the total damages in the United States."[5]  Given the parties' broad agreement on the need for a single jury trial on damages to be held before this Court, the discussion on scheduling focused on other issues.  Apple explained in detail what it wished to accomplish in advance of that trial.  Ultimately, Apple denied that it was trying to slow down the trial on damages and requested that the Court schedule the single damages trial on a date between April and the Fall of 2014.

On August 13, the Court entered a scheduling order for a joint damages trial to resolve the States' and the class's

---

[5] As of that time, the class represented all consumers in the nineteen states and four territories not participating in the States' Action.

16

claims.  The joint damages trial was placed on this Court's May
2014 trial-ready calendar.  No party objected.[6]  A permanent
injunction was entered against Apple on September 5.  United
States v. Apple, Inc., 12-CV-2826 (DLC), 2013 WL 4774755
(S.D.N.Y. Sept. 5, 2013).

At a conference of September 9, the Court and parties
principally addressed Apple's request to reopen fact discovery,
which had closed the prior March.  The Court denied the
application, reciting in detail the procedural history to the
litigation and its reasons for the denial.  Apple also advised
the Court that it had been asking the class plaintiffs to amend
their complaint to know the precise time frame encompassed by
their demand for damages and who the class representative would
be.  Throughout this conference, the Court and the parties
relied on their common understanding that there would be a
single damages trial before the Court.

On October 23, the class plaintiffs filed a First Amended
Consolidated Class Action Complaint.  In that pleading, the
class plaintiffs reduced the number of named plaintiffs,
modified the class definition, and added new allegations in
light of developments subsequent to the filing of their initial

---

[6] Following consultation with the parties, and to accommodate,
inter alia, the opt-out period following the certification of a
class, on March 31, 2014, the trial date was moved to July 14,
2014.

pleading.  In its November 4, 2013 answer, Apple pleaded for the first time that it "denies that venue in the Southern District of New York is proper once pre-trial proceedings conclude."[7]

Motion Practice in Advance of Damages Trial

The class plaintiffs moved for class certification on October 11, 2013.  In support of their class certification motion, they submitted an expert report by Dr. Roger Noll. Apple opposed class certification on November 15, and moved that same day to exclude the testimony of Noll on the issue of class certification.  Apple submitted in support of its opposition to class certification declarations of two experts: Dr. Joseph Kalt and Mr. Jonathan Orszag.  A stipulation by the parties of December 6 required any Daubert motions to be filed by December 18, 2013.

On December 18, the class plaintiffs moved to exclude Kalt's and Orszag's opinions, both from motion practice and at trial.  Also on December 18, the States joined the class plaintiffs' motion to exclude Kalt's opinions and filed their own motion to exclude Orszag's.  The motion for class

---

[7] The parties had stipulated that the class plaintiffs would file a First Amended Class Action Complaint and that Apple would "amend its Answer to reflect new allegations in the First Amended Complaint and developments since Apple filed its [initial] Answer."  There were no new venue related allegations in the First Amended Consolidated Class Action Complaint.

certification was fully submitted on January 21, and the motions to exclude were fully submitted on February 4.

On February 21, Apple filed the instant motion for suggestion of remand.  This was the first notice that Apple provided to this Court that it thought there should be more than one damages trial and that those trials should occur in California and Texas.  Apple's remand motion was fully submitted on March 14.

On March 28, this Court issued two Opinions.  One largely granted the States' and class plaintiffs' motions to exclude Kalt's and Orszag's opinions.  In re Elec. Books Antitrust Litig., 11 MD 2293 (DLC), 2014 WL 1282298 (S.D.N.Y. Mar. 28, 2014).  The second granted the motion for class certification and denied Apple's motion to exclude Noll's testimony.  In re Elec. Books Antitrust Litig., 11 MD 2293 (DLC), 2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014).  The certified class is defined as:

> All persons in the Non-Litigating Jurisdictions who purchased ebooks between April 1, 2010 and May 21, 2012, published by Hachette Book Group, Inc. ("Hachette"), HarperCollins Publishers L.L.C. ("HarperCollins"), Holtzbrinck Publishers, LLC d/b/a Macmillan ("Macmillan"), Penguin Group (USA) Inc. ("Penguin"), or Simon & Schuster, Inc. ("Simon & Schuster") directly from that publisher (including any of its imprints) after the adoption of the agency model by that publisher.[8]

---

[8] The "Non-Litigating Jurisdictions" are American Samoa, California, Florida, Georgia, Guam, Hawaii, Kentucky, Maine, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Jersey, North Carolina, Northern Mariana Islands, Oklahoma,

DISCUSSION

Apple contends in this motion that its right to remand to two other jurisdictions for two separate trials the States' Action and the class action arises from Section 1407(a).  That statute authorizes the JPML to transfer litigation from one district to another.  Under 28 U.S.C. 1407(a):

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation . . . for the convenience of parties and witnesses and [to] promote the just and efficient conduct of such actions.  Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated.

