```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
IN RE: ELECTRONIC BOOKS ANTITRUST       :      11 MD 2293 (DLC)
LITIGATION                              :
                                        :      Related to all
----------------------------------------X            matters
                                        :
THE STATE OF TEXAS, et al.,             :
                                        :      OPINION & ORDER
                        Plaintiffs,     :
             -v-                        :
                                        :
PENQUIN GROUP (USA) INC., et al.,       :      12 Civ. 3394 (DLC)
                                        :
                        Defendants.     :
                                        :
----------------------------------------X
```

APPEARANCES

For the Defendant Apple Inc.

Theodore J. Boutrous, Jr.
Daniel G. Swanson
Gibson, Dunn & Crutcher, LLP
333 South Grand Avenue
Los Angeles, California 90071

Cynthia Richman
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036

Howard Heiss
Edward Moss
O'Melveny & Myers, LLP
1625 Eye Street, NW
Washington, DC 20006

For the State of Texas on Behalf of the Plaintiff States

Eric Lipman
Gabriel Gervey
David Ashton
Kayna Stavast-Piper

Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711

For the State of Connecticut on Behalf of the Plaintiff States

Joseph Nielsen
Gary M. Becker
Office of the Attorney General of Connecitcut
55 Elm Street
Hartford, CT 06106

DENISE COTE, District Judge:

In June 2013, this Court conducted a trial on liability in which the Department of Justice ("DOJ") and thirty-three states and U.S. territories ("States") asserted that Apple Inc. ("Apple") had violated the antitrust laws of this nation and certain States.  In an Opinion of July 10, this Court found that "Apple conspired to restrain trade in violation of Section 1 of the Sherman Act and relevant state statutes to the extent those laws are congruent with Section 1."  United States v. Apple Inc., 952 F. Supp. 2d 638, 709 (S.D.N.Y. 2013) ("Liability Opinion").  The States and Apple dispute the application of the Liability Opinion to the state civil penalty statutes of the twenty-four States that seek the imposition of penalties against Apple.  For the reasons that follow, this Opinion confirms Apple's liability for penalties pursuant to each of the asserted State claims.  The civil penalties will be assessed by the Court after the upcoming damages trial, and imposed in addition to any

treble damages that might be awarded under Section 4 of the Clayton Act by a jury at that trial.  See 15 U.S.C. 15c(a)(2).

BACKGROUND

Four related lawsuits have been filed against Apple and five book publishers ("Publishers") for fixing the prices of certain e-books in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 ("Section 1" and "Sherman Act"). One of the actions is filed by DOJ against Apple and the Publishers.  United States v. Apple Inc., 12 Civ. 2826 (S.D.N.Y.) (the "DOJ Action").  A second action is a settlement action brought by forty-nine States and five territories against publishers Hachette, HarperCollins, and Simon & Schuster.  State of Texas, et al. v. Hachette Book Grp., Inc., et al., 12 Civ. 6625 (S.D.N.Y.) ("Settlement Action").  A third action is being litigated by thirty-three states and U.S. territories against Apple, Penguin, and Macmillan.  State of Texas v. Penguin Grp. (USA) Inc., 12 Civ. 3394 (S.D.N.Y.) (the "States' Action").  And a fourth action is a consolidated class action brought by private plaintiffs against Apple and the Publishers.  In re Electronic Books Antitrust Litig., 11 MD 2293 (S.D.N.Y.)(the "Class Action").

A liability and injunctive relief bench trial was held in June of 2013 in the DOJ Action and States' Action ("June

trial"). The June trial addressed, _inter alia_, claims brought by the States in their Second Amended Complaint ("SAC"), which they filed on May 11, 2012. Count IV of the States' SAC is entitled "Supplemental State Law Claims" and alleges that Apple is liable for civil penalties under various state antitrust, consumer protection, and deceptive trade practice statutes. In their Prayer for Relief, the States requested that the Court "[a]djudge and decree that the Defendants have committed violations of each of the state laws enumerated in Count IV."

On April 26, 2013, Apple, the States, and DOJ submitted a proposed joint pretrial order ("PTO") to govern the trial. The PTO provided, _inter alia_, that Count IV of the States' SAC was "scheduled to go to trial, as to liability and injunctive relief, on June 3, 2013."

An April 29 Order noted that "[t]he PTO indicated _inter alia_ that Count IV of the plaintiff States' ("States") second amended complaint will be tried at the forthcoming June 3 trial," and required the States to file a supplemental brief providing copies of the relevant state statutes in effect at the time of Apple's alleged misconduct, relevant state caselaw, and authority explaining the impact of any Sherman Act finding on liability under those state laws.

The States filed their brief on May 6, and Apple filed a responsive brief on May 17. Per the April 29 Order, the States'

4

brief provided legal authority under the laws of the relevant States for the forty-four statutory and regulatory state law claims that the States were at that time pressing.  The States asserted that "[a]lthough Plaintiff States have agreed to a subsequent trial to assess the amount of any damages or civil penalties . . . Apple's liability under state law is at issue in the June 3 trial."

Apple's opposition to thirty-six of the forty-four claims rested entirely on an argument that those claims were predicated on state statutes that were "parallel" and "co-extensive" with Section 1 of the Sherman Act, which Apple contended it had not violated.  Apple contended that "[a]s plaintiffs' section 1 claims against Apple fail, so too must these co-extensive state claims."  Apple also argued that the remaining eight claims were not congruent to Section 1 of the Sherman Act.[1]

At the May 23 final pretrial conference, the Court sought to clarify which of the state laws would be at issue at the trial.  The Court stated,

---

[1] The eight claims that Apple contended were not parallel to Section 1 of the Sherman Act are claims under: the Arkansas Unfair Trade Practices Act, Ark. Code Ann. § 4-75-309; the Kansas Restraint of Trade Act, Kan. Stat. Ann § 50-112; regulations promulgated under the Missouri Merchandising Practices Act, Mo. Rev. Stat §  407.010 et seq., see 15 C.S.R 60-8.020, 15 C.S.R. 60-8.090; the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat § 87-303.01 et seq.; the New Mexico Unfair Trade Practices Act, N.M. Stat. Ann. § 57-12-2, et seq.; and the Puerto Rico Regulations Nos. 2648 of May 29, 1980, and 7932 of October 15, 2010.

> I am going to propose that the state law claims
> be tried to the extent that those claims are
> parallel to the Sherman Act claims and not beyond
> that and that they be voluntarily dismissed to
> the extent that they state a cause of action
> beyond the kind of cause of action reflected in
> the Sherman Act.

The States moved on May 28 to voluntarily dismiss all state law claims not congruent with Section 1 of the Sherman Act.  The Court granted that motion on May 29.

On June 3, the first day of the liability trial, the Court asked "for confirmation from the States that the only state law claims that you were pursuing were those that were congruent with the Sherman Act claim."  The Court asked whether the States were "willing to give me that commitment now?"  The States answered in the affirmative.

