UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | No.  11-md-02293 (DLC)       ECF Case |
| This Document Relates to:  ALL ACTIONS | CLASS ACTION |

**DECLARATION OF STEVE W. BERMAN IN SUPPORT OF CLASS COUNSEL'S
MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF
EXPENSES RELATED TO APPLE SETTLEMENT**

I, STEVE W. BERMAN, declare as follows:

1.      I am the managing partner for the law firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman"), one of the co-lead counsel of record for Class Plaintiffs in the above-entitled matter. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

## I.      THE WORK UNDERTAKEN BY CLASS COUNSEL

### A.      Apple Has Repeatedly Tried to Frame this Case as Involving Unique and Novel Issues

2.      From the start, Apple sought to distinguish itself from the other defendants. To do so, Apple has tried to position itself as only engaging in pro-competitive behavior, instead of acting as the key organizer of the price-fixing conspiracy.  Thus, Apple set itself apart from the Publisher Defendants, raising defenses unique to Apple.  For example, in response to plaintiffs' complaint, Apple was the only defendant to file a separate motion to dismiss the class complaint, arguing that: (i) Class Plaintiffs had failed to plead Apple's individual participation in the conspiracy; (ii) Apple's actions were consistent with lawful independent action; and (iii) Apple's actions should be subject to rule of reason treatment, not *per se*, and plaintiffs had failed to plausibly allege agreements that violated the rule of reason.[1] This Court denied Apple's motion to dismiss on May 15, 2012 in a fifty-six page order.[2] Apple's answer to the class's complaint numbered 285 paragraphs and raised seven separate affirmative defenses.[3]

---

[1] Apple Inc.'s Mem. of Law in Support of Mot. to Dismiss the Consolidated Am. Class Action Compl., Mar. 2, 2014, ECF No. 74.

[2] Op. & Order, May 15, 2012, ECF No. 156.

[3] Apple Inc.'s Answer to Consol. Am. Class Action Compl., May 29, 2012, ECF No. 165.

**B.**     **Coordinated and Civil Discovery**

3.      Once the pleadings were settled, discovery began in earnest. Apple proposed to "delink" class certification discovery from the DOJ case.[4] Plaintiffs opposed this broken schedule, and instead proposed a joint schedule with the DOJ and State Attorneys General, resulting in efficient, but expedited, discovery.[5] Class Plaintiffs actively participated in all discovery with the governmental entities, mindful to coordinate their actions at every step. The negotiation of discovery limits, ESI protocols, custodians, and search terms required extensive discovery conferences with all parties. Although coordinated with the DOJ and the State Attorneys General, Class Counsel actively reviewed the 13 million pages of documents produced by the defendants. Precisely, defendants collectively produced 13,123,309 pages of documents. Class Counsel prepared memoranda, digests and summaries to identify critical documents, analyzed the emerging conspiratorial record, and shared their findings with the governmental plaintiffs. These documents eventually became deposition exhibits, trial exhibits, and exhibits to various motions filed with the Court.

4.      Class Plaintiffs also propounded and responded to significant numbers of written discovery – 55 interrogatories, 6 requests for admission and 133 requests for production of documents in total. And Class Plaintiffs led the way on behalf of all plaintiffs in the collection of the transactional data from both defendants and third parties, amassing the largest databases of e-book prices ever compiled, a database critical to the success of both the expert analysis presented in the liability trial and Dr. Noll's regression model. Class Counsel's efforts also helped secure robust documentary evidence from third parties in addition to the transactional data – over 3.3

---

[4] Daniel Floyd Letter to the Ct., dated June 19, 2012.

[5] Steve W. Berman Letter to the Ct., dated June 20, 2012.

million pages of documents – describing pricing strategy, as well as market information potentially relevant to the alleged conspiracy.

5.       Class Counsel actively participated in nearly all of the depositions. In all, 47 party depositions and nine third-party depositions took place. As this Court instructed at the outset, merits and class discovery proceeded in tandem, and Class Counsel was well aware that no fact witness would be re-deposed absent an extremely strong showing.[6] Class Counsel attended all but eight of these depositions and questioned the witnesses at nearly half of the depositions. Class Counsel separately examined twenty-two of the forty-seven party witnesses at deposition, and three of the nine third-party witnesses.

6.       Class Counsel also took the lead on several critical depositions, including the depositions of Penguin and Macmillan's expert economist, Dr. Daniel Rubinfeld; David Shanks, Penguin's Chief Executive Officer (both in his personal capacity and as a Rule 30(b)(6) witness testifying about Penguin's pricing policies); John Makinson, Chairman and Chief Executive Officer of Penguin's parent company, Pearson PLC; Tim McCall, Penguin's Vice President of Online Sales; and Alex Gigante, Penguin's General Counsel. As with the other areas of discovery, Class Counsel assisted in preparing for depositions, shared work product with the other plaintiffs' groups and ensured as much as possible the efficient conduct of the depositions.

