Ritchie Lipson
1400 East Southern Ave, Suite 400, Tempe, Arizona 85282
Phone: 480-427-2800        Email: ritchiel@aol.com

October 31, 2014

Clerk of Court
U.S. District Court for the Southern District of New York
500 Pearl Street,
New York, New York 10007-1312

Apple E-Books Antitrust Litigation
P.O. Box 1851
Faribault, MN 55021-1899

> **Re:    *State of Texas, et al. v. Penguin Group (USA) Inc., et al., Case No.12-cv-3394***
> ***In Re: Electronic Books Antitrust Litigation, Case No. 11-MD 2293***

I object to the proposed Apple Settlement in the cases *State of Texas, et al. v. Penguin Group (USA) Inc., et al.*, Case No.12-cv-3394 and *In Re: Electronic Books Antitrust Litigation, Case No. 11-MD 2293*.

As requested in the notice, I am attaching proof that I am an Eligible E-book Purchaser.  My Settlement ID Number is **AP00670111**.

This "settlement" is not really a settlement, as an appeal is still pending, and the defendants have not agreed to dismiss their appeal.  Depending on the outcome, consumers may get $400 million, $50 million, or zip.  For individual consumers, this is the difference between a few dollars, a few pennies, and nothing.

The first option might be acceptable as a compromise, but since Apple has not in fact agreed to pay the $400 million settlement plus $50 million in fees, that option is not on the table.  Class counsel seek to lull consumers into quiescence with assurances that the other outcomes are unlikely.  That is not good enough.  Apple needs to either agree to pay substantial damages, or the attorneys need to continue to pursue the case.

Objection / In Re: Electronic Books Antitrust Litigation, Case No. 11-MD 2293
October 31, 2014
Page 2

The lawsuit alleges Apple and the big-six Manhattan publishers conspired to fix prices on e-books, and that following the conspiracy, Apple and the publishers did in fact raise prices on e-books significantly and profited handsomely.  Apple earned a commission of 30% on all e-book sales.  At the time they entered into the anti-competitive agreements alleged in the lawsuit, the publishers were desperate to find a way to compete with Amazon.  In part because of the popularity of Amazon's Kindle e-reader, Amazon dominated the e-book market early on, cornering an estimated 80% of sales.  In 2009, it further established its dominance by publicly committing to sell the e-book versions of New York Times Bestsellers at $9.99, well below cost.  Relying heavily on profits from best-sellers, the publishers were desperate to respond.  The publishers did respond with a price fixing conspiracy, and settled with plaintiffs by agreeing to pay more than $166 million to settle state and consumer e-book price fixing charges, including an approximately $4 million to settle consumer claims in Minnesota.

Apple, however, has not accepted responsibility for its role, and is continuing to appeal the trial court's determination of liability.

Apple was not just a willing participant.  As described in the Second Amended Complaint, "Apple facilitated the Publishers' agreement on a scheme to raise frontlist e-book prices."  Doc. 151-1, ¶ 58.  But Apple had its own agenda; it was actively seeking ways to ensure the release of the iPad tablet in January 2010 would be a resounding success.  Doc. 151-1, ¶59.  Apple's iBookstore would provide the publishers a means to sell their books, and in the process Apple would receive a sizeable commission on every e-book sold.  The Complaint alleged "Apple was actively seeking to bring the Publishers into a collective agreement to use the Agency Model as a mechanism to raise e-book retail prices marketwide."  Doc. 151-1, ¶63.  The email records of Apple executives reveal Apple was the chief negotiator.   Apple CEO Steve Jobs even became directly involved in the negotiations:

> "On January 24, 2010, following an exchange of e-mails, Mr. Jobs wrote ..."As I see it, [Conspiring Publisher] has the following choices:
>
> 1. Throw in with Apple and see if we can all make a go of this to create a real mainstream ebooks market at $12.99 and $14.99.
>
> 2. Keep going with Amazon at $9.99.  You will make a bit more money in the short term, but in the medium term Amazon will tell you they will be paying you 70% of $9.99.  They have shareholders too.
>
> 3. Hold back your books from Amazon.  Without a way for customers to buy your ebooks, they will steal them. . . .
>
> Maybe I'm missing something, but I don't see any other alternatives.  Do you?

Objection / In Re: Electronic Books Antitrust Litigation, Case No. 11-MD 2293
October 31, 2014
Page 3

Doc. 151-1, ¶82. The agreements led to a shift from a wholesale/retail model to an agency model – a sea change in the way books are marketed in the United States. Within three days of Steve Jobs' email, all the publishers had agreed to the agency sales model proposed by Apple and had signed formal agency model distribution contracts with Apple. Doc. 151-1, ¶83. The costs to consumers were significant; almost immediately thereafter prices increased dramatically, especially for bestsellers.

