UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

This Document Relates to:

| | |
|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | No. 11-md-02293 (DLC)<br>ECF Case<br><br>CLASS ACTION |
| THE STATE OF TEXAS, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>PENGUIN GROUP (USA) INC., et al.,<br><br>　　　　　　Defendants | Civil Action<br>No. 12-cv-03394 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF APPLE SETTLEMENT AND DISTRIBUTION PLAN**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  PROCEDURAL HISTORY................................................................................... 2

    A.  Litigation to Date ...................................................................................... 2

    B.  Settlement Negotiations ............................................................................ 4

III.  THE PROPOSED SETTLEMENT ...................................................................... 4

    A.  Payment Contingencies Defined................................................................ 5

    B.  Distribution of Consumer Compensation ................................................. 6

    C.  Payment to Plaintiff States........................................................................ 6

    D.  Payment to Class Counsel.......................................................................... 6

    E.  Payment of Settlement Notice and Administration Costs........................ 6

    F.  Release of Claims ...................................................................................... 7

IV.  THE APPROVED NOTICE WAS ADEQUATE AND SATISFIED DUE PROCESS ... 7

V.  THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL ............ 9

    A.  The Settlement Process was Procedurally Fair....................................... 10

    B.  The Settlement Is Reasonable, Adequate and Substantively Fair........................ 11

        1.  The anticipated complexity, duration and expense of additional litigation. ..................................................................................... 11

        2.  The reaction of the settlement group. ...................................... 12

        3.  The stage of the proceeding and the amount of the discovery completed. ................................................................................ 13

        4.  The risks of establishing liability. ............................................ 14

        5.  The risks of establishing damages. .......................................... 14

        6.  The risks of maintaining the class action through trial. ............ 15

        7.  The ability of the defendants to withstand a greater judgment. .............. 15

8.      The range of reasonableness of the settlement amount in light of the best possible recovery and in light of all attendant risks of litigation. .... 16

VI.   THE CONSUMER DISTRIBUTION PLAN MEETS THE STANDARDS FOR FINAL APPROVAL ................................................................................... 18

A.    An Efficient and Reasonable Distribution Plan ................................... 19

B.    Adequate and Reasonable Consumer Compensation Amounts ........................... 20

VII.  THE PROPOSED CLASS MEETS ALL THE REQUIREMENTS OF RULE 23 ......... 21

VIII. PAYMENTS TO PLAINTIFF STATES ARE REASONABLE ..................................... 21

IX.   CONCLUSION ................................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974)............................................................................11,16, 18

*Cronas v. Willis Grp. Holding, Ltd.,*
2011 U.S. Dist. LEXIS 147171 (S.D.N.Y. Dec. 19, 2011) ......................................10

*Denney v. Jenkens & Gilchrist,*
230 F.R.D. 317 (S.D.N.Y. 2005) ................................................................................9

*Ebbert v. Nassau County,*
2011 U.S. Dist. LEXIS 150080 (E.D.N.Y. Dec. 22, 2011) ......................................10

*Hicks v Morgan Stanley,*
2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) ........................................23

*In re AremisSoft Corp. Sec. Litig.,*
210 F.R.D. 109 (D.N.J. 2002) .....................................................................................7

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
2013 U.S. Dist. LEXIS 137946 (N.D. Cal. Sept. 19, 2013) .....................................15

*In re Global Crossing Sec. & ERISA Litig.,*
225 F.R.D. 436 (S.D.N.Y. 2004) ..............................................................................11

*In re High-Tech Emp. Antitrust Litig.,*
985 F. Supp. 2d 1167 (N.D. Cal. 2013) ....................................................................15

*In re Ikon Office Solutions Sec. Litig.,*
194 F.R.D. 166 (E.D. Pa. 2000)................................................................................20

*In re Marsh ERISA Litig.,*
265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................................7

*In re Nexium (Esomeprazole) Antitrust Litig.,*
297 F.R.D. 168 (D. Mass. 2013)...............................................................................15

*In Re Nissan Radiator/Transmission Cooler Litig.,*
2013 U.S. Dist. LEXIS 116720 (S.D.N.Y. May 30, 2013)........................................11

*In re PaineWebber Ltd. P'ships Litig.,*
171 F.R.D. 104 (S.D.N.Y. 1997) ...................................................................15, 16, 18

*In re Remeron Direct Purchaser Antitrust Litig.*,
 2005 U.S. Dist. LEXIS 27013 (D.N.J. Nov. 9, 2005)................................17

*In re Warner Commc'n Sec. Litig.*,
 618 F. Supp. 735(S.D.N.Y. 1985) ........................................................23

*In re WorldCom, Inc. Sec. Litig.*,
 388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................20

*Maley v. Del Global Techs. Corp.*,
 186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................12, 18

*McReynolds v. Richards-Cantave*,
 588 F.3d 790 (2d Cir. 2009) ...............................................................10

*New York v. Reebok Int'l, Ltd.*,
 903 F. Supp. 532 (S.D.N.Y. 1995) .......................................................10

*New York v. Salton, Inc.*,
 265 F. Supp. 2d 310 (S.D.N.Y. 2003)....................................................10

*Park v. Thomson Corp.*,
 2008 U.S. Dist. LEXIS 84551 (S.D.N.Y. Oct. 22, 2008) ..........................11

*United States v. Apple Inc.*,
 952 F. Supp. 2d 638 (S.D.N.Y. 2013).....................................................3

*United States v. Apple Inc.*, 2013 U.S. Dist. LEXIS 129727 (S.D.N.Y. Sept. 5, 2013) .................3

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
 396 F.3d 96 (2d Cir. 2005)..............................................................10, 11

*Weinberger v. Kendrick*,
 698 F.2d 61 (2d Cir. 1982)...................................................................9

*White v. National Football League*,
 822 F. Supp. 1389 (D. Minn. 1993).......................................................18

## FEDERAL STATUTES

15 U.S.C. §4....................................................................................3

15 U.S.C. § 15..............................................................................2, 7

15 U.S.C. § 26.................................................................................2

## FEDERAL RULES

Federal Rule of Civil Procedure 23 ...............................................2, 21, 24

## I.    INTRODUCTION

This proposed settlement resolves Plaintiffs' damages claims against Apple Inc. ("Apple") for its participation in an unlawful agreement to fix the prices of electronic books in violation of federal and state antitrust laws. Counsel for Plaintiffs have structured a unique settlement with Apple that provides exceptional consumer benefit and minimizes the use of judicial resources. It does this by focusing on the ultimate outcome of Apple's appeal of this Court's finding that Apple conspired to violate antitrust laws, as opposed to wasting resources on a damages trial and additional appeals. If Apple's appeal of this Court's Liability Finding is unsuccessful, consumers will receive $400 million from Apple.

