*In re ELECTRONIC BOOKS ANTITRUST LITIGATION, Case No. 11-md-02293*
**and**
*Texas, et al. v. Penguin Group, et al, Case No. 12-cv-03394*

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF APPLE SETTLEMENT AND DISTRIBUTION PLAN**

# ATTACHMENT A

# APPLE SETTLEMENT AGREEMENT

## SETTLEMENT AGREEMENT BY AND AMONG APPLE INC., PLAINTIFF STATES AND CLASS PLAINTIFFS

This Settlement Agreement is made and entered into on July 10, 2014, by and among Plaintiff States, by and through their respective Attorneys General ("Plaintiff States"), Class Plaintiffs, on behalf of themselves and in their respective capacities as representatives of the Settlement Class, and Apple Inc. ("Apple"), by and through its undersigned counsel, (collectively "Parties").

WHEREAS, a subset of Plaintiff States filed a complaint against Apple and others in the United States District Court for the Western District of Texas on April 11, 2012, which action was transferred to the United States District Court for the Southern District of New York ("the District Court") on April 30, 2012 as *Texas, et al. v. Penguin Group (USA) Inc., et al.*, No. 12-cv-03394 (DLC) ("Plaintiff States Action"); and the complaint was twice amended, with the current complaint ("Second Amended Complaint") being filed on May 21, 2012 by all Plaintiff States in their sovereign capacity and as *parens patriae*, on behalf of natural persons in a Plaintiff State at the time of eligible E-book purchase(s);

WHEREAS, the United States Department of Justice ("DOJ") filed a complaint against Apple and others in the District Court on April 11, 2012 as *United States v. Apple Inc., et al.*, No. 12-cv-2826 (the "DOJ Action");

WHEREAS, Class Plaintiffs filed a First Amended Consolidated Class Action Complaint on behalf of themselves and as representatives of Eligible Consumers in non-Plaintiff State jurisdictions against Apple and others on October 11, 2013 in the District Court as *In re Electronic Books Antitrust Litigation*, No. 11-md-02293 (DLC) ("Class Action");

WHEREAS, both Plaintiff States and Class Plaintiffs have alleged an unlawful agreement to fix, maintain or stabilize prices of E-books in violation of federal and state antitrust laws, and sought, among other relief, damages, injunctive relief, and costs of investigation and litigation and Plaintiff States have additionally sought civil penalties;

WHEREAS, a bench trial was held before the District Court on claims for injunctive relief in the Plaintiff States Action and all claims in the DOJ Action from June 3 until June 20, 2013;

WHEREAS, the District Court issued an Opinion and Order on July 10, 2013 on DOJ's and Plaintiff States' claims for injunctive relief, finding that "Apple conspired to restrain trade in violation of Section 1 of the Sherman Act and relevant state statutes to the extent those laws are congruent with Section 1";

WHEREAS, Apple appealed the District Court's Opinion and Order of July 10, 2013 in the DOJ and Plaintiff States Actions to the United States Court of Appeals for the Second Circuit ("Second Circuit"). These appeals have been consolidated in *United States v. Apple Inc.*, et al., No.13-3741 (collectively the "Liability Appeal");

WHEREAS, Apple also appealed the appointment of an External Compliance Monitor and that appeal is pending in the Second Circuit as *State of Texas, et al. v. Apple Inc.*, No. 14-61 ("Monitor Appeal");

WHEREAS, the District Court granted Class Plaintiffs' Motion for Class Certification on March 28, 2014, certifying a class consisting of Eligible Consumers in non-Plaintiff State jurisdictions who purchased E-books between April 1, 2010 and May 21, 2012, published by Named Publishers ("Class Certification Order");

WHEREAS, Apple has agreed to class action treatment of claims by the Settlement Class solely for the purpose of effecting the compromise and settlement of those claims on a class basis as set forth herein and does not consent to certification of Settlement Class for any purpose other than to effectuate the settlement of the Class Action;

WHEREAS, a jury trial was scheduled with the District Court to begin on August 25, 2014 to resolve all claims against Apple in the Class Action and the outstanding claims against Apple for monetary relief in the Plaintiff States Action;

WHEREAS, Apple has denied and continues to deny: (1) each and all of the claims and allegations of wrongdoing made in the Class Action and the Plaintiff States Action, and maintains furthermore that it has meritorious defenses, (2) all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Class Action and Plaintiff States Action, and (3) the allegations that consumers were harmed by any conduct by Apple alleged in the Class and Plaintiff States Actions or otherwise;

WHEREAS, this Settlement Agreement does not constitute any admission by Apple of any violation of law or of any issue of fact or law, other than that the jurisdictional facts as alleged in the complaints in the Class and Plaintiff States Actions (collectively "Complaints") are true; and

WHEREAS, Plaintiff States, Class Plaintiffs and Apple have determined it to be in their best interests to resolve this dispute and enter into this Settlement Agreement;

NOW, THEREFORE, **IT IS HEREBY STIPULATED AND AGREED:**

3

## I.    DEFINITIONS

As used herein:

A.      "Apple" means Apple Inc., a California corporation with its principal place of business in Cupertino, California, its successors and assigns, and its subsidiaries, and divisions.

B.      "Claims" means all claims, counterclaims, set-offs, demands, actions, rights, liabilities, costs, debts, expenses, attorneys' fees, and causes of action of any type, whether or not accrued in whole or in part, including, without limitation, past, present, and future claims arising under federal or state antitrust, unfair competition or consumer protections laws, or state common or equitable law, and that were asserted or that could have been asserted, known or unknown, against Apple, and/or its officers, directors, employees and attorneys, arising from any of the facts, matters, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act set forth or alleged in Plaintiffs' Complaints.  Notwithstanding the foregoing, "Claims" does not include Plaintiff States' claims for injunctive relief against Apple currently under appeal in the Liability Appeal.

C.      "Claims Administrator" means Rust Consulting, Inc.

D.      "Class Plaintiffs" means Anthony Petru, Thomas Friedman, and Shane S. Davis.

E.      "Counsel for Settlement Class" means Hagens Berman Sobol Shapiro LLP and Cohen Milstein Sellers & Toll PLLC.

F.      "Distribution Plan" means the plan or method of allocation of the Apple Consumer Compensation Account among Eligible Consumers who have not filed valid and timely requests for exclusion from this Settlement Agreement with the District Court.  The Distribution Plan will be submitted to the District Court separately from the Settlement Agreement and is not part of this Settlement Agreement.

G.      "Effective Date" means the date when all of the following conditions have been satisfied, unless one or more of such conditions is modified in a writing signed by the Parties: (1) this Settlement Agreement has been executed; (2) the District Court has entered a Preliminary Approval Order; (3) the Notice Plan has been approved and effectuated; (4) the period within which Eligible Consumers must exercise their rights to be excluded from *parens patriae* or class representation has expired; (5) the Final Liability Decision has been rendered; (6) the District Court has given final approval of the settlement embodied herein; (7) the Final Approval Order has been entered by the District Court; and (8) the Final Approval Order is Final.

H.      "Eligible Consumers" mean natural persons who have purchased E-books published by Named Publishers during the period from April 1, 2010 until May 21, 2012;

I.      "Escrow Agent" means Fifth Third Bank. Plaintiffs may appoint a different Escrow Agent subject to any pending contracts and upon reasonable notice to Apple.

J.      "E-book" means an electronically formatted book designed to be read on a computer, a handheld device, or other electronic devices capable of visually displaying E-books. For purposes of this Settlement Agreement, the term E-book does not include (1) an audio book, even if delivered and stored digitally; (2) a standalone specialized software application or "app" sold through an "app store" rather than through an E-book store (*e.g.*, through Apple Inc.'s "App Store" rather than through its "iBookstore" or "iTunes") and not designed to be executed or read by or through a dedicated E-book reading device; (3) a media file containing an electronically formatted book for which most of the value to consumers is derived from audio or video content contained in the file that is not included in the print version of the book; or (4) the electronically formatted version of a book marketed solely for use in connection with academic coursework.

K.    "Final" as to the Final Approval Order means: (1) the District Court has entered a Final Approval Order and (2) the time for appeal or to seek permission to appeal from the District Court's Final Approval Order has expired or, if appealed, the Final Approval Order has been affirmed in its entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.

L.    "Final Approval Order" means the order to be entered by the District Court in the Class Action and the Plaintiff States Action which gives final approval of this Settlement Agreement.  It is intended by the Parties that the Final Approval Order will include the following provisions: (1) an affirmance by the District Court that the Notice Plan was completed; (2) a determination by the District Court that the Settlement Agreement is approved finally as fair, reasonable and adequate pursuant to the requirements of Rule 23 of the Federal Rules of Civil Procedure, 15 U.S.C. § 15c, and due process; and, if Apple is to make payments pursuant to Paragraphs III.A or III.B, below, (3) a directive that the monies in the Apple Consumer Compensation Account are to be disbursed pursuant to a Court-approved Distribution Plan; (4) a directive that monies in the States' Compensation Account are to be paid to Liaison Counsel for disbursement to Plaintiff States for use pursuant to Paragraph V.B, below; and (5) that an award of attorneys' fees and expenses should be made to Counsel for Settlement Class pursuant to Paragraphs III.A.3 or III.B.3, below.

M.    "Final Liability Decision" means a final decision by the Second Circuit on the merits of the Liability Finding and, if a petition for writ of certiorari is filed by any Party on the merits of the Liability Finding, (a) a final decision by the Supreme Court of the United States denying the certiorari petition or (b) if the Supreme Court grants the certiorari petition, a final decision by the United States Supreme Court on the merits of the Liability Finding.  If the

time for filing a certiorari petition passes and no party has filed a petition and the Second

Circuit's mandate has issued, then the Second Circuit's final decision on the merits on the

Liability Finding shall be deemed the "Final Liability Decision."

N.      "Including" means including, but not limited to.

O.      "Liability Appeal" means the appeal by Apple that is pending in the Second

Circuit consolidated under *United States, et al. v Apple Inc.*, No. 13-3741 (L).

P.      "Liability Finding" means the holding of the Opinion and Order issued by the

District Court on July 10, 2013 that Apple violated Section 1 of the Sherman Act (15 U.S.C. §1).

Q.      "Liaison Counsel for Plaintiff States" mean the designated representatives for the

Attorneys General of the States of Texas, Connecticut, and Ohio.

R.      "Named Publishers" means Hachette Book Group, Inc. and Hachette Livre SA,

("Hachette"), HarperCollins Publishers LLC ("HarperCollins"), Simon & Schuster, Inc. and

Simon & Schuster Digital Sales, Inc. ("Simon & Schuster"), Holtzbrinck Publishers, LLC, d/b/a

Macmillan ("Macmillan"), and Penguin Group (USA), Inc. ("Penguin").

S.      "Notice Period" means the period during which notice shall be disseminated to

Eligible Consumers.  The Notice Period shall be forty-five (45) days or such other time period

set by the District Court.

T.      "Notice Plan" means the plan specifying the manner and content of the program

whereby Eligible Consumers are notified of this Settlement Agreement and informed of their

rights to object to or exclude themselves from the settlement.  The Notice Plan shall specify the

manner in which Eligible Consumers are to be notified of this settlement, and shall consist, at a

minimum, of direct notice to each Eligible Consumer whose e-mail address can be voluntarily

obtained by Plaintiffs from E-book retailers.

U.      "Plaintiffs" means collectively Plaintiff States and Class Plaintiffs.

V.      "Plaintiff States" means the following States, Commonwealths and Territories of the United States, by and through their Attorneys General, in their sovereign capacity and as *parens patriae* on behalf of Eligible Consumers in such Plaintiff States: Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maryland, Massachusetts, Michigan, Missouri, Nebraska, New Mexico, New York, North Dakota, Ohio, Pennsylvania, Puerto Rico, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

W.      "Preliminary Approval Order" means an order to be entered by the District Court which the parties intend will include the following provisions: (1) preliminary approval of this Settlement Agreement as fair, reasonable and adequate and in the best interests of Eligible Consumers; (2) conditional certification of the Settlement Class for settlement purposes; and (3) a schedule for the dissemination of consumer notice or approval for deferral thereof.

X.      "Prior Settlements" means (1) the Settlement Agreements between Attorneys Generals of 55 jurisdictions and Hachette, Simon & Schuster, and HarperCollins which were approved by the District Court on February 8, 2013 in the related case, *Texas, et al. v. Hachette Book Group, Inc. et al,* No.12 cv 6625; (2) the Settlement Agreements between Attorneys General for 33 jurisdictions, Settlement Class and Macmillan and Penguin which were approved by the District Court on December 9, 2013, in both the Plaintiff States Action and the Class Action; and (3) the Settlement Agreement between Settlement Class for Minnesota residents and Hachette, Simon & Schuster, and HarperCollins which was also approved by the District Court on December 9, 2013, in the Class Action.

Y.      "Purchase" means an Eligible Consumer's acquisition of one or more E-books as a result of a Sale.

Z.      "Released Claims" means all Claims as described in Section IX.

AA.     "Sale" means delivery of access to an Eligible Consumer of one or more E-books (purchased alone, or in combination with other goods or services) in exchange for payment.

BB.     "Settlement Accounts" mean the Apple Consumer Compensation Account and the States' Compensation Account as described in Section IV.  The Settlement Accounts shall be administered by Fifth Third Bank, as Escrow Agent, pursuant to Paragraph VII.A, below.

CC.     "Settlement Administration Account" means that account described in Sections VI. and VII., below.

DD.     "Settlement Administration Costs" means costs to be paid from the Settlement Administration Account for all actual, customary and reasonable costs and fees incurred in the administration of this Settlement Agreement, which includes costs and fees incurred for the purpose of (1) compiling necessary Eligible Consumer information and providing direct notice as well as such notice by publication or paid media as may be needed to effectuate adequate notice, (2) completing administrative tasks, (3) processing and paying claims, including distributing credits and/or checks to Eligible Consumers, and (4) securing court approval of the Settlement Agreement, such as expert affidavits.  Such Settlement Administration Costs expressly include those fees or costs payable to the Escrow Agent and Claims Administrator appointed by Plaintiffs pursuant to Section VII, below. Settlement Administration Costs will not include any fees or costs payable to any Plaintiffs' attorneys.

EE.     "Settlement Class" means the class of Eligible Consumers certified by the District Court in the Class Certification Order (*see* Case No. 11-md-2293, Dkt. 585 at 19).

FF.    "Written Direction" means a written notification directed to the Escrow Agent and/or Claims Administrator directing disbursements from the Settlement Accounts or the Settlement Administration Account and signed by at least two Liaison Counsel for Plaintiff States and counsel for Apple. Liaison Counsel for Plaintiff States will forward a copy of any Written Direction to Counsel for the Settlement Class contemporaneously with such notification being sent to the Escrow Agent and/or Claims Administrator.

## II.    STIPULATIONS

A.    Counsel for the Parties stipulate and agree that a bona fide justiciable dispute remains as to the findings and conclusions on liability and injunctive relief in the District Court's July 10, 2013 Opinion and Order. Except as expressly set forth herein, Apple and Plaintiff States retain all procedural and substantive rights to continue litigating the Liability Appeal in the Second Circuit and/or the United States Supreme Court.

B.    Counsel for the Parties stipulate and agree that the litigation and/or resolution of the Monitor Appeal will have no bearing on the Parties' obligations pursuant to this Settlement Agreement.

C.    Counsel for the Parties stipulate and agree that the negotiations leading to this Settlement Agreement were conducted in good faith and at arm's length by experienced attorneys who were well-informed concerning the pending issues of the litigation.

D.    Counsel for the Parties stipulate and agree that, after both the Effective Date has occurred and Apple has paid the monies required pursuant to this Settlement Agreement, the litigation initiated by the Complaints and the Released Claims shall be finally and fully compromised, settled and released, upon and subject to the terms and conditions of this Settlement Agreement.

10

### III.    SETTLEMENT PAYMENTS

A.      In the event the Final Liability Decision affirms the Liability Finding, Apple agrees to pay and shall pay the following amounts:

          1.      The total sum of $400 million for Eligible Consumer compensation;

          2.      The total sum of $20 million to Plaintiff States for their attorneys' fees, costs related to the investigation, litigation and appeal of the present matter, and for release of state enforcement claims; and

          3.      The total sum of $30 million to Counsel for the Settlement Class for their attorneys' fees, and costs related to the investigation, litigation and appeal of the present matter. ("Fee and Expense Award").  Counsel for the Settlement Class agree not to seek a Fee and Expense Award in excess of this amount.

B.      In the event the Final Liability Decision vacates and remands, or reverses and remands with instructions, for reconsideration, or for retrial of the Liability Finding, Apple agrees to pay and shall pay the following amounts:

          1.      The total sum of $50 million for Eligible Consumer compensation;

          2.      The total sum of $10 million to Plaintiff States for their attorneys' fees, costs related to the investigation, litigation and appeal of the present matter, and for release of state enforcement claims; and

          3.      The total sum of $10 million to Counsel for the Settlement Class for their attorneys' fees, and costs related to the investigation, litigation and appeal of the present matter (the "Fee and Expense Award").  Counsel for the Settlement Class agree not to seek a Fee and Expense Award in excess of this amount.

C.      Paragraph III.B shall not apply in the event of a remand to the District Court on administrative or non-substantive grounds that do not, or could not, affect the Liability Finding.

D.      In the event the Final Liability Decision reverses the Liability Finding, Apple will pay nothing pursuant to this Settlement Agreement, except for Settlement Administration Costs as noted in Section VI, below, and Plaintiffs will move to dismiss their Claims with prejudice.

## IV.   SETTLEMENT ACCOUNTS

A.      Apple shall pay any Eligible Consumer compensation required under either Paragraph III.A.1 or B.1, above, to the Plaintiffs, c/o Fifth Third Bank, Escrow Agent, within thirty (30) days of the Effective Date of the Settlement Agreement.  The Escrow Agent shall establish the Apple Consumer Compensation Account from such monies.  These monies, plus any accrued interest, shall be used to fund the Eligible Consumer distribution as described in Paragraph V.A, below.  The Escrow Agent shall only distribute funds in the Apple Consumer Compensation Account pursuant to a court-approved Distribution Plan.

B.      Any payments made by Apple for Eligible Consumer compensation pursuant to III.A.1, above, do not constitute, nor shall they be treated as, payments in lieu of fines, penalties, punitive recoveries or forfeitures.  Any payments made by Apple for Eligible Consumer compensation pursuant to III.B.1, above, do not constitute, nor shall they be treated as, payments in lieu of treble damages, fines, penalties, punitive recoveries or forfeitures.

C.      Apple shall make any payment required under either Paragraph III.A.2 or B.2, above, to Plaintiff States, c/o Fifth Third Bank, Escrow Agent, within thirty (30) days of the Effective Date of the Settlement Agreement.  The Escrow Agent shall establish the States' Compensation Account from such monies.  These monies, plus any accrued interest, shall be

12

apportioned among Plaintiff States in a manner to be determined solely by Plaintiff States and will be used for the purposes set forth in Paragraph V.B, below.

D.      Apple shall pay Counsel for the Settlement Class any payment required under either Paragraph III.A.3 or B.3, above, and as awarded by the District Court, to an account designated by Counsel for the Settlement Class within thirty (30) days after the Effective Date of the Settlement Agreement.

## V.  SETTLEMENT DISBURSEMENTS

A.      <u>Distribution to Consumers</u>:  All funds in the Apple Consumer Compensation Account, if any, shall be distributed, according to a Court-approved Distribution Plan, for the benefit of Eligible Consumers who have not filed valid and timely requests for exclusion from this settlement with the District Court.  Parties agree that the funds in this Account on or after the Effective Date of the Settlement Agreement may be transferred to an escrow account which will combine all consumer monies from this settlement and any remaining consumer compensation funds from Prior Settlements for the purpose of consumer distribution.

1.      The Distribution Plan shall be submitted to the District Court for approval within thirty (30) days of the Final Liability Decision being issued or as the District Court orders otherwise.  Plaintiffs shall provide Apple a reasonable opportunity to review and comment on the proposed Distribution Plan before its submission to the District Court.  The Distribution Plans used in the Prior Settlements will be the template for the Apple Settlement Distribution Plan, but may be revised as needed to maximize direct consumer distribution or efficiency of distribution. The Distribution Plan will provide that, to the extent practicable, all credits provided to Eligible Consumers may be used for the purchase of any product or service sold by the crediting retailer.

2.     Any funds not initially distributed will be distributed pursuant to subsequent consumer distributions, if feasible or, if approved by the District Court, will be distributed *cy pres* to one or more charitable organizations whose purposes relate to reading, literacy or access by the public to electronic books.  Plaintiffs will propose specific *cy pres* recipients to the District Court prior to the time for objections or requests for exclusion from class members.

3.     Funds remaining due to uncashed checks or unused or inactivated credits will similarly be used for additional consumer distributions to the fullest extent possible. To the extent state law prohibits any portion of such distributions, Plaintiffs will submit proposed plans for alternative distributions for court approval.

4.     The Parties agree and understand that any proposed Distribution Plan is to be considered by the District Court separately from the District Court's consideration of the fairness, reasonableness and adequacy of the settlement set forth in the Settlement Agreement, and any order or proceedings relating to the Distribution Plan shall not operate to terminate or cancel the Settlement Agreement or affect the finality of the Final Approval Order, or any other orders entered pursuant to the Settlement Agreement.

B.     <u>Distribution of Compensation to Plaintiff States</u>:  The States' Compensation Account shall be apportioned among Plaintiff States at their sole discretion.  Such apportionments shall then be used collectively or individually by Plaintiff States' Attorneys General for one or more of the following purposes:

1.     Reimbursement for Plaintiff States' consultation or expert fees, including reimbursement of any grants paid to Plaintiff States in connection with the National Association

of Attorneys General Milk Fund Account ("Fund") for consultant and expert fees expended from the Fund;

2.    Reimbursement of attorneys' fees, and investigation, litigation and settlement administration cost expenses incurred by any Plaintiff State;

3.    Payment for any ongoing litigation and/or appeals involving the E-books market;

4.    Antitrust or consumer protection enforcement by the Attorney General of such State;

5.    Deposit into a state antitrust or consumer protection account, (e.g., revolving account, trust account), for use in accordance with the state laws governing that account;

6.    Deposit into a fund exclusively dedicated to assisting state Attorneys General to defray the cost of experts, economists, and consultants, and/or document management, in multistate antitrust investigations and litigations; or

7.    As otherwise required or provided by the applicable state law enacted as of the Effective Date of this Settlement Agreement.[1]

## VI.  SETTLEMENT ADMINISTRATION ACCOUNT

A.    Apple will also pay for Settlement Administration Costs in accordance with this Section and Section VII, below.  The Escrow Agent shall establish the Settlement Administration Account from the monies received from Apple under this Section.  These monies, plus any accrued interest, shall be used to pay the Settlement Administration Costs pursuant to the terms

---

[1] With respect to the State of Colorado, its apportionment shall be used first for reimbursement of Colorado's actual costs and attorneys' fees, and second, to be held along with any interest thereon, in trust by the Attorney General for future consumer education, consumer fraud, or antitrust enforcement efforts.

of this Settlement Agreement.  The Escrow Agent shall pay such Settlement Administration

Costs only as provided by an order of the District Court, or pursuant to Written Direction.

      B.    Payments for the Settlement Administration Account will be made as follows:

      1.    An initial deposit of $2 million shall be paid by Apple to the Plaintiffs c/o

Fifth Third Bank, Escrow Agent, within ten (10) business days after the execution of this

Settlement Agreement by counsel for Liaison States, Settlement Class and Apple.

      2.    Upon notice by counsel for the Plaintiffs that additional funds are

necessary to pay Settlement Administration Costs, Apple shall make a supplemental deposit of

such additional reasonable amount into the Settlement Cost Account within ten (10) business

days after such notice.

      3.    After counsel for the Liaison States and Settlement Class have confirmed

in writing that all incurred, committed or anticipated Settlement Administration Costs have been

paid or accounted for, the Escrow Agent shall refund to Apple all unused funds in the Settlement

Administration Account, if any, within twenty (20) business days after such confirmation.

      C.    If Apple wishes to challenge any Settlement Administration Costs as being

unreasonable or not customary, it shall first notify Counsel for Plaintiffs and, if such challenge is

not resolved within 10 (ten) business days of notice, Apple may file an application with the

District Court and any such challenged Settlement Administration Costs will not be due and

payable unless and until the District Court rules upon the application.

      D.    If Apple pays nothing, pursuant to Paragraph III.D, above, or if this Settlement

Agreement is not approved or fails to become effective, all monies paid by Apple into the

Settlement Accounts or the Settlement Administration Account, including any interest accrued

thereon, shall be refunded to Apple, reduced by the amount of costs and expenses incurred or

committed for Settlement Administration Costs as of the Effective Date of the Settlement Agreement, the date of disapproval, or the date of failure to become effective. In the case of disapproval by the District Court, refund shall occur within five (5) business days of the Final Approval Order becoming Final. In all other cases, refund shall occur within five (5) business days after the occurrence of the event triggering the right to a refund.

## VII.   SETTLEMENT ADMINISTRATION

A.   The Escrow Agent for the Settlement Accounts and the Settlement Administration Account shall be Fifth Third Bank.

1.   Other than maintaining an account to meet short-term obligations, the Escrow Agent shall invest the funds in the Settlement Accounts in obligations of, or obligations guaranteed by, the United States of America or any of its departments or agencies, to obtain the highest available return on investment, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then current market rates. The Escrow Agent shall bear all risks related to the investment of the escrow funds.

2.   The Escrow Agent shall not disburse the funds of the Settlement Accounts or the Settlement Administration Account except by an order of the District Court or pursuant to Written Direction.

3.   All funds held by the Escrow Agent shall be deemed to be *in custodia legis* of the District Court, and shall remain subject to the jurisdiction of the District Court, until the funds shall be distributed pursuant to the Settlement Agreement and/or further order(s) of the District Court.

B.   In addition to the Escrow Agent, Counsel for Plaintiffs have employed Rust Consulting, Inc., as the Claims Administrator, to facilitate the provision of notice and to

17

distribute and/or administer the distribution of the funds in the Apple Consumer Compensation Account in accordance with the terms of this Settlement Agreement. Upon approval of Plaintiffs' counsel (which approval shall not be unreasonably withheld), Apple may communicate directly with the Claims Administrator as necessary to facilitate the provision of notice to Apple Customers and to distribute and/or administer the distribution of the funds in the Apple Consumer Compensation Account to Apple Customers in accordance with the terms of this Settlement Agreement and an approved Distribution Plan.

C.   Tax Treatment of Settlement Accounts:

1.   Parties and Escrow Agent agree to treat the Settlement Accounts as being, at all times, a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1(a). In addition, the Escrow Agent and, as required, Parties shall jointly and timely make such reasonable elections that are requested by Apple or that are necessary or advisable to carry out the provisions of this Section, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)(2)(ii)), back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulation. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary Parties, and thereafter to cause the appropriate filing to occur.

2.   For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Accounts (including without limitation the returns described in Treas. Reg. § 1.468B-2(k) and (l)). Such returns (as well as the election

18

described in Paragraph C.1 above, shall be consistent with this Section VII.C, and in all events shall reflect that all taxes (including any estimated taxes, interest or penalties) on the income earned by the Settlement Accounts shall be paid out of the Settlement Accounts.

       3.    All taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Accounts, including any taxes that may be imposed upon Apple with respect to any income earned by the Settlement Accounts for any period during which the Settlement Accounts do not qualify as a "qualified settlement fund" for federal, state, or local income tax purposes ("Taxes") shall be paid out of the Settlement Accounts and in all events Apple and its insurers shall have no liability or responsibility for such Taxes or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority in respect of such Taxes.  Taxes shall be treated as, and considered to be, a cost of administration of the Settlement Agreement and shall be timely paid by the Escrow Agent out of the Settlement Accounts without prior order from the District Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Plaintiff States any funds necessary to pay such amounts including the establishment for adequate reserves for any Taxes (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)); Apple and its insurers are not responsible and shall have no liability therefor or for any reporting requirements that may relate thereto.  The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section VII.C.  For purposes of this Section, references to the Settlement Accounts shall include the Settlement Accounts and any earnings thereon.  In no event will any Taxes be treated as

Settlement Administration Costs, and no Taxes will be paid out of the Settlement Administration Account.

      D.    <u>Effect of Bankruptcy</u>:

          1.    Apple warrants that, as of the date of this Settlement Agreement, it is not insolvent, nor will its payment to the Settlement Accounts and/or the Settlement Administration Account render it insolvent within the meaning of and/or for the purposes of the United States Bankruptcy Code.

          2.    If a case is commenced with respect to Apple under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the payment of the principal amount of the Settlement Accounts and/or the Settlement Administration Account and any accrued interest, or any portion thereof, by or on behalf of Apple, to be a preference, voidable transfer, fraudulent transfer or similar transaction, and if pursuant to an order of a court of competent jurisdiction monies paid by Apple pursuant to this Settlement Agreement are either not delivered or are returned to Apple or the trustee, receiver, or conservator appointed by a court in any bankruptcy proceeding with respect to Apple, any releases given to Apple pursuant to this Settlement Agreement shall be null and void.

## VIII.  REQUESTS FOR APPROVAL, NOTICE AND SETTLEMENT HEARING

      A.    Unless otherwise agreed to by Plaintiffs and Apple and approved by the District Court, Plaintiffs shall file a Motion seeking a Preliminary Approval Order with the District Court by July 16, 2014.  At least seven (7) days prior to filing their Motion for entry of a Preliminary Approval Order, Plaintiffs shall provide a copy of such motion (including all exhibits and attachments to such motion) to Apple for review and comment.

B.      Plaintiffs shall disseminate Notice of the Settlement Agreement to potentially affected Eligible Consumers in the manner and within the time directed by the District Court. The Parties contemplate a Notice Period of forty-five (45) days, unless another time period is set by the District Court.

C.      Within thirty (30) days following the conclusion of the Notice Period or as otherwise directed by the District Court, Plaintiffs shall file with the District Court a Motion for a Final Approval Order.  At least seven (7) days prior to filing their Motion for a Final Approval Order, Plaintiffs shall provide a copy of such motion (including all exhibits and attachments to such motion) to Apple for review and comment.

## IX.    RELEASED CLAIMS

A.      In consideration of the monetary provisions contained in this Settlement Agreement, and after both the Effective Date has occurred and Apple has paid the monies required pursuant to this Settlement Agreement, then each Plaintiff State will be deemed to have, fully, finally, and forever released Apple, its successors and assigns, and their officers, directors, employees, and attorneys (collectively "Releasees") from all Claims that were asserted or could have been asserted by or on behalf of any Eligible Consumer in a Plaintiff State, at the time of his or her E-book purchase(s), who did not timely and validly exclude themselves from this settlement.

B.      In further consideration of the monetary provisions contained in this Settlement Agreement, and after both the Effective Date has occurred and Apple has paid all monies required pursuant to this Settlement Agreement, then all Settlement Class members who have not timely and validly excluded themselves from this settlement will be deemed to have fully,

finally, and forever released the Releasees from all Claims that were asserted or could have been asserted by any such Settlement Class member.

C.    In further consideration of the monetary provisions contained in this Settlement Agreement, and after both the Effective Date has occurred and Apple has paid all monies required pursuant to this Settlement Agreement, then each Plaintiff State will be deemed to have released the Releasees from all Claims that were asserted or could have been asserted by each Plaintiff State's Attorney General in his or her sovereign capacity as chief law enforcement officer of his or her respective state.

D.    In further consideration of the monetary provisions contained in this Settlement Agreement, and after both the Effective Date has occurred and Apple has paid all monies required pursuant to this Settlement Agreement, then each Plaintiff State's Attorney General covenants and agrees, to the fullest extent permitted by law, that he or she shall not hereafter seek to establish liability of Claims or assert Claims, in whole or in part, on behalf of the Attorney General or any other person or entity or class thereof, against the Releasees.

E.    In further consideration of the monetary provisions contained in this Settlement Agreement, the Final Approval Order shall be deemed *res judicata* as to any such released Claim.

F.    Plaintiffs and Apple expressly agree that they do not intend this Settlement Agreement nor any documents executed or submitted pursuant to this Settlement Agreement to be construed as a release or otherwise affect any rights Plaintiffs have or may have against any other entity whosoever. The Final Approval Order shall include a provision that this Settlement Agreement and anything done pursuant thereto shall not constitute a release except as to Releasees. Plaintiffs and Eligible Consumers reserve their rights as aforesaid.

G.     The payments made by Apple to the Settlement Accounts, to the Settlement Class Counsel, to Plaintiff States, and to the Settlement Administration Account (including the additional payments contemplated pursuant to Paragraph VI.B.2, above) shall be the total amount to be paid by Apple under this Settlement Agreement or in connection with Released Claims.  In no event will the payments made by Apple exceed the amount specified in (1) Paragraphs III.A, III.B, or III.D, as applicable, and (2) Paragraph VI.B.1, excluding any additional payments required pursuant to Paragraph VI.B.

H.     To the fullest extent permitted by law, the Parties each expressly waive any right or benefit available to them under Section 1542 of the California Civil Code, which provides as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor," and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, that is similar, comparable or equivalent in effect to Section 1542 of the California Civil Code.

## X.     AGREEMENT VOIDABLE

A.     If this Settlement Agreement is not approved, or fails to become effective, the Settlement Agreement will be null and void.

B.     If, during the Notice Period, Eligible Consumers who otherwise would be represented by Plaintiffs have filed with the Court valid and timely requests for exclusion from this settlement, counsel for Plaintiffs shall promptly provide Apple with notice of all the requests for exclusion.  Apple has the option to void this Settlement Agreement if the percentage of the total Named Publishers' E-book sales volume for the period from April 1, 2010 to May 21, 2012

23

represented by Eligible Consumers requesting exclusion from this settlement exceeds 10%. Apple must exercise its option to void this Settlement Agreement, as set forth in this Paragraph, no later than ten (10) business days after receiving the information about the Consumers requesting exclusion from this settlement.

C.  In the event the Settlement is void pursuant to Paragraph X.A or B, above, Plaintiffs shall retain full rights to assert any and all causes of action against Apple, including the right to amend the Complaints to include additional allegations, claims, causes of action and requests for relief and Apple shall retain any and all defenses thereto.

## XI.  COOPERATION AND IMPLEMENTATION

A.  The Parties, and their respective counsel, agree to cooperate fully to implement the terms and conditions of this Settlement Agreement.

B.  If a Plaintiff determines that Apple is not in compliance with the terms of the Settlement Agreement, it shall give Apple written notice of such non-compliance and Apple shall have fifteen (15) business days to respond in writing. If the Plaintiff is not satisfied with Apple's response, it shall notify Apple in writing and Apple shall have fifteen (15) business days to cure such non-compliance. If, after such time, the Plaintiff shall determine that Apple is still not in compliance, such Plaintiff may seek the civil remedies available to it under the terms of the Final Approval Order.

C.  This Settlement Agreement shall not be used or construed by any person as an admission of liability by Apple to any party or person, or be deemed evidence of any violation of any statute or law or admission of any liability or wrongdoing by Apple or of the truth of any of the claims or allegations contained in the Complaints.

## XII.    BENEFIT AND BINDING EFFECT

A.    The terms of this Settlement Agreement shall be binding on, and shall inure to the benefit of the Parties and their successors.  The Parties expressly disclaim any intention to create rights under this Settlement Agreement which may be enforced by any other person under any circumstances whatsoever.

B.    After both the Effective Date has occurred and Apple has paid all monies required pursuant to this Settlement Agreement, all remaining interest or right of Apple in or to the funds in the Settlement Accounts shall be absolutely and forever extinguished.

## XIII.    MISCELLANEOUS

A.    Apple may file the Settlement Agreement and/or the Final Approval Order in any action that may be brought against it in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment, bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

B.    Liaison Counsel for Plaintiff States are expressly authorized by Plaintiff States to take all appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

C.    Each counsel or other person executing the Settlement Agreement on behalf of any party hereto warrants that such person has full authority to do so.

D.    This Settlement Agreement contains the entire agreement and understanding of the Parties.  There are no additional promises or terms of the Settlement Agreement other than those contained herein.  This Settlement Agreement shall not be modified except in writing

signed by counsel for Liaison States, Settlement Class and Apple or by their authorized representatives.

E.      All dates and time periods in this Settlement Agreement shall be calculated pursuant to the Federal Rules of Civil Procedure. All such dates and time periods may be modified if mutually agreed upon, in writing, signed by counsel for Liaison States, Settlement Class, and Apple or by their authorized representatives.

F.      The Settlement Agreement shall be deemed to have been mutually prepared by the Parties hereto and shall not be construed against any of them solely by reason of authorship.

G.      The captions contained in this Settlement Agreement are inserted only as a matter of convenience and in no way define, limit, extend, or describe the scope of this Settlement Agreement or the intent of any provision hereof.

H.      The Settlement Agreement may be executed in one or more counterparts. Scanned signatures, digital signatures or signatures received by facsimile shall be treated the same as originals for the Settlement Agreement and any written, agreed modification thereof. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the District Court.

I.      The terms of the Settlement Agreement shall control in the event there are any conflicting terms in any related document.

J.      The Settlement Agreement and any related documents shall be subject to, governed by and construed, interpreted and enforced pursuant to the internal laws of the State of New York.

K.      The District Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement Agreement and all Parties hereby submit to the

26

exclusive jurisdiction of the District Court for purposes of implementing and enforcing the

Settlement Agreement.

L.      Any and all notices, requests, consents, directives, or communications by any

party intended for any other party shall be in writing and shall, unless expressly provided

otherwise herein, be given personally, by express courier, or by postage prepaid mail, or by

facsimile or electronic transmission followed by postage prepaid mail, and shall be addressed as

follows:

    **For Plaintiff States:**

        Office of the Attorney General of Texas
        Chief, Antitrust Section
        300 W. 15th St., 7th Floor
        Austin, TX 78701

        Office of the Attorney General of Connecticut
        Chief, Antitrust Department
        55 Elm Street
        PO Box 120
        Hartford, CT 06141-0120

        Office of the Attorney General of Ohio
        Chief, Antitrust Section
        150 E. Gay St., 23rd Floor
        Columbus, OH 43215-3428

    **For Settlement Class:**

        Jeff D. Friedman
        Hagens Berman Sobol Shapiro LLP
        715 Hearst Avenue, Suite 202
        Berkeley, California  94710

    **For Apple:**

        Gail E. Lees
        Gibson, Dunn & Crutcher LLP
        333 South Grand Avenue
        Los Angeles, California 90071

Any one of the Parties may, from time to time, change the address to which such notices, requests, consents, directives, or communications are to be delivered, by giving the other Parties prior written notice of the changed address, in the manner herein above provided, ten (10) calendar days before the change is effective.

Agreed to by:

**Counsel for Apple Inc.**

*Gail E. Lees*

Gail E. Lees
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California 900071

**Counsel for the Settlement Class**

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1918 Eighth Ave, Suite 3300
Seattle, Washington 98101

Jeff D. Friedman
Hagens Berman Sobol Shapiro LLP
715 Hearst Avenue, Suite 202
Berkeley, California 94710

**Counsel for Liaison States**

**State of Texas**
Greg Abbott
Attorney General

*Rebecca Fisher*

Rebecca Fisher
Assistant Attorney General
Office of the Attorney General of Texas
Antitrust Section
300 W 15th St., 7th Floor
Austin, TX 78701

**State of Connecticut**
George Jepsen
Attorney General

*Gary M Becker* wsn

Gary M. Becker
Assistant Attorney General
Office of the Attorney General of
Connecticut
55 Elm Street
PO Box 120
Hartford, CT 06141-0120

**State of Ohio**
Mike DeWine
Attorney General

*Doreen C. Johnson*

Doreen C. Johnson
Assistant Chief, Antitrust Section
Office of the Attorney General of Ohio
150 East Gay Street, 23rd Floor
Columbus, Ohio 43215

29

**E-BOOKS SETTLEMENT WITH APPLE INC.**

**STATE OF ALABAMA**
LUTHER STRANGE
ATTORNEY GENERAL

Billington M. Garrett
Assistant Attorney General
State of Alabama
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7555

**ATTORNEY FOR THE STATE OF ALABAMA**

**Apple Settlement Agreement**

E-BOOKS SETTLEMENT WITH APPLE INC.

**STATE OF ALASKA**
MICHAEL C. GERAGHTY
ATTORNEY GENERAL


Clyde E. Sniffen, Jr.
**Sr. Assistant Attorney General**
**Alaska Department of Law**
1031 W. 4th Ave., #200
Anchorage, AK  99501
(907) 269-5200

**ATTORNEY FOR THE STATE OF ALASKA**

# E-BOOKS SETTLEMENT WITH APPLE INC.

**STATE OF ARIZONA**
THOMAS C. HORNE
ATTORNEY GENERAL


Nancy M. Bonnell
Assistant Attorney General
Susan V. Myers
Assistant Attorney General
1275 West Washington
Phoenix, AZ  85007
(602) 542-7728

**ATTORNEY FOR THE STATE OF ARIZONA**

**Apple Settlement Agreement**

E-BOOKS SETTLEMENT WITH APPLE INC.

**STATE OF ARKANSAS**
DUSTIN McDANIEL
ATTORNEY GENERAL

Kevin Wells
Assistant Attorney General
Consumer Protection Division
Arkansas Attorney General's Office
323 Center Street, Suite 500
Little Rock, AR 72201
(501) 682-8063

**ATTORNEY FOR THE STATE OF ARKANSAS**

E-BOOKS SETTLEMENT WITH APPLE INC.

STATE OF COLORADO
JOHN W. SUTHERS
ATTORNEY GENERAL

Devin Laiho
Assistant Attorney General
1300 Broadway, Seventh Floor
Denver, CO 80203
(720) 508-6219

ATTORNEY FOR THE STATE OF COLORADO

**E-BOOKS SETTLEMENT WITH APPLE INC.**

**STATE OF DELAWARE**
**JOSEPH R. BIDEN, III**
**ATTORNEY GENERAL**

**Michael A. Undorf**
**Deputy Attorney General**
**Carvel State Office Building**
**820 N. French Street, 5th Floor**
**Wilmington, DE 19801**
**(302) 577-8924**

**ATTORNEY FOR THE STATE OF DELAWARE**

**E-BOOKS SETTLEMENT WITH APPLE INC.**

**DISTRICT OF COLUMBIA**
IRVIN B. NATHAN
ATTORNEY GENERAL

ELLEN S. EFROS
DEPUTY ATTORNEY GENERAL, PUBLIC INTEREST DIVISION


*Bennett Rushkoff*

Bennett Rushkoff
Chief, Public Advocacy Section
Catherine A. Jackson
Assistant Attorney General
441 Fourth St., N.W., Suite 600-S
Washington, DC 20001
(202) 442-9864

ATTORNEYS FOR THE DISTRICT OF COLUMBIA

E-BOOKS SETTLEMENT WITH APPLE INC.


STATE OF IDAHO
LAWRENCE G. WASDEN
ATTORNEY GENERAL


Brett T. DeLange
Deputy Attorney General
954 W. Jefferson, 2nd Floor
P.O. Box 83720
Boise, ID 83720-0010
(208) 334-4114

**ATTORNEY FOR THE STATE OF IDAHO**

**E-BOOKS SETTLEMENT WITH APPLE INC.**

**STATE OF ILLINOIS**
LISA MADIGAN
ATTORNEY GENERAL


_Chadwick O. Brooker_
_____
Chadwick O. Brooker
Assistant Attorney General
James R. Thompson Center
100 W Randolph Street
Chicago, IL 60601
(312) 793-3891

**ATTORNEY FOR THE STATE OF ILLINOIS**

E-BOOKS SETTLEMENT WITH APPLE INC.

**STATE OF INDIANA**
GREGORY F. ZOELLER
ATTORNEY GENERAL


Jeremy R. Comeau
**Deputy Attorney General**
302 West Washington St., 5th Floor
Indianapolis, IN 46204
(317) 232-6317

**ATTORNEY FOR THE STATE OF INDIANA**

E-BOOKS SETTLEMENT WITH APPLE INC.

**STATE OF IOWA**
THOMAS J. MILLER
ATTORNEY GENERAL

Layne M. Lindebak
Assistant Attorney General
Special Litigation Division
Iowa Department of Justice
Hoover Office Building, Second Floor
1305 East Walnut St.
Des Moines, IA 50319
(515) 281-7054

ATTORNEY FOR THE STATE OF IOWA

**E-BOOKS SETTLEMENT WITH APPLE INC.**

**STATE OF KANSAS**
**DEREK SCHMIDT**
**ATTORNEY GENERAL**


_Lynette R. Bakker_

Lynette R. Bakker
Assistant Attorney General
120 SW Tenth Ave., 2nd Floor
Topeka, KS 66612-1597
(785) 296-3751

**ATTORNEY FOR THE STATE OF KANSAS**

**E-BOOKS SETTLEMENT WITH APPLE INC.**

**STATE OF LOUISANA**
**JAMES D. "BUDDY" CALDWELL**
**ATTORNEY GENERAL**

Stacie Lambert deBlieux
Assistant Attorney General
P.O. Box 94005
Baton Rouge, LA 70804
(225) 326-6458

**ATTORNEY FOR THE STATE OF LOUISIANA**

E-BOOKS SETTLEMENT WITH APPLE INC.

**STATE OF MARYLAND**
DOUGLAS F. GANSLER
ATTORNEY GENERAL


Ellen S. Cooper
Chief, Antitrust Section
Antitrust Division
200 St. Paul Place, 19th Floor
Baltimore, MD 21202-2021
(410) 576-6470

ATTORNEY FOR THE STATE OF MARYLAND

E-BOOKS SETTLEMENT WITH APPLE INC.

**COMMONWEALTH OF MASSACHUSETTS**
MARTHA COAKLEY
ATTORNEY GENERAL


_____
Michael Franck
Assistant Attorney General
Antitrust Division
1 Ashburton Place
Boston, MA 02108
(617) 727-2200

**ATTORNEY FOR THE COMMONWEALTH OF MASSACHUSETTS**

**E-BOOKS SETTLEMENT WITH APPLE INC.**

**STATE OF MICHIGAN**
**BILL SCHUETTE**
**ATTORNEY GENERAL**

Thomas S. Marks
Assistant Attorney General
Corporate Oversight Division
525 West Ottawa Street, 6th Floor
Lansing, MI 48933
(517) 373-1160

**ATTORNEY FOR THE STATE OF MICHIGAN**

**Apple Settlement Agreement**

## E-BOOKS SETTLEMENT WITH APPLE INC.

**STATE OF MISSOURI**
CHRIS KOSTER
ATTORNEY GENERAL

_(signature)_

**Anne E. Schneider**
**Assistant Attorney General**
**PO Box 899**
**Jefferson City, MO 65102**
**(573) 751-3376**

**ATTORNEY FOR THE STATE OF MISSOURI**

**E-BOOKS SETTLEMENT WITH APPLE INC.**

**STATE OF NEBRASKA**
JON BRUNING
ATTORNEY GENERAL


Gregory J. Walklin
Assistant Attorney General
2115 State Capitol
Lincoln, NE 68509-8920
(402) 471-3840

**ATTORNEY FOR THE STATE OF NEBRASKA**

E-BOOKS SETTLEMENT WITH APPLE INC.


STATE OF NEW MEXICO
GARY K. KING
ATTORNEY GENERAL


_(signature)_
_____
Nicholas M. Sydow
Assistant Attorney General
408 Galisteo St.
Santa Fe, NM 87501
(505) 827-6021

ATTORNEY FOR THE STATE OF NEW MEXICO

# APPLE INC. E-BOOK SETTLEMENT

**STATE OF NEW YORK**
**ERIC T. SCHNEIDERMAN**
**ATTORNEY GENERAL**

Eric J. Stock
Bureau Chief
Robert L. Hubbard
Linda J. Gargiulo
Assistant Attorneys General
Antitrust Bureau
120 Broadway, 26th Floor
New York, NY  10271-0332
(212) 416-8282
eric.stock@ag.ny.gov
robert.hubbard@ag.ny.gov
linda.gargiulo@ag.ny.gov

**ATTORNEYS FOR THE STATE OF NEW YORK**

**Apple Settlement Agreement**

E-BOOKS SETTLEMENT WITH APPLE INC.

**STATE OF NORTH DAKOTA**
WAYNE STENEHJEM
ATTORNEY GENERAL

Parrell D. Grossman
Director, Consumer Protection and Antitrust Division
Gateway Professional Center
1050 E Interstate Ave., Suite 200
Bismarck, ND 58503-5574
(701) 328-5570

ATTORNEY FOR THE STATE OF NORTH DAKOTA

**E-BOOKS SETTLEMENT WITH APPLE INC.**

**COMMONWEALTH OF PENNSYLVANIA**

KATHLEEN G. KANE
ATTORNEY GENERAL

JAMES DONAHUE, III
Executive Deputy Attorney General

TRACY WERTZ
Chief Deputy Attorney General

Jennifer Kirk                                   Dated: 6/26/2014
Deputy Attorney General
Attorney ID No.: 90544

Office of Attorney General
Antitrust Section
14th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 787-4530
(717) 787-1190 (Fax)

ATTORNEYS FOR THE COMMONWEALTH OF PENNSYLVANIA

E-BOOKS SETTLEMENT WITH APPLE INC.

**COMMONWEALTH OF PUERTO RICO**
HON. CESAR MIRANDA RODRIGUEZ
ATTORNEY GENERAL

_____

Jesús M. Alvarado-Rivera
Chief Deputy Attorney General
Office of Monopolistic Affairs
P.O. Box 9020192
San Juan, PR 00902-0192
(787) 721-2900

**ATTORNEY FOR THE COMMONWEALTH OF PUERTO RICO**

**E-BOOKS SETTLEMENT WITH APPLE INC.**

**STATE OF SOUTH DAKOTA**
MARTY J. JACKLEY
ATTORNEY GENERAL


Jeffrey P. Hallem
Assistant Attorney General
1302 E. Hwy. 14, Suite 1
Pierre, SD 57501-8501
(605) 773-3215

**ATTORNEY FOR THE STATE OF SOUTH DAKOTA**

E-BOOKS SETTLEMENT WITH APPLE INC.

STATE OF TENNESSEE
ROBERT E. COOPER, JR.
ATTORNEY GENERAL & REPORTER


Victor J. Domen, Jr.
Senior Antitrust Counsel
500 Charlotte Avenue
P. O. Box 20207
Nashville, TN 37202
(615) 253-3327

ATTORNEY FOR THE STATE OF TENNESSEE

**E-BOOKS SETTLEMENT WITH APPLE INC.**

**STATE OF UTAH**
**SEAN D. REYES**
**ATTORNEY GENERAL**

Ronald J. Ockey
Assistant Attorney General
160 East 300 South, 5th Floor
PO Box 140872
Salt Lake City, UT 84114-0872
(801) 366-0359

ATTORNEY FOR THE STATE OF UTAH

**E-BOOKS SETTLEMENT WITH APPLE INC.**

**STATE OF VERMONT**
**WILLIAM H. SORRELL**
**ATTORNEY GENERAL**

Jill S. Abrams
Assistant Attorney General
109 State Street
Montpelier, VT 05609-1001
(802) 828-5479

**ATTORNEYS FOR THE STATE OF VERMONT**

**E-BOOKS SETTLEMENT WITH APPLE INC.**

**COMMONWEALTH OF VIRGINIA**
MARK R. HERRING
ATTORNEY GENERAL


*Sarah Oxenham Allen*
Sarah Oxenham Allen
Consumer Protection Section
900 E Main Street
Richmond, VA 23219
(804) 786-6557

**ATTORNEYS FOR THE COMMONWEALTH OF VIRGINIA**

**E-BOOKS SETTLEMENT WITH APPLE INC.**

**STATE OF WEST VIRGINIA**
PATRICK MORRISEY
ATTORNEY GENERAL

_____

Douglas L. Davis
Assistant Attorney General
P O Box 1789
812 Quarrier St., 1st Floor
Charleston, WV 25326
(304) 558-8986

**ATTORNEYS FOR THE STATE OF WEST VIRGINIA**

# E-BOOKS SETTLEMENT WITH APPLE INC.

**STATE OF WISCONSIN**
**J.B. VAN HOLLEN**
**ATTORNEY GENERAL**

Gwendolyn J. Cooley
Assistant Attorney General
17 W. Main Street
Madison, WI 53707-7857
(608) 261-5810

**ATTORNEYS FOR THE STATE OF WISCONSIN**