*In re ELECTRONIC BOOKS ANTITRUST LITIGATION, Case No. 11-md-02293*
and
*Texas, et al. v. Penguin Group, et al, Case No. 12-cv-03394*

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF APPLE SETTLEMENT AND DISTRIBUTION PLAN**

# EXHIBIT J

# CONSUMER DISTRIBUTION PLAN

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**This Document Relates to:**

| | |
|---|---|
| IN RE ELECTRONIC BOOKS ANTITRUST LITIGATION | )  No. 11-md-02293 (DLC)<br>)  **ECF Case**<br>)  **CLASS ACTION** |
| THE STATE OF TEXAS, et al., | )<br>) |
| Plaintiffs, | )  **Civil Action**<br>)  **No.12-cv-03394** |
| v. | )<br>) |
| PENGUIN GROUP (USA) INC., et al., | )<br>) |
| Defendants. | )<br>) |

**PLAINTIFFS' CONSUMER DISTRIBUTION PLAN**

This Distribution Plan provides the basis and structure for the distribution of any funds from the Consumer Compensation Settlement Account ("Consumer Fund") if one is established pursuant to the Apple Settlement.[1]

**A.    Premises**

In conformance with the Apple Settlement, the distributions pursuant to this Distribution Plan are premised on the following factors:

1.      This Distribution Plan has been devised to maximize direct consumer recovery, minimize any residue and minimize expenses consistent with the provision of fair, adequate and reasonable notice and distribution to consumers.

2.      Eligible Consumers will receive compensation from the Consumer Fund for qualifying E-books that were published by any of the following publishers:  Hachette Book Group, Inc. ("Hachette"), HarperCollins Publishers LLC ("HarperCollins"), Simon & Schuster, Inc. ("Simon & Schuster"), Holtzbrinck Publishers, LLC, d/b/a Macmillan ("Macmillan") and Penguin Group (USA), Inc. ("Penguin"), (collectively, "Settling Publishers").  This distribution to consumers is in addition to distributions made to consumers under the Prior Settlements.

---

[1] Unless otherwise defined herein, this Consumer Distribution Plan ("Distribution Plan") adopts and incorporates the definitions in the Apple Settlement Agreement dated July 10, 2014 ("Apple Settlement").

3.      Distributions to any individual should be in proportion to the number of qualifying E-books that the consumer purchased during the claim period and distribution on a per E-book basis should be in proportion to the risk-adjusted damages separately estimated for two categories of books.  Thus, the distribution amount for a qualifying Adult Fiction, Non-Fiction and Advice titles on the New York Times Bestseller list is higher than for a non-New York Times Bestseller.

4.      The technology associated with the purchase of E-books allows an unprecedented level of effective, direct notification to Eligible Consumers, and provides multiple avenues for most Eligible Consumers to realize the value of their specific distribution.   For example, Eligible Consumers may choose to receive the value of their distribution either by applying it to additional purchases or by requesting a check for the same amount.

5.      It should be made as easy as possible for Eligible Consumers to obtain their distribution. Thus, Eligible Consumers who can be directly identified and whose distribution amount can be calculated and applied by retailers will receive a credit to their account unless they specifically choose to exclude themselves ("opt-out") or request a check.  Certain other Eligible Consumers who can be identified sufficiently from retailer-provided data will receive checks. Virtually no consumer will be denied a distribution due to inattention on his or her part.

6.      Business, technological and legal issues constrain the ability of some retailers to provide certain notice and distribution services.  Therefore, the Distribution Plan makes accommodations for Eligible Consumers who purchased from different retailers.  The details for all the retailers are more specifically explained in Section B, below.

7.      The Distribution Plan must screen out duplicate claims.

8.      The amount to be distributed is governed by the specific contingencies set forth in Section III of the Apple Settlement Agreement.

9.      To the extent monies remain for re-distribution to Eligible Consumers from the Prior Settlements, such additional amounts may be included in any distribution under this Distribution Plan.

10.      Calculations for per E-book payments will employ the same methods, terms, conditions and limitations for all Eligible Consumers. To the extent practical, calculations and distributions of payments will utilize information and processes established in the Prior Settlements with the Settling Publishers.

**B.      The Plan**

1.      Qualifying E-books include all E-books sold under an agency contract by Hachette, HarperCollins, Simon & Schuster, Macmillan and Penguin during the period from April 1, 2010 through May 21, 2012, inclusive (the "Claim Period").

2.      Eligible Consumers shall be individual consumer purchasers (exclusive of business, government, library, non-profit or other entity consumers) who purchased a Qualifying E-book while a resident in any U.S. State, Commonwealth or Territory.  The billing address associated

with the credit card used for the purchase of a qualifying E-book shall be determinative as to residence.

3.      No recoveries shall be distributed on account of free E-books.

4.      The precise per-book amounts for eligible New York Times Bestsellers and non-bestsellers cannot be calculated until after the Effective Date of the Apple Settlement has occurred and after the result of the current distribution of monies from the Prior Settlements is known.  As soon as practicable thereafter, Counsel for Plaintiffs will provide the per-book estimations to the Crediting Retailers and to the Claims Administrator so they can calculate the distribution for each Eligible Consumer.  It is currently estimated that per book distributions will fall in the following ranges, depending on the contingent outcomes in the Apple Settlement:

> a.  With a $400 million Apple payment, Eligible Consumers will receive between $6.05 and $6.54 per book for NYT Bestsellers, and between $1.39 and $1.50 for non-bestsellers.
>
> b.  With a $50 million Apple payment, Eligible Consumers will receive between $0.32 and $0.81 per book for NYT Bestsellers, and between $0.07 and $0.19 for non-bestsellers.
>
> c.  If the zero payment contingency is triggered, there shall be no distribution under this Plan.

5.      If an Eligible Consumer previously filed one or more valid Claim Forms in the Prior Settlements, that consumer will NOT have to file a Claim Form in the Apple Settlement for the same books.

6.      If an Eligible Consumer wishes to exclude himself or herself ("opt-out") from the Apple Settlement, he or she must file a valid exclusion request, regardless of whether he or she previously opted-out of one or more of the Prior Settlements.

7.      With respect to customers of Amazon, Barnes & Noble, Apple, and Kobo,[2] (each, a "Crediting Retailer"), the following procedures shall apply:

> a.  Each Crediting Retailer has identified all Eligible Consumers who are in its internal system.  For purposes of maintaining customer privacy, customers were identified by unique customer number rather than by name.
>
> b.  Each Crediting Retailer shall calculate the distribution for each such customer based on the per unit recoveries provided by Counsel for Plaintiffs as noted in B.4.
>
> c.  After preliminary approval by the Court and upon Court order, each Crediting Retailer shall provide direct email notice to all identified Eligible Consumers

---

[2] Kobo's customers include those former Borders customers who opted to transition their accounts to Kobo before Borders went out of business.

within its system.[3]  The email will contain the unique customer identifying number or direct the customer to his or her Crediting Retailer account to obtain such number. The email will also direct customers to the website maintained by the Claims Administrator.

d.  In addition to providing information set forth in the Notice Plan, the website will provide instructions on how an Eligible Consumer can either request a check or opt-out from Apple Settlement.

   (i)  Eligible Consumers requesting a check will have to provide both name and address for the check, as well as the unique customer identifier used to confirm their status with the Crediting Retailer.

   (ii)  Eligible Consumers who requested a check in any of the Prior Settlements will receive their distribution in the Apple Settlement by check.

e.  The website shall also provide a Claim Form to be filled out by all Eligible Consumers not initially identified by the Crediting Retailer.  Any Claim Form filed for purchases from a Crediting Retailer that does not have a unique customer identifier will be treated the same as a claim for a purchase from an Other Retailer.

f.  After the close of the Court-approved notice period, the Claims Administrator will provide a list of Eligible Consumers who have elected either to opt-out or to receive a check (the "List") to each Crediting Retailer.

g.  As soon as practicable after the Effective Date of the Apple Settlement has occurred and Apple has paid all monies required for the Consumer Fund, if any, each Crediting Retailer will provide a second direct email notice for any identified Eligible Consumers who are not on the List, notifying them that the calculated amount of their distribution is available as an account credit.  If activation of the account credit is required, the notice will instruct them how to activate the credit. This credit can be used for further purchases from the Crediting Retailer.

h.  All Eligible Consumers of Crediting Retailers not originally identified by their Crediting Retailer who either submitted valid Claim Forms in the Prior Settlements or who submit valid Claim Forms in the Apple Settlement shall receive notice as noted in 7(g), above.

i.  As soon as practicable after the Effective Date of the Apple Settlement has occurred and Apple has paid all monies required for the Consumer Fund, if any, Crediting Retailers will provide the Claims Administrator with the payment amounts for any Eligible Consumers who have requested a check in lieu of a credit, and the Claims Administrator will send checks to those Eligible Consumers.

---

[3] Apple has provided sufficient notice to the Claims Administrator to provide email notice to Apple customers.

8. With respect to Eligible Consumers of Sony, the following procedures shall apply:

   a. Sony identified all Eligible Consumers in its internal system. For purposes of maintaining customer privacy, customers were identified by a unique customer number rather than by name.

   b. Sony previously provided the Claims Administrator sufficient information to determine, for each Sony Eligible Consumer, the E-books purchased by title, ISBN, and purchase date, and the customer's name and address. As soon as practicable after the Effective Date of the Apple Settlement has occurred and Apple has paid all monies required for the Consumer Fund, the Claims Administrator will calculate the distribution for each such customer using the per unit distribution amounts provided by Counsel for Plaintiffs as noted in B.4.

   c. After preliminary approval by the Court and upon Court order, the Claims Administrator shall provide direct email notice to all identified Sony Eligible Consumers. The email will contain the unique customer identifying number and direct Sony Eligible Consumers to the website maintained by the Claims Administrator.

   d. The website will provide instructions on how Sony Eligible Consumers can opt-out from the Apple Settlement.

   e. The website shall also provide a Claim Form to be filled out by all Sony Eligible Consumers not initially identified by Sony. Any Claim Form filed for purchases from Sony that does not have a unique customer identifier will be treated the same as a claim for a purchase from an Other Retailer.

   f. After the close of the Court-approved notice period, the Claims Administrator shall remove from the list of Sony Eligible Consumers those consumers who have elected to opt-out.

   g. As soon as practicable after the Effective Date of the Apple Settlement has occurred and Apple has paid all monies required for the Consumer Fund, if any, the Claims Administrator will send checks to all Sony Eligible Consumers (1) initially identified by Sony, (2) who have filed a valid Claim Form in the Prior Settlements or (3) who submit valid Claim Forms pursuant to the Apple Settlement. Any claim made for purchases from Sony that does not have a unique customer identifier will be treated the same as a claim for a purchase from an Other Retailer.

9. With respect to customers of Google, the following procedure shall apply:

   a. Google identified all Google Eligible Consumers in its internal system. For purposes of maintaining customer privacy, customers were identified by unique customer number provided by Google.

   b. After preliminary approval by the Court and upon Court order, Google shall provide direct email notice to all identified Google Eligible Consumers within its

5

system. The email will contain the unique customer identifying number. The email will also direct customers to the website maintained by the Claims Administrator.

c. Once directed to the Settlement website, Google Eligible Consumers will be informed how to opt-out of the Apple Settlement. The Google Eligible Consumer will also be provided with a Claim Form and be informed how to make a valid claim.

d. To receive payment, a Google Eligible Consumer will be required to complete the Claim Form and provide the unique customer identifying number previously emailed to the Eligible Consumer by Google but will not be required to provide all purchase information. The Claim Form will clearly state that making a claim also constitutes permission for the Claims Administrator to contact Google to verify the information provided by the customer.

e. After the close of the Court-approved notice period, the Claims Administrator shall remove Eligible Consumers who have elected to opt-out from the list of Google Eligible Consumers.

f. Using information provided by Eligible Consumers, the Claims Administrator, in coordination with Google, will calculate each customer's distribution amount, using the per unit distribution amounts provided by Counsel for Plaintiffs as noted in B.4.

g. As soon as practicable after the Effective Date of the Apple Settlement has occurred and Apple has paid all monies required for the Consumer Fund, if any, the Claims Administrator will send checks to all Google Eligible Consumers who have filed valid Claim Forms in the Prior Settlements or who submit valid Claim Forms pursuant to the Apple Settlement. Any claim made for purchases from Google that does not have a unique customer identifier will be treated the same as a claim for a purchase from an Other Retailer.

10. With respect to customers of any retailer not otherwise named herein (an "Other Retailer"), the following procedures shall apply:

a. Publication and other paid media notices will be provided in accordance with the Notice Plan. These notices will direct customers to the website maintained by the Claims Administrator.

b. Once directed to the Settlement website, the customer will be provided with a Claim Form to be used to make a claim for a check, and information on how to opt-out of the Apple Settlement. The customer will be required to identify the retailer from which the consumer purchased E-books and the specific E-books for which compensation is claimed. The Claim Form clearly states that making a

claim also constitutes permission for the Claims Administrator to contact the appropriate retailer to verify the information provided by the customer.

c. Using information provided by the claiming customer, the Claims Administrator will, as necessary, verify the qualifying purchases with the appropriate retailer and will calculate the distribution for each Eligible Consumer using the per unit distribution amounts provided by Counsel for Plaintiffs as noted in B.4.

d. As soon as practicable after the Effective Date of the Apple Settlement has occurred and Apple has paid all monies required for the Consumer Compensation Account, if any, the Claims Administrator will send checks to Eligible Consumers who have either submitted valid Claim Forms in the Prior Settlements or who submit valid Claim Forms pursuant to the Apple Settlement.

11.    When a Claim Form is required, purchases made by a single customer from more than one retailer shall NOT be combined in the same claim. Rather, each retailer shall be the subject of a separate claim by the customer and shall be handled in the manner appropriate to that retailer. Thus, the customer could receive credits at one or more Crediting Retailers, multiple checks or a combination of checks and credits, as elected by the customer.

12.    Credits for Eligible Consumers will expire if not used by the first anniversary the credit was available in the account. If a Crediting Retailer provided a method to activate the credits, credits for Eligible Consumers of such Crediting Retailers will expire if not activated by the first anniversary the notice was sent to activate the credit.

13.    Unused checks shall expire not later than the first anniversary of the initial date of distribution. Undeliverable checks returned by the United States Post Office will be traced and re-mailed. Checks returned undeliverable a second time will be voided. Reissued checks will also expire at the first anniversary of the initial date of distribution.

14.    If approved by the Court, any consumer compensation funds not disbursed under the Prior Settlements may be aggregated with any money in the Apple Consumer Fund for distribution to Eligible Consumers. If funds remain after the consumer distribution(s), those funds will be used as a *cy pres* distribution to Reading is Fundamental or other charitable organization(s), approved by the Court, whose purposes relate to reading, literacy or access by the public to electronic books.

15.    Funds remaining due to uncashed checks or unused or unactivated credits will similarly be used for additional consumer distributions to the fullest extent possible, and then as *cy pres* distributions. To the extent state law contradicts any portion of such distributions, Plaintiffs will submit proposed plans for alternative distributions for Court approval.