UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE ELECTRONIC BOOKS ANTITRUST
LITIGATION

This Document Relates to:

ALL ACTIONS

No. 11-md-02293 (DLC)
ECF Case

<u>CLASS ACTION</u>

## **CLASS PLAINTIFFS' RESPONSE TO OBJECTIONS TO <u>PROPOSED APPLE SETTLEMENT</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION .........................................................................................................1

II.     KELLY AND WOOTTON OBJECTIONS...............................................................2

    A.      Description of the Kelly and Wootton Objections...................................2

    B.      The Kelly and Wootton Objections Lack Merit ......................................2

III.    LIPSON OBJECTION................................................................................................4

    A.      Description of Lipson Objection...............................................................4

    B.      Mr. Lipson Lacks Standing to Object ......................................................4

    C.      The Lipson Objections Lack Merit ..........................................................5

IV.     ERWIN AND BRADLEY OBJECTIONS .................................................................6

    A.      Description of Erwin and Bradley Objections .........................................6

    B.      The Erwin and Bradley Objections Lack Any Merit ...............................7

        1.      The Parties' Negotiation of Attorneys' Fees Separate from Consumer Compensation Does Not Render the Settlement Unreasonable...................7

        2.      Class Counsel's Requested Attorneys' Fees Are Reasonable Under the *Goldberger* Factors .....................................................................................9

        3.      Where Class Counsel Has Submitted Extensive Descriptions of the Work Undertaken, and this Court Is Familiar with the Case, Detailed Billing Records Are Not Required............................................................11

        4.      The Named Representatives of the Class Reviewed and Approved the Terms of the Settlement ..............................................................................12

        5.      The Second Scenario – Where the Liability Order Is Remanded for Further Substantive Proceedings – Still Represents a Reasonable Settlement ..................................................................................................12

    C.      Counsel for Ms. Erwin and Mr. Bradley Are Professional Objectors ..................14

    D.      Ms. Erwin Testified that She Either Supports the Terms of the Settlement, or Fails to Understand the Settlement to Which She Is Objecting............................16

V.      CONCLUSION.........................................................................................................19

010260-11 728936 V2

Page(s)

**FEDERAL CASES**

*Cassese v. Williams*,
   503 Fed. App'x 55 (2d Cir. 2012)............................................................................................11

*Charron v. Pinnacle Grp. N.Y. LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012)......................................................................................5

*Chavarria v. N.Y. Airport Serv., LLC*,
   875 F. Supp. 2d 164 (E.D.N.Y. 2012) ....................................................................................13

*Crane v. Educ. Futures Grp.*,
   2014 U.S. Dist. LEXIS 69484 (N.D. Tex. May 21, 2014) ....................................................12

*Date v. Sony Elecs., Inc.*,
   2013 WL 3945981 (E.D. Mich. July 31, 2013) .......................................................................3

*Dewey v. Volkswagen of Am.*,
   909 F. Supp. 2d 373 (D.N.J. 2012) ..........................................................................................3

*Embry v. ACER Am. Corp.*,
   2012 WL 3777163 (N.D. Cal. Aug. 29, 2012) ......................................................................15

*Feder v. Elec. Data Sys. Corp.*,
   248 Fed. App'x 579 (5th Cir. 2007) .........................................................................................5

*Goldberger v. Integrated Res., Inc.*,
   209 F.3d 43 (2d Cir. 2000)...............................................................................................11, 9

*Gooch v. Life Investors Ins. Co. of Am.*,
   672 F.3d 402 (6th Cir. 2012) ...................................................................................................9

*Gould v. Alleco, Inc.*,
   883 F.2d 281 (4th Cir. 1989) ...................................................................................................5

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   916 F. Supp. 2d 454 (S.D.N.Y. 2013)....................................................................................14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   281 F.R.D. 531 (N.D. Cal. 2012)............................................................................................15

*In re Gen. Elec. Co. Sec. Litig.*,
   998 F. Supp. 2d 145 (S.D.N.Y. 2014)....................................................................................15

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   2013 WL 5275618 (S.D. Cal. Sept. 17, 2013)..................................................................14, 15

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
2014 U.S. Dist. LEXIS 27670 (S.D. Cal. Mar. 3, 2014) ........................................15

*In re Initial Pub. Offering Sec. Litig.*,
671 F. Supp. 2d 467 (S.D.N.Y. 2009)..................................................................3, 4

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...........................................................5

*In re Motor Fuel Temperature Sales Practices Litig.*,
2012 WL 1415508 (D. Kan. Apr. 24, 2012) ..............................................................3

*Malchman v. Davis*,
761 F.2d 893 (2d Cir. 1985)......................................................................................9

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009)......................................................................................5

*New Jersey v. New York*,
345 U.S. 369 (1953)...............................................................................................5, 4

*O'Keefe v. Mercedes-Benz USA, LLC*,
214 F.R.D. 266 (E.D. Penn. 2003)...........................................................................14

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F. Supp. 2d 942 (E.D. Tex. 2000) .......................................................................14

*United States v. Apple, Inc.*,
889 F. Supp. 2d 623 (S.D.N.Y. 2012)........................................................................2

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005).................................................................................13, 16

*Weinberger v. Great N. Nekoosa Corp.*,
925 F.2d 518 (1st Cir. 1991)................................................................................9, 10

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)........................................................................................5

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) ...................................................................................13

## FEDERAL STATUTES

15 U.S.C. § 15c (a)...............................................................................................4, 5

15 U.S.C. § 26 ...........................................................................................................4

# FEDERAL RULES

Federal Rules of Civil Procedure 11 .............................................................................................11

Federal Rules of Civil Procedure 23 ...............................................................................................5

# I. INTRODUCTION

The litigation between Class Plaintiffs, Plaintiff States, the Department of Justice, the Publisher Defendants and Apple Inc. ("Apple") has been one of the most highly publicized antitrust cases in recent memory. In addition to the extensive coverage provided by news sources around the country, class members have been alerted to the case by three class notices sent directly to their email addresses and a distribution of previous recoveries through their preferred e-book vendor. Most recently, Notice Administrator Kinsella Media LLC arranged for emails to approximately 23 million class members pursuant to this Court's preliminary approval order, notifying them of the terms of the Settlement[1] with Apple and their right to opt out or object. Despite the perhaps unprecedented awareness of this case among class members, only 76 class members opted out of the Settlement and only five objected. In other words, as many as 23 million class members were aware of the Settlement with Apple, and 99.9997 percent of them concluded the Settlement was favorable enough that they would remain in the class and support the Settlement.

The five objectors are not representative of this overwhelming sentiment, and raise no meritorious arguments. Two of the objections are one-page letters stating opposition not to the Settlement but to the litigation as a whole.[2] The Court has previously considered and rejected substantively identical objections in the context of previous settlements with publisher defendants.

---

[1] "Settlement" refers to the Apple Settlement Agreement, July 16, 2014, ECF No. 642-1.

[2] Objection of Daniel L. Kelly ("Kelly Obj."), Sept. 29, 2014, ECF No. 662; Objection of Caitlin Creevy Wootton ("Wootton Obj."), Sept. 30, 2014, ECF No. 663.

Two of the other objectors[3] are represented by professional objectors' counsel who multiple courts have criticized for filing meritless objections in the hopes of coercing a payoff from plaintiffs' counsel.[4] These objections are thoroughly unpersuasive, hardly engage with the actual facts of the litigation or Settlement and in parts simply repeat language from previous objections verbatim.[5] Their central arguments – that the structure of the Settlement is unacceptable and that the requested attorneys' fees are unreasonable – are contrary to Second Circuit case law, this Court's prior rulings, and the history of this litigation. The last filed objector, as a non-Class member, lacks standing to object and fails to present supported arguments.

## II.    KELLY AND WOOTTON OBJECTIONS

### A.    Description of the Kelly and Wootton Objections

Mr. Kelly and Ms. Wootton filed short letters stating their beliefs that "Apple did nothing to injure" e-book consumers[6] and "[t]his entire lawsuit is a shame."[7]

### B.    The Kelly and Wootton Objections Lack Merit

These objections are, in substance, no different from Bob Kohn's previous objections and comments with respect to the Publisher Settlements, which the Court has dealt with at great length.[8] Mr. Kelly and Ms. Wootton are entitled to their beliefs and to reject any participation in

---

[3] Class Member Dianne Young Erwin's Objection to Proposed Settlement ("Erwin Obj."), Oct. 31, 2014, ECF No. 670; John Bradley's Objections. to Class Action Settlement & Attorneys' Fees ("Bradley Obj."), Oct. 31, 2014, ECF No. 671.

[4] *See* section IV.C, *infra*.

[5] *Id.*

[6] Kelly Obj.

[7] Wootton Obj.

[8] *See United States v. Apple, Inc.*, 889 F. Supp. 2d 623, 641 (S.D.N.Y. 2012) (addressing Mr. Kohn's objections in the context of the Tunney Act); Mr. Kohn's Notice of Intention to Appear in Opposition to the Settlement and Statement in Support of Dismissal with Prejudice of this Action, Oct. 18, 2013, ECF No. 426.

the class's recovery by exercising their right to opt out. As this Court and many others have held, an individual class member who believes that a lawsuit was misguided may opt out of the lawsuit, but has no right to eliminate the recovery by millions of other injured class members.[9] The view of two consumers that Apple should be commended for its proven antitrust violations and aggressive efforts to help the Publisher Defendants raise retail prices is irrelevant to any question before the Court. The proper inquiry is whether the Settlement fairly, reasonably, and adequately compensates class members for the claims they are giving up – not whether those claims are wrongheaded. Accordingly, Mr. Kelly's and Ms. Wootton's objections do not provide any reason to reject the Settlement.

Mr. Kelly further requests that "any damages the court awards be reduced by the amount owed to me and returned to Apple."[10] This is contrary to both the Settlement and the interests of the Class. Unlike many class action settlements, this Settlement does not reduce defendant's payment obligations when class members exclude themselves from the recovery. Instead, that amount is used to increase the recovery of all other class members. Mr. Kelly's disinterest in receiving any payments should be effectuated by excluding him from recovery, as he requests, but not by reducing the payments Apple makes as a whole.

---

[9] *See, e.g., Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981, at *11 (E.D. Mich. July 31, 2013) (objections directed at the filing of the case, rather than the settlement, not grounds for rejecting settlement); *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 389 (D.N.J. 2012) (same); *In re Motor Fuel Temperature Sales Practices Litig.*, MDL No. 1840, 2012 WL 1415508 (D. Kan. Apr. 24, 2012) (same); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 489-90 (S.D.N.Y. 2009) (same).

[10] Kelly Obj.

### III.    LIPSON OBJECTION

#### A.    Description of Lipson Objection

Mr. Lipson objects on a small number of additional points.[11] *First*, Mr. Lipson suggests

that the time for exclusions and objections was not sufficient to allow class members to decide

how to respond.[12] *Second*, Mr. Lipson suggests the Settlement and notice do not provide

"reasonable notice of exactly what class members should expect."[13] And *finally*, Mr. Lipson

objects to attorneys' fees for Class Counsel.[14]

#### B.    Mr. Lipson Lacks Standing to Object

Mr. Lipson is not a member of the Settlement Class, but is instead represented by the

Arizona Attorney General. While we are sure that the parties and the Court appreciate hearing

his opinion, it must be noted that the *parens patriae* statute allowing State Attorneys General to

recover damages for their consumers does not afford injured consumers, such as Mr. Lipson, the

right to object to *parens patriae* settlements. Consumers may exclude themselves from the

monetary relief and preserve their claims against the defendants (15 U.S.C. § 15c (b)(2)), but

they have no right to object to any settlement for monetary relief brought under 15 U.S.C. § 15c

(a) or to any injunctive relief sought by an attorney general under 15 U.S.C. § 26. Allowing

objections to the relief sought by the state in its sovereign and quasi-sovereign capacities may

very well implicate sovereign immunity under the Eleventh Amendment, and certainly offends

sovereign dignity. As the Supreme Court stated in *New Jersey v. New York*:

> [T]he '*parens patriae*' doctrine, however, has aspects [that] go
> beyond mere restatement of the Eleventh Amendment; it is a

---

[11] Objection of Ritchie Lipson ("Lipson Obj."), Nov. 12, 2014, ECF No. 674.

[12] *Id*. at 3.

[13] *Id*. at 6.

[14] *Id*. at 5.

recognition of the principle that the state, when party to a suit involving a matter of sovereign interest, 'must be deemed to represent all its citizens.' The principle is a necessary recognition of sovereign dignity, as well as a working rule for good judicial administration. Otherwise, a state might be judicially impeached on matters of policy by its own subjects, and there would be no practical limitation on the number of citizens, as such, who would be entitled to be made parties.[15]

Because Mr. Lipson is not a member of the Settlement Class, he also lacks standing to object to the attorneys' fees paid to Class Counsel.[16]

## C.     The Lipson Objections Lack Merit

Regarding Mr. Lipson's criticisms of notice and Settlement, both lack merit. Although Mr. Lipson objects that the 45 day notice period was insufficient for him to make a determination whether to file a claim or object to the Settlement, courts addressing such arguments have uniformly held that 45 days is sufficient to meet due process under Rule 23.[17]

---

[15] *New Jersey v. New York*, 345 U.S. 369, 372-73 (1953) (internal citation omitted).

[16] *See McReynolds v. Richards-Cantave*, 588 F.3d 790, 794, n.1 (2d Cir. 2009) (noting that only class members have standing to object to the settlement of a class action); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244 (2d Cir. 2007) (holding that non-class member did not have an "affected interest" in the class plaintiffs' claims, so as to be able to assert its objections); *Feder v. Elec. Data Sys. Corp.*, 248 Fed. App'x 579, 580-81 (5th Cir. 2007) ("only class members have an interest in the settlement funds, and therefore only class members have standing to object to a settlement. Anyone else lacks the requisite proof of injury necessary to establish the 'irreducible minimum' of standing"); *Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) ("The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals.").

[17] *Weinberger v. Kendrick*, 698 F.2d 61, 71-72 (2d Cir. 1982) ("Prospective class members had some six weeks in which to decide whether or not to accept the settlement . . . Objectors were fully apprised of the terms of the proposed settlement and, although they did not avail themselves of the opportunity, had complete access to materials discovered in the case; this provided an adequate base from which objections could be developed."); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *23 (S.D.N.Y. Dec. 23, 2009) ("Objections were due thirty days later on December 14, 2009. Courts have repeatedly found such a time period to constitute sufficient notice."); *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 193 (S.D.N.Y. 2012) ("Courts have held that opt out periods of less than 45 days satisfy due process, even where unsophisticated class members must make decisions regarding complex issues of law or fact.").

Mr. Lipson also suggests that because the Settlement Agreement and notice have three possible scenarios that it does not meet procedural due process, as it fails to provide the class with "reasonable notice of exactly what class members should expect." Mr. Lipson's complaints are misplaced. The notice in this case described with great specificity the three scenarios that might result from Apple's appeal of the Liability Findings. As evidenced by Mr. Lipson's articulation of the three scenarios in his objection, class members were equipped with enough information to make a decision on whether to remain a class member, or whether to exclude themselves and pursue their individual remedy.

Lipson's objections to the amount of class attorneys' fees to be paid under the Settlement also lack merit, and are fully addressed in section IV, below.

## IV. ERWIN AND BRADLEY OBJECTIONS

### A. Description of Erwin and Bradley Objections

Ms. Erwin and Mr. Bradley each make the same four cursory arguments. *First*, they argue that the Settlement must be rejected because attorneys' fees were separately negotiated after determining the amount of consumer recovery.[18] *Second*, both assert that the requested attorneys' fees are unjustified in light of the companion suits by the DOJ and State Attorneys General.[19] *Third*, they claim that fees must be denied absent detailed billing records.[20] Fourth, they object that the class representatives did not directly sign the Settlement. Erwin makes one additional argument, claiming that the recovery in the event of an appellate remand of the Liability Finding is inadequate.

---

[18] Bradley Obj. at 4-5; Erwin Obj. at 11.

[19] Bradley Obj. at 5; Erwin Obj. at 2.

[20] Bradley Obj. at 6; Erwin Obj. at 13-14.

**B.      The Erwin and Bradley Objections Lack Any Merit**

None of these objections, either singly or collectively, provide any reason to reject the

Settlement. Indeed, large portions of each objection are boilerplate arguments that could be used

against any class action settlement, as Ms. Erwin's and Mr. Bradley's counsel have done in

several previous cases. As discussed below, their respective counsel are professional objectors

who have filed frivolous objections to numerous class actions in hopes of extracting a quick

payoff from class counsel. Their objections here are no different. Ms. Erwin was deposed on

November 12, 2014 and her answers demonstrate either that she supports the actual terms of the

Settlement or she does not understand the Settlement or the proceedings to which she ascribes

unfairness.

**1.      The Parties' Negotiation of Attorneys' Fees Separate from Consumer Compensation Does Not Render the Settlement Unreasonable**

Ms. Erwin and Mr. Bradley challenge plaintiffs' decision to negotiate class members'

recovery separately from fees and costs.[21] They also argue that the supposed presence of a

"kicker arrangement" and "clear sailing" provision renders the Settlement per se unacceptable.[22]

These objections fail for many reasons. *First*, Ms. Erwin and Mr. Bradley disregard this Court's

express encouragement of this approach to settlement negotiations in this case, as well as the

oversight of an experienced mediator in the parties' negotiations. At the fairness hearing for the

Penguin and Macmillan negotiations, the Court stated:

> I want to note that the attorneys' fees amounts were separately
> negotiated from the amounts that would go to consumers. I think
> this was very protective of consumers' interests and I want to
> commend all counsel for agreeing to do it that way. I appreciate
> both plaintiffs' counsel and defense counsel approaching it in that
> phased process. Of course, I also have the benefit of my colleague,

---

[21] Bradley Obj. at 4-5; Erwin Obj. at 11.

[22] Bradley Obj. at 4-5; Erwin Obj. at 11; Lipson Obj. at 5.

> Judge Wood, supervising to some extent the settlement discussions here. And that gives us added confidence in the integrity of the settlement process.[23]

Erwin and Bradley do not even acknowledge, much less overcome, the fact that the parties followed the exact process the Court endorsed in the Penguin and Macmillan settlements and again negotiated with the assistance of one of the foremost mediators in the country, Antonio Piazza.[24] Far from calling the Settlement into question, the procedural elements they decry strengthened the negotiations, making them "very protective of consumers' interests" and "add[ing] confidence in the integrity of the settlement process."[25]

*Second*, Ms. Erwin and Mr. Bradley misstate the agreement in an attempt to claim that it has a reverter (or "kicker") clause. Both Ms. Erwin and Mr. Bradley include an identical sentence asserting that the Settlement "contains a 'kicker arrangement,' which stipulates that any reverting attorneys' fees goes [sic] to Apple and not the consumers."[26] This assertion (and, indeed, their entire objections) lacks any citation to the Settlement itself – as it must – because the Settlement contains no such clause.[27]

*Finally*, Ms. Erwin and Mr. Bradley argue that such clauses are *per se* reasons to reject a settlement.[28] But while they both cite the same out-of-circuit cases expressing skepticism of clear-sailing clauses, neither acknowledges established Second Circuit precedent permitting such

---

[23] *See* Dec. 6, 2013 Hr'g Tr. (Hr'g Tr.) at 46:6-14, Dec. 19, 2014, ECF No. 496.

[24] Decl. of Steve W. Berman in Support of Class Counsel's Mot. for Award of Attorneys' Fees and Reimbursement of Expenses Related to Apple Settlement ("Berman Decl."), ¶ 26, Oct. 17, 2014, ECF No. 667.

[25] *See* Hr'g. Tr.at 46:8-9, 46:14.

[26] Erwin Obj. at 11; Bradley Obj. at 5.

[27] Ms. Erwin has included this exact sentence in previous briefs, while Mr. Bradley's counsel seems to have simply repeated the sentence verbatim from Ms. Erwin's earlier-filed brief.

[28] *See* Erwin Obj. at 11-12; Bradley Obj. at 4-5.

clauses, including a case that Ms. Erwin herself cites to support a separate point.[29] As the Second Circuit explained, "an agreement 'not to oppose' an application for fees up to a point is essential to [the] completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged."[30] Indeed, even the courts to whom the objectors cite do not hold clear-sailing provisions to be sufficient in and of themselves to undermine a settlement; rather, the question is whether the settlement is fair and reasonable on the whole, not whether it has one specific provision.[31]

### 2. Class Counsel's Requested Attorneys' Fees Are Reasonable Under the *Goldberger* Factors

Ms. Erwin and Mr. Bradley next attack Class Counsel's fee request. Ms. Erwin questions the attorneys' fees in the Remand Scenario and opines without explanation that "it is hard to see [a] flash of brilliance by class counsel that dramatically altered the course of this litigation in favor of the class."[32] Mr. Bradley limits his argument to a single paragraph asserting that the "percentages sought are not justified."[33]

These arguments ignore both the relative modesty of the requested fees and the considerable work performed by Class Counsel from start to finish in this case. Neither Ms. Erwin nor Mr. Bradley even attempt to show that the fees themselves are excessive under the percentage of the recovery method, nor could they, where they amount to just 17 or 26 percent of

---

[29] *See Malchman v. Davis*, 761 F.2d 893, 905 (2d Cir. 1985); *see also* Erwin Obj. at 10

[30] *Malchman*, 761 F.2d at 905 n.5.

[31] *See, e.g.*, *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 426 (6th Cir. 2012) ("[N]ot every 'clear sailing' provision demonstrates collusion."); *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 (1st Cir. 1991) (where settlement includes a clear-sailing provision, "the court should scrutinize it to ensure that the fees awarded are fair and reasonable").

[32] Erwin Obj. at 13. Mr. Lipson also objects to the attorney fees to be awarded in the Remand Scenario, describing them as preferential treatment which renders the Settlement unfair. Lipson Obj. at 5.

[33] Bradley Obj. at 5.

Apple's payments to the class.[34] As explained in Class Counsel's application for attorneys' fees, these are within or well below the ranges approved in countless previous cases, including (unlike Ms. Erwin's and Mr. Bradley's assertion) many cases with recoveries of similar sizes.[35]

Ms. Erwin and Mr. Bradley further ignore the substantial work performed by Class Counsel alongside the DOJ and Plaintiff States in the pre-trial merits phase. Ms. Erwin and Mr. Bradley are either unaware or unwilling to acknowledge that the class cases preceded the governmental cases by several months; that Class Counsel's work opposing defendants' motions to dismiss produced a complete victory on the first substantive ruling in any of the cases, which presaged the resolution of the major issues in the liability case; and that Class Counsel worked as equal partners with the DOJ and Plaintiff States throughout discovery.[36] Similarly, they undervalue the litigation since the liability ruling, during which Class Counsel obtained class certification and the exclusion of nearly all of Apple's expert testimony, moved for summary judgment, worked closely with Dr. Noll to develop admissible expert testimony and defeated Apple's attempt to exclude his opinions, and prepared for trial, among many other responsibilities.[37] Furthermore, if, as Ms. Erwin and Mr. Bradley imply, Class Counsel's fee request is coming at the expense of the Plaintiff States' recovery or fees, one would expect objection by the 33 State Attorneys General representing their states' and citizens' interests. That Plaintiff States do not so object shows just how far afield objectors' claims are.

---

[34] Mem. in Support of Class Counsel's Mot. for Award of Attorneys' Fees and Reimbursement of Expenses Related to Apple Settlement ("Mot. for Attorneys' Fees") at 14, Oct. 17, 2014, ECF No. 666.

[35] *Id.* at 19.

[36] Mem. in Support of Class Counsel's Mot. for Award of Attorneys' Fees, Reimbursement of Expenses, and Participation Awards for Named Plaintiffs at 3-9, Oct. 8, 2013, ECF No. 419; Steve W. Berman's Decl. in Support of Class Counsel's Mot. for Attorneys' Fees, Reimbursement of Expenses, and Participation Awards for Named Plaintiffs, ¶¶ 2-20, Oct. 8, 2013, ECF No. 420.

[37] Mot. for Attorneys' Fees at 5-11; Berman Decl., ¶¶ 8-24.

**3.** **Where Class Counsel Has Submitted Extensive Descriptions of the Work Undertaken, and this Court Is Familiar with the Case, Detailed Billing Records Are Not Required**

Both Ms. Erwin and Mr. Bradley argue that the Court cannot award fees without detailed billing records, and that the award "must be supported by 'contemporaneous time records' that 'specify, for each attorney, the date, the hours expended, and the nature of the work done.'"[38] This argument is frivolous. The cases they cite require such records only where courts award fees based on the lodestar method in statutory fee-shifting cases. The Second Circuit has stated explicitly that "where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court," that "the practice of requiring documentation of hours as a 'cross-check'" is only "encourage[d]," and that "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case (as well as encouraged by the strictures of Rule 11)."[39] Steve Berman, the managing partner of Hagens Berman Sobol Shapiro LLP and Kit Pierson, the co-chair of the Antitrust Practice Group at Cohen Milstein Sellers & Toll PLLC, have both attested to the detailed work undertaken by Class Counsel in this case, as well as that the requested lodestar reflects "[d]etailed and contemporaneously prepared time records."[40] In any event, as stated previously, plaintiffs are happy to provide detailed, contemporaneous time records for *in camera* review upon request.[41]

---

[38] Erwin Obj. at 13; *see also* Bradley Obj. at 6.

[39] *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *accord, e.g.*, *Cassese v. Williams*, 503 Fed. App'x 55, 59 (2d Cir. 2012), *cert. denied*, *Komar v. Cassese*, 133 S. Ct. 2013 (2013) (describing identical argument by Mr. Bradley's counsel as "meritless").

[40] Berman Decl., ¶ 33; Kit A. Pierson's Decl. in Support of Class Counsel's Mot. for Award of Attorneys' Fees and Reimbursement of Expenses Related to Apple Settlement ("Pierson Decl."), ¶ 9, Oct. 17, 2014, ECF No. 668.

[41] Berman Decl., ¶ 33; Pierson Decl., ¶ 9.

### 4. The Named Representatives of the Class Reviewed and Approved the Terms of the Settlement

Ms. Erwin and Mr. Bradley also object that the class representatives did not directly sign the Settlement, but provide no authority suggesting that a personal signature by a class representative is in any way required. As far as plaintiffs have found, no such authority exists. Rather, it is common for class counsel to sign on behalf of class representatives, just as it is common for defense counsel to sign on behalf of defendants themselves.[42] Nonetheless, each class representative submits a declaration in support of final approval attesting that they oversaw the settlement negotiations conducted by Class Counsel, reviewed the Settlement and believe its terms to be in the best interests of the class.[43]

### 5. The Second Scenario – Where the Liability Order Is Remanded for Further Substantive Proceedings – Still Represents a Reasonable Settlement

Ms. Erwin (but not Mr. Bradley) objects that the recovery in the Remand Scenario is too small, particularly in light of the Reversal Scenario.[44] This again shows a complete lack of understanding of this case and the risks of antitrust class action litigation. As explained in plaintiffs' joint motion for final approval, plaintiffs face substantial risks at trial and on appeal even if the liability ruling is affirmed.[45] If the Second Circuit were to remand the liability ruling on substantive grounds that could affect that ruling, those risks would increase dramatically. Not only would the parties have to convince the Court or a jury that Apple should be found liable

---

[42] *See, e.g.*, *Crane v. Educ. Futures Grp.*, No. 12-cv-04060, 2014 U.S. Dist. LEXIS 69484, at *4 (N.D. Tex. May 21, 2014) ("Though Plaintiff did not personally sign the Settlement Agreement, she is bound by Plaintiff's Counsel's signature on her behalf.").

[43] *See* Decl. of Named Plaintiff Anthony Petru in Support of Mot. for Final Approval of Apple Settlement; Decl. of Named Plaintiff Shane Davis in Support of Mot. for Final Approval of Apple Settlement; Decl. of Named Plaintiff Thomas Friedman in Support of Mot. for Final Approval of Apple Settlement, filed concurrently herewith.

[44] Erwin Obj. at 7-8.

[45] *See* Mem. in Support of Plaintiffs' Mot. for Final Approval of Apple Settlement and Distribution Plan, at 16-18, filed concurrently herewith.

notwithstanding the Second Circuit's opinion, but class certification and proof of damages could be significantly more complex. This is particularly the case if the Second Circuit were to hold that liability could only be premised on the rule of reason, as Apple urges. Indeed, Class Plaintiffs did not even plead a rule of reason case in their original complaints. Similarly, Dr. Noll's expert report would require significant alteration, as he relied heavily on the collateral estoppel effect of the Liability Finding; trial, too, would be more difficult without the benefit of those findings and with an opportunity for Apple – one of the world's most popular companies – to play to a jury's sympathies.

The $50 million in compensation for consumers in the second scenario also reflects an internally consistent rationale by Plaintiffs' counsel collectively to what would have been acceptable in a similar (but stronger) position in mediation before Judge Kimba Woods on the eve of the liability trial against Apple in the spring of 2013.

Finally, Ms. Erwin writes off plaintiffs' considered judgment that the "Remand Scenario is unlikely to occur," which the Court noted in preliminarily approving the Settlement.[46] In Ms. Erwin's view, this is "just class counsel's hopeful guess" and the class would be better off "roll[ing] the dice" by starting anew after remand.[47] Ms. Erwin's dismissiveness is counter to decades of case law that "the view of experienced counsel favoring the settlement is 'entitled to . . . great weight.'"[48] Courts do not lightly "second-guess" class counsel's judgment calls about

---

[46] Erwin Obj. at 7; Mem. Op. & Order at 4, Oct. 1, 2014, ECF No. 651 (finding that the provisions requiring a remand "on the merits" of the Liability Finding and not on "administrative or non-substantive grounds" "further reduce the likelihood of the Remand Scenario").

[47] *Id.*

[48] *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 172 (E.D.N.Y. 2012) (internal citation omitted); *see also, e.g.*, *id.* ("A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's length negotiations conducted by capable counsel, well experienced in class action litigation.") (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005)); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.

the risks of continued litigation "based on the questionable assertions of a nonparty,"[49] and certainly should not do so on the breezy claims made by this objector.

## C.    Counsel for Ms. Erwin and Mr. Bradley Are Professional Objectors

As explained above, Ms. Erwin's and Mr. Bradley's arguments are meritless and are unrepresentative of the vast majority of class members. They seem better attributed to the interests of their professional objector counsel than any true opposition to the Settlement. Both Erwin's counsel, Christopher A. Bandas, and Bradley's counsel, Steve A. Miller are professional objectors who have a recurring pattern of filing nuisance objections in the hopes of coercing a payoff from plaintiffs' counsel. Their interventions after Settlement have been repeatedly criticized by courts. On these grounds alone, their arguments should be viewed with deep skepticism.[50]

As many courts have explained, professional objectors make a practice of objecting to settlements or intervening in class actions after a settlement is reached in an attempt to "extract a fee by lodging generic, unhelpful protests."[51] "Federal courts are increasingly weary of professional objectors,"[52] whose practice wastes judicial resources and delays classes' recoveries (thereby reducing their time value) without contributing anything of value to the litigation or the development of the law.

---

1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.").

[49] *In re Am. Int'l Grp., Inc. Sec. Litig.*, 916 F. Supp. 2d 454, 469 (S.D.N.Y. 2013).

[50] *See, e.g. In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087, 2013 WL 5275618, at *5 (S.D. Cal. Sept. 17, 2013) ("Although the bad motive does not necessarily mean that the objections themselves are invalid, the motive does bear upon the credibility of [objectors].").

[51] *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000).

[52] *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Penn. 2003).

Mr. Bandas "is a Texas lawyer well known for his practice of routinely filing objections in class action settlements across the country."[53] He has objected in dozens of cases, frequently earning criticism or sanctions from the courts faced with his presence.[54] As one court explained, "Bandas routinely represents objectors purporting to challenge class action settlements, and does not do so to effectuate changes to settlements, but does so for his own personal financial gain; he has been excoriated by Courts for this conduct."[55] As another explained, he is a "professional objector who is improperly attempting to 'hijack' the settlement of this case from deserving class members and dedicated, hardworking counsel, solely to coerce ill-gotten, inappropriate and unspecified 'legal fees.'"[56] He frequently files suit without an actual class member, as he did in the Penguin and Macmillan settlements.[57] And he frequently declines to actually file an appearance when representing objectors, as he did here, a tactic that appears designed to avoid sanctions.[58]

---

[53] *See* Declaration of Steve W. Berman in Support of Class Plaintiffs' Response to Objections to Proposed Apple Settlement ("Berman Response Decl."), Ex. 1 at 1, filed concurrently herewith.

[54] *See, e.g.*, *In re Gen. Elec. Co. Sec. Litig.*, 998 F. Supp. 2d 145, 156 (S.D.N.Y. 2014) ("[Objector's] relationship with Bandas, a known vexatious appellant, further supports a finding that [objector] brings this appeal in bad faith."); *Hydroxycut*, 2013 WL 5275618, at *5 (finding "credible" testimony that Mr. Bandas told plaintiffs' counsel that he "didn't care about changing one word of the settlement" and "that he was willing to wager that [plaintiff] would gladly pay him somewhere in the neighborhood of $400,000 to make his objection go away – otherwise, he could hold the settlement process up for two to three years through the appeal process"); *Dennings v. Clearwire Corp.*, No. 10-cv-1859 (W.D. Wash. Aug. 20, 2013), ECF No. 166 (minute entry sanctioning Mr. Bandas by revoking his authority to practice in the Western District of Washington); *Embry v. ACER Am. Corp.*, No. 09-cv-1808, 2012 WL 3777163 (N.D. Cal. Aug. 29, 2012) (holding Mr. Bandas in contempt).

[55] *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (footnote omitted).

[56] *See* Berman Response Decl., Ex. 1 at 2.

[57] *See* Mem. in Support of Plaintiffs' Mot. for Final Approval of Macmillan and Penguin Settlements and Distribution Plan at 26, Nov. 21, 2013, ECF No. 452; Christopher Batman Letter to Judge Cote, Dec. 6, 2013, ECF No. 468 (Batman withdrawing objection); *see also, e.g.*, *Lobo Exploration Co. v. Am. Prod. Co.*, No. CJ-97-72 (Okla. Dist. Ct. Nov. 14, 2005).

[58] *See, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087, 2014 U.S. Dist. LEXIS 27670, at *69 (S.D. Cal. Mar. 3, 2014) (denying sanctions for lack of jurisdiction).

Mr. Miller and his co-counsel are similarly professional objectors who have objected in countless cases in recent years.[59] Like Mr. Bandas, Mr. Miller and his confederates have not made an appearance in this case or moved for *pro hac vice* admission. But Mr. Miller has gone even a step further – not even associating with local counsel. Their filing thus violates Local Civil Rule 1.3(c), and can be stricken on that ground alone.

The patent baselessness of these objections illustrates Mr. Bandas's and Mr. Miller's bad faith and disinterest in providing any constructive input to the Court's consideration of the Settlement. They repeatedly cite propositions of law that are squarely contrary to Second Circuit law. For example, both cite the same American Law Institute article for the proposition that "'[i]n reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable.'"[60] But the Second Circuit has explicitly held that a "'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'"[61]

## D. Ms. Erwin Testified that She Either Supports the Terms of the Settlement, or Fails to Understand the Settlement to Which She Is Objecting

With this Court's approval, Class Counsel deposed Ms. Erwin on November 12, 2014. Ms. Erwin was defended by an attorney she met the day before, Wade Howard, who has not

---

[59] *See, e.g.*, *In re Checking Account Overdraft Litig.*, No. 09-md-2036 (S.D. Fla. Jan. 31, 2013), ECF No. 3227; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827 (N.D. Cal. Apr. 13, 2012,) ECF No. 5454; *In re Groupon Mktg. & Sales Practices Litig.*, No. 11-md-2238 (S.D. Cal. July 27, 2012), ECF No. 68; *Pecover v. Elec. Arts, Inc.*, No. 08-cv-2820 (N.D. Cal. Dec. 10, 2012), ECF No. 397; *Cassese v. Wash. Mutual, Inc.*, No. 05-cv-2724 (E.D.N.Y. Sept. 8, 2011), ECF No. 401-5; *CLRB Hanson Indus., LLC v. Google, Inc.*, No. 05-cv-3649 (N.D. Cal. July 10, 2009), ECF No. 326.

[60] Erwin Obj. at 6 (quoting Am. Law Inst., *Principles of the Law of Aggregate Litig.* § 3.05(c) (2010)); Bradley Obj. at 3 (quoting same).

[61] *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex Litigation § 30.42 (3d ed. 1995)).

made an appearance in this case.[62] Mr. Bandas did not attend the deposition himself. Ms. Erwin testified that Mr. Bandas represented her husband who was an objector in the *In re LCD* price fixing litigation.[63] Mr. Bandas's failure to appear at the deposition, failure to submit a *pro hac vice* application to this Court and the failure of Mr. Howard himself to make an appearance in this case, would appear to be a thinly-veiled attempt for the lawyers to escape this Court's jurisdiction.

Ms. Erwin's testimony confirmed that she either fundamentally agreed with the terms of the Settlement, or failed to understand its terms. On the substantive terms of the Settlement, Ms. Erwin testified that only a very narrow band of recovery would satisfy her – in fact, she testified a class action settlement was fair only if it provided for precisely 100 percent recovery.[64] To provide for more would be unfair to Apple, and to provide for less would not be fair to consumers. And Ms. Erwin believed that the trial on damages had already occurred – a necessary tenet to her believing that a settlement of less than 100 percent of damages in this case was unfair.[65]

Despite Ms. Erwin's profound misunderstandings regarding the procedural posture of this case, she agreed with the risks that were considered by plaintiffs in reaching this Settlement, and that these risks should be taken into account in any settlement. For example, Ms. Erwin agreed that if Apple was later found not to have violated the law by other judges, that it should not have to pay damages (essentially, scenario three under the Settlement Agreement).[66] She acknowledged that the risk of decertification, the risk that this Court's evidentiary rulings might

---

[62] Berman Response Decl., Ex. 2 at 7 (Erwin Dep. Tr.).

[63] *Id.* at 14-15.

[64] *Id.* at 26, 29.

[65] *Id.* at 32.

[66] *Id.* at 32-33.

be overturned, and the risks of Apple appealing any damages award after a trial before this Court were all risks that should be considered in reaching a settlement.[67] And Ms. Erwin agreed that if a widely respected mediator had been used in the settlement negotiations (such as the parties used Mr. Piazza here) that this would also make the settlement process more fair.[68]

Ms. Erwin's views on the attorneys' fees requested in this case were similarly ill-informed. Regarding the second scenario – the Remand Scenario – Ms. Erwin testified that she believed, of the $50 million, $20 million of the Settlement was being distributed to consumers and $30 million was being paid to the attorneys.[69] Such a settlement would mean that attorneys' fees would deplete 60 percent of the fund, which is simply not the case. When asked whether it would be fair for the attorneys to be paid less than 20 percent of what class members would receive (given that Class Counsel would be receiving 7, 17 or 0 percent of the benefit conferred to consumers under each of the three scenarios), Ms. Erwin agreed this would be a fair result.[70] And Ms. Erwin agreed that spending more than a million dollars out of the class attorneys' own funds to fund the case was an important factor to consider in the potential fairness of the settlement.[71] Ms. Erwin, however, was completely unaware as to the amount spent out-of-pocket by Class Counsel here.[72] The answer, of course, is that Class Counsel spent $1.36 million in out-of-pocket expenses in litigating the interests of the class.[73]

---

[67] *Id.* at 38-40.

[68] *Id.* at 48.

[69] *Id.* at 21, 36.

[70] *Id.* at 44-45. *See also* Mot. for Attorneys' Fees at 14.

[71] *Id.* at 48-49.

[72] *Id.* at 49.

[73] *See* Mot. for Attorneys' Fees at 17 (posted on the website at https://ebooklawsuits.com/mainpage/ImportantCaseDocuments.aspx).

The failure of Ms. Erwin to understand the very nature of her own objection, the details of this Settlement and her belief that the only possible fair settlement would be recovery of 100 percent of damages indicates that the objections filed by her counsel were not truly representative of her own beliefs. For these reasons, Ms. Erwin's (and Mr. Bradley's) objections should not be viewed as representative of other class members and should be viewed with the deepest skepticism.

## V.    CONCLUSION

For the foregoing reasons, the five objections provide no reason to reject the Settlement.

DATED: November 14, 2014          HAGENS BERMAN SOBOL SHAPIRO LLP


By _____/s/ Steve W. Berman_____
          STEVE W. BERMAN (*Pro Hac Vice*)

1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Jeff D. Friedman (*Pro Hac Vice*)
Shana Scarlett (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
jefff@hbsslaw.com
shanas@hbsslaw.com

Kit A. Pierson (*Pro Hac Vice*)
Jeffrey B. Dubner (JD4545)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
kpierson@cohenmilstein.com
jdubner@cohenmilstein.com

- 19 -

Douglas Richards (JR6038)
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-774
drichards@cohenmilstein.com

*Class Counsel*

010260-11  728936 V2

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2014, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

/s/ Steve W. Berman
STEVE W. BERMAN

010260-11 728936 V2