28 U.S.C. § 1407(a) (emphasis added).

In Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998), the Supreme Court held that Section 1407(a)'s requirement that transferred actions "shall be remanded by the panel at or before the conclusion of such pretrial proceedings" prohibited a district court from using 28 U.S.C. § 1404(a) to assign to itself for trial a case transferred for pre-trial purposes.  Id. at 28.  The Lexecon Court emphasized the mandatory nature of Section 1407, absent

---

Oregon, Rhode Island, South Carolina, U.S. Virgin Islands, Washington, and Wyoming.

consent to venue or the resolution of a transferred case prior
to trial.  Id. at 35.

Section 1407 makes special provision for parens patriae
Clayton Act suits.  Under 28 U.S.C. § 1407(h) ("Section
1407(h)"), State parens patriae actions brought pursuant to
Section 4C of the Clayton Act, 15 U.S.C. § 15c, may be
transferred for trial by the JPML without consent of the
parties.  It provides:

> Notwithstanding the provisions of section 1404 or
> subsection (f) of this section, the judicial panel on
> multidistrict litigation may consolidate and transfer
> with or without the consent of the parties, for both
> pretrial purposes and for trial, any action brought
> under section 4C of the Clayton Act.

28 U.S.C. § 1407(h).

All parties agree that the right of remand under Section
1407(a) can be waived if the parties consent to a trial in the
transferee venue, since Section 1407(a) is directed at venue,
not jurisdiction.  Venue is "a personal privilege which 'may be
lost by failure to assert it seasonably, by formal submission in
a cause, or by submission through conduct.'"  Freeman v. Bee
Mach. Co., 319 U.S. 448, 453 (1943)(quoting Neirbo Co. v.
Bethlehem Shipbuilding Corp., 308 U.S. 165, 168 (1939)).

21

I. The States' Action

Apple has no right to request a suggestion of remand of the States' Action to the JPML.  The sixteen States who filed their action in Texas explicitly conditioned their consent to transfer their action to this district on the transfer being conducted pursuant to Section 1407(h), which permits a transfer of parens patriae Clayton Act suits for all purposes.  Those States submitted a letter to this Court, copying all parties, indicating that they would not object to their action being transferred to this venue pursuant to "specifically 28 U.S.C. § 1407(h)."  The States thereby gave Apple and all of the other parties to this coordinated litigation notice of the condition on which they would consent to transfer, and neither Apple nor any other party took exception to the transfer being made pursuant to Section 1407(h).

If any party had objected to the States' notice, the States could have presented their position to the JPML and sought a ruling regarding the issue, and specifically, the terms of any transfer.  Having received no objection, the States were entitled to rely on the transfer as being made under the provision they identified, which is in any event the provision that specifically pertains to the type of action at issue here. In the JPML's transfer order, it noted the absence of any objection to the transfer request.  In the absence of any

22

contrary indication from the JPML, this is sufficient to conclude that the transfer was effectively made pursuant to Section 1407(h), and thus for all purposes, including trial.

The desire of the sixteen States to transfer their action to this district for all purposes is not difficult to understand.  The States had been jointly investigating this antitrust conspiracy with DOJ.  The filing by the DOJ and the States of two actions was coordinated.  The States have exhibited a desire to litigate their claims in conjunction with DOJ and the class at every step of this process.  Indeed, they even attended a conference in this Court before the transfer of their action was official.  The States filed their Settlement Action in this district.  Since the arrival of the States' Action in this district, seventeen more states and territories have joined the States' Action and participated in the liability trial against Apple in this district.

The conclusion that the transfer of the States' Action was pursuant to Section 1407(h) draws further support from the fact that Section 1407(h) is specifically directed at parens patriae claims like those at issue here.  Congress made the decision, in enacting Section 1407(h), to grant Clayton Act parens patriae actions special treatment by encouraging the resolution of these cases through trial in the MDL transferee court.  It would be odd to conclude that the JPML transferred the States' Action

pursuant to a provision other than the one specifically intended for the type of action at issue without any explicit indication that it was doing so.

Apple argues that because the JPML stated that it was transferring the States' Action "for the reasons stated in the order of December 9," and because the order of December 9 transferred several class actions to this Court pursuant to Section 1407(a), the JPML should be presumed to have transferred the States' Action pursuant to Section 1407(a). But "reasons" is different from "purposes." The JPML transferred the States' Action to this venue for reasons of judicial efficiency. Those reasons apply equally to the transfer of the State Action to this venue for trial under Section 1407(h).

Apple also contends that it would be "pure speculation" to find that the JPML intended to transfer this action pursuant to Section 1407(h) and not Section 1407(a), given that the class actions were transferred from California pursuant to Section 1407(a). Apple is incorrect. The issue does not require speculation. The States predicated their consent to transfer on a transfer pursuant to Section 1407(h). And Congress's decision to accord special treatment to Section 4C Clayton Act actions in the MDL context further counsels in favor of a finding that the States' Action was transferred pursuant to Section 1407(h).

II.   <u>The Class Actions</u>

Apple variously indicates in its memorandum that it desires a remand of the "class actions by named plaintiffs Petru, Friedman, and Davis" and that it seeks a remand of the "class actions originally filed in the Northern District of California."  Petru, Friedman, and Davis were each named plaintiffs in class actions filed in the Northern District of California; these three plaintiffs are the only named plaintiffs in the consolidated amended class action complaint.  Apple's application for a suggestion of remand to the JPML with respect to the class actions filed in the Northern District of California is, at a minimum, premature.[9]

First, pretrial proceedings are still ongoing.  The class plaintiffs' motion for summary judgment is still pending.

But, more importantly, the putative class actions, including those that were transferred from the Northern District of California and those that were originally filed in this district are effectively stayed.  On January 20, 2012, a consolidated complaint was filed.  That complaint was amended on October 28, 2013.  A class was certified on March 28, 2014 in that consolidated action consisting of all consumers in the States not pursuing <u>parens patriae</u> litigation through the

---

[9] The discussion in this section of the Opinion does not address the issues of waiver and estoppel, which are addressed below.

States' Action.  A damages trial for that certified class is scheduled for July 14.

In the ordinary course, Apple could make its application for a suggestion of remand with respect to putative class actions filed in the Northern District of California after the July trial.  At that time the Court would ordinarily give the parties an opportunity to address whether the class actions originally filed in New York and California had been rendered moot and should be dismissed, or whether those filed in California should be remanded.[10]

Deferring further discussion of the procedural posture of the originally filed class actions until after the trial on damages is usually appropriate for another reason.  It aids the parties in sorting through several of the complexities that arise from Apple's premature application.  At least two come to mind.

Apple seems to assume that the remand of the class actions originally filed in California would end class action litigation

---

[10] See, e.g., In re Bridgestone/Firestone, Inc, 288 F.3d 1012, 1015 (7th Cir. 2002) (Easterbrook, J.) (observing that nationwide class certification would make transferred suits "redundant"); Diane E. Murphy, Unified and Consolidated Complaints in Multidistrict Litigation, 132 F.R.D. 597, 607 (1991) ("By certifying one nationwide class . . . based on a consolidated pleading, the individual actions have effectively been merged into one, with the exception, of course, of any class members who opt out of the class.").

in the Southern District of New York, but does not explain why that should be so.  There were class actions filed originally in this district and they have as much (or as little) right to proceed as those first filed in California.  Moreover, the consolidated class action complaint is governed by a separate complaint and it is that pleading's class that has been certified, and that pleading's request for damages that will be resolved at the July trial.  To the extent that the consolidated complaint represents the originally filed actions, it must represent all of them, including those filed in New York, which of course cannot be transferred to California without the consent of the plaintiffs.  The named plaintiffs in the consolidated class action seek to continue their litigation here and to have their trial on damages proceed as scheduled in July in New York in a joint trial with the States' Action.

Similarly, Apple has requested that the several class actions originally filed in California be remanded, but at the same time does not appear to be suggesting that it should be subject to more than one class action trial.  Thus, the remand of the several California-filed class actions does little to resolve the issue of which class action complaint should be the first and presumably only class action complaint to proceed to trial.  Since no class has been certified in any of the actions originally filed in California, there is no reason to find that

27

the first and only class action trial should be held in one of those actions.  Here, the plaintiffs in the only action with a certified class choose to proceed with trial here.  Once that trial is completed, it would be surprising if Apple suggested there were any purpose to be served by a remand of the class actions originally filed in California, assuming of course that they had survived that trial.[11]

Indeed, in its reply on this motion, Apple did not address the pointed arguments made in opposition to this motion by plaintiffs' counsel regarding the implications of Apple's motion for the number of trials.  The plaintiffs ask whether Apple is seeking four separate damages trials:  two trials in the States' Action in Texas and New York, and two trials in the class actions in California and New York.  Plaintiffs' counsel points out that those States who joined the States' Action while it was pending in this district certainly have the right to have their bifurcated damages trial completed in this district.  Similarly, to the extent that the originally filed class actions are each still extant and entitled to a damages trial, those class actions filed in New York would have a right to be tried in New York.  Apple did not respond to this obvious question.  And, of

---

[11] Apple does not contest that there is venue over it in the Southern District of New York for the Sherman Act claim at issue here.

course, if this were a case in which class actions had been filed in many jurisdictions throughout the nation and transferred here by the JPML, the number of separate damages trials could grow in number far beyond four if Apple's reasoning were adopted.

III. <u>Waiver</u>

Both the States and the class plaintiffs argue vigorously that Apple has waived any right it might have to request that there be two separate trials on damages, and that those occur in Texas and California.  They are correct.  This is an independent reason why Apple's motion must be denied.

By its statements and conduct throughout this litigation, Apple has repeatedly manifested its consent to a single trial on damages and to that trial occurring in this venue.  Therefore, even if it had the right before the July 14 damages trial to request a remand of either the class actions originally filed in California, or the claims originally filed by sixteen States in Texas, Apple waived that right.

As Apple acknowledges, a party can waive any right to remand under Section 1407(a).  "Section 1407 is not a jurisdictional limitation, but rather 'a venue statute that ... categorically limits the authority of courts (and special panels) to override a plaintiff's choice [of forum].'"  <u>In re</u>

Carbon Dioxide Indus. Antitrust Litig., 229 F.3d 1321, 1326

(11th Cir. 2000) (quoting Lexecon, 523 U.S. at 42).

   In Armstrong v. LaSalle Bank National Association, 552 F.3d

613 (7th Cir. 2009), the Seventh Circuit explained that a waiver

of a right to remand under Section 1407 exists when a party

expressly, or through its actions taken as a whole, evidences an

intent to relinquish the right to remand the case and consents

to retention of the case by the transferee court.  Id. at 616–

17;[12] see Local Union 36, Int'l Bhd. of Elec. Workers, AFL-CIO v.

N.L.R.B., 706 F.3d 73, 82 (2d Cir. 2013)("waiver is the

intentional relinquishment or abandonment of a known right."

(quoting United States v. Olano, 507 U.S. 725, 733 (1993))).

   Apple's waiver of any right it might have to seek remand of

the States' Action requires no extended discussion.  Apple's

waiver of any objection to trial in this venue as to the States'

Action could hardly be clearer.  If Apple had any objection,

then the time to make it was in June of 2012, when the States

requested to join DOJ as plaintiffs in the June 2013 liability

trial.  Apple did not object and that request was granted.  DOJ

and the States worked together to prepare for that trial and

succeeded at trial in proving Apple's liability.  All that

---

[12] Apple relies on Armstrong, and therefore it is unnecessary to
explore further what alternative tests might be employed to
assess waiver.  Armstrong itself drew upon Seventh Circuit
jurisprudence regarding the waiver of the right to arbitrate.

remains in the State Action is a resolution of the amount of
damages and any other relief due to the States based on the
verdict that they obtained against Apple.  Apple can no more
object at this point to the resolution of the remaining issues
in the States' Action in this venue simply because the trial has
been bifurcated than it could object to venue in the middle of a
trial after a Rule 50 motion is denied.

Apple contends that "the fact that a transferee court has
resolved some claims in an action does not nullify a party's
right to seek remand for the remaining claims."  But, this is
not a case in which a transferee court has narrowed the claims
for trial through pretrial motion practice.  Apple agreed
through its statements and conduct that the States' Action could
be tried in this district, and filed this motion months after
the liability trial in the States' Action had concluded with a
verdict against Apple and just weeks after the States had moved
to strike much of the expert testimony Apple sought to offer at
a damages trial.

Apple has also waived any right to two separate damages
trials -- one for the States' Action and another for the class
action -- much less four separate damages trials.  At a
conference in June 2012, the Court had an extended conversation
with the parties about whether there would be one trial in this
litigation resolving all issues or two trials:  one on liability

and a second to determine damages in the event the defendants were found liable.  If Apple believed there was a need for or that it had a right to multiple damages trials that was the moment for it to speak.  After that conference, Apple repeatedly requested in writing and orally that this Court preside over a single trial to resolve all damages claims.  Apple never suggested before filing this motion that there would be a need for multiple damages trials.  Given this record, it is apparent that Apple not only waived its right to a remand of the originally filed States' Action to Texas, it also waived its right to a remand of any originally filed California class actions for a second damages trial.  See Tri-State Employment Servs., Inc. v. Mountbatten Sur. Co., Inc., 295 F.3d 256, 261 n.2 (2d Cir. 2002)("waiver is supported by defendant's representations to the district court that the court constituted the proper forum."); Carbon Dioxide Indus. Antitrust Litig., 229 F.3d at 1322 ("appellants explicitly requested that the district court try their cases").

Apple relies on Armstrong as a case in which a suggestion of remand was upheld despite the acquiescence to the transferee court setting trial dates.  552 F.3d at 613.  But the facts of Armstrong were very different than those here.  Armstrong did not involve a request for remand after the liability portion of the trial had occurred, or a request for multiple damages trials

after plaintiffs' counsel had prepared together for one trial on damages in the same district court.

It is difficult to construe Apple's motion as anything other than an effort to delay a jury determination on damages.[13] The lack of reasoned analysis in its motion papers underscores this reading of its application.  Apple has not made any effort to engage with the many complexities that arise from a suggestion that there should be two damages trial.  What is the collateral estoppel impact on the second trial on damages from the rulings and decisions made in the first damages trial?  Is there a risk of inconsistent verdicts?  Where should any class action trial on damages occur?  If it should occur in New York, why should it not be consolidated with the trial on damages in the States' Action?  As the earlier discussion in the Opinion explains, the States and class plaintiffs all want the trial on

---

[13] Besides seeking to delay any determination on damages, this motion for remand should be viewed as part of Apple's belated effort to avoid a ruling on the plaintiffs' Daubert motions to strike the testimony of Apple's damages experts.  Despite all parties agreeing that Daubert motions should be filed by December 18, 2013, after the States and the class moved on that date to strike Apple's expert testimony, Apple changed course. It argued in opposition to those motions that any decision on the Daubert motions beyond what is necessary to resolve class certification should be deferred until the time for motions in limine.  And four weeks later, Apple filed this motion seeking to move the trials on damages out of this district and argued that the Daubert motions should not be resolved by this Court at all.

damages to proceed in New York in July, and will oppose any
transfer by the JPML to other districts, or if their actions are
transferred, will move to transfer the litigation right back to
the Southern District of New York.  While the outcome of all
that projected litigation is, of course, unknown, it underscores
that Apple's motion is made for tactical purposes of delay, and
that its time to request two separate damages trials, much less
two separate damages trials in Texas and California, is long
passed.


   IV.   <u>Judicial Estoppel</u>

   Apple is also estopped from seeking multiple damages
trials.  The doctrine of judicial estoppel provides that "where
a party assumes a certain position in a legal proceeding, and
succeeds in maintaining that position, he may not thereafter,
simply because his interests have changed, assume a contrary
position, especially if it be to the prejudice of the party who
has acquiesced in the position formerly taken by him."  <u>New
Hampshire v. Maine</u>, 532 U.S. 742, 749 (2001)(quoting <u>Davis v.
Wakelee</u>, 156 U.S. 680, 689 (1895)).  The Supreme Court has
articulated a three-factor test to find judicial estoppel:

> First, a party's later position must be clearly
> inconsistent with its earlier position.  Second,
> courts regularly inquire whether the party has
> succeeded in persuading a court to accept that party's
> earlier position, so that judicial acceptance of an

34

> inconsistent position in a later proceeding would
> create the perception that either the first or the
> second court was misled, . . . .  A third
> consideration is whether the party seeking to assert
> an inconsistent position would derive an unfair
> advantage or impose an unfair detriment on the
> opposing party if not estopped.

Id. at 750-51 (citation omitted).  The Second Circuit "further

limit[s] judicial estoppel to situations where the risk of

inconsistent results with its impact on judicial integrity is

certain."  DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d

Cir. 2010)(citation omitted).  "[A] party puts the integrity of

the judicial process at risk not only when it knowingly lies but

when it takes a position in the short term knowing that it may

be on the verge of taking an inconsistent future action."  In re

Adelphia Recovery Trust, 634 F.3d 678, 696 (2d Cir. 2011).

"Judicial estoppel is designed to prevent a party who plays fast

and loose with the courts from gaining unfair advantage through

the deliberate adoption of inconsistent positions in successive

suits."  Wight v. BankAmerica Corp., 219 F.3d 79, 89 (2d Cir.

2000).  District courts have applied this doctrine in the

context of a party's consent to venue.  See, e.g., Dehaemers v.

Wynne, 522 F. Supp. 2d 240, 246 (D.D.C. 2007).

     Applying these principles, Apple is estopped from pursuing

a remand of either the States' Action or the consolidated class

action and from seeking two separate trials on damages.  Apple's

position, advanced in this motion, is "clearly inconsistent"

with its previous statements and actions.  Apple's eleventh-hour
application cannot be reconciled with its agreement that its
liability would be determined at the June 2013 trial in this
district and its oft-repeated request and assertions that one
damages trial in this district would resolve the States' and the
class's Actions.  As recounted above, Apple has consistently
indicated its consent to venue for one joint trial on the
States' and class's damages claims, affirmatively proposing that
"this Court should . . . hold a joint jury trial on all
remaining issues in the States' action and the class action."

     The second prong of the judicial estoppel test is met as
well.  At the June 2012 conference, Apple advocated for two
trials in this district: the first addressed to its liability
and the second to resolve any surviving damages issues.  Every
conference and scheduling order that followed relied on that
overarching understanding of the shape of this litigation.
Adopting Apple's request for bifurcated proceedings, the States
and DOJ jointly conducted a trial at which they demonstrated
Apple's liability in June 2013.  This Court's scheduling Order
of August 13, 2013, set a due date for one joint pre-trial order
and placed one joint action to resolve all damages issues on
this Court's trial ready calendar.  The schedule for discovery
and motion practice in the States' Action and the Class Action

36

has been consistently coordinated in anticipation of a joint
damages trial.

Permitting Apple to withdraw its consent to a joint damages
trial would also prejudice the class and the States.  For almost
two years, the class plaintiffs and the States have coordinated
their efforts in both discovery and motion practice to prepare
for the single trial.  They have retained a single expert on
damages.  And they have jointly litigated the Daubert motions.
Although Apple does not grapple with the practical effect were
its motion for remand granted, the burden on the plaintiffs of
suddenly having to participate in multiple trials is not hard to
foresee.  For example, would the States' Action have to be split
in two?  And how many class action trials would be required,
where should they be held, which one should proceed first, and
what effect would the first have on the second trial?  Multiple
damages trials in diverse venues will place enormous burdens on
the parties and the court system.

Finally, allowing Apple to withdraw its consent to one
damages trial in this venue at this stage of the litigation
would have a negative effect on the integrity of the judicial
process.  The plaintiffs and the Court have relied on Apple's
request for and consent to a single damages trial.  Had Apple
indicated early in this litigation that it sought multiple
trials in connection with damages, that application could have

been addressed in due course.  All parties would have had a
chance to be heard on Apple's application, to consider the
impact of multiple damages trials on every facet of this
litigation, and if Apple's application were granted, to plan
accordingly.  By reversing course shortly before the damages
trial, Apple is seeking some tactical advantage at the expense
of its adversaries.  The just and efficient administration of
justice would be undermined if Apple's application were granted.

Apple contends that because a finding of judicial estoppel
is discretionary, the doctrine cannot be applied in the context
of the mandatory remand provision of Section 1407(a).  That
argument has no application to Section 1407(h), of course, which
permits a transfer of a parens patriae action for trial.  But,
even with respect to Section 1407(a) itself, as Apple
acknowledges, a party may consent to venue.  For that same
reason, a party can be estopped from withdrawing its consent.
Apple's longstanding consent to venue for one trial to determine
damages in this district is clear, and Apple is estopped from
withdrawing that consent at this late stage.

38

CONCLUSION

Apple's February 21, 2014 motion for suggestion of remand to the JPML is denied.


        SO ORDERED:

Dated:     New York, New York
           April 24, 2014



                        _____
                                  DENISE COTE
                         United States District Judge