On June 9, Apple submitted a letter to the Court in which Apple stated its position that "all issues pertaining to the states' requested non-injunctive relief are to be addressed in the later, damages proceedings of this litigation" and requested that the Court issue a ruling that "any issues pertaining to non-injunctive relief sought by the states, including the availability of any such relief at any time, is wholly outside the scope of the ongoing bench trial."  The States responded by letter of June 10, in which they stated that "[t]he States seek, as part of this trial, a determination of Apple's liability under the relevant state laws to the extent those laws are

congruent with Section 1 of the Sherman Act."  Following the
trial, Apple was found liable in the Opinion of July 10, 2013.
Liability Opinion, 952 F. Supp. 2d at 709.

At a conference of August 9, the issue of Apple's liability
under state civil penalty statutes was discussed again.  The
Court directed the States to provide Apple with the specific
state civil penalty provisions triggered by the Liability
Opinion and for both parties to present their respective
positions on Apple's liability for state civil penalties.

On September 20, Apple and the States made those
submissions ("September 20 Submissions").  The States'
Submission pressed twenty-six civil penalty claims under the
laws of twenty-four of the States.  The States listed the
penalty provisions under which they contended that Apple was
liable in an appendix ("Appendix A").  Apple's Submission raised
several objections to a finding of liability pursuant to the
Liability Opinion.  Apple contended that the Liability Opinion
did not establish the legal basis for an award of civil
penalties, that a state-by-state analysis was necessary to
determine whether each penalty must be assessed by a jury or by
the Court, that further fact finding was necessary in some
instances, that an award of civil penalties would constitute
impermissible double recovery, and that Apple's Constitutional
rights under the 5th, 8th, and 14th Amendments to the United

States Constitution might be infringed by the imposition of
state civil penalties.  Apple also contended that some of the
States had raised new requests for civil penalties that were not
in the States' SAC.

On September 25, having received the parties' Submissions,
the Court issued an Order setting forth several presumptions to
guide the parties in advance of the damages trial ("September 25
Order").  First, the Order laid out the elements of a claim
under Section 1 of the Sherman Act and stated that

> [t]o the extent that the state statutes set forth
> in Appendix A are congruent with the
> aforementioned elements for a violation of
> Section 1 of the Sherman Act, Plaintiff States
> have established liability under these laws.  To
> the extent that any statue in Appendix A includes
> additional or materially different elements,
> Plaintiff States have not established liability
> under such statute.  As the liability portion of
> the case is now complete, this Court shall make
> no further factual findings necessary to
> establish liability under any non-congruent state
> statutes.

Second, the Order provided that to the extent a statute mandates a
penalty "per violation," Apple's involvement in the price fixing
conspiracy constitutes a single violation.  Third, the Order stated
that "[a]ny civil penalty awarded under a state statue set forth in
Appendix A shall be assessed as a portion of any treble damages.
Consequently, any such penalties shall be determined by the Court
at the conclusion of the May damages trial."  (As of the time, the
trial on damages was scheduled to take place in May of 2014.)  The

8

Court ordered the parties to confer with respect to the issue of Apple's liability for civil penalties, and to propose a schedule permitting any outstanding legal issues to be briefed.  The parties' briefing was fully submitted on March 7, 2014.

DISCUSSION

Apple makes several arguments against the assessment of state civil penalties.  Apple argues that the Court has not found Apple liable under any of the statutes on which the States base their civil penalties claims.  It contends that two of the state civil penalty statutes require factual findings beyond what was found at the June trial.  Apple also argues that it is impermissible to award state civil penalties in addition to Clayton Act treble damages.  It also contends that imposing civil penalties would violate its due process right to fair notice of what conduct might subject it to liability, and that awarding civil penalties would violate the Eighth and Fourteenth Amendments to the United States Constitution because the proposed penalties are disproportionate and serve no punitive purpose.  Apple argues that because of these purported problems, the Court should award any civil penalties as a portion of the overall treble damages awarded following the damages trial. Apple contends that this is authorized by 15 U.S.C. § 15e. Apple's arguments will be addressed in turn.

9

I.   <u>Apple's Liability</u>

The Court has ruled twice that Apple is liable for state civil penalties under state statutes that are congruent with Section 1 of the Sherman Act.  That was part of the holding of the Liability Opinion.  <u>See</u> Liability Opinion, 952 F. Supp. 2d at 709.  And the September 25 Order reiterated that holding. The only remaining question is whether the States' twenty-six civil penalty claims are predicated on state statutes that are congruent with Section 1 of the Sherman Act.

Before beginning that examination it should be noted that there is no dispute here that federal courts "have jurisdiction to enforce state penalties that are civil in nature."  <u>State of N.Y. v. Hendrickson Bros.</u>, Inc., 840 F.2d 1065, 1086 (2d Cir. 1988).  All of the state penalties the States seek are civil in nature.

Section 1 of the Sherman Act makes illegal "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce among the several States."  15 U.S.C. § 1.  As described in the Liability Opinion, to establish a violation of Section 1 of the Sherman Act, a plaintiff must show "(1) a combination or some form of concerted action between at least two legally distinct economic entities that, (2) constituted an unreasonable restraint of trade either per se or under the rule

10

of reason.  Overall, circumstances must reveal a unity of
purpose or a common design and understanding, or a meeting of
minds in an unlawful arrangement."  Liability Opinion, 952 F.
Supp. 2d at 687 (citation omitted).  The Liability Opinion
further explained that

> the antitrust plaintiff should present direct or
> circumstantial evidence that reasonably tends to
> prove that the defendant and others had a
> conscious commitment to a common scheme designed
> to achieve an unlawful objective.  The evidence
> must also prove defendants had the intent to
> adhere to an agreement that was designed to
> achieve an unlawful objective; specific intent to
> restrain trade is not required.  Since the
> essence of any violation of § 1 of the Sherman
> Act is the illegal agreement itself, the evidence
> must demonstrate a meeting of the minds.

Id. at 689 (citation omitted).

This Court has considered Apple's liability under each
State civil penalty provision at here.  Drawing on the authority
submitted by the parties, the Appendix attached to this Opinion
identifies the statutory provisions underlying the States'
twenty-six civil penalty claims and the basis for finding that
the Liability Opinion renders Apple liable under each of these
provisions.

Apple has not provided any reason to question that twenty-
four of the twenty-six claims being made by the States as of
today are congruent with the Sherman Act claim tried last June.
The question of whether the States' civil penalty claims are

11

congruent with Section 1 was fully briefed prior to the June

trial.  Prior to that trial Apple did not dispute that any of

the twenty-six statutes at issue here were congruent with

Section 1 of the Sherman Act.[2]  Apple contended instead that "The

State Law Claims That Parallel Section 1 of the Sherman Act

Fail," because, Apple believed, it would not be found liable

under Section 1 of the Sherman Act.

In its most recent submission of February 10, 2014, Apple

still does not explain why twenty-four of the States' twenty-six

civil penalty claims are not congruent with Section 1 of the

Sherman Act.[3]  Instead, Apple argues as a general matter that

"[t]o establish that a state statute is 'congruent' with the

Sherman Act, Plaintiffs must demonstrate that the same result

would obtain if the state statue were applied to the facts of

this case" by "apply[ing] the substantive law of the [relevant]

state."  It is not clear why Apple believes this statement to be

helpful to its cause.  The States have made this showing in two

rounds of briefing.  And Apple has only identified a

disagreement with respect to two claims.  In light of this

---

[2] Apple contended that eight other civil penalty claims, which
the States at that time pressed but have since withdrawn, were
predicated on provisions of law requiring proof of elements
beyond those required under Section 1 of the Sherman Act.

[3] For the first time, however, Apple distinguishes two of the
twenty-six claims: one brought by Connecticut and one brought by
Virginia.  These two claims are discussed below.

procedural history, the States have demonstrated the congruence of state civil penalty statutes with Section 1 of the Sherman Act for twenty-four claims.[4]

II.  Connecticut and Virginia

Apple contends that the civil penalty statutes of Connecticut and Virginia include "additional elements that Plaintiffs were not required to prove to establish a Sherman Act violation."  Apple points to the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110o ("CUTPA"), and the Virginia Antitrust Act, Va. Code §59.1-9.11 ("VAA"), arguing that each statute requires a finding of "willfulness" that Apple

---

[4] In a footnote in its September 20 Submission, Apple compared the claims for relief in the SAC and the States' September 20 Submission.  Apple argued that the States had impermissibly changed three civil penalty claims.  Apple points to Alaska's request for penalties under the Alaska Restraint of Trade Act, Alaska Stat. § 45.50.551(b), which did not appear in the States' Prayer for Relief in the SAC; Vermont's request under the Vermont Consumer Fraud Act, under Vt. Stat. Ann. tit. 9 § 2458(b)(1), which was mistakenly listed in the SAC as Vt. Stat. Ann. tit. 9 § 2461; and Nebraska's request for $25,000 under the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1614, which was revised upward to the statutory maximum from the $2,000 request listed in the SAC due to a typographical error. Apple appears to have abandoned its argument regarding these three claims.  In any event, the States may obtain any relief to which they are entitled, so long as Apple had adequate notice. Fed. R. Civ. P. 54(c); Powell v. Nat'l Bd. Of Med. Exam'rs, 364 F.3d 79, 86 (2d Cir. 2004).  Count IV of the States' SAC alleged that Apple violated Alaska's Restraint of Trade Act, Vermont's Consumer Fraud Act, and the Nebraska Consumer Protection Act, thus providing Apple with adequate notice of those claims.  The States may amend their complaint before the damages trial to correct any typographical errors.

contends the States was not required to prove to establish liability under the Sherman Act.

The CUTPA provides, in relevant part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b.  The statute further provides that

> In any action brought under section 42-110m, if the court finds that a person is <u>wilfully using or has wilfully used</u> a method, act or practice prohibited by section 42-110b, the Attorney General, upon petition to the court, may recover, on behalf of the state, a civil penalty of not more than five thousand dollars for each violation.

<u>Id.</u> § 42-110o (emphasis supplied).  The statute defines willfulness:

> For purposes of this subsection, a wilful violation occurs when the party committing the violation knew or should have known that his conduct was a violation of section 42-110b.

The VAA provides in relevant part that "[e]very contract, combination or conspiracy in restraint of trade or commerce of this Commonwealth is unlawful." Va. Code § 59.1-9.5.  The VAA also provides that

> In any action or proceeding brought under § 59.1-9.15 (a) the court may assess for the benefit of the Commonwealth a civil penalty of not more than $100,000 for each <u>willful or flagrant</u> violation of this chapter.  No civil penalty shall be imposed in connection with any violation for

14

          which any fine or penalty is imposed pursuant to
          federal law.

Va. Code Ann. § 59.1-9.11 (emphasis supplied).[5]  "Wilful or

flagrant" is not defined in the statute, and neither the parties

nor this Court have located any decision by a Virginia court

defining these terms in the context of this Virginia statute.

The States argue that wilful means "intentional, or knowing, or

voluntary, as distinguished from accidental."  Apple contends

that "wilful" must be construed as requiring "actual or

constructive knowledge that the defendant's conduct was

illegal."

          Even if the VAA is construed, in accordance with the CUTPA,

to require a finding that Apple knew, or should have known, that

its conduct was illegal, the Liability Opinion rendered that

finding.  Liability has thus been established under both the VAA

and the CUTPA.  The Liability Opinion adopted a scienter

requirement.  To find Apple liable for its participation in the

Publisher Defendants' e-books price fixing conspiracy, this

Court explained that the "circumstances must reveal a unity of

purpose or a common design and understanding, or a meeting of

_____

[5] Apple does not argue that a civil penalty cannot be imposed
under the VAA on the theory that the treble-damages component of
the Clayton Act constitutes a "fine or penalty."  This may be
because the Supreme Court has explained that the Clayton Act is
primarily remedial, rather than punitive in nature.  See
PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 405-06
(2003).

minds in an unlawful arrangement."  Liability Opinion, 952 F.

Supp. 2d at 687 (citation omitted).

> Thus, to prove an antitrust conspiracy, the
> antitrust plaintiff should present direct or
> circumstantial evidence that reasonably tends to
> prove that the [defendant] and others had a
> conscious commitment to a common scheme designed
> to achieve an unlawful objective.  The evidence
> must also prove defendants had the intent to
> adhere to an agreement that was designed to
> achieve an unlawful objective; specific intent to
> restrain trade is not required.  Since the
> essence of any violation of § 1 [of the Sherman
> Act] is the illegal agreement itself, the
> evidence must demonstrate a meeting of the minds.

Id. at 689 (citation omitted).  "Where a vertical actor is

alleged to have participated in an unlawful horizontal

agreement, plaintiffs must demonstrate both that a horizontal

conspiracy existed, and that the vertical player was a knowing

participant in that agreement and facilitated the scheme."  Id.

at 690.  The Liability Opinion made a finding of willfulness,

explaining that "[t]he evidence is overwhelming that Apple knew

of the unlawful aims of the conspiracy and joined that

conspiracy with the specific intent to help it succeed."  Id. at

700; see also id. at 691 (Apple "not only willingly joined the

conspiracy, but also forcefully facilitated it" "with the

specific intent to help it succeed.").

Apple relies on the Supreme Court's discussion of

collateral estoppel in Parklane Hoisery Co. v. Shore, 439 U.S.

322, 326 n.5 (1979), and its progeny, to contend that because

willfulness is not a necessary element of a Sherman Act
violation, any purported finding of willfulness in the Liability
Opinion cannot be given collateral estoppel effect here.  But,
there is nothing collateral about this question.  The doctrine
of collateral estoppel, now known as issue preclusion, "prevents
relitigation in a subsequent action of an issue of law or fact
actually litigated and decided by a court of competent
jurisdiction in a prior action."  Olin Corp. v. Am. Home Assur.
Co., 704 F.3d 89, 98 (2d Cir. 2012) (citation omitted and
emphasis supplied).  The States and Apple were participants in
the June trial in which the relevant findings of willfulness
were made.

        The relevant question is whether Apple was on notice of the
claims that the States were bringing in the June trial and
whether the Court's finding of liability rested in part on a
finding that Apple acted with knowledge that its conduct was
illegal.  As described above, Apple had notice that the States
were seeking civil penalties under the VAA and the CUTPA, and
this Court's finding that Apple engaged in a violation of the
Sherman Act included a finding that Apple acted with the
scienter described above.  Apple is liable under the VAA and the
CUTPA.

III. Civil Penalties as a Portion of Treble Damages

Apple argues that any State civil penalties should be assessed as a portion of any treble damages awarded at the damages trial under the Clayton Act, 15 U.S.C. § 15c(a)(2). Apple contends 15 U.S.C. § 15e ("Section 15e") authorizes such penalties to be taken out of a treble damages award.  Apple is mistaken.

The Clayton Act authorizes states to file parens patriae actions to seek treble damages for antitrust violations on behalf of injured consumers.  15 U.S.C. § 15c ("Section 15c"); see generally In re Elec. Books Antitrust Litig., 11 MD 2293 (DLC), 2014 WL 1468122, at *3-4 (S.D.N.Y. Apr. 15, 2014). Section 15c provides that states may sue "to secure monetary relief as provided in this section for injury sustained by such natural persons to their property by reason of any violation of [the antitrust laws]."  15 U.S.C. § 15c (emphasis added). Section 15e requires that any recovered damages be distributed to injured consumers, providing that a state must "afford each person a reasonable opportunity to secure his appropriate portion of the net monetary relief."  15 U.S.C. § 15e.

Where residual damages remain unclaimed by injured consumers, Section 15e vests courts with discretion over how to distribute those monies, and gives courts the ability to award them to the states as civil penalties:

18

> Monetary relief recovered in an action under
> section 15c(a)(1) of this title shall -- (1) be
> distributed in such manner as the district court
> in its discretion may authorize; or
>
> (2) be deemed a civil penalty by the court and
> deposited with the State as general revenues;
> subject in either case to the requirement that
> any distribution procedure adopted afford each
> person a reasonable opportunity to secure his
> appropriate portion of the net monetary relief.

15 U.S.C. § 15e.

Section 15e does not authorize a court to distribute as state civil penalties damages that would otherwise go to injured consumers.  To the contrary, the legislative history underlying Section 15e demonstrates that a motivating purpose of the conferral of discretion to allocate a portion of Clayton Act damages as civil penalties was to prevent the antitrust violator from reaping a windfall from unclaimed consumer damages.  As the House Judiciary Committee Report explained,

> [Section 15e] . . . recognizes that rarely, if
> ever, will all potential claimants actually come
> forward to secure their share of the recovery. .
> . .  [Section 15e] commits the disbursement of
> the undistributed portion of the fund, which will
> often be substantial, to the discretion of the
> court. . . .  The only alternative -- retention
> of the profits by the adjudicated wrongdoer -- is
> unconscionable and unacceptable.

H.R. Rep. No. 94-499, at 16-17 (1976).  Section 15e is addressed only to the damages recovered under the Clayton Act.  Apple cites no authority for its contention that Section 15e displaces state civil penalty statutes.  Such a result would run contrary

to the pro-enforcement purpose of Section 15e.  Accordingly,
Section 15e is of no assistance to Apple in this regard.

    Nor may this Court decline to enforce state civil penalties
by deeming them to be a portion of any Clayton Act treble
damages.  Some of the state civil penalty statutes are mandatory
in nature.  See, e.g., Colo. Rev. Stat. § 6-4-112.  And as the
Supreme Court recently stated in the context of federal law,
"[j]ust as a court cannot apply its independent policy judgment
to recognize a cause of action that Congress has denied, it
cannot limit a cause of action that Congress has created . . .
."  Lexmark Int'l, Inc. v. Static Control Components, Inc., 134
S. Ct. 1377, 1388 (2014) (citation omitted).  That proposition
applies as well to state law claims over which a federal court
exercises jurisdiction.  To the extent that language in this
Court's September 25 Order suggested that the Court would
allocate state civil penalties as a portion of any Clayton Act
treble damages, closer analysis compels a contrary conclusion.[6]

    While Apple argues that imposing state civil penalties on
top of any Clayton Act treble damages is impermissible, it does
not clearly articulate the basis for this objection.  Some of
the language it employs suggests that it believes that it cannot

_____

[6]  While Apple's September 20 Submission urged that the Court
award any state civil penalties as a portion of Clayton Act
treble damages, the States' September 20 Submission did not
address that issue.  Since that time, the States and Apple have
briefed their opposing views on this issue.

face punitive sanctions under both federal and state law for the same conduct. (Apple argues that because Clayton Act treble damages are "designed in part to punish," "recovery of civil penalties is thus duplicative of the punitive portion of treble damages").  At other times the source of Apple's objection appears to be that the States would receive "impermissible double recovery" if both state civil penalties and Clayton Act damages are imposed.  In either formulation, Apple's objection is without merit.

It is fundamental to our Republic that both the States and the federal government are empowered to punish those who violate their laws, even when both violations arise out of the same conduct.

> We have here two sovereignties, deriving power
> from different sources, capable of dealing with
> the same subject-matter within the same
> territory.  Each government in determining what
> shall be an offense against its peace and dignity
> is exercising its own sovereignty, not that of
> the other.  It follows that an act denounced as a
> crime by both national and state sovereignties is
> an offense against the peace and dignity of both
> and may be punished by each.

Abbate v. United States, 359 U.S. 187, 194 (1959)(quoting United States v. Lanza, 260 U.S. 377, 382 (1922)).  Through its participation in an illegal conspiracy to fix the prices of e-books Apple violated both the Sherman Act and state civil

statutes.  It is within the power of both sovereigns to enforce
their own laws.

It is also telling, although not essential to this
analysis, that the States' civil penalty provisions and the
Clayton Act's treble damages provision serve different purposes.
The Clayton Act's "treble-damages provision, which makes awards
available only to injured parties, and measures the awards by a
multiple of the injury actually proved, is designed primarily as
a remedy." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S.
477, 485-86 (1977); see also PacifiCare Health Sys., 538 U.S. at
405-06; Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423,
434 (2d Cir. 2007) ("the antitrust private action was created
primarily as a remedy for the victims of antitrust violations.
Treble damages make the remedy meaningful by counter-balancing
the difficulty of maintaining a private suit under the antitrust
laws." (citation omitted)).  In contrast, the penalties that the
States seek under their statutes are punitive.

The imposition of both civil penalties and Clayton Act
treble damages is not only proper but commonplace.  See, e.g.,
State of N.Y. v. Hendrickson Bros., Inc., 840 F.2d 1065, 1086
(2d Cir. 1988) (affirming an award of state civil penalties
under New York's Donnelly Act, N.Y. Gen. Bus. Law §§ 340-347
(McKinney 1968), in addition to treble damages under Section 4
of the Clayton Act for the same antitrust violations).  The

Sherman Act itself provides both for the imposition of criminal fines and the imposition of treble damages.  See 15 U.S.C. §§ 1, 15c(a)(2) (providing for $1,000,000 criminal fine, and treble damages, respectively).  And many of the state antitrust statutory schemes under which the States bring their civil penalties claims provide for both civil penalties and treble damages.  See, e.g., Ohio Rev. Code § 1331.08 ("In addition to the civil and criminal penalties provided . . . the person injured . . . may sue . . . and recover treble the damages sustained.").  The availability of multiple forms of recovery "reflect[s] the diversity of corrective action necessary to enforce" the antitrust laws.  S.E.C. v. Contorinis, 743 F.3d 296, 307 (2d Cir. 2014) (comparing disgorgement remedy and criminal forfeiture penalty in enforcement of securities laws.).

Apple relies on Fineman v. Armstrong World Industries, 980 F.2d 171 (3d Cir. 1992).  That reliance is misplaced.  In Fineman, the court held that a publisher of marketing materials could not recover damages for lost profits twice under both a contract theory and an antitrust claim for the same conduct. Fineman, 980 F.2d at 218.  That case stands for the unremarkable proposition that an individual plaintiff may not recover windfall damages under multiple legal theories for the same loss.  See id.  It has no application in the context of dual

sovereigns sanctioning the same misconduct, or for a recovery of both compensatory damages and the payment of a penalty.

IV.  Fair Notice

Apple argues that awarding civil penalties would violate Apple's right to fair notice of what conduct might subject it to penalties.  "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  F.C.C. v. Fox Television Stations, Inc., 132 S. Ct. 2307, 2317 (2012).  "[E]conomic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action."  Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982).

Apple's fair notice argument depends entirely on its characterization of the Liability Opinion.  Apple contends that "Apple was found liable for entering into agency agreements with the Publisher Defendants that featured MFNs and maximum price caps," and that Apple's liability for those actions was unforeseeable.  Apple's articulation of the Court's liability holding is unfairly cabined.  Apple was found liable for violating Section 1 of the Sherman Act by knowingly

24

participating in and facilitating a conspiracy to restrain trade in the e-books market.  See Liability Opinion, 952 F. Supp. 2d at 691 ("Apple was a knowing and active member of that conspiracy.  Apple not only willingly joined the conspiracy, but also forcefully facilitated it.").

Tellingly, Apple has not pointed to any particular statute to argue that it is unconstitutionally vague.  Apple's argument that it lacked notice is really an argument that the Court was wrong in its liability decision.  Apple's disagreement with the Court's application of the law to facts does not give rise to a colorable argument about a lack of fair notice that its conduct was illegal.


  V. Eighth and Fourteenth Amendments

Finally, Apple contends that imposing civil penalties in addition to any treble damages would violate the Excessive Fines Clause of the Eighth Amendment to the United States Constitution, which applies to states through the Fourteenth Amendment.  See Robinson v. California, 370 U.S. 660, 666 (1962).[7]  Apple also argues that imposing civil penalties would

---

[7] The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. amend. VIII.  A "fine" under the Excessive Fines Clause is a "payment to a sovereign as punishment for some offense."  United States v. Bajakajian, 524 U.S. 321, 327 (1998) (citation omitted).

violate Apple's Fourteenth Amendment due process right to fair notice of the severity of the penalty that a state may impose. See BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 574 (1996).

"[J]udgments about the appropriate punishment for an offense belong in the first instance to the legislature." Bajakajian, 524 U.S. at 336. Nonetheless,

> [d]espite the broad discretion that States possess . . . the Due Process Clause of the Fourteenth Amendment to the Federal Constitution imposes substantive limits on that discretion. That Clause makes the Eighth Amendment's prohibition against excessive fines and cruel and unusual punishments applicable to the States. The Due Process Clause of its own force also prohibits the States from imposing "grossly excessive" punishments on tortfeasors.

Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 433-34 (2001) (citation omitted).

In assessing the constitutionality of a penalty under the Eighth and Fourteenth Amendments, courts consider "the degree of the defendant's reprehensibility or culpability; the relationship between the penalty and the harm to the victim caused by the defendant's actions; and the sanctions imposed in other cases for comparable misconduct." Id. at 435 (citation omitted). "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality." Bajakajian, 524 U.S. at 334. "[A] punitive forfeiture violates

the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense."  Id.

The imposition of state civil penalties would not violate the Eighth or Fourteenth Amendments.  First, all of the States' penalty requests fall within the ranges set by the relevant statutes.  See Newell Recycling Co., Inc. v. U.S. E.P.A., 231 F.3d 204, 210 (5th Cir. 2000) ("if the fine does not exceed the limits prescribed by the statute authorizing it, the fine does not violate the Eighth Amendment.").  Second, there would be nothing disproportionate, as a matter of law, about imposing the civil penalties requested by the States.  See Cooper Indus., 532 U.S. at 435 (proportionality factors).  First, the "reprehensibility" of Apple's participation in the price fixing conspiracy is proportional to the penalties sought.  Id. Apple's lawyers and its highest executives orchestrated a price fixing scheme with blatant disregard for the requirements of the law.  Apple has expressed no recognition that its conduct was wrongful, "suggesting a lack of remorse and supporting further measures to deter future wrongdoing of a like type." Contorinis, 743 F.3d at 308.  Second, the relationship between the penalties sought and the harm allegedly caused to consumers is also proportional.  See Cooper Indus., 532 U.S. at 435.  The States seek a total of less than $9 million in state civil penalties from Apple.  This is a proportionate sum in comparison

27

to the damages Apple and its co-conspirators are calculated by the Plaintiffs to have caused.  The States have alleged $155 million in damages to their consumers, in addition to injuries to their general economies.  See In re Elec. Books Antitrust Litig., 11 MD 2293 (DLC), 2014 WL 1641699, at *7 (S.D.N.Y. Apr. 24, 2014); In re Elec. Books Antitrust Litig., 11 MD 2293 (DLC), 2014 WL 1468122, at *4 (S.D.N.Y. Apr. 15, 2014).  Finally, the civil penalties sought by the States are entirely reasonable in light of those for which any comparable antitrust violator would be liable.  See Cooper Indus., 532 U.S. at 435.  Any party that violates the relevant state statutes at issue would be subject to the same range of penalties that Apple is subject to here.[8]

---

[8] This Opinion addresses Apple's argument that any imposition of civil penalties would violate the Eighth and Fourteenth Amendments.  The precise amount of civil penalties will be imposed following the damages trial.

CONCLUSION

Apple is liable for the state civil penalties identified in the States' twenty-six civil penalties claims.  Any civil penalties will be assessed, after the damages trial, in addition to any treble damages imposed under the Clayton Act.


        SO ORDERED:

Dated:    New York, New York
          June 5, 2014


                          _____
                                DENISE COTE
                          United States District Judge

**Appendix**

The States bring twenty-six claims against Apple for civil penalties under various State laws.  The relevant statutory provisions are described below.

Alaska

Alaska asserts a claim under the Alaska Restraint of Trade Act ("ARTA"), AS § 45.50.562.  That Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is unlawful."  The Alaska Supreme Court has held that "[i]n using the federal language the [legislative] committee intends that federal precedent under the Sherman Act provide a guide to the interpretation and construction of the state Act."  West v. Whitney-Fidalgo Seafoods, Inc., 628 P.3d 10, 14 (Alaska 1981).  ARTA provides for "a fine of not more than $ 50,000,000."  AS § 45.50.578.

Alaska alleges a violation of the Alaska Unfair Trade Practices and Consumer Protection Act, AS 45.50.471, et seq. ("UTPA").  The UTPA provides, in relevant part, that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful."  Id. § 45.50.471(a).  That prohibition mirrors Section 5(a)(1) of the Federal Trade Commission Act ("FTCA"), which provides that "[u]nfair methods of competition in or

affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."  15 U.S.C. § 45.  Violations of Section 1 of the Sherman Act constitute violations of the FTCA.  See Fed. Trade Comm'n v. Cement Inst., 333 U.S. 683, 694 (1948)  ("all conduct violative of the Sherman Act may likewise come within the unfair trade practice prohibitions of the Trade Commission Act.").  The Alaska Supreme Court has recognized that the UTPA

> is substantially similar to that contained in section 5(a)(1) of the Federal Trade Commission Act.  The legislature has provided that, in interpreting AS 45.50.471, due consideration and great weight should be given the interpretations of sec. 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. s 45(a)(1)) made by the Federal Trade Commission and the federal courts.

Matanuska Maid, Inc. v. State, 620 P.2d 182, 185 (Alaska 1980). The UTPA also provides that a court may impose "a civil penalty of not less than $1,000 and not more than $25,000 for each violation."  AS § 45.50.551(b).

Alabama

Alabama brings a claim under the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5, et seq. ("ADTPA").  ADTPA enumerates a number of unlawful trade practices and contains a catch-all provision paralleling Section 5(a)(1) of the FTCA, prohibiting "engaging in any other unconscionable, false, misleading or deceptive act or practice in the conduct of trade

31

or commerce." Id. § 8-19-5(27).  ADTPA provides that "due consideration and great weight shall be given where applicable to interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a)(1) of the Federal Trade Commission Act." Id. § 8-19-6.  ADTPA also provides for "a civil penalty of not more than $2000 per violation." Id. § 8-19-11(b).

Arizona

Arizona alleges a violation of the Arizona Uniform State Antitrust Act, Ariz. Rev. Stat § 44-1402, et seq. ("AUSAA"). The AUSAA provides in relevant part that "[a] contract, combination or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce, any part of which is within this state, is unlawful." Id.  This relevant provision of the AUSAA is a state "counterpart" to Section 1 of the Sherman Act.  Wedgewood Inv. Co. v. Int'l Harvester Co., 613 P.2d 620, 622 (Ariz. Ct. App. 1979)("[Section] 1 of the Sherman Act and its counterpart in Arizona, A.R.S. s 44-1402").  Arizona courts look to federal antitrust law in interpreting the AUSAA. See All Am. Sch. Supply Co. v. Slavens, 625 P.2d 324, 325 (Ariz. 1981).  The AUSAA also provides that a "court may assess for the benefit of the state a civil penalty of not more than one hundred fifty thousand dollars for each violation of this article." Id. § 44-1407.

Colorado

Colorado brings a claim under the Colorado Antitrust Act of 1992 ("CAA"), Colo. Rev. Stat. § 6-4-101, et seq.  The CAA provides that "[e]very contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce is illegal." Id. § 6-4-104.  That language mirrors the language of Section 1 of the Sherman Act.  The CAA also requires that "in construing this article, the courts shall use as a guide interpretations given by the federal courts to comparable federal antitrust laws." Id. § 6-4-119; see also People v. North Ave. Furniture & Appliance, Inc., 645 P.2d 1291, 1296 (noting the "substantial similarity in text and purpose present in the federal and state antitrust statutes.").  The CAA provides "[t]he court, upon finding a violation of this article, shall impose a civil penalty to be paid to the general fund of the state in an amount not to exceed two hundred fifty thousand dollars for each such violation." Colo. Rev. Stat. § 6-4-112 (emphasis added).

Connecticut

Connecticut brings a claim under the Connecticut Antitrust Act, Conn. Gen. Stat. § 35-26, et seq. ("CAA").  The CAA provides in relevant parts that "[e]very contract, combination, or conspiracy in restraint of any part of trade or commerce is unlawful," id., and that "every contract, combination, or

33

conspiracy is unlawful when the same are for the purpose, or have the effect, of: (a) Fixing, controlling, or maintaining prices, rates, quotations, or fees in any part of trade or commerce . . . ."  Id. § 35-28.  The Connecticut Supreme Court has stated that "Section 35-26 is substantially identical to § 1 of the Sherman Act," and that "Section 35-28 . . . codifies federal case law concerning certain per se violations of the Sherman Act, notably § 1."  Shea v. First Fed. Sav. & Loan Ass'n of New Haven, 439 A.2d 997, 1006 (Conn. 1981).

Connecticut also asserts a claim under the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, et seq. ("CUTPA").  That statute provides, in relevant part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Id. § 42-110b(a).  This language parallels Section 5(a)(1) of the FTCA.  At least one Connecticut court has found that a violation of CAA constitutes a violation of CUTPA.  See Roncari Dev. Co. v. GMG Enterprises, Inc., 718 A.2d 1025, 1037 (Conn. Super. Ct. 1997); see also id. ("a combination or conspiracy in restraint of trade is an unfair method of competition.").

Delaware

Delaware alleges a violation of the Delaware Antitrust Act, Del Code, tit. 6 § 2101, et seq. ("DAA").  The DAA provides in

relevant part that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade of commerce of this State shall be unlawful."  Id. § 2103.  That language mirrors section 1 of the Sherman Act.  The DAA further provides that "[t]his chapter shall be construed in harmony with ruling judicial interpretations of comparable federal antitrust statutes."  Id. § 2113.  The statute also provides that "the Court may assess against each defendant a civil penalty for the benefit of the State of not less than $1,000 nor more than $100,000 for each violation."  Id. § 2107.

Iowa

Iowa brings a claim under the Iowa Competition Law, Iowa Code § 553.4, et seq. ("ICL").  The ICL provides, in relevant part, that "[a] contract, combination, or conspiracy between two or more persons shall not restrain or monopolize trade in the relevant market."  Id.  This language parallels Section 1 of the Sherman Act.  The Iowa Supreme Court applies federal antitrust caselaw interpreting the Sherman Act to interpret the ICL.  See State v. Cedar Rapids Bd. of Realtors, 300 N.W.2d 127, 128 (Iowa 1981) (applying the federal antitrust "Rule of Reason" test to the Iowa Competition Act because "the Iowa Competition Act is the progeny of the Sherman Act, 15 U.S.C. § 1, et seq.").  The ICL also provides for civil penalties which "shall not exceed one hundred fifty thousand dollars."  Id. § 553.13.

35

Idaho

Idaho alleges a violation of the Idaho Competition Act, Idaho Code Ann. § 48-101, et seq. ("ICA").  The ICA provides that "[a] contract, combination, or conspiracy between two (2) or more persons in unreasonable restraint of Idaho commerce is unlawful."  Id. § 48-104.  That language parallels Section 1 of the Sherman Act.  In Pines Grazing Ass'n, Inc. v. Flying Joseph Ranch, LLC, 151 Idaho 924, 932 (2011), the Idaho Supreme Court concluded that a violation of Section 1 of the Sherman Act also violated the ICA.  The ICA provides for civil penalties "of up to fifty thousand dollars ($50,000) per violation."  Idaho Code Ann. § 48-108.

Illinois

Illinois brings a claim under the Illinois Antitrust Act ("IAA"), 740 Ill. Comp. Stat. 10/1, et seq.   The IAA provides in relevant part that "[e]very person shall be deemed to have committed a violation of this Act who shall . . . [b]y contract, combination, or conspiracy with one or more other persons unreasonably restrain trade or commerce."  Id. 10/3 ("Section 3").  Section 3 of the IAA "is patterned after [S]ection 1 of the Sherman Act."  People ex rel. Scott v. Coll. Hills Corp., 91 Ill. 2d 138, 150 (1982).  The IAA further provides that "[w]hen the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the

36

construction of the federal law by the federal courts as a guide in construing this Act." 740 Ill. Comp. Stat. 10/11. The IAA also contains a civil penalties provision, which provides that "the Attorney General may bring an action in the name and on behalf of the people of the State . . . to recover a penalty not to exceed $1,000,000 from every corporation or $100,000 from every other person for any act herein declared illegal." Id. 10/7(4).

Louisiana

Louisiana asserts a violation of the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"), La. Rev. Stat. § 51:1401, et seq. In relevant part, the LUTPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Id. § 51:1405. That language parallels Section 5(a)(1) of the FTCA. And Louisiana courts have found that LUTPA "prohibits the same types of deceptive and anticompetitive conduct prohibited by the Federal Trade Commission Act." Capitol House Pres. Co., L.L.C. v. Perryman Consultants, Inc., 47 So. 3d 408, 417 (La. Ct. App. 2009). LUTPA also provides that "the attorney general may request and the court may impose a civil penalty against any person found by the court to have engaged in any method, act, or practice in

Louisiana declared to be unlawful under this Chapter." La. Rev. Stat. § 51:1407.

Maryland

Maryland brings a claim under the Maryland Antitrust Act ("MAA"), Md. Code, Com. Law § 11-201, et seq. The MAA provides in relevant part that "[a] person may not: (1) [b]y contract, combination, or conspiracy with one or more other persons, unreasonably restrain trade or commerce." Id. § 11-204 ("Section 204"). Section 204 of the MAA "is essentially the same as § 1 of the Sherman Antitrust Act . . . . Thus, decisions of the federal courts interpreting § 1 of the Sherman Act guide us here." Natural Design, Inc. v. Rouse Co., 302 Md. 47, 53 (1984). The MAA also provides that "the court may assess against any person who violates § 11-204 of this subtitle a civil penalty not exceeding $100,000 for each violation, to be paid to the General Fund of the State." Md. Code, Com. Law § 11-209.

Michigan

Michigan brings a claim under the Michigan Antitrust Reform Act ("MARA"), Mich. Comp. Laws § 445.771, et seq. The MARA prohibits "[a] contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce in a relevant market." Id. § 445.772. This language parallels Section 1 of the Sherman Act. In interpreting the

38

MARA, Michigan courts "consider federal precedent interpreting the Sherman Act's prohibition on combination[s] in restraint of trade." Blair v. Checker Cab Co., 558 N.W.2d 439, 442 (Mich. Ct. App. 1996). Under the MARA, a "court may assess for benefit of the state a civil penalty of not more than $50,000.00 for each violation of this act." Mich. Comp. Laws § 445.777.

North Dakota

North Dakota alleges a violation of the North Dakota Uniform State Antitrust Act ("NDUSAA"), N.D. Cent. Code § 51-08.1-01, et seq. The NDUSAA provides that "[a] contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful." Id. § 51-08.1-02. The language of NDUSAA parallels Section 1 of the Sherman Act. And North Dakota courts look to federal antitrust law in interpreting the NDUSSA. See Ag Acceptance Corp. v. Glinz, 684 N.W.2d 632, 639 (N.D. 2004) (applying federal case law to determine whether a tying arrangement was illegal under the NDUSAA). The NDUSSA provides for "a civil penalty of not more than fifty thousand dollars for each violation of this chapter." N.D. Cent. Code § 51-08.1-07.

Nebraska

Nebraska alleges a violation of the Nebraska Consumer Protection Act ("NCPA"), Neb. Rev. Stat § 59-1601, et seq. The NCPA provides that "[a]ny contract, combination, in the form of

trust or otherwise, or conspiracy in restraint of trade or commerce shall be unlawful." Id. § 59-1603. This provision is "the state version of the Sherman Antitrust Act." Nebraska ex rel. Douglas v. Assoc. Grocers of Neb. Co-op, Inc., 332 N.W.2d 690, 693 (Neb. 1983). The NCPA also provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." Neb. Rev. Stat. § 59-1602. That provision mirrors Section 5(a)(1) of the FTCA. Nebraska courts look to federal antitrust law in applying the NCPA. See, e.g., Douglas, 332 N.W.2d at 693. The NCPA provides for a civil penalty of not more than $25,000 per violation. Id. § 59-1614.

New Mexico

New Mexico alleges a violation of the New Mexico Antitrust Act ("NMAA"), N.M. Stat § 57-1-1, et seq. The NMAA provides that "[e]very contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within this state, is unlawful." Id. The NMAA is "patterned after Section 1 of the federal Sherman Antitrust Act." Clough v. Adventist Health Sys., Inc., 780 P.2d 627, 630 (N.M. 1989). The NMAA "is to be construed in harmony with judicial interpretations of the federal antitrust laws." Id. The NMAA also provides for a civil penalty not to exceed $250,000. N.M. Stat. § 57-1-7(A).

40

New York

New York brings a claim under the Donnelly Act, N.Y. Gen.
Bus. Law § 340, et seq.  The Donnelly Act provides in relevant
part that

> [e]very contract, agreement, arrangement or
> combination whereby . . . [c]ompetition or the free
> exercise of any activity in the conduct of any
> business, trade or commerce or in the furnishing of
> any service in this state is or may be restrained . .
> . is hereby declared to be against public policy,
> illegal and void.

Id. § 340.  "The Donnelly Act was modeled on the Federal Sherman
Act of 1890."  People v. Rattenni, 613 N.E.2d 155, 158 (N.Y.
1993).  It "should generally be construed in light of Federal
precedent . . . ."  Id.  The Donnelly Act provides for a civil
penalty not to exceed $1,000,000.  N.Y. Gen. Bus. Law §§ 341,
342-a.

Ohio

Ohio brings a claim under its antitrust law, the Valentine
Act, Ohio Rev. Code § 1331.01, et seq.  The Valentine Act
prohibits, inter alia, a "conspiracy against trade."  Ohio Rev.
Code § 1331.04.  The Valentine Act was "patterned after the
Sherman Antitrust Act, and as a consequence [the Ohio Supreme
Court] has interpreted the statutory language in light of
federal judicial construction of the Sherman Act."  C.K. & J.K.,
Inc. v. Fairview Shopping Center Corp., 407 N.E.2d 507, 509
(Ohio 1989); accord Johnson v. Microsoft Corp., 834 N.E.2d 791,

795 (Ohio 2005).  The Valentine Act provides for a penalty of
"five hundred dollars for each day that such violation is
committed or continued after due notice is given by the attorney
general or a prosecuting attorney."  Ohio Rev. Code § 1331.03.

South Dakota

    South Dakota brings a claim under South Dakota Codified
Laws chapter 37-1, Restraint of Trade, Monopolies and
Discriminatory Trade Practices, S.D. Codified Laws § 37-1-3.1.,
et seq.  That statute provides that "[a] contract, combination,
or conspiracy between two or more persons in restraint of trade
or commerce any part of which is within this state is unlawful."
Id. § 37-1-3.1.  This provision "is taken directly from the
Sherman Act, 15 U.S.C. § 1 et seq."  Byre v. City of
Chamberlain, 362 N.W.2d 69, 73 (S.D. 1985).  The statute
provides that a "court may assess for the benefit of the state a
civil penalty of not more than fifty thousand dollars for each
violation of this chapter."  S.D. Codified Laws § 37-1-14.2.

Texas

    Texas alleges violation of the Texas Free Enterprise and
Antitrust Act, Tex. Bus. & Com. Code, § 15.01, et seq. ("Texas
Antitrust Act").  The Texas Antitrust Act provides that "[e]very
contract, combination, or conspiracy in restraint of trade or
commerce is unlawful."  Id. § 15.05(a).  This statutory language
mirrors Section 1 of the Sherman Act.  And the Texas Antitrust

Act requires that it "be construed in harmony with federal judicial interpretations of comparable federal antitrust statutes . . . ." Id. § 15.04.  The Texas Antitrust Act also provides that "[e]very person adjudged to have violated any of these prohibitions shall pay a fine to the state not to exceed $1 million if a corporation . . . ." Id. § 15.20(a).

Utah

Utah brings a claim under the Utah Antitrust Act, Utah Code § 76-10-912, et seq.  The Utah Antitrust Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is declared to be illegal." Id. § 76-10-914.  This language parallels Section 1 of the Sherman Act.  Courts interpret the Utah Antitrust Act in harmony with federal antitrust law.  See, e.g., Rio Vista Oil, Ltd. v. Southland Corp., 667 F. Supp. 757, 762 (D. Utah 1987) ("Utah antitrust laws are to be construed in harmony with the federal antitrust scheme.").  The statute provides for a penalty of not more than $500,000 per violation. Id. § 76-10-920(1)(a)(ii).

Virginia

Virginia alleges a violation the Virginia Antitrust Act, Va. Code § 59.1-9.1, et seq. ("VAA").  The VAA provides that "every contract, combination or conspiracy in restraint of trade or commerce of this Commonwealth is unlawful." Id. § 59.1-9.5.

The VAA further provides that it "shall be applied and construed to effectuate its general purposes in harmony with judicial interpretation of comparable federal statutory provisions." Id. § 59.1-9.17.  The statute provides that a court may impose a civil penalty of up to 100,000 for each "willful" or "flagrant" violation.  Id. § 59.1-9.11.

Vermont

Vermont asserts a violation of the Vermont Consumer Fraud Protection Act ("VCFPA"), 9 V.S.A. § 2451, et seq.  The VCFPA provides that "[u]nfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful."  Id. § 2453(a).  The statute provides that in construing it, "the courts of this State will be guided by the construction of similar terms contained in Section 5(a)(1) of the Federal Trade Commission Act . . . ."  Id. § 2453.  The VCFPA provides for civil penalties of not more than $10,000 per violation.  Id. § 2458(b)(1).

Wisconsin

Wisconsin alleges a violation of the Wisconsin Antitrust Act, Wis. Stat. § 133.01, et seq. "("WAA").  In relevant part, the WAA parallels Section 1 of the Sherman Act, and provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce is illegal."  Id. § 133.03(1).  Wisconsin courts look to federal

44

precedent in interpreting parallel state antitrust law.  See
Eichenseer v. Madison-Dane Cnty. Tavern League, Inc., 748 N.W.2d
154, 174 (Wis. 2008).  The WAA provides for the imposition of
civil penalties for a violation of not more than $100,000 for a
corporation.  Wis. Stat. § 133.03.

West Virginia

West Virginia brings a claim under the West Virginia
Antitrust Act ("WVA"), W.Va. Code § 47-18-1, et seq.  The WVA
provides in relevant part that "[e]very contract, combination in
the form of trust or otherwise, or conspiracy in restraint of
trade or commerce in this State shall be unlawful."  Id. § 47-
18-3(a).  The Supreme Court of Appeals of West Virginia has
explained that the WVA "contains the same language as Section 1
of the federal Sherman Act, 15 U.S.C. § 1.  Consequently, we are
directed by the legislature to apply the federal decisional law
interpreting the Sherman Act to our own parallel anti-trust
statute."  Gray v. Marshall Cnty. Bd. of Educ., 367 S.E.2d 751,
755 (1988).  The WVA provides for a "penalty of not more than
the greater of a total of one hundred thousand dollars or five
hundred dollars per day for each and every day of said
violation."  W. Va. Code § 47-18-8.