**C.      The Apple Trial with the Governmental Entities**

7.       In June 2013, this Court conducted a trial on liability in which the DOJ, thirty-three states and U.S. territories, and Apple participated. This Court held that the governmental plaintiffs had shown that the Publisher Defendants conspired with each other to eliminate retail price competition to raise e-book prices, and that Apple played a central role in facilitating and

---

[6] Oct. 26, 2012 Hearing Tr. at 64.

executing that conspiracy. Without Apple's orchestration of the conspiracy, it would not have succeeded as it did in the Spring of 2010.[7] The Court indicated that a damages trial would follow.

**D.    Litigation of Class Certification**

8.     After the completion of the trial, despite being found liable for violations of the antitrust laws, Apple maintained its resolve to defeat the class's claims. This Court ordered the parties to submit a report and proposed stipulation addressing issues of collateral estoppel.[8] The Class and Apple vastly disagreed on the impact of this Court's Liability Finding on the class's claims.[9] Unable to reach agreement, the impact of the Liability Finding became the subject of plaintiffs' summary judgment motion.

9.     On October 11, 2013, plaintiffs moved for certification of a class of e-book purchasers from 23 states.[10] With their motion, plaintiffs submitted a detailed expert report from Dr. Roger Noll, a Professor *Emeritus* of Economics at Stanford University and a Senior Fellow in the Stanford Institute for Economic Research.[11] Dr. Noll conducted a multivariate regression analysis on transaction records for more than 149 million sales of 1.3 million different e-book titles. Dr. Noll used prices prior to the agency period and prices during the agency period of e-

---

[7] Opinion  and Order at 9 (hereinafter, "Liability Finding"), *United States v. Apple Inc.*, Case No. 12-cv-02826 (S.D.N.Y. July 10, 2013), ECF No. 326.

[8] Order, Sept. 10, 2013, ECF No. 399.

[9] *See* Steve W. Berman Letter to the Ct., Sept. 27, 2013, ECF No. 411; Theodore J. Boutrous, Jr. Letter to the Ct., Sept. 27, 2013, ECF No. 409.

[10] Mem. of Law in Support of Class Pls.' Mot. for Class Cert. and Appt. of Class Counsel, Oct. 11, 2013, ECF No. 423 (Class Counsel represents consumers in the following states, territories and commonwealth: American Samoa, California, Florida, Georgia, Guam, Hawaii, Kentucky, Maine, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Jersey, North Carolina, Northern Mariana Islands, Oklahoma, Oregon, Rhode Island, South Carolina, U.S. Virgin Islands, Washington, and Wyoming).

[11] Decl. of Roger G. Noll, ("Noll Decl."), ¶ 1, Oct. 11, 2013, ECF No. 424.

books not on the agency model as benchmarks. Dr. Noll's multivariate regression model controlled for key market variables (including retailers, price, time since release, popularity, and genre). Dr. Noll found an overcharge for more than 99.6 percent of e-books sales by the Publisher Defendants. Dr. Noll estimated damages to consumers between $280 to $307 million.[12]

10.     Apple vigorously contested the class certification, opposing the class certification motion,[13] filing a 236-page declaration of Dr. Joseph Kalt,[14] a 96-page declaration from Jonathan Orszag,[15] and a motion to strike the declaration of Dr. Noll.[16] Apple argued that rather than harming consumers uniformly, the introduction of the agency model had resulted in a disparate pricing impact and supposedly benefited many consumers. Apple accused plaintiffs of relying on a "trial-by-formula," suggesting that the Supreme Court had decisively rejected such methods in *Wal-Mart Stores, Inc. v. Dukes*.[17] That Apple was willing to spare no expense was evidenced by the massive class certification record, including its payments to Dr. Kalt of $1,350 per hour for his testimony.[18]

11.     In response, Class Plaintiffs moved to exclude the opinion of Dr. Kalt, including his flawed analysis where he treated prices set by the Publisher Defendants after the onset of

---

[12] Noll Decl. at 6-7, Ex. 2; Reply Decl. of Roger G. Noll ("Noll Reply Decl.") at 17, Feb. 24, 2014 ECF No. 555 (submitted under seal Dec. 18, 2013).

[13] Def. Apple Inc.'s Mem. of Law in Opp'n to Pls.' Mot. for Class Cert., Nov. 15, 2013, ECF No. 443.

[14] Decl. of Joseph P. Kalt ("Kalt Decl."), Dec. 10, 2013, ECF No. 481 (submitted under seal Nov. 15, 2013).

[15] Decl. of Jonathan Orszag, Dec. 18, 2013, ECF No. 488 (submitted under seal Nov. 15, 2013).

[16] Def. Apple Inc.'s Mem. of Law in Support of its Mot. to Exclude Opinions Offered by Dr. Roger Noll in Support of Mot. for Class Certification, Nov. 15, 2013, ECF No. 445.

[17] 131 S. Ct. 2541, 2561 (2011).

[18] Kalt Decl. at 7. In contrast, Dr. Noll was compensated at a rate of $800 per hour. Noll Decl. at 5.

agency as "pre-agency" prices.[19] Along with the reply in support of class certification,[20] Class

Plaintiffs also moved to exclude the opinion of Jonathan Orszag, arguing that his offset opinions

were unreliable and not based on the facts in this case.[21] The Class Plaintiffs also opposed

Apple's motion to exclude the opinion of Dr. Noll. In response to Apple's experts' attacks on his

proposed methods to measure impact and damages, Dr. Noll produced a reply report.[22]  To

respond to Apple's criticisms regarding the use of averages and aggregate data, Dr. Noll used a

supercomputer to run his regression models at the individual transaction level (requiring over 14

hours of computing time). The results only further confirmed plaintiffs' damages estimates.[23]

12.     Although this Court allowed Apple to file sur-replies that were limited to "new

opinions that could not have been anticipated" by Apple's experts, Apple filed a sur-reply in

opposition to class certification with accompanying sur-reply declarations from Dr. Kalt and Mr.

Orszag totaling 64 pages, 171 paragraphs and about 30 tables.[24] Class Plaintiffs and Plaintiffs

---

[19] Mem. of Law in Support of Class Pls.' Mot. to Exclude Opinions Offered by Dr. Joseph Kalt, Feb. 24, 2014, ECF No. 557 (submitted under seal Dec. 18, 2013).

[20] Class Pls.' Reply in Support of Mot. for Class Cert., Feb. 24, 2014, ECF No. 554 (submitted under seal Dec. 18, 2013).

[21] Mem. of Law in Support of Class Pls.' Mot. to Exclude the Expert Opinions Offered by Apple's Expert Jonathan Orszag, Feb. 24, 2014, ECF No. 558 (submitted under seal Dec. 18, 2013).

[22] Class Pls.' Mem. of Law in Opp'n to Defendant Apple's Mot. to Exclude Opinions Offered by Dr. Roger Noll in Support of Mot. for Class Cert., Feb. 24, 2014, ECF No. 556 (submitted under seal Dec. 18, 2013); Noll Reply Decl.

[23] Noll Reply Decl. at 16-17.

[24] Def. Apple Inc.'s Sur-Reply Mem. of Law in Opp'n to Pls.' Mot. for Class Cert., Feb. 11, 2014, ECF No. 537 (submitted under seal Jan. 21, 2014); Sur-Reply Decl. of Jonathan Orszag in Resp. to Reply Decl. of Roger G. Noll and in Support of Def. Apple Inc.'s Consol. Mem. of Law in Opp'n to Class Pls.' and Pl. States' Mots. to Exclude Expert Opinions Offered by Jonathan Orszag, Feb. 11, 2014, ECF No. 541 (submitted under seal Jan. 21, 2014); Sur-Reply Decl. in Resp. to Reply Decl. of Roger G. Noll and in Support of Def. Apple Inc.'s Mem. of Law in Opp'n to Class Pls.' Mot. to Exclude Expert Opinions Offered by Dr. Joseph Kalt, Feb. 11, 2014, ECF No. 538 (submitted under seal Jan. 21, 2014).

State requested that this Court strike portions of the expert sur-reply declarations and the entirety

of its sur-reply opposing class certification.[25]

**E.     Class Certification Order, *Daubert* Rulings and Appellate Proceedings Relating to Class Certification**

13.     On March 28, 2014, this court granted certification of a class of e-book

consumers in 23 states, and granted plaintiffs' motion to exclude the testimony of Apple's expert

Dr. Kalt in its entirety and excluded most of the testimony of Mr. Orszag The Court also granted,

in large part, plaintiffs' request to strike portions of Apple's sur-reply memorandum and sur-

reply expert declarations.[26]

14.     In certifying the class, this Court agreed that this was a "paradigmatic antitrust

class action" where virtually all class members paid inflated prices for e-books as a result of a

centralized price-fixing conspiracy.[27] In an 86-page order, this Court outlined why the class met

the elements of Rule 23 and addressed each of the litany of arguments raised by Apple against

class certification. The Court commented that "[i]f certification were not appropriate here, no

antitrust class action could be certified."[28] The Court denied Apple's motion to exclude the

testimony of Dr. Noll.[29]

15.     The Court also granted plaintiffs' motion to strike most of the testimony of

Apple's experts pursuant to Federal Rules of Evidence 702 and 403. This Court agreed that Dr.

Kalt had committed several fundamental errors in his analysis, including by classifying prices

that were set by the e-book publishers under the terms of an agency agreement, as "pre-agency,"

---

[25] Steve W. Berman Letter to the Ct., Jan. 27, 2014, ECF No. 515.

[26] Op. & Order at 20-21, Mar. 28, 2014, ECF No. 585.

[27] *Id.* at 2.

[28] *Id.*

[29] *Id.* at 63.

so long as one e-tailer was still selling the same books under a wholesale model.[30] This Court also excluded Dr. Kalt's opinion that supposed "dispersion" and "churning" among e-book prices meant that there was no "standard, stable e-book pricing structure" because it was unreliable and would tend to mislead and confuse a jury.[31] This Court also excluded Dr. Kalt's opinion that Dr. Noll's model produced "false positives" as his analysis comparing average but-for prices to actual prices could not aid the trier of fact in determining any relevant issues.[32] *Finally*, this Court excluded Dr. Kalt's opinion regarding offsets for certain supposed pro-competitive effects of price-fixing as based on "guesswork rather than analysis."[33]

16.     The Court also excluded the bulk of Mr. Orszag's opinions, particularly those concerning offsets to the class's damages namely: (1) but for the conspiracy, Amazon would have lowered e-reader prices less than it did; (2) the price-fixing conspiracy increased the availability of self-published and free e-books; and (3) some e-books purchased through the iBookstore and Barnes & Noble's Nook Book Store would not have been purchased in the but-for world.[34]

## F.     Summary Judgment and Litigation Over Venue

17.     During the flurry of class certification briefing, Class Plaintiffs moved for summary judgment on each of the three elements of their antitrust claims against Apple. *First*, plaintiffs moved for an order collaterally estopping Apple from re-litigating any legal conclusion or factual finding adjudicated at the government trial. *Second*, plaintiffs requested summary

---

[30] Op. and Order at 16, Mar. 26, 2014, ECF No. 586.

[31] *Id.* at 21-25.

[32] *Id.* at 35.

[33] *Id.* at 37.

[34] *Id.* at 39-40.

judgment on the impact on class members, arguing that the Court's factual finding on the effect of the conspiracy on industry prices in its Liability Finding and Dr. Noll's analysis showing that ninety-nine percent of Defendant Publishers' e-book sales were sold at supra-competitive levels during the class period unequivocally demonstrated that no reasonable juror could find that the Class did not suffer widespread injury. *Third*, the Class requested summary judgment on the amount of damages to consumers, given that one of Apple's experts, Dr. Burtis, testified at the liability trial to a seventeen percent overcharge caused by the conspiracy and a second expert, Mr. Orszag, Apple's expert witness for the damages trial, estimated an average agency effect of 14.9 percent. Plaintiffs argued that there could be no dispute that the amount of overcharges attributable to the conspiracy was at least that amount.[35] Apple filed 256 pages of briefs and declarations opposing the motion.[36]

18.     After two and a half years of litigation, and at the same time it opposed summary judgment, Apple also requested that this Court remand plaintiffs' class actions to the transferor courts (for the Class, the Northern District of California) under 28 U.S.C. § 1407(a).[37] Class Plaintiffs opposed this motion.[38] In its Opinion and Order dated April 24, 2014, this Court denied Apple's motion on multiple grounds, including that pretrial proceedings were still ongoing, that

---

[35] Mem. of Law in Support of Class Pls.' Mot. for Summ. J. at 3-4, Feb. 3, 2014, ECF No. 527.

[36] Def. Apple Inc.'s Mem. of Law in Opp'n to Class Pls.' Mot. for Summ. J. (submitted under seal on Feb. 21, 2014); Def. Apple Inc.'s Response to Class Pls.' Statement of Undisputed Facts (submitted under seal on Feb. 21, 2014); Decl. of Cynthia E. Richman in Support of Apple Inc.'s February 21, 2014 Filings, Mar. 5, 2014, ECF No. 567 (submitted under seal on Feb. 21, 2014).

[37] Apple Inc.'s Mot. for Suggestion of Remand to the Judicial Panel for Multidistrict Litigation, Feb. 21, 2014, ECF No. 549.

[38] Class Pls.' Opp'n to Apple Inc.'s Mot. for Suggestion of Remand to Judicial Panel for Multidistrict Litigation, Mar. 7, 2014, ECF No. 569.

class actions were filed in this District and logically were able to be tried here, and that Apple had waived any right to seek remand of the actions.[39]

**G.      Class Notice and Appellate Proceedings**

19.     Class Plaintiffs, working jointly with the State Attorneys General, prepared e-mail, postcard notice and detailed notice forms to be sent to class members apprising them of the certification of the class, and of their rights in the *parens patriae* actions. The Class and State Attorneys General jointly moved for approval of their proposed notices plans.[40] The form of notice was approved on April 1 and the notice plan itself was approved on April 2, 2014.[41]

20.     In late March, plaintiffs proposed a July 14, 2014 trial date. Apple opposed.[42] This Court ordered a trial date of July 14, 2014.[43] On April 4, 2014, only 24 days before the notice administrator and retailers were to begin sending out 23 million class notices, Apple moved for a stay pending the outcome of its two appeals (on both its appeal on this Court's Liability Finding and Apple's Rule 23(f) appeal from class certification) or, in the alternative, an administrative stay of class notice pending the Court's ruling on Apple's request.[44] Class Plaintiffs and Plaintiff States separately opposed this last-minute request for a stay.[45] Apple waited another week before filing its Rule 23(f) petition with the Second Circuit Court of

---

[39] Op. & Order, Apr. 24, 2014, ECF No. 620.

[40] Pls.' Mem. of Law in Support of Their Mot. for Approval of Plan for Notice, Mar. 28, 2014, ECF No. 589.

[41] Order, Apr. 1, 2014, ECF No. 596; Order Granting Pls.' Mot. for Approval of Plan for Class Notice, Apr. 2, 2014, ECF No. 597.

[42] Steve W. Berman Letter to the Ct., Mar. 28, 2014, ECF No. 583; Daniel G. Swanson Letter to the Ct., Mar. 28, 2014, ECF No. 584.

[43] Scheduling Order, Apr. 14, 2014, ECF No. 612.

[44] Def. Apple Inc.'s Mem. of Law in Support of its Mot. for a Stay Pending Appeal, Apr. 4, 2014, ECF No. 603.

[45] Class Pls.' Opp'n to Apple Inc.'s Mot. for a Stay Pending Appeal, Apr. 11, 2014, ECF No. 608.

Appeals on April 11, 2014.[46] Apple requested an emergency ruling by this Court before April 28, 2014, the last day to stop notice from being disseminated.[47] On April 23, 2014, this Court denied Apple's motion for a stay pending appeal and denied Apple's request for an administrative stay, followed by a detailed opinion and order on April 24, 2014.[48]

21.     Plaintiffs proceeded to oppose Apple's Rule 23(f) petition, filing a brief on April 21, 2014 under an expedited schedule. On April 23, 2014, Apple filed an emergency stay of class notification and the damages trial before the Second Circuit Court of Appeals with an additional twenty pages of argument.[49] Class and Plaintiff States separately opposed the emergency motion to stay before the Second Circuit just two days later.[50] Late in the afternoon on Friday, April 25, 2014, Judge Peter W. Hall of the Second Circuit Court of Appeals granted Apple's request for an administrative stay of class notice being distributed to consumers and referred Apple's stay motion to a three-judge panel.[51] Apple's motion for leave to appeal the class certification order and motion for an emergency stay were heard by a motions panel on May 29, 2014. Within hours of that hearing, both motions were denied.[52]

22.     At the same time as the Rule 23(f) and stay briefing, Apple also moved for reconsideration of this Court's ruling on plaintiffs' *Daubert* motions, its fifth effort to delay,

---

[46] Apple Inc.'s Pet. for Permission to Appeal from Order Granting Class Cert., Case No. 14-1092, (2d Cir. Apr. 11, 2014), ECF No. 1.

[47] Theodore J. Boutrous, Jr. Letter to the Ct., Apr. 22, 2014, ECF No. 615.

[48] Order, Apr. 23, 2014, ECF No. 618; Opinion & Order, Apr. 24, 2014, ECF No. 621.

[49] Emergency Mot. to Stay Pending Appeal, Case No. 14-1092 (2d Cir. Apr. 23, 2014), ECF No. 13-2.

[50] Class Pls.' Opp'n to Apple Inc.'s Emergency Mot. to Stay Pending Appeal, Case No. 14-1092 (2d Cir. Apr. 25, 2014), ECF No. 21-1.

[51] Steve W. Berman Letter to the Ct., Apr. 28, 20140, ECF No. 624.

[52] Order (denying motion to stay), Case No. 13-3857 (2d Cir. May 29, 2014), ECF No. 201; Order (denying Rule 23(f) Appeal), Case No. 14-1092 (2d Cir. May 29, 2014), ECF No. 60.

escape, or relitigate proceedings before this Court. On April 11, 2014, Apple requested that the

Court reconsider its denial of a *Daubert* hearing and its exclusion of Dr. Kalt's testimony and

much of Mr. Orszag's testimony.[53] The Class and Plaintiff States jointly opposed this request.[54]

23. On June 2, 2014, the Class and Plaintiff States proposed an August 25, 2014 trial

date, and Apple did not object.[55] The next day, this Court ordered an August 25, 2014 trial date.[56]

24. On June 16, 2014, the parties wrote to inform the Court that the Class Plaintiffs,

Plaintiff States and Apple had executed a binding agreement in principle to resolve the Class

litigation and the damages phase of the States' litigation.[57]

## H.    Settlement Discussions with Apple

25. Plaintiffs' settlement discussions with Apple did not bear fruit until late in the

litigation process. The State and Class Plaintiffs reached settlements with the five Publisher

Defendants in 2013. Although this Court ordered Plaintiff States, DOJ, and Apple into mediation

a month before the June 2013 trial, a mediation in which Class Plaintiffs participated, no

settlement was reached.

26. After the Court issued its Liability Finding, the Court again directed the parties to

mediate on the remaining issues, and the parties retained the widely respected and experienced

mediator, Antonio Piazza. This mediation session did not result in an agreement. Indeed, until

plaintiffs' motions on class certification and *Daubert* were granted, Apple adamantly rejected

---

[53] Def. Apple Inc.'s Mem. of Law in Support of its Mot. for Reconsideration, Apr. 11, 2014, ECF No. 607.

[54] Pls.' Joint Opp'n to Apple Inc.'s Mot. for Reconsideration, Apr. 25, 2014, ECF No. 622.

[55] Eric Lipman Letter to the Ct., June 2, 2014, ECF No. 631; Daniel G. Swanson Letter to the Ct., June 2, 2014, ECF No. 632.

[56] Scheduling Order, June 3, 2014, ECF No. 633.

[57] Steve W. Berman Letter to the Ct., June 16, 2014, ECF No. 637.

every effort to settle the case by any of the three plaintiff groups. The parties returned to mediation with Mr. Piazza in May 2014. While the parties did not reach agreement during the May mediation, the session provided the foundation for additional negotiations which resulted in the parties' execution of a Memorandum of Understanding on June 16, 2014. Counsel for Plaintiff States, Class Plaintiffs, and Apple immediately began work to finalize the Apple Settlement, using the prior settlements as a template. Counsel for the parties executed the Apple Settlement Agreement on July 10, 2014.

## II.      COMPLEXITY OF LITIGATION

27.      The magnitude and complexity of this litigation is evident, particularly in the result. The "complexity of federal antitrust law is well known."[58] But here, an additional burden was present. Plaintiffs were required to show not only that the five publishers entered into a horizontal conspiracy, but that Apple, a vertical partner, knowingly participated in this conspiracy. Class Plaintiffs were also required to demonstrate widespread impact and damage to a class of e-book purchasers. To demonstrate this, the class certification record alone numbered 2,018 pages. Summary judgment numbered another 751 pages. Over the course of this litigation, Apple retained five different testifying experts (and an untold number of supporting economists). The volume of the pleadings filed in this case, the number of depositions, the breadth of document productions, and the complexity of the transactional database all confirm that this was extraordinarily complex litigation.

---

[58] *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 510 (E.D.N.Y. 2003), *aff'd*, *Wal-Mart Stores*, 396 F.3d at 96.

010260-11 712866 V1

### III.     EXPERIENCE AND QUALIFICATIONS OF THE HAGENS BERMAN ATTORNEYS

28.     Hagens Berman is a sixty-lawyer firm, with offices in Seattle, Boston, Chicago, Colorado Springs, Los Angeles, New York, Phoenix, San Francisco and Washington, D.C. Since its founding in 1993, Hagens Berman has represented plaintiffs in a broad spectrum of complex, multi-party antitrust cases. The lead attorneys from Hagens Berman in this action were Steve Berman and Jeff Friedman. Details regarding other attorneys at Hagens Berman who assisted in litigating this action can be found in the attached résumé of Hagens Berman.

*29.*     **Steve Berman**: Mr. Berman helped start the firm in 1993, and is the managing partner.  He has served as lead or co-lead counsel in antitrust, securities, consumer, products liability, and employment class actions, and complex litigations throughout the country.  For example, Mr. Berman was the lead trial lawyer in *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456 (D. Mass.).  He tried the class case against four manufacturers and successfully argued the appeal from the trial before the First Circuit.  Mr. Berman was also the lead counsel in *New England Carpenters v. First DataBank*, *et al.*, No. 05-11148-PBS (D. Mass.), on behalf of a nationwide class of private payors that purchased prescription brand name drugs.  Hagens Berman achieved a $350 million settlement eleven days before trial was scheduled to start.  Mr. Berman was also lead counsel *In re Charles Schwab Corp. Sec. Litig.*, No. 08-cv-01510 (N.D. Cal.), a recent securities class action before the Honorable William Alsup, United States District Court, Northern District of California, that settled while arguing *in limine* motions for approximately $235 million or a 42.5% recovery for the federal class and an 80% recovery for the California class, once again on the eve of trial. Recently, in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, No. 8:10ML2151 JVS (FMOx) (C.D. Cal.), Judge James V. Selna *sua sponte* identified Mr. Berman

as a presumptive co-lead counsel when Judge Selna was assigned the Toyota MDL. Perhaps most notable is Mr. Berman's role as a special assistant attorney general for the states of Washington, Arizona, Illinois, Indiana, New York, Alaska, Idaho, Ohio, Oregon, Nevada, Montana, Vermont, and Rhode Island in the landmark Tobacco Litigation.  That case resulted in the largest settlement in history, a settlement that occurred while Mr. Berman was in trial in *State of Washington v. Philip Morris, et al.*

30.    **Jeff Friedman:** Mr. Friedman is a member of Hagens Berman and a former Assistant United States Attorney ("AUSA"), Criminal Division, for the United States Attorney's Office, Central District of California.  As an AUSA, Mr. Friedman tried numerous jury trials and prosecuted complex white collar fraud cases and large narcotics organizations.  Mr. Friedman's experience as lead or co-lead counsel in cases in the media and technology sector includes:  *In re Electronic Books Antitrust Litig.*, No. 11-mc-02293 (S.D.N.Y.) and *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 10-cv-2143-RS (N.D. Cal.). Mr. Friedman has also been extensively involved in the firm's representation of government entities, successfully recovering hundreds of millions of dollars for these cash-strapped entities. A recent series of cases include government entities seeking to recover monies wrongfully paid due to a scheme McKesson Corp. perpetrated. These cases include the *San Francisco Health Plan v. McKesson Corp.*, No. 1:08-CV-10843-PBS (D. Mass.); *State of Utah v. McKesson Corp.*, No. CV 10-04743 SI (N.D. Cal.); *The Commonwealth of Virginia v. McKesson Corp. et al.*, No. CV-11-02782 SI (N.D. Cal.) and; *State of Oregon v. McKesson Corp.*, No. CV-11-5384 SI (N.D. Cal.).

## IV.     ATTORNEYS' FEES AND EXPENSES – CALCULATION OF HAGENS BERMAN'S LODESTAR AND COSTS

31.     Hagens Berman's lodestar is calculated based on the current hourly rates of the firm. These hourly rates are based on regular and ongoing monitoring of prevailing market rates in New York for attorneys of comparable skill, experience and qualifications.

32.     Hagens Berman's cumulative lodestar is $4,783,238.00 as of October 1, 2014. A breakdown of the lodestar by lawyer or paraprofessional is as follows:

| Name | Position | Hours | Rate | Total Amount |
|---|---|---|---|---|
| Adrian Garcia | Paralegal Assistant | 23.5 | $150 | $3,525.00 |
| Alexander Bott | Contract Attorney | 132 | $300 | $39,600.00 |
| Andrew Volk | Partner | 56.7 | $600 | $34,020.00 |
| Anthony Shapiro | Partner | 43.3 | $800 | $34,640.00 |
| Ashley Bede | Associate | 171.7 | $400 | $68,680.00 |
| Brian Miller | Paralegal | 1116.5 | $250 | $279,125.00 |
| Chris O'Hara | Partner | 152 | $500 | $76,000.00 |
| Erin Flory | Partner | 131.5 | $650 | $85,475.00 |
| George Sampson | Of Counsel | 267.9 | $675 | $180,832.50 |
| Jason Zweig | Partner | 107.1 | $650 | $69,615.00 |
| Jeaneth Decena | Paralegal | 522 | $250 | $130,500.00 |
| Jeff Friedman | Partner | 2302.6 | $785 | $1,807,541.00 |
| Jeff Lang | Associate | 2037.4 | $400 | $814,960.00 |
| Jennifer Connolly | Partner | 48.1 | $625 | $30,062.50 |
| Megan Waples | Associate | 86.75 | $400 | $34,700.00 |
| Meghan Lang | Associate | 660.4 | $400 | $264,160.00 |
| Robert Haegele | Paralegal | 25.45 | $250 | $6,362.50 |
| Sean Matt | Partner | 136 | $785 | $106,760.00 |
| Shana Scarlett | Partner | 436.3 | $665 | $290,139.50 |
| Steve Berman | Managing Partner | 309.4 | $900 | $278,460.00 |
| Steve Fimmel | Associate | 370.2 | $400 | $148,080.00 |
| **TOTAL** | | **9136.8** | | **$4,783,238.00** |

33.    Detailed and contemporaneously prepared time records supporting this summary are available, if requested by the Court.

34.    Hagens Berman has directly expended a total of $31,847.74 in unreimbursed litigation expenses in prosecuting this litigation that was not included in our prior request for reimbursement of fees and expenses. They are the type of expenses typically billed by attorneys to paying clients in the marketplace, and include such costs as fees paid or incurred to experts, computerized research and other services, and travel in connection with this litigation from October 1, 2013, through October 1, 2014. These unreimbursed expenses are broken down as follows:

| HAGENS BERMAN'S EXPENSES | |
|---|---|
| **Description of Costs** | **Amount** |
| Airfare | $   3,594.00 |
| Conference Call Fees | $      360.51 |
| Conference Rooms | $   1,500.00 |
| Court Reporters/Deposition and Hearing Transcripts | $      240.67 |
| Expert Fees | |
| Hotel | $   4,995.81 |
| Internal Printing/Copies | $   3,671.75 |
| Meals | $   1,090.36 |
| Online Services/Legal Research (Pacer, Lexis/Nexis) | $   8,035.22 |
| Outside Copy Service | $        81.00 |
| Overnight Delivery Service | $   1,057.17 |
| Parking | $      146.00 |
| Professional Services | $   5,697.55 |
| Transportation | $   1,377.70 |
| **TOTAL** | **$ 31,847.74** |

35.    Hagens Berman has also held the litigation fund in this litigation which was funded by both co-lead firms. This litigation fund was used to pay certain expenses typically billed by attorneys to paying clients in the marketplace, such as expert costs, online document

storage, and other services. The expenses paid from this litigation fund from October 1, 2013,

through October 1, 2014 total $549,098.13 and are broken down as follows:

| LITIGATION FUND EXPENSES | |
|---|---|
| **Description** | **Amount** |
| Conference Call Fees | $ 1,062.28 |
| Court Reporters/Deposition and Hearing Transcripts | $ 8,911.91 |
| Expert Fees | $ 298,740.00 |
| Messenger / Process Service | $ 1,759.35 |
| Notice Administrators (Class Notice) | $ 32,655.49 |
| Online Services/Legal Research (Pacer, Lexis/Nexis, Online Document Storage) | $ 109,193.52 |
| Professional Services | $ 96,322.71 |
| Travel | $ 452.87 |
| **TOTAL** | **$ 549,098.13** |

36.     In total, through both direct expenditures and the litigation fund, the books and

records of my firm reflect expenses in the amount of $580,945.87 in unreimbursed litigation

expenses in prosecuting this litigation. The litigation expenses incurred in prosecuting this case

are reflected in the books and records of this firm. These books and records are prepared from

expense vouchers and check records and are an accurate record of the expenses incurred.

37.     The expertise and experience of lead counsel is another important factor in setting

a fair fee. As demonstrated by our firm résumé, Hagens Berman employs some of the most

experienced and skilled practitioners in the complex litigation field, and has long and successful

track records in such cases. Hagens Berman is a nationally-recognized law firm, with offices in

Seattle, Boston, Chicago, Colorado Springs, Los Angeles, New York, Phoenix, San Francisco

and Washington, D.C. We have been rated by the *National Law Journal* in the top ten of

plaintiffs' firms in the country. The firm has extensive experience litigating complex class

actions asserting claims of securities, investment fraud, product liability, tort, antitrust, consumer fraud, employment, environmental, and ERISA cases. Moreover, the fact that Hagens Berman has demonstrated a willingness and ability to prosecute complex cases such as this was undoubtedly a factor that encouraged defendants to engage in settlement discussions, and added valuable leverage in the negotiations, ultimately resulting in the recovery for the class.

  38. Attached are true and correct copies of the following exhibits:

    Exhibit A: Hagens Berman Sobol Shapiro LLP Firm Résumé;

    Exhibit B: 2013 National Law Journal Billing Survey

  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 17th day of October 2014, at Seattle, Washington.

/s/ Steve. W. Berman
_____
STEVE W. BERMAN

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2014, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

/s/ Steve W. Berman
STEVE W. BERMAN