The first of the putative class actions was filed on August 9, 2011. Eventually the United States and 33 states and U.S. territories brought antitrust suits against Apple. These lawsuits were consolidated in the instant actions, and as noted above, the publishers settled back in 2012. But Apple has continued to deny liability. A trial on liability was held earlier this year, and Apple appealed the liability decision. The court's ruling left little doubt as to Apple's liability:

> "Apple is liable . . . .higher prices were not the result of regular market forces but of a scheme in which Apple was a full participant. . . . this Court finds by a preponderance of the evidence that Apple conspired to restrain trade in violation of Section 1 of the Sherman Act and relevant state statutes."

*United States v. Apple Inc.*, 952 F. Supp. 2d 638, 709 (S.D.N.Y. 2013). Following this ruling on liability, the court scheduled the damages phase of the trial to be held on August 25, 2014.

But on June 16, the parites informed the Court that they had entered into a "binding agreement" to resolve the lawsuit. On July 16 the parties filed their motion seeking preliminary approval of the Settlement, but they originally sought to delay notice to consumers until after the final resolution of Apple's appeal. On July 17, however, the court ordered the parties to assume immediate distribution of the notice. On July 23, the parties submitted notice and distribution plans, which were amended on July 30. The court granted preliminary approval on August 1, 2014.

Distribution of the notice began on September 10, 2014, with class members being given a deadline of October 31, 2014 to decide how they would respond – and to either opt-out of the settlement, object and/or submit claim forms. Unfortunately, the first notice sent mistakenly included language from an earlier draft notice concerning class certification, and erroneously stated that "[t]he case is scheduled to go to trial to determine if Apple must pay any money." The parties requested court approval to resend corrected notice, while maintaining the original deadlines.

To begin with, the deadlines hardly allow class members adequate opportunity to review the voluminous record in this case and make a determination as to the appropriate action. Six weeks is also insufficient time to allow consumers to make contact with private attorneys. The accelerated schedule indicates class members are only an ancillary consideration in this

Objection / In Re: Electronic Books Antitrust Litigation, Case No. 11-MD 2293
October 31, 2014
Page 4

litigation. The notice is merely symbolic, and is clearly not meant to encourage class members to weigh in on this so-called settlement.

The notice, and indeed the settlement, were flawed at the outset because there has been no real settlement. Generally, a compromise and settlement must have the same elements as a contract: parties who have the capacity and authority to agree, an offer and acceptance, and valuable consideration. Because a settlement is generally a compromise, both sides give up something. Under this settlement, Apple may actually get off scot-free. And under all of the various scenarios, Apple will pay significantly less than the damages alleged, which were in the range of $840 million.

The notice advises consumers of three possible scenarios. Behind Door 1, Apple will pay consumers $400 million if Apple loses its appeal of the district court's liability finding. For this scenario to occur, the appeals court must affirm the liability holding in toto, without remand. The notice claims this scenario offers about 200% of the maximum damages plaintiffs' expert had determined consumers suffered, although noticeably this does not mention that the alleged antitrust violations call for treble damages, nor does it mention that the damages assessment has already been discounted from the original allegations. Behind Door 2, Apple will only pay consumers $50 million. This result will only occur if the appeals court sends the case back for reconsideration or a new trial. Class counsel assured the court they consider this scenario unlikely. Behind Door 3, there is nothing for consumers.

Rather than a settlement, this is a probability puzzle for consumers. It resembles what has become known as the Monty Hall problem in game theory, in recognition of the famous game show host who posed a similar problem to competitors. Lacking little understanding of the legal issues involved, class members are given no choice but to blindly trust class counsel, and gamble that they may get the bigger payoff. Given the tendency of appellate courts to find something objectionable in a lower court decision, however, most lawyers would probably bet that the prize lies behind Door 2. But the $50 million prize behind door 2 is insufficient, and will compensate class members only pennies per book purchased. Even if the court considers it unlikely the appeals court will reverse the liability determination, the court must reject this settlement because this possibility is completely unacceptable.

The settlement is unfair both procedurally, because the notice fails to inform consumers of what is going to happen after the settlement is approved, and substantively, because it lacks substance. In terms of notice, Fed. R. Civ. P. 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(e)(l) requires notice must be provided in a "reasonable manner" i.e., it must "'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-*

Objection / In Re: Electronic Books Antitrust Litigation, Case No. 11-MD 2293
October 31, 2014
Page 5

*Mart Stores, Inc. v. VISA US.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (*quoting Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982). Notice that only informs class members of possible scenarios does not satisfy the requirements of Rule 23.

Announcement of the ability to participate in a probability game also fails under case law enunciating due process requirements. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950) requires, "when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee . . . The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." *Mullane*, 339 U.S. at 314-315. This notice simply does not inform class members of how the settlement will affect their rights, because the parties themselves do not know.

The settlement is also unfair because the attorneys' fee provisions show preferential treatment to the attorneys. Behind Door 1, the private attorneys will be getting $30 million in attorneys' fees, and government attorneys will be getting $20 million. Under this scenario, the class will be receiving about 89% of the total settlement fund. The private attorneys will receive 6.7% of the gross settlement under this scenario, and the government attorneys will receive $20 million, or about 4.44% of the gross settlement. Behind Door 2 (where class members will only be getting 12.5% of the compensation they would have received behind Door 1) class members will be getting $50 million, but their percentage of the total recovery is also reduced. Rather than 89%, they will only be getting 71% of the total settlement fund of $70 million. The percentage the attorneys will be receiving increases, however. The private attorneys will be getting $10 million (about half what they would get behind Door 1), but this will amount to 14.3% of the settlement, or nearly three times the percentage they would receive under the first scenario. The private attorneys will also be getting $10 million under this scenario. This is one third of what they would have gotten behind Door 1, but also at 14.3% of the total settlement fund, this amounts to more than double the percentage they would have received behind Door 1.

This inequitable division of the fees between class counsel and class members indicates that this settlement is not fair to the class. The attorneys have set up this agreement so that they will suffer less if the prize is behind Door 2. One focus of the Fed. R. Civ. P. 23(e)(2) fairness inquiry is whether the settlement gives "preferential treatment" to class counsel. The Ninth Circuit's decision in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) indicates caution is warranted here. In *Bluetooth*, the court identified three warning signs of a class action settlement that is inequitable between class counsel and the class: (1) A disproportionate distribution of fees to counsel (present because the fees percentages will increase depending on the result); (2) A clear sailing agreement (present); and (3) A "kicker" (i.e. a reversion of excess fees to the defendant). *Bluetooth*, 654 F.3d at 947. Here, if the appeals

Objection / In Re: Electronic Books Antitrust Litigation, Case No. 11-MD 2293
October 31, 2014
Page 6

process results in either the Door 2 or Door 3 scenarios discussed above, the fees not awarded go back to Apple.  This agreement fails the *Bluetooth* test.

The agreement fails to adequately inform consumers as to what they will receive.  Approval of this settlement would set a bad precedent, and indicate to class counsel that they can hide bad settlements behind probability puzzles.  Approving a settlement without reasonable notice of exactly what class members should expect from a settlement is not proper.

I join in any other meritorious objections, and request that this court reject the proposed settlement and require the attorneys continue to fight the liability appeal and proceed to trial on damages, or return to the court with a true settlement.

Sincerely,

Ritchie Lipson

<table>
<tr><td>

MUST BE POSTMARKED
ON OR BEFORE
**10/31/2014**


° 0 1 2 3 4 5 6 7 8 9 °

</td><td>

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
*Texas, et al. v. Penguin Group, et al.,*
Case No.12-cv-3394 and
*In re: Electronic Books Antitrust Litigation,*
Case No. 11-MD 2293
**CLAIM FORM**
USE BLUE OR BLACK INK ONLY

</td><td>

FOR OFFICIAL USE ONLY

03

Page 1 of 2

</td></tr>
</table>

» If you bought E-book(s) through **Amazon, Apple, Barnes & Noble, Kobo or Sony,** you are **not** required to file a Claim Form to participate in the Apple Settlement.

» If you bought E-book(s) through **Google** and have not previously submitted a Claim Form, you must complete an online Claim Form at www.EbookLawsuits.com or complete and mail this Claim Form. Remember to provide the Settlement ID number that was sent to you in an email. Google customers are **not** required to complete section III of the Claim Form.

» **If you previously filed a Claim Form** in the prior settlements with Hachette, HarperCollins, Macmillan, Penguin and Simon & Schuster Settlements, you do not need to file a Claim Form in the Apple Settlement. Your previously filed Claim Form will automatically be included in the Apple Settlement.

» If you bought E-books through **any other retailer** and did not previously file a Claim Form, you must complete an online Claim Form at www.EbookLawsuits.com or complete and mail this Claim Form in order to receive a payment if money is awarded.

» Visit www.EbookLawsuits.com to learn more about your rights and options under the Settlement.

## I. GENERAL INSTRUCTIONS

A. You could qualify for money from the Apple Settlement if:

1. You purchased an E-book that was published by Hachette, HarperCollins, Macmillan, Penguin or Simon & Schuster (as well as all other names under which these publishers also publish E-books, visit www.EbookLawsuits.com to review a complete list of Publishers and their imprints), **and**

2. The purchase was made from April 1, 2010 through May 21, 2012, **and**

3. You were a resident of 1) any U.S. State or Commonwealth, 2) the District of Columbia, or 3) one of the five U.S. Territories and Commonwealths at the time of purchase. (Your residency for these Settlements is determined by the billing address on the credit card you used for your purchases.)

B. You must submit a separate Claim Form for each retailer through which you bought E-books when filing is required.[1]

C. Questions? Visit www.EbookLawsuits.com or call 1-866-686-9333 for more information.

## II. YOUR IDENTITY AND CONTACT INFORMATION

Provide your name, mailing address, email address and retailer account information. Please note that communications concerning your claim will be directed to you at this address. You should notify the Claims Administrator promptly if your mailing address or email changes after you have submitted this Claim Form.

Select Retailer: ☐ Google  ☒ Other (Enter Retailer Name): *Apple*

| Settlement ID Number (from email notice) | Email Address |
|---|---|
| AP 006 70 811 | Richile @ aol.com |

| First Name | Last Name |
|---|---|
| Richile | Lopin |

Address Line 1
1400 E Summer Ave 900

Address Line 2

| City | State | Zip Code |
|---|---|---|
| Tempe, | AR | 85281 |

| Foreign Province and Postal Code | Foreign Country |
|---|---|
| 85281 | |

| Telephone Number (Day) | Telephone Number (Evening) |
|---|---|
| 602-677-5595 | |

[1] Please supply *all* requested information for this filing. Failure to report complete and accurate information may result in the rejection of your claim. The Claims Administrator may request additional information as required to calculate your claim reliably and efficiently.


* 4 2 4 8 *


* C F W *





## III. YOUR QUALIFYING PURCHASES

In the space provided below, please enter the required details for each E-book you purchased from April 1, 2010 through May 21, 2012. For instructions on how to locate the required information, please visit www.EbookLawsuits.com and click on the "File A Claim" tab. If you need more space, attach separate sheets giving all of the required information in substantially the same form. All claims filed should be supported by a receipt of purchase.

Note:   **If your retailer is Amazon, Apple, Barnes & Noble, Kobo, Sony or you previously filed a Claim Form, you are not required to file a Claim Form to participate in the Apple Settlement. If you have not previously filed a Claim Form and your retailer is Google, you are not required to provide purchase information below.** (Please confirm you have provided your Settlement ID Number in Section I.)

Account Email Address: _____

| Date of Purchase | Purchase Price | ISBN Number² | Publisher | Billing State³ |
|---|---|---|---|---|
| 6 / 15 / 2011 | 12 . 99 | 978006209652 | Harper Collins | AZ |
| __ / __ / __ | ___ . __ | _____ | _____ | ___ |
| __ / __ / __ | ___ . __ | _____ | _____ | ___ |
| __ / __ / __ | ___ . __ | _____ | _____ | ___ |
| __ / __ / __ | ___ . __ | _____ | _____ | ___ |

² The unique International Standard Book Number known as the "ISBN" number is typically found with the copyright information.
³ Please provide the State in the billing address of the credit card you used for your E-book purchases.

## IV. CERTIFICATION

I, the undersigned, state that:

- The information contained in this Claim Form is true and correct to the best of my knowledge. I made eligible purchases of E-books.
- I understand that if I have excluded myself from the Apple Settlement, I will receive no payment.  (For information about excluding yourself, please see the Detailed Notice.)
- This claim is the only Claim Form I have or will submit for the above listed E-books. I do not know of any other claim being submitted for the same E-books.
- I have not transferred or assigned my claims.
- I submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York with respect to this claim and any proceeding or dispute arising out of or relating to this claim.
- I authorize my E-book retailer to provide necessary information to the Claims Administrator to validate E-book purchases represented in this claim, and authorize the Claims Administrator to provide necessary information to the retailer for the same purpose.
- I understand that the filing of a false claim may have legal consequences.

Signed this __31__ day of __October__, 2014 in _____, _____
                                                        (City)                      (State/Country)

_____          _____
(Signature of Consumer)                         (Type/Print name of Consumer)

_____          _____
(Signature of person authorized to act on behalf of Consumer)   (Type/Print name of person authorized to act on behalf of Consumer)

Claim Forms must be electronically submitted or mailed postmarked on or before **October 31, 2014.**  Mailed Claim Forms must be addressed to the Claims Administrator as follows:

**APPLE E-BOOKS ANTITRUST LITIGATION**
**P.O. BOX 1851**
**FARIBAULT, MN 55021-1899**

| REMINDER CHECKLIST |
|---|

1. Please sign the Certification section of the Claim Form.
2. Keep a copy of your Claim Form and all documents submitted for your records.
3. If you desire an acknowledgement of receipt of your Claim Form, please send it Certified Mail, Return Receipt Requested.
4. **THE CLAIM FORM AND YOUR SUPPORTING DOCUMENTATION MUST BE ELECTRONICALLY FILED OR POSTMARKED NO LATER THAN OCTOBER 31, 2014.**