On August 1, 2014, the Court preliminarily approved this Settlement Agreement ("Settlement") and approved a Notice Plan.[1] In compliance with the Court's order, Plaintiffs (Plaintiff States[2] and Settlement Class[3]) provided direct notice to almost 23 million eligible consumers, together with Internet and general publication notices. Response to this exceptional notice coverage has been overwhelmingly positive:  Plaintiffs received only 76 exclusion requests and very significantly, just five objections.

---

[1]    Memorandum Opinion and Order ("Preliminary Approval Order"), *In re Electronic Books Antitrust Litig.*, Case No. 11-md-02293 (S.D.N.Y.) ("*E-books MDL*"), Aug.1, 2014, ECF No. 651.

[2]    "Plaintiff States" are the District of Columbia, Puerto Rico, and the U.S. States and Commonwealths of Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Missouri, Nebraska, New Mexico, New York, North Dakota, Ohio, Pennsylvania, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

[3]    "Settlement Class" includes all natural persons who have purchased E-books published by the Named Publishers during the period from April 1, 2010, until May 21, 2012, who resided in one of the following states, territories or commonwealths at the time of their E-books purchase: American Samoa, California, Florida, Georgia, Guam, Hawaii, Kentucky, Maine, Minnesota, Mississippi, Montana, Nevada, New Hampshire, New Jersey, North Carolina, Northern Mariana Islands, Oklahoma, Oregon, Rhode Island, South Carolina, U.S. Virgin Islands, Washington, or Wyoming.

The Settlement fully satisfies the standards for concluding that the Settlement is fair, adequate and reasonable. Accordingly, pursuant to 15 U.S.C. §§ 15, 15c, and 26 and Federal Rule of Civil Procedure 23, Plaintiffs now request that the Court grant final approval of the Settlement and the Distribution Plan, and sign the Proposed Order. The fairness hearing for this Settlement is set for November 21, 2014.

## II.   PROCEDURAL HISTORY

### A.   Litigation to Date

The lengthy procedural history of the investigations and litigations related to this matter has been summarized in several prior filings,[4] is well-known by the Court, and will not be repeated in detail here. The following is a brief summary of the litigation and negotiations that resulted in the Settlement.

In 2011, Class Counsel filed the first of many class-action complaints against Apple and five top publishers, alleging that they entered into a successful and unlawful conspiracy to raise and fix the prices of electronic books ("E-books") to consumers.[5] In early 2012, Plaintiff States filed a second amended complaint in their *parens patriae* suit which included similar claims against Apple, Macmillan and Penguin.[6] Fifty-five Attorneys General had previously settled their claims with the other three publishers.[7] In addition to consumer compensation, Plaintiff States

---

[4]   *See Texas, et al. v. Hachette Book Group, Inc. et al.*, No.12-cv-06625 (S.D.N.Y.) ("*Texas v Hachette*"), States' Memoranda for Preliminary and Final Approval of the Hachette, HarperCollins and Simon and Schuster settlements, ECF Nos.11 and 68, and *Texas, et al., v. Penguin Group (USA) Inc., et al.*, No. 12-cv-03394 (S.D.N.Y.) ("*Texas v. Penguin*"), Plaintiffs' Memoranda for Preliminary and Final Approval of Macmillan and Penguin settlements, ECF Nos. 235 and 365.

[5]   *Petru, et al. v. Apple Inc., et al.*, August 9, 2011, No. 11-cv-03892-EMC (N.D. Cal.).

[6]   *Texas v. Penguin*, May 11, 2012, ECF No. 74.

[7]   Settlements between fifty-five Attorneys General and Hachette Book Group, Inc., HarperCollins Publishers LLC, and Simon & Schuster, Inc., were given final approval on February 8, 2013. *Texas v. Hachette*, ECF No. 71.

sought civil penalties and injunctive relief. The United States Department of Justice ("DOJ") also filed suit in 2012 against Apple and the five publishers seeking injunctive relief.[8]

The DOJ action was given precedence pursuant to Section 4 of the Sherman Act, 15 U.S.C. §4. The Court bifurcated the trial, setting a bench trial with respect to the DOJ's and Plaintiff States' claims for injunctive relief and deferring a jury trial on Plaintiff States' and then putative Class's damages claims. Following a three-week bench trial, the Court issued its Opinion and Order on July 10, 2013, concluding that "Apple conspired to restrain trade in violation of Section 1 of the Sherman Act and relevant state statues to the extent those laws are congruent with Section 1" ("Liability Finding"). [9] Thereafter, the Court entered a Final Judgment in the DOJ action and an injunction against Apple in both the DOJ and Plaintiff States actions.[10] On October 3, 2013, Apple filed notices of appeal of the Liability Finding and the entry of the injunction. These appeals have been consolidated in the Second Circuit Court of Appeals as *United States v. Apple Inc.*, No 13-3741 ("Liability Appeal").

After finding Apple liable, the Court scheduled the damages jury trial in the Plaintiff States and Class Action cases to begin August 25, 2014. The Court granted class certification on March 28, 2014, and on June 3, 2014 ordered that notice of the litigation against Apple be sent to consumers "as expeditiously as possible." On June 16, 2014, before the notice program had begun, the Court suspended both the dissemination of consumer notices and the damages trial, pending the Court's review and approval of the Settlement.[11]

---

[8]  *United States v. Apple Inc., et al.*, Case No. 12-cv-02826 (S.D.N.Y.) ("*United States v. Apple*"), ECF No. 1.

[9]  *United States v. Apple Inc.*, 952 F. Supp. 2d 638, 709 (S.D.N.Y. 2013).

[10]  *United States v. Apple Inc.*, and *Texas v. Penguin*, Nos. 1:12-CV-2826 and 1:12-CV-3394, 2013 U.S. Dist. LEXIS 129727 (S.D.N.Y. Sept. 5, 2013).

[11]  *E-books MDL*, ECF No. 638.

**B.      Settlement Negotiations**

Plaintiffs reached settlements with the five publisher defendants in 2012 and 2013. (collectively, "Prior Settlements").[12] No substantive negotiations occurred between Plaintiffs and Apple until May 2013, when the Court ordered Plaintiff States, DOJ, and Apple to attempt mediation with The Honorable Kimba M. Wood, U.S. District Judge for the Southern District of New York. Class Plaintiffs also participated in this mediation, but no settlement was reached.

After the Court issued its Liability Finding, the Court again directed the Parties to mediate on the remaining issues, and the Parties retained the widely respected and experienced mediator, Antonio Piazza. This mediation session did not result in an agreement. While preparing the Scheduling Order for the damages trial, the Court asked the Parties to return to mediation, which they did with Mr. Piazza in May 2014. Although the Parties failed to reach agreement during the May mediation, the session provided the foundation for additional negotiations that resulted in the Parties' execution of a Memorandum of Understanding on June 16, 2014. Counsel for the Parties executed the final Settlement Agreement on July 10, 2014.[13]

## III.      THE PROPOSED SETTLEMENT

The unique interrelationship between and among the various related actions in this matter required a unique settlement. Although DOJ and Plaintiff States were successful in establishing Apple's liability in conjunction with their claims for injunctive relief, Apple's appeal placed in limbo the Liability Finding, as well as all future findings, orders and verdicts in the case. If a jury

---

[12]   In addition to the earlier settlements with Hachette Book Group, Inc., HarperCollins and Simon & Schuster (*See* FN.7, *supra*), settlements among Plaintiffs, Holtzbrinck Publishers, LLC d/b/a Macmillan and Penguin Group (USA) Inc., were approved by the Court on December 6, 2013. *E-books MDL*, ECF No. 478. An additional settlement between Class Counsel representing residents of Minnesota and Hachette, HarperCollins, and Simon & Schuster was also approved on December 6, 2013. *E-books MDL*, ECF No. 475.

[13]   The Settlement Agreement is attached hereto as Exhibit A ("Apple Settlement"). Unless otherwise defined, definitions in the Apple Settlement Agreement are adopted and incorporated herein.

were to award a sizable damages verdict in the scheduled trial, for example, a non-affirmance ruling on the Liability Appeal could upend it. Apple made it clear that any significant damages award would elicit an additional appeal, further delaying final resolution of this matter for years. Although delay caused by the pending appeal is inevitable, Plaintiffs' counsel strongly believe minimizing additional delays is essential for maximizing distribution to consumers. Hence, the Settlement eliminates delays that would ensue from a jury trial on damages (and inevitable appeals) by grounding possible payments upon the final outcome of Apple's Liability Appeal. This results in the unique Settlement with the following described alternative payment scenarios.

A.     **Payment Contingencies Defined**

Depending on the outcome of the pending appeal of the Liability Finding, settlement payments by Apple, pursuant to Section III of the Settlement Agreement, will be as follows:

1.     Affirmance of Liability Finding. If the Court's Liability Finding is affirmed, and that decision is final,[14] Apple will pay $400 million into a consumer compensation escrow account established by Plaintiffs' Escrow Agent.[15] Apple will also pay $20 million to Plaintiff States, and $30 million to Class Counsel.

2.     Remand of Liability Finding. If the Liability Finding is either vacated and remanded, or reversed and remanded with instructions, for reconsideration, or for retrial, and that decision is final, Apple will pay $50 million into the consumer compensation escrow account. Apple will also pay $10 million to Plaintiff States and $10 million to Class Counsel. This contingency is not triggered by a remand on administrative or non-substantive grounds that do not or could not affect the Liability Finding.[16]

3.     Reversal of Liability Finding. If the Liability Finding is reversed, and that decision is final, Apple will make no payments for consumer compensation or to Plaintiff States or Class Counsel, and Plaintiffs will move to dismiss their claims with prejudice.

---

[14]   All parties will have the right to appeal a decision related to the Liability Finding. Such decisions will be deemed final as delineated in Paragraph I.M of the Apple Settlement.

[15]   The Ohio Attorney General contracted with Fifth Third Bank to act as Escrow Agent in the Prior Settlements and will execute an addendum to incorporate the Apple Settlement Agreement funds.

[16]   *See* Apple Settlement, Ex. A, ¶ III.C.

**B.    Distribution of Consumer Compensation**

An Eligible Consumer is any natural person who, during the period April 1, 2010 to May 21, 2012 (inclusive): (1) purchased an eligible E-book published by any settling publisher, (2) was a resident of the District of Columbia or any U.S. State, Commonwealth or Territory at the time of his or her purchase, and (3) has not timely filed an exclusion from this Settlement with the Court. If payment is made for consumer compensation as set forth in A.1 or A.2, above, such monies, together with any accrued interest, will be distributed to Eligible Consumers according to the Consumer Distribution Plan, described in Section VI, below.

**C.    Payment to Plaintiff States**

If payment is made to Plaintiff States as set forth in A.1 or A.2, above, for attorneys' fees, investigation and litigation costs, and for release of enforcement penalty claims, such funds will be divided among Plaintiff States as agreed among themselves. Such funds may be used for any of the several delineated purposes listed in the Settlement.

**D.    Payment to Class Counsel**

If payment to Class Counsel for attorneys' fees and expenses is triggered under A.1 or A.2, above, Class Counsel will be paid pursuant to the Order addressing Class Plaintiffs' Motion for Attorneys' Fees and Reimbursement of Expenses Related to the Apple Settlement as entered by the Court.

**E.    Payment of Settlement Notice and Administration Costs**

Apple will pay all reasonable costs to administer the Settlement, including costs of the consumer notice and distribution. Apple has paid $2 million into an administrative costs escrow account at Fifth Third Bank for this purpose, and will make supplemental deposits upon notice by counsel for Plaintiffs that additional funds are necessary for the payment of reasonable

settlement administration costs. Any funds not ultimately expended from this account will be returned to Apple.

**F.      Release of Claims**

After Apple has made the required payments, if any, and after the Effective Date of the Settlement has passed, Apple will be released from all Claims (as defined in the Settlement) that were asserted, or could have been asserted, on behalf of all Eligible Consumers who have not excluded themselves from the Settlement. At that time, each Plaintiff State shall be deemed to have also released all Claims that were asserted, or could have been asserted, in the Second Amended Complaint by each Attorney General in his or her sovereign capacity as chief law enforcement officer of the state, except for Plaintiff States' claims for injunctive relief against Apple, which are currently included in the pending Liability Appeal.

## IV.    THE APPROVED NOTICE WAS ADEQUATE AND SATISFIED DUE PROCESS

The notice of a *parens patriae* or class settlement must meet standards of procedural due process.[17] For class settlements "notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 119 (D.N.J. 2002) (quoting *Lachance v. Harrington*, 965 F. Supp. 630, 636 (E.D. Pa. 1997)). In addition, the notice should "fairly, accurately, and neutrally describe the claims and parties in the litigation as well as the terms of the proposed settlement and the identity of persons entitled to participate in it." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010) (quoting *Foe v. Cuomo*, 700 F. Supp. 107, 113 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1989)). To insure

---

[17] The Clayton Act establishes the right of Attorneys General to bring antitrust *parens patriae* lawsuits. This statute expressly states that notice by publication is appropriate unless the court finds that such notice would violate due process. 15 U.S.C. § 15c(b)(1).

compliance with these legal standards, Kinsella Media, LLC prepared the Apple Settlement notice, including edits required by counsel and the Court, to fully explain the contingent nature of the Settlement. These notices provided clear and comprehensive information concerning the proposed Settlement, the consumer's options, and the procedures to follow.[18] In granting preliminary approval of the Settlement, the Court found "[t]he content of the Notices complies with due process, Federal Rule of Civil Procedure 21 and Section 15c of the Clayton Act."[19]

To provide these direct notices to as many Eligible Consumers as possible, Plaintiffs' Counsel and the Claims Administrator, Rust Consulting, worked again with the six largest E-book retailers: Amazon, Barnes & Noble, Apple, Kobo, Sony, and Google. Email or postcard notice was sent directly to almost 23 million addresses that these retailers had earlier identified for Eligible Consumers in the Prior Settlements.[20] Because these retailers collectively accounted for more than 98 percent of E-book sales during the relevant period, Plaintiffs believe this direct notice apprised almost all interested parties of the Settlement. Details concerning the processes used by Rust Consulting and the retailers to identify and notify Eligible Consumers are in the declarations of representatives for Rust Consulting, Amazon, Barnes & Noble, Apple, Kobo, Sony and Google, which are attached hereto, respectively, as Exhibits C through I.

To reach those relatively few Eligible Consumers who may not have received direct notice, Kinsella Media placed web-based advertisements on five online websites and networks, as well as one network that serves ads to mobile and tablet devices. Additionally, notices were included in nine newspapers specifically targeted to consumers in the five settling territories,

---

[18]   Declaration of Katherine Kinsella ("Kinsella Decl."), Ex. B, ¶¶ 6-11 and 22-27.

[19]   Preliminary Approval Order, *E-books MDL,* ECF No. 651.

[20]   Declaration of Kim Schmidt Regarding Notice Provided by Rust Consulting ("Schmidt Decl."), Ex. C, ¶¶ 6, 11.

translated into Spanish as appropriate.[21] A detailed website was established for the Settlement on September 9, 2014. It included all notices and electronic forms for Eligible Consumers to use for claims, check requests, and exclusions. More than 300,000 people have viewed this website since its activation.[22] Users who clicked on the related online and mobile advertisements were connected to this website.

Notices for the Settlement were sent out on or before September 15, 2014.[23] Pursuant to the Preliminary Approval Order, Eligible Consumers had until October 31, 2014 to submit objections to the Settlement, exclude themselves from the Settlement, request a check instead of a credit, or submit a claim form if necessary. Only 76 consumers requested exclusion from the Settlement, and importantly, only five objections to the Settlement were filed.[24]

An overwhelming majority of Eligible Consumers received direct, clear, and comprehensive notice of the Settlement and their rights to participate in it. These direct notices were amply supplemented by Internet and newspaper notices with the same information.[25] The Notice Plan, as implemented, exceeds the requirements of due process in this case.

## V.   THE SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL

"There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation...." *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). This is especially true for complex litigation. *See Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 328 (S.D.N.Y. 2005), *aff'd in part, vacated in part on other*

---

[21] Kinsella Decl., Ex. B, ¶¶ 18-21.

[22] Schmidt Decl., Ex. C, ¶ 16.

[23] The initial notices sent to a majority of Apple customers mistakenly included incorrect information. This notice was corrected, with Court approval, and the revised notice was resent to these Apple customers by September 15, 2014. Schmidt Decl., Ex. C, ¶ 7.

[24] Schmidt Decl., Ex. C, ¶ 18.

[25] Kinsella Decl., Ex. B, ¶¶ 22-27, 33.

*grounds*, 443 F.3d 253 (2d Cir. 2006). Although public policy encourages settlement, court approval is necessary for both class action and *parens patriae* settlements. The standard for this approval is well-established: the court will approve settlement agreements if they are fair, adequate and reasonable and not a product of collusion. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *New York v. Salton, Inc.*, 265 F. Supp. 2d 310, 313 (S.D.N.Y. 2003).

## A.      The Settlement Process was Procedurally Fair

The initial determination of fairness, often called "procedural fairness," focuses on the settlement process itself. *Ebbert v. Nassau County*, No. CV 05-5445 (AKT), 2011 U.S. Dist. LEXIS 150080, at *20 (E.D.N.Y. Dec. 22, 2011). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Cronas v. Willis Grp. Holding, Ltd.*, No. 06 CIV.15295 (RMB), 2011 U.S. Dist. LEXIS 147171, at *6-7 (S.D.N.Y. Dec. 19, 2011) (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 116). *See also New York v. Reebok Int'l, Ltd.*, 903 F. Supp. 532, 535 (S.D.N.Y. 1995), *aff'd*, 96 F.3d 44 (2d Cir. 1996); *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803-04 (2d Cir. 2009) (citing *Wal-Mart Stores Inc.*, 396 F.3d at 116).

In granting preliminary approval of the Settlement, the Court found "that the [Apple] Settlement Agreement is the result of extensive, arm's length negotiations by counsel well-versed in antitrust litigation and the particulars of this case. The assistance of a well-known mediator, Antonio Piazza, reinforces the conclusion that the Settlement Agreement is non-collusive."[26] Such findings confirm the conclusion that the Settlement is procedurally fair.

---

[26]   Preliminary Approval Order, *E-books MDL*, ECF No. 651, p. 5.

**B.    The Settlement Is Reasonable, Adequate and Substantively Fair**

Courts within the Second Circuit must consider the nine factors outlined in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462-63 (2d Cir. 1974) to determine whether settlements are reasonable, adequate, and substantively fair. *See In Re Nissan Radiator/Transmission Cooler Litig.*, No. 10CV-7493 (VB), 2013 U.S. Dist. LEXIS 116720, at *14-15 (S.D.N.Y. May 30, 2013). "In finding that a settlement is fair, not every factor must weigh in favor of settlement, 'rather the court should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metro. Life Ins.* Co., 216 F.R.D. 55, 61 (S.D.N.Y. 2003)). Here, the totality of these factors weighs in favor of approving this Settlement.

1.    **The anticipated complexity, duration and expense of additional litigation.**

"[A]ntitrust cases, by their nature, are highly complex." *Park v. Thomson Corp.*, No. 05 Civ. 2931 (WHP), 2008 U.S. Dist. LEXIS 84551, at *7 (S.D.N.Y. Oct. 22, 2008) (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 122). As the Court is well aware, this litigation is no exception. The complexities of this case were amplified by the bifurcated proceedings: first, the bench trial prosecuted by the DOJ and Plaintiff States, which concluded with the Court's Liability Finding; and second, a jury trial on the Class Action claims and Plaintiff States' claims for damages, which was to be prosecuted by Plaintiff States and Class. At first blush, it seems reasonable to conclude that the Court's Liability Finding would minimize any additional litigation. However, without a settlement, additional significant and lengthy litigation will in fact be necessary. There would be further preparation for, and participation in, a jury trial to determine damages, together with the expected appeal therefrom. Plaintiffs believe that additional proceedings would also likely be required to address the many grounds for appeal that Apple has asserted in connection with the Court's various rulings, including class certification, exclusion of expert opinions,

limitations on discovery, the scope of *parens patriae* authority, and disputes regarding venue for trial.

This Settlement has not totally eliminated all possible related litigation, but it has eliminated the costs and resources that would otherwise be necessary to prepare for and conduct a jury trial on Plaintiffs' remaining claims, reduced the additional delays for consumer compensation, and reduced the additional costs and resources that would be expended in the face of the expected additional appeals.

### 2.    **The reaction of the settlement group.**

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) (citing *In re American Bank Note*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001)). As noted, direct notice of the Settlement was sent to almost 23 million consumers, with additional postcard, web-based and newspaper notices being sent or made available. This ensured that a very high percentage of Eligible Consumers received important information about their legal rights relating to this Settlement.

Even though these same Eligible Consumers had received notices and payments related to the Prior Settlement and the vast majority of Eligible Consumers were not required to take affirmative action to be included in the Apple Settlement, thousands of Eligible Consumers actively responded to the Apple Settlement notices: more than 360,000 people visited the website, more than 7,000 people called the toll-free number, more than 19,000 additional check requests were submitted and almost 1,900 additional claim forms were filed. And yet, with this exceptional notice coverage and consumer participation, only 76 people asked to be excluded from the Settlement, and most significantly, only five objections were filed. "[T]he lack of objections may well evidence the fairness of the [s]ettlement." *Maley*, 186 F. Supp. 2d at 362.

Two of the filed objections fail to address the substance of the Settlement. They simply conclude that Apple did nothing wrong and injured no one.[27] This Court already rejected these assertions in the Liability Finding. It also dismissed similar objections that were filed in earlier, related proceedings.[28]

The remaining three objections are directed at the substance of the Settlement.[29] But, for all the reasons noted in the separate Class Plaintiffs' Response to Objections to Proposed Apple Settlement (filed on even date herewith and incorporated herein for all purposes), they also fail to establish adequate grounds to reject the settlement.

The minuscule number and unsupported nature of the objections strongly support final approval of the Settlement.

3.     **The stage of the proceeding and the amount of the discovery completed.**

This factor considers whether the litigation was developed sufficiently to provide counsel with an adequate appreciation of the merits of the case from which to fairly negotiate and settle the action. Counsel for all Parties to the Settlement are intimately familiar with the facts, defenses and legal precedents affecting the case. Prior to filing suit, Plaintiff States and Class conducted substantial and separate investigations of the defendants' actions. After filing separate complaints, Plaintiff States vigorously prosecuted their claims through extensive discovery and a three-week bench trial. This factor strongly supports approval of the Settlement.

---

[27] *See* objections of Daniel Kelly and Caitlin Wooten, *E-Books MDL*, ECF Nos. 662 & 663.

[28] This Court received, reviewed and rejected numerous similar arguments in both the Tunney Act proceeding in the DOJ case and during the approval process for the Prior Settlements. *See, e.g.*, Opinion and Order, *United States v. Apple Inc.*, ECF No.113; Hrg. Transcript, *Texas v. Hachette*, Feb. 8, 2013, at 6-7.

[29] *See* objections of Dianne Young Erwin, John Bradley and Ritchie Lipson, *E-Books MDL*, ECF Nos. 670, 671 & 674.

4.      **The risks of establishing liability.**

This Court's 160-page Opinion and Order issued in favor of the DOJ and Plaintiff States

after the June 2013 trial against Apple establishes that Apple violated Section 1 of the Sherman

Act and relevant state antitrust statutes.[30] However, regardless of how strong Plaintiffs believe

that finding to be, there is always uncertainty to be faced when an appeal is pending and the

defendant has demonstrated the willingness and ability to pursue the matter through multiple

levels of appeal.[31] The Settlement acknowledges that uncertainty by making the result contingent

on the outcome of the Liability Appeal.

5.      **The risks of establishing damages.**

Proving damages at a jury trial would present litigation risks. Plaintiffs presented the

calculations of highly respected experts which analyzed the overcharges caused by the

conspiracy,[32] and Plaintiffs believe that the amount of damages ultimately proved at trial would

be at or near the maximum presented by their experts. However, the ultimate amount that the

jury would award is uncertain. Apple repeatedly attacked, questioned and tried to undermine

Plaintiffs' experts' conclusions. For example, Apple filed opposition papers arguing that Dr.

Noll's model is "fatally flawed" and cannot measure damages on a class wide basis.[33] According

to Apple's expert, consumers already received more than treble damages.[34] Plaintiffs believe

their experts' analyses are well-founded. But submitting these conflicting damages analyses to a

---

[30]  *See* FN 9, *supra.*

[31]  In addition to expected appeals, Apple has argued that the Court's Liability Finding is insufficient to establish liability for the Class Action claims. *See e.g.* Ltr from Apple to Judge Cote, *E-Books MDL*, ECF. 409.

[32]  *See* Corrected Declaration of Roger G. Noll, *E-books MDL*, ECF No 428; Reply Declaration of Roger G. Noll, *E-books MDL*, ECF No. 555. ("Noll Reply Decl.")

[33]  *See* Defendant Apple Inc.'s Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Apple's Opposition") at 18, Nov. 15, 2013, *E-books MDL*, ECF No. 443.

[34]  *See* Corrected Declaration of Jonathan Orszag, dated Nov. 25, 2013, *E-books MDL*, ECF No. 488.

jury for consideration and resolution would clearly increase the litigation costs and risks. Apple has further argued that numerous other significant risks could reduce or overturn any recovery awarded to Plaintiffs' after trial. Such risks are inherent in the multiple appeals that would follow an affirmance of the Liability Finding.

6.     **The risks of maintaining the class action through trial.**

A risk of establishing and maintaining class certification through trial and appeal exists for any settlement. Apple has made clear that it will argue that a remand on rule of reason could upend the Court's class certification decisions. In addition, Apple has argued that a heightened level of scrutiny applies to any class certification motion.[35] Numerous courts recently rejected many of Apple's arguments about certified classes with far more complex pricing dynamics than are present here. *See, e.g., In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168, 179 (D. Mass. 2013); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 U.S. Dist. LEXIS 137946, at *93 (N.D. Cal. Sept. 19, 2013); *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1228-29 (N.D. Cal. 2013). The Class is confident that a class action is the correct and proper vehicle through which to litigate their claims, but a risk always exists that a court might disagree.

7.     **The ability of the defendants to withstand a greater judgment.**

Plaintiffs acknowledge that Apple could withstand a higher judgment. But, "[while] evidence that the defendant will not be able to pay a larger award at trial tends to weigh in favor of approval of a settlement, . . . the converse is not necessarily true; i.e., the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D.

---

[35]   Apple's Opposition at 6 (arguing that a "fundamental paradigm shift" has occurred "in the standards applied to the analysis of class certification in antitrust litigation").

104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). This factor weighs neither in favor of nor against the Settlement.

> 8.    **The range of reasonableness of the settlement amount in light of the best possible recovery and in light of all attendant risks of litigation.**

The last two *Grinnell* factors are often considered together:

> Fundamental to analyzing a settlement's fairness is 'the need to compare the terms of the compromise with the likely rewards of litigation.' This determination 'is not susceptible of a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within 'a range of reasonableness.' The adequacy of the amount offered in settlement must be judged 'not in comparison with the best possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of the plaintiffs' case.'

*In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. at 129-30 (internal citations omitted).

Plaintiffs' expert estimated that the maximum amount of damages caused by the entire conspiracy is approximately $280 million.[36] Therefore, the maximum possible treble damages recovery from Apple, in the best of all possible worlds, would be $674 million.[37] Given the contingent nature of the Settlement, it is necessary for the Court to conduct three separate analyses to determine if the Settlement reflects a "range of reasonableness" for each of the three alternative outcomes in comparison to this "best of all possible worlds" recovery amount, taking into account all relevant litigation risks.

The first contingency provides that if the Settlement is approved and if the Court's Liability Finding is ultimately affirmed, Apple will pay $400 million for consumer compensation. Plaintiffs strongly believe this is the most likely contingency outcome. If this happens, Apple, alone, will pay 140% of single consumer damages. Under this scenario, total

---

[36]    *See* Noll Reply Decl. at 87 in which Plaintiffs' expert estimates consumers' damages to be $280,254,374.
[37]    This amount is calculated by trebling the maximum single damages and then subtracting the amount already paid by the other defendants: ($280M x 3) - $166M=$674M.

compensation to be paid to Eligible Consumers will be $566 million: $400 million from Apple and $166 million already recovered from the publishers in earlier settlements.[38] This outcome would represent a consumer recovery of more than 200% of the maximum estimated single damages, making this one of the exceedingly rare cases that provides consumers nationwide with double the amount of their estimated single damages. *See, e.g., In re Remeron Direct Purchaser Antitrust Litig.*, No. 03-0085, 2005 U.S. Dist. LEXIS 27013, at *25-26 (D.N.J. Nov. 9, 2005).[39]

The fact that liability has already been established in this case is an important consideration in the "reasonableness" analysis for this contingency. But, having overcome this initial obstacle, Plaintiffs would still face the uncertainties of a jury verdict for damages and the appeal therefrom. An approximate 33% discount from the absolute "best possible world" of a maximum treble recovery is eminently fair and reasonable for this contingency payment in light of these continuing risks.

The second contingent payment alternative would be triggered if the Liability Finding is reversed and remanded or vacated and remanded with instructions, for retrial or for reconsideration. In that event, Apple will pay $50 million to consumers. When combined with monies already received from Prior Settlements, this would allow consumers to recover slightly more than 77% of single damages.[40] This lower payment amount properly reflects the increased litigation risks that would arise as a consequence of a negative ruling from the Second Circuit or the Supreme Court. Without the Settlement, such a ruling would require the parties to re-litigate the issue of liability. This would significantly increase costs, would put Plaintiffs in a vastly

---

[38] This amount does not include payment of attorneys' fees and costs and payment to the States, all of which are being paid in addition to the consumer compensation and all of which represent additional benefit Plaintiffs have secured on consumers' behalf.

[39] If Apple makes payment of $400 million, Eligible Consumers will receive 67% of the maximum treble damages that could possibly be recovered from all defendants in this case.

[40] This scenario would provide consumers with 26% of a maximum treble recovery.

more difficult litigation posture, and could significantly alter both the nature of the evidence to be considered and the legal standard to be applied thereto. These substantial litigation risks, as well as increased risks of a jury determination of maximum damages, render this contingent consumer payment also well within the range for possible approval.

Finally, if the Liability Finding is reversed and the case dismissed, consumers will receive nothing from this Settlement. Although this seems a harsh outcome, it is exactly what consumers would receive absent a settlement if Apple prevails on appeal. If the Liability Finding is ultimately reversed, it will make no difference what amount of damages was determined by a jury or awarded by the Court: a finding of no liability would render any damages number moot.

In light of all possible litigation risks and possible outcomes, application of the *Grinnell* factors supports the conclusion that each of the alternative settlement amounts is reasonable and appropriate, and that the Settlement is fair, reasonable and adequate.

## VI.   THE CONSUMER DISTRIBUTION PLAN MEETS THE STANDARDS FOR FINAL APPROVAL

The fair, adequate, and reasonable standard also applies to the distribution of funds to consumers. *Maley*, 186 F. Supp. 2d at 367. *See also In re PaineWebber*, 171 F.R.D. at 132; *White v. National Football League*, 822 F. Supp. 1389, 1417 (D. Minn. 1993). Upon the Court's final approval and after payment, if any, by Apple for consumer compensation pursuant to the Settlement Agreement, implementation of the Consumer Distribution Plan will compensate the large majority of injured consumers by receipt of a credit or check. The proposed Consumer Distribution Plan, attached hereto as Exhibit J, closely tracks the provisions of the Distribution Plan approved in the Prior Settlements.

## A.    An Efficient and Reasonable Distribution Plan

Eligible Consumers and their eligible purchases were identified either by the retailer through whom the consumer bought an E-book, or by the consumer timely filing a claim form. Depending on the retailer through which the Eligible Consumer bought the E-book, the consumer will either receive an account credit or a check for the amount as calculated according to the provisions of the Distribution Plan. Eligible Consumers who purchased through Amazon, Barnes & Noble, Apple, or Kobo will receive a credit in their current E-book account or a credit activation code to their email address (unless they timely requested a check)[41] which they can use for the purchase of goods or services from their E-book retailer.   These Consumers will receive their credits or requested checks without having to file any claim or take any action other than activating or using their credits or cashing their checks. The Claims Administrator will provide to each retailer participating in the distribution of credits a list of customers who have elected either to opt-out or receive a check. After final approval, crediting retailers will credit customers' accounts and inform those customers that their credits are available for use. After a retailer has properly invoiced the credits used or activated by its customers, the Claim Administrator will reimburse that retailer from the escrow funds. These retailers will also send an email reminder after nine months to customers who have not used their credits. Unclaimed credits shall expire one year after they were made available.

Although Sony cannot provide account credits, Sony provided the Claims Administrator with a comprehensive list of names of Eligible Consumers. Because of this, almost all eligible Sony customers were sent direct notice of the Settlement, and will receive a check without having to file a claim form. Eligible Consumers who bought from any other retailer (estimated to

---

[41]   An important provision of the Distribution Plan is that all Eligible Consumers have the choice to request a check, even if they qualify for a direct credit.

be less than 2 percent of all Eligible Consumers) must timely file a claim form and, once verified as Eligible Consumers, will receive a check.

## B.    Adequate and Reasonable Consumer Compensation Amounts

As was the case with the amounts distributed under the Prior Settlements, the proposed Distribution Plan provides for different per-book reimbursement amounts for *New York Times* Bestsellers and non-*New York Times* Bestsellers. This pricing differential is appropriate because Plaintiffs States' consulting expert, Dr. Wickelgren, concluded that the conspiracy caused the prices of New York Times Bestsellers to increase more than the prices of non-*New York Times* Bestsellers.[42] Such an allocation which reimburses consumers based on the type and extent of injury is reasonable. *See In re Ikon Office Solutions Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 348 (S.D.N.Y. 2005).

Dr. Wickelgren originally calculated the specific amounts paid per book for both categories in the Prior Settlements.[43] However, due to the fact that the ultimate recovery is contingent under the present Settlement, and given that there may be funds remaining from the payments made under the Prior Settlements to be distributed, a specific per-book distribution amount cannot now be determined. These amounts ultimately will be based on the total funds to be apportioned, if any, and the number of eligible books in each category as identified by the retailers. Regardless of the amount distributed, however, the ratio between the amounts for the two book categories will match the 4.34 ratio established by the payments made in the Prior Settlements. ($3.17 NYT Bestseller/$0.73 non-bestseller= 4.34).

---

[42]   Declarations of Dr. Abraham Wickelgren ("Wickelgren Decl."), *Texas v. Hachette*, ECF. No. 11-5, and *Texas v. Penguin*, ECF. No. 235-3.
[43]   Wickelgren Decl., *Texas v. Hachette*, ECF. No. 11-5, ¶¶ 23-28, and Appendix C thereto.

## VII.   THE PROPOSED CLASS MEETS ALL THE REQUIREMENTS OF RULE 23

This Court has extensively addressed whether the proposed Settlement Class meets the requirements of Rule 23. Not only has the Court issued a detailed opinion certifying the class proposed here,[44] the Court has also certified the same class for purposes of settlement with the Publisher Defendants.[45] As more fully set forth in Plaintiffs' motion for preliminary approval, and for the reasons outlined in Class Plaintiffs' motion for class certification, Class Plaintiffs respectfully request that the Court certify the Settlement Class.[46] Apple does not dispute, for the purposes of settlement, that the Settlement Class satisfies the requirements of Rule 23 applicable to a settled case.[47]

## VIII.   PAYMENTS TO PLAINTIFF STATES ARE REASONABLE

As with the consumer payments, the Settlement provides for three alternative payments to Plaintiff States: (1) if the Liability Finding is ultimately affirmed, Apple will pay Plaintiff States $20 million; (2) if the Liability Finding is remanded (as defined in the Settlement Agreement), Plaintiff States will receive $10 million; and (3) if the Liability Finding is ultimately reversed, Plaintiff States will receive no payment from Apple.

Any payment to Plaintiff States will be in addition to any payment made to consumers, and will not affect consumer recovery in any way. By agreement, these funds are to be used by Plaintiff States for several identified purposes, including reimbursement for payment of experts

---

[44]   Opinion & Order, Mar. 28, 2014, *E-books MDL*, ECF No. 585.

[45]   Final Judgment at 4 (in MacMillan and Penguin litigation), Dec. 9, 2013, *E-books MDL*, ECF No. 478; Final Judgment and Final Approval of Minnesota and HarperCollins, Hachette and Simon & Schuster Settlement with Minnesota Class at 3-4, Dec. 9, 2013, *E-books MDL*, ECF No. 475.

[46]   *See* Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Settlement with Apple Inc. at 16, July 16, 2014, *E-books MDL*, ECF No. 642; Memorandum of Law in Support of Class Plaintiffs' Motion for Class Certification and Appointment of Class Counsel, Oct. 11, 2013, *E-books MDL*, ECF No. 423.

[47]   Settlement Agreement by and Among Apple Inc., Plaintiff States and Class Plaintiffs at 3, July 16, 2014, *E-books MDL*, ECF No. 642-1.

and consultants, attorneys' fees incurred in investigating and litigating this matter and in obtaining approval of the Settlement, and continuing costs of litigation and appeal.[48]

Plaintiff States are entitled to compensation based on their previous and anticipated work related to this case as well as the positive results they have obtained in this matter, both for their consumers and as antitrust enforcement agencies. Certain states actively engaged in the investigation of this matter for more than two years, participated in settlement discussions for months, and prepared the documents necessary for court approval of this Settlement, as well as the Prior Settlements. If Apple makes payments under the Settlement, State Liaison Counsel will continue working on the case for more than a year after such payments are made. Liaison Counsel, in coordination with Class Counsel and the Claims Administrator, will be responsible for overseeing distributions to millions of consumers, with necessary follow-up for accountings, confirmations, and problem-solving. They will also be responsible for ensuring all monies are fully distributed, which may require future court filings and additional consumer disbursement and/or *cy pres* distribution. State Liaison Counsel, in coordination with Apple's counsel, also will oversee payments for all administrative costs related to the implementation of the Distribution Plan.

Less tangible, but equally important to securing consumer recovery, is Plaintiff States' active and aggressive enforcement of the antitrust laws in this matter. The compensation provided by the Settlement will provide Plaintiff States additional resources with which to further strengthen antitrust enforcement.

The potential payment to Plaintiff States is reasonable, under either of the contingencies at issue, not only in light of Plaintiff States' work and positive results achieved, but also relative

---

[48]   *See* Section V.B of the Settlement Agreements for the complete list of delineated purposes for which the State Compensation monies may be used.

to fee and cost awards in similar class action and *parens patriae* cases. Courts generally review an attorney fee request, at least in part, in terms of the percentage it represents of the total recovery. "Traditionally, Courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions." *In re Warner Commc'n Secs. Litig.*, 618 F. Supp. 735, 749.(S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986). More recently most such approved awards have been in the 20%-35% range. *See e.g., Hicks v Morgan Stanley*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *23-26 (S.D.N.Y. Oct. 19, 2005).

If Apple is required to pay Plaintiff States $20 million, pursuant to the first contingency, the percentage of Plaintiff States' payment relative to the total Apple recovery of $450 million is slightly less than 4.5%. Even when combined with the entire amount of payments received in Prior Settlements, Plaintiff States would receive slightly less than 15% of all payments made in all case-related settlements. Alternatively, if Apple is required to pay Plaintiff States $10 million pursuant to the second contingency, Plaintiff States would receive just over 14% of the total Apple recovery of $70 million and would receive almost 10.5% of all settlement payments. Either contingent payment to Plaintiff States would be well within the range of approved fee awards.

When evaluating any payment to Plaintiff States it is important to remember that 1) any such payment is in addition to the amount separately negotiated on behalf of consumers and will not reduce the compensation for consumers; and 2) as noted above, the payment to Plaintiff States reimburses not only attorney fees and costs but also includes payment for the release of enforcement penalty claims brought by the States, which could exceed $8 million if litigated to judgment. These facts enhance the reasonableness of the proposed payments to Plaintiff States.

## IX.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court:

1.      Find that Plaintiffs' notice of the Settlement was fair, adequate, and reasonable and in compliance with due process, Rule 23 and the Court's prior orders;

2.      Grant final approval of the Settlement Agreement and Distribution Plan;

3.      Certify the proposed Class for the purpose of the Settlement;

4.      Authorize disbursement of the payments to Plaintiff States, as provided in Paragraph IV.B of the Settlement Agreement; and

5.      Authorize Plaintiffs' Counsel to make disbursements to Eligible Consumers, pursuant to the Distribution Plan, of any consumer funds paid by Apple as provided in Paragraphs III.A or B of the Settlement Agreement.

A Proposed Final Judgment for the Court's consideration is attached hereto as Exhibit K.

DATED: November 14, 2014                    Respectfully submitted,

**STATE OF TEXAS**
GREG ABBOTT, ATTORNEY GENERAL

DANIEL HODGE
First Assistant Attorney General
JOHN B. SCOTT
Deputy Attorney General for Civil Litigation
JOHN T. PRUD'HOMME
Chief, Consumer Protection Division
KIM VAN WINKLE
Section Chief, Antitrust Section

By _____
    REBECCA FISHER (*Pro Hac Vice*)
Senior Assistant Attorney General
P.O. Box 12548
Austin, Texas 78711-2548
Phone (512) 463-1265
Rebecca.Fisher@texasattorneygeneral.gov

*Attorneys For The State of Texas*
*Liaison Counsel For Plaintiff States*

**STATE OF CONNECTICUT**
GEORGE JEPSEN, ATTORNEY GENERAL

MICHAEL E. COLE
Chief, Antitrust Department
W. Joseph Nielsen

By _____
        GARY M. BECKER (GB 8259)

Assistant Attorney General
55 Elm Street
Hartford, CT 06106
PH: (860) 808-5040
Gary.Becker@ct.gov

*Attorneys For The State of Connecticut*
*Liaison Counsel For Plaintiff States*


**STATE OF OHIO**
R. MICHAEL DEWINE,
ATTORNEY GENERAL

By _____
        EDWARD OLSZEWSKI (*Pro Hac Vice*)

Assistant Attorney General, Antitrust Section
Office of the Ohio Attorney General
150 E. Gay St. – 23rd Floor
Columbus, OH 43215
Tel: (614) 466-4328
edward.olszewski@ohioattorneygeneral.gov

*Attorneys For The State of Ohio*
*Liaison Counsel For Plaintiff States*

**STATE OF CONNECTICUT**
GEORGE JEPSEN, ATTORNEY GENERAL

MICHAEL E. COLE
Chief, Antitrust Department
W. Joseph Nielsen

By _____
    GARY M. BECKER (GB 8259)

Assistant Attorney General
55 Elm Street
Hartford, CT 06106
PH: (860) 808-5040
Gary.Becker@ct.gov

*Attorneys For The State of Connecticut*
*Liaison Counsel For Plaintiff States*

**STATE OF OHIO**
R. MICHAEL DEWINE,
ATTORNEY GENERAL

By _____
    EDWARD OLSZEWSKI (*Pro Hac Vice*)

Assistant Attorney General, Antitrust Section
Office of the Ohio Attorney General
150 E. Gay St. – 23rd Floor
Columbus, OH 43215
Tel: (614) 466-4328
edward.olszewski@ohioattorneygeneral.gov

*Attorneys For The State of Ohio*
*Liaison Counsel For Plaintiff States*

HAGENS BERMAN SOBOL SHAPIRO LLP
JEFF D. FRIEDMAN
SHANA E. SCARLETT

By

STEVE W. BERMAN (*Pro Hac Vice*)

715 Hearst Ave., Suite 202
Berkeley, CA 94710
Tel: (510) 725-3000
steve@hbsslaw.com
jefff@hbsslaw.com
shanas@hbsslaw.com

Kit A. Pierson (*Pro Hac Vice*)
Jeffrey Dubner (4974341)
COHEN, MILSTEIN, SELLERS & TOLL, PLLC
1100 New York Avenue, N.W.
South Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
KPierson@cohenmilstein.com
jdubner@cohenmilstein.com

*Attorneys For Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2014, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

REBECCA FISHER

## EXHIBITS

| | |
|---|---|
| Exhibit A | Apple Settlement Agreement |
| Exhibit B | Declaration of Katherine Kinsella for Kinsella Media, LLC. |
| Exhibit C | Declaration of Kim Schmidt for Rust Consulting |
| Exhibit D | Declaration of Charles S. Wright for Amazon.com |
| Exhibit E | Declaration of Bradley A. Feuer for Barnes & Noble, Inc. |
| Exhibit F | Declaration of Daniel Quinn for Apple Inc. |
| Exhibit G | Declaration of Kyosuke Murota for Rakuten Kobo Inc. (formerly Kobo Inc.) |
| Exhibit H | Declaration of Candice Fink for Sony Electronics, Inc. |
| Exhibit I | Declaration of Stella Loh for Google, Inc. |
| Exhibit J | Consumer Distribution Plan |
| Exhibit K | Proposed Final Judgment |