Ebl6ebos

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------------x

3  IN RE:  ELECTRONIC BOOKS ANTITRUST
   LITIGATION                              11 MD 2293 (DLC)
4
   ------------------------------------x
5
   THE STATE OF TEXAS, et al.,
6
               Plaintiffs,
7
            v.                            12 Civ. 3394 (DLC)
8
   PENGUIN GROUP (USA) INC., et al.,
9
               Defendants.
10
   ------------------------------------x
11
                                         November 21, 2014
12                                       4:00 p.m.

13  Before:

14                    HON. DENISE L. COTE

15                                       District Judge

16

17                 APPEARANCES (Via telephone)

18  HAGENS BERMAN SOBOL SHAPIRO LLP
         Attorneys for Class Plaintiffs
19  BY:  STEVE BERMAN
         JEFF FRIEDMAN
20
    COHEN MILSTEIN SELLERS & TOLL PLLC
21       Attorneys for Class Plaintiffs
    BY:  JEFFREY DUBNER
22
    KIM VAN WINKLE
23  REBECCA FISHER
         Attorneys for Texas and the Plaintiff States
24

25

Ebl6ebos

APPEARANCES (Continued)


GARY BECKER
    Attorney for Connecticut and the Plaintiff States

GIBSON DUNN & CRUTCHER LLP
    Attorneys for Defendant Apple, Inc.
BY:  GAIL LEES
    CYNTHIA RICHMAN

1                    (In open court; case called)

2          THE COURT:  Welcome everyone.  This is our fairness

3    hearing on the settlement of the Apple litigation brought by

4    the class of plaintiffs and the states.  It addresses the

5    damages settlement reached essentially on the eve of trial.  I

6    received papers from plaintiffs' counsel.  There were

7    potentially five objections.  I will address those in due

8    course.  It may be more appropriate to say there were no

9    objections, but we'll talk about the details of that in a

10   moment.

11         Did either counsel for the states or for the class

12   wish to speak?

13         MR. BECKER:  Your Honor, Gary Becker for the plaintiff

14   states.  Your Honor, since our last time we spoke with you, we

15   have carried out the noticing program that you approved.  We

16   sent out notices to 23 million people, got the final objections

17   that you referred to, 76 exclusions.  And I would note with

18   some color that of the 76 exclusions, one was your Honor and

19   nine were Department of Justice lawyers from the names that I

20   recognized.  So I would say that the response of the class has

21   been overwhelmingly positive.  I will address any questions the

22   Court has about noticing or distribution.  As to the substance

23   of the objections, I will defer to Mr. Berman, Ms. Van Winkle

24   and of course Mr. Berman has the fee application.

25         THE COURT:  Thank you very much.

Ebl6ebos

1          MR. BERMAN:  Thank you, your Honor.  I won't repeat

2     anything that is in our papers in support of the settlement,

3     but I would make one observation.  One of the factors that

4     courts consider is the reaction of the class and it has been my

5     experiences doing class actions that the public is scrutinizing

6     what we're doing much more than it used to when I first started

7     out in this business.  I think it is noteworthy for the Court

8     to consider that we had 23 million notices go out to readers.

9     So it is by definition a more sophisticated class than perhaps

10    than many.  So these are intelligent people and 99.97 percent

11    support the settle.  The few objections that we have gotten are

12    from professional objectors.  I think in this day and age it is

13    an unusually positive that speaks to the fairness of the

14    settle.

15          Unless your Honor has questions, I have nothing

16    further.

17          THE COURT:  Thank you.  I want to make sure Apple has

18    a chance to be heard if there is anything it wanted to say in

19    connection with the issues we addressed this afternoon.

20          MS. RICHAMAN:  Nothing at this point, your Honor.

21          THE COURT:  Thank you.

22          Honestly I gave preliminary approval to this

23    settlement or we wouldn't be here today.  I look carefully at

24    the terms of the settlement, the notice provision.  I carefully

25    examined the form of the notice and what will be communicated

Ebl6ebos

1  in substance to consumers around the country who were affected

2  by this litigation.  I reviewed the plan of distributing notice

3  to them, the plan of division of proceeds from any settlement

4  and did all of that with care at the time I gave preliminary

5  approval.  It is of course necessary that I now look once more

6  with care at all of these issues because the class and

7  consumers around the country have had an opportunity weigh in

8  if they wanted to.  This is a fairness hearing with respect to

9  the class action settlement, but the states are also making

10  certain requests for approval here and therefore I am going to

11  consider everything that has been submitted to me by anyone

12  whether they are a consumer in the states represented by the

13  class or a consumer of the states represented by the parens

14  patriae litigation.

15       Counsel already noticed for the record that 23 million

16  consumers were provided with a written description of the

17  settlement terms.  There was an opt-out date of October 31st.

18  There were the 76 exclusion requests and as counsel mentioned

19  five objections.

20       Now, the form of the settlement is highly unusual.

21  There is a settlement agreement that lays out the terms and

22  that is the document on which I relied and which we used in

23  writing a description to consumers about the terms of the Apple

24  settlement.  Of course all of the documents have been available

25  for review by consumers on the websites associated with this

litigation and many consumers -- I think the number was

360,000 -- did visit the website following notice of the

settle.  So lots of people have expressed an interest in what

has happened here, have had an opportunity to review it in

great detail and I think that has been an important part of the

process.

Now, before I get to the terms of the Apple

settlement, let me just give some context with respect to the

litigation as a whole.  There were five publishers who were

defendants in this litigation as well as Apple.  Consumers had

recovered from those five publishers close to $168 million, but

three of the publishers contributed their money to a settlement

essentially at the day the litigation was filed.  So this was I

think an amount of funds that can't be properly attributed for

today's purposes to an evaluation of the appropriate attorneys'

fees for class counsel.  So the number I am working from as one

of the numbers I am looking at in evaluating the

appropriateness of the attorneys' fees request here is the

publisher settlement excluding Hachette, HarperCollins and

Simon & Schuster.  That settlement was close to $97 million and

something over $40 million of that is attributed to funds that

will be distributed to consumers in states represented by the

class.

Let's turn then to the terms of the Apple settlement.

There are three scenarios described in the settlement

1    agreement.  The first scenario is one in which Apple pays $400

2    million to consumers, the second is one in which it pays $50

3    million to consumers, and the third is one in which it pays

4    nothing to consumers.  The payment of the $400 million to

5    consumers essentially is associated with an affirmance of this

6    Court's decision rendered two Julys July of 2013, following the

7    June 2013 liability trial in a case that was prosecuted by the

8    Department of Justice and the states.  The second figure,

9    Scenario 2, in which Apple's payment to consumers is $50

10   million instead of $400 million will happen if the final

11   liability decision is vacated and remanded or reversed and

12   remanded with instructions for reconsideration or for retrial

13   of the liability finding.  There is further explanation,

14   however, that that scenario does not apply in the event of a

15   remand on administrative or nonsubstantive grounds that do not

16   or could not affect the liability finding.  The third scenario

17   in which Apple pays nothing is one that applies if the final

18   liability decision rendered by appellate courts reverses my

19   liability finding.

20           Of course, in summarizing these terms I don't intend

21   to modify in any way the settlement agreement, the settlement

22   agreement is a contract between the parties.  Its terms will be

23   applied by this Court and I expect if necessary any appellate

24   court as described in the document not as stated by me today as

25   I am trying to summarize it for our purposes.

1           Apple has separately agreed to pay attorneys' fees.

2    So the attorneys' fees as described in the settlement agreement

3    will come from a separate fund, not from the amounts of money I

4    have just described.  The attorneys' fees payments will go

5    separately to the states who pursued parens patriae actions and

6    separately to counsel for the class.

7           Now let's focus on Scenario 1 in which Apple makes a

8    payment of $400 million to consumers.  The recovery for

9    consumers in the class I believe is $160 million in that

10   scenario.  In that scenario the payment of attorneys' fees over

11   and above the $160 million would be payment of attorneys' fees

12   would be $30 million.  That sum is close to 16 percent of the

13   recovery from Apple and close to -- before I give this figure,

14   I separately calculated the payments to class counsel from the

15   settlements in which it had participated in the publishers and

16   combined that with the payment to the attorneys from Apple and

17   so we have a bottom line recovery to the class from the

18   entirety of this litigation and a bottom line recovery to class

19   counsel in attorneys' fees from the publishers and Apple under

20   Scenario 1.  When you do that calculation, I believe the total

21   payment to class counsel from the publishers and Apple under

22   Scenario 1 would be roughly 41 million.  The total recovery to

23   the class would be close to $500 million.  The percentage -- I

24   am rounding here -- of attorneys' fees under that scenario,

25   settlements from the publishers and from Apple, would be

Ebl6ebos

1   17 percent.

2           Let's take that same calculation and apply it so

3   Scenario 2.  Under Scenario 2, remember, Apple is paying only

4   $50 million to all consumers for the class.  That would be a

5   payment of $20 million to the class and the payment to class

6   counsel for fees and expenses would be $10 million.  Just in

7   terms of the Apple scenario or the Apple settlement under

8   Scenario 2, that is a percentage payment of attorneys' fees of

9   roughly one-third of the recovery.  But when you look at the

10  entire recovery for the class from the publishers and Apple,

11  pursuant to those lawsuits in which class counsel have been

12  active, I believe the recovery for the class under Scenario 2

13  is over $21 million.

14          I am sorry.  Let me start again here.  I have read

15  these figures wrong.  Let's start again where we're talking

16  about combining the recovery from the publishers and Apple.

17          Under Scenario 1 the total recovery for the class was

18  something like $200 million, under Scenario 2 it is something

19  like $60 million, and Scenario 3, which is the reversal is

20  something like $40 million.  When you look at the recovery of

21  class counsel's fees as proposed here, combining the recovery

22  for the class in those actions in which class counsel have

23  participated and the Apple recovery, you have fee awards in

24  Scenario 1 of 17 percent, in Scenario 2 of 26 percent, and

25  Scenario 3 of close to 22 percent.

Ebl6ebos

1    With that sort of background set of figures, let me

2    make some observations here.  This is an unusual structure for

3    a settlement, particularly one that was essentially arrived at

4    on the eve of trial.  There are in my mind two apparent reasons

5    for reaching this settlement based on what I understand is the

6    nature of the litigation and what counsel have described to me.

7    One is that plaintiffs' counsel have expressed confidence that

8    the liability opinion will be affirmed and that they have a

9    strong belief in that.  The future will tell whether that is

10   right or wrong.  We'll know at some point.  The second

11   principal driver as I understand it is a concern about delay.

12   Apple essentially did an about-face in this litigation.  In its

13   initial stages it pressed for a speedy trial.  It wanted a

14   trial on liability as quickly as it was possible to schedule

15   such a trial.  But after it lost that trial, it changed tactics

16   and decided that it would do everything within its power to

17   delay it and to prevent these actions from arriving at a final

18   judgment.  It made motion upon motion that had varying degrees

19   of merits and filed a string of appeals.  Class counsel made an

20   evaluation that they could expect continued efforts from Apple

21   to delay entry of judgment and final resolution of these

22   actions and Apple is a well funded client and able to deliver

23   on that litigation strategy.

24   So with those two assessments, it appears that

25   plaintiffs' counsel decided that a settlement structured like

1  this would serve the best interests of the class.  They had a

2  mediator, Mr. Piazza, who they described as a well recognized

3  and effective mediator and he assisted them in those

4  discussions, though he was not involved in the final stages as

5  I understand it based on the papers that I have been given.

6         Before I turn to an evaluation of the factors that

7  relate more precisely to an evaluation of the fairness of the

8  class action settlement, I do want to pause and comment on the

9  performance of counsel for the states because at each step of

10 the way here the states have been a partner with DOJ and more

11 recently a partner with the class in the prosecution of these

12 actions.  I think the states have been extraordinarily well

13 represented in the parens patriae litigation.  Indeed, it has

14 been a very impressive performance.  They have cooperated

15 effectively with the Department of Justice and with class

16 counsel.  They have independently retained experts at different

17 points in time.  Their briefing on certain of the legal issues

18 was of very great assistance to this Court.  It showed a real

19 commitment on their part to look carefully at the legal issues

20 and present the Court with arguments that they believe should

21 be seriously considered.  I find that they are entitled to the

22 payments that they have negotiated from Apple.

23        Turning to the class action, I am required to examine

24 the fairness, adequacy and reasonableness of the class action

25 settlement according to the factors set forth in a decision in

Eb16ebos

1 Grinnell. The first is the complexity and expense and likely

2 duration of the litigation. Well, this case is complex. It's

3 an antitrust lawsuit. Though it concerns a relatively brief

4 point in time in terms of the negotiation among the

5 coconspirators of the conspiratorial agreement, the span of the

6 conspiracy lasted many months. It was an expensive series of

7 lawsuits to litigate and that included the class action, not

8 only because of the issues but because of the litigation

9 choices that Apple made. I've already commented on the factors

10 that relate to the duration of the litigation. This litigation

11 has been extended already by Apple's tactics and I think it

12 would but for this settlement be extended much further because

13 of those tactics.

14         The second factor is the reaction of the class to the

15 settlement. They have been supportive. We've already placed

16 on the record the number of notices sent out, the number of

17 visitors to the website. Many thousands of calls have been

18 made to a toll free numbers. There have been under the

19 circumstances few exclusions and few objections.

20         The third factor is the stage of the proceedings and

21 the amount of discovery completed. As I mentioned this

22 settlement was reached essentially on the eve of trial. Full

23 discovery, both fact and expert discovery, had taken place.

24 The parties had many rulings. Not just on overarching legal

25 issues but on issues that affected the shape of the trial, the

Ebl6ebos

1    admissibility of certain witnesses and the evidence to be

2    offered through those witnesses.

3           The fourth factor is the risk of establishing

4    liability.  Well, Apple has already been found liable through

5    the July 2013 trial opinion.  It is appealing that decision and

6    the Court of Appeals will make a judgment about liability

7    ultimately.

8           The fifth factor is the risks of establishing damages.

9    The expert for the class estimated -- I should say the expert

10    for plaintiffs estimated damages on the low side is $280

11    million and while Apple planned a vigorous cross-examination of

12    that expert, Professor Noll, at trial, based on what I saw and

13    these issues were hotly contested and seriously litigated

14    before me through a series of motions, I think the plaintiffs

15    were very likely to succeed before a jury in proving an

16    entitlement of $280 million or something close to that figure.

17           The sixth factor is the risk of maintaining the class

18    action through trial.  I don't think there was any serious risk

19    in that regard.  If this is not a class action, I don't know

20    what kind of action could properly be brought as a class action

21    in the antitrust context.

22           Number seven is the ability of the defendant to

23    withstand a greater judgment.  That also is not in dispute

24    here.  Apple could pay more than it has agreed to pay here.

25           Number eight is the range of reasonableness of the

1    settlement fund in light of the best possible recovery.  Well,

2    let's use the $280 million figure from Professor Noll.  Under

3    the antitrust laws, the plaintiffs are entitled to a trebling

4    of that figure.  That would be $840 million; but the publishers

5    have already paid an amount of money, $167 million.  So the

6    possible recovery from Apple under the law potentially would be

7    $673 million.  Apple under Scenario 1 has agreed to pay $400

8    million of that $673 million, but that is also without any

9    reduction for attorneys' fees and it separately pays the

10   administrative costs associated with distribution of the

11   settlement funds.

12         So there are different ways to look at these numbers.

13   Apple alone is paying 140 percent of the damages suffered by

14   consumers of $280 million.  Or when you combine what is

15   recovered from the publishers with the amount under Scenario 1

16   that Apple is paying, consumers will get more than twice of

17   their amount of damages.  So under Scenario 1 I think this is

18   an excellent recovery for the plaintiffs.

19         Plaintiffs argue that even under Scenario 2 it is a

20   good recovery for the class with payments by Apple of $50

21   million combined with the amount that has been paid by the

22   publishers already.  Consumers will obtain 77 percent of the

23   $280 million figure or more than three-quarters of their

24   damages.

25         In my judgment, and I thought long and hard about this

1  and I did at the time of the preliminary approval think long

2  and hard about this, this is entitled to the Court's approval.

3  I am not going to substitute my judgment for that of

4  experienced, competent plaintiffs' counsel.  I am merely here

5  to judge the fairness, adequacy and reasonableness in the

6  context of the litigation as I know it.  Judgments were made

7  here.  I think I understand why judgments were made here and

8  particularly the judgment that it would be better for the class

9  to get paid sooner rather than later and that Apple's choice to

10  try to delay resolution of this litigation through delaying

11  tactics should not prevent consumers from benefiting from a

12  judgment and it was combined with plaintiffs' counsel's

13  judgment about the risks of an appeal here and their

14  assessment.  So I am approving the settlement as structured.

15          Let's turn to the issue of attorneys' fees.  Let me

16  before I analyze the series of factors that courts must look at

17  in connection with attorneys' fee make some observations here

18  as well preliminarily.  Class counsel were very cooperative

19  with the Department of Justice and the states in this

20  coordinated litigation.  Everyone has benefited from that, both

21  the defendants, the Court and consumers.  Class counsel

22  benefited all of us, again including the defendants and

23  certainly consumers, by undertaking the task of collecting vast

24  quantities of e-Book transactional data so that a very

25  sophisticated progression model could be run against that data

Ebl6ebos

1   and render a fairly confident damages figure.

2           Plaintiffs counsel for the class also took the lead

3   role in several important depositions and also had to litigate

4   motion after motion defended by Apple here.  On the class

5   certification motion and related litigation with respect to --

6   and separate litigation addressed to Apple's experts class

7   counsel succeeded in getting a class certified for consumers in

8   23 states.  It succeeded in a motion to strike entirely the

9   expert testimony presented by one Apple expert, Professor Colt,

10  and succeeded in a substantial narrowing of the expert opinions

11  provided by a second Apple expert, Mr. Orsav and it effectively

12  depended the motion to exclude testimony from Dr. Noll.

13          There were other motions that had to be litigated, the

14  motion for summary judgment, a motion for remand made by Apple,

15  which I denied, a motion to stay the damages trial, which I

16  denied.  There was motion practice by Apple in the Court of

17  Appeals seeking to appeal my decision certifying the class,

18  seeking to stay the trial.  Both of those motions were denied

19  by the Second Circuit Court of Appeals within hours of hearing

20  argument on May 29 by a motions panel.

21          This settlement was reached in mid-June, or at least I

22  was notified of it.  We had an August trial date.

23          The lodestar that plaintiffs class counsel have

24  identified is roughly $10 million.  Now, if I thought it were

25  important to my analysis at all here, I would ask for detailed

1  records.  Customarily I examine such records, at least portions

2  of them; but because of the structure of the settlement here, I

3  didn't feel that necessary for several reasons.  One, the $10

4  million figure was not a surprise to me.  I thought it was

5  entirely within the range of what I would have expected in this

6  case.  And since I supervised every have aspect of it, except

7  the settlement discussions themselves, I think I have a good

8  judgment to make that.  The attorneys' fees are not coming out

9  of any award to the class but are separately negotiated figures

10 that were negotiated with the assistance of the mediator and

11 after the damages calculations were negotiated for the class

12 recovery.  So I think because I've done some analysis of the

13 percentage of the award of any attorneys' fees here and the

14 context of the recovery to the class and for a variety of

15 factors, I don't need to look at the records.

16      Let's turn to the factors I am required by law to

17 analyze in making a judgment about a request for approval of a

18 fee award.  One is the time and labor expended by counsel.  I

19 have spoken to that already.  Two is the magnitude and

20 complexity of the litigation.  Both are significant factors

21 here and I have spoken to that already.

22      The third factor I have to address is the risk of

23 litigation and that is from the perspective of plaintiffs'

24 counsel at the beginning of the case when they take on a case

25 on a contingency basis not knowing whether the work that they

1  are about to put into the litigation will be rewarded by a

2  recovery not only for those it represents but for their time

3  and effort.  I think this is somewhat hard to assess.  The

4  class action was filed before any government lawsuit, but it

5  was filed while the government investigations were going on and

6  were very active.  I think class counsel would have had to have

7  made an assessment that it was likely that there would be a

8  government lawsuit filed.  They also had to assess, however,

9  that both the publishers and Apple were sophisticated and would

10  be well funded adversaries that would be equal to the task of

11  litigating these issues.  This was expensive litigation for

12  plaintiffs' counsel.  They spent close to a million and a half

13  dollars in out-of-pocket expenses.  On the other hand, the

14  proof of the price fixing conspiracy was fairly strong and they

15  would have had to factor that in and even a trial, the

16  liability trial, Apple's expert had charts and graphs showing

17  the dramatic shift upward in the price of the publisher

18  defendants e-Books as a result of the conspiracy or right after

19  the conspiratorial agreement was hatched.

20       The fourth factor that I have to consider is the

21  quality of representation.  It has been excellent and have been

22  of great assistance to the Court.

23       The fifth factor is the comparison of the requested

24  fee in relationship to the settlement, and I've already gone

25  through those numbers.  The fee is entirely consistent with

Ebl6ebos

historical practice in this court in terms of a percentage of

recovery.  I should note again that in terms of the Apple

settlement, it is a separately funded pot of money.

The sixth factor is public policy considerations and

they include a crosscheck with any lodestar figure.  I've

looked at multiplier numbers.  They again are in line with

common practice in this courthouse, that is, comparing the

lodestar against the award of attorneys' fees.  The multipliers

under the various scenarios go from roughly one to roughly

three and when you combine it with prior settlement figures,

roughly two to roughly four, they are all within the same

range.

There are further comments on public policy that I

think are appropriate here.  I think the enforcement of our

Nation's antitrust laws is vitally important to the vibrancy of

our economy.  Few firms are equipped with the resources and

skills to pursue litigation of this complexity and against such

well funded defendants.  The skill with which plaintiffs'

counsel acted in this case benefited the class and I would say

benefited the American economic system as a whole.  That is the

importance of antitrust litigation I think.

Let me turn briefly to the objections.  There were

five.  Two of them were people who opposed the existence of

this litigation, and I don't need to comment on those in terms

of the ability to assist me in analyzing any deficiencies in

1    the settlement.  One was from someone who wasn't a class

2    member.  It was a person who is part of the parens patriae

3    actions and doesn't have a formal voice before this Court, but

4    obviously I read anything I am sent with care and try to

5    consider any good argument or comment whatever the source.  The

6    only two that really could be said to come from class members

7    in a way that might be of assistance to my evaluation of the

8    terms of the settlement have very limited relevance because

9    they are made from by professional objectors as opposed to

10   people who have a stake in the enterprise in a way that a class

11   member would.  There is an attorney, Mr. Bandas, who

12   represented one class member when that class member was

13   deposed.  The deposition exposed poor understanding about the

14   settlement and the litigation and she had never met Mr. Bandas.

15   So that objection has extraordinarily little validity.  The

16   second objection made by a professional objector is a piggyback

17   brief shorter version of Mr. Bandas's brief.

18         Nonetheless, let me briefly address the principal

19   points made in these documents.  One is that the three-scenario

20   settlement with Apple is a probability puzzle and hard to

21   evaluate.  Well, I think the notice clearly explained it.  I've

22   addressed why I think it was reached by plaintiffs' counsel

23   through the assistance of a mediator.  The judgment that

24   affirmance is likely and it would be a terrific recovery for

25   consumers and even on remand a good recovery and it gets money

1    into the pockets of consumers sooner rather than later.

2            Another objection was that the attorneys' fees are too

3    high in the remand scenario.  I've looked at that from a

4    variety perspective, which I have explained, and I reject that

5    analysis.  One argument is that there was "no flash of

6    brilliance that dramatically altered the litigation" by

7    plaintiffs' counsel that deserves to be recognized with a fee

8    award.  Well, that is not the test.  I've described what the

9    test is under the law and I have done my best to apply the test

10   as articulated in the case law that governs my action.  There

11   was an argument that the class representatives did not sign the

12   settlement agreement.  There is no question in my mind that

13   they were consulted and approved it.  There is no requirement

14   that they sign it.  I reject that argument as well.  I have

15   considered all the arguments made in the five submissions by

16   the so-called objectors and do not find that any of them alters

17   my analysis of the fairness, reasonableness and adequacy of the

18   settlement and the fact that I should approve the awards of

19   fees that I am requested to approve here.

20           Counsel, does anyone have anything they wish to add to

21   today's proceedings?

22           MR. BERMAN:  Just one minor point, your Honor, because

23   I think we'll have to deal with the objectors in the Second

24   Circuit.  To note for the record, I believe that no objector is

25   present here today.

Ebl6ebos

1          THE COURT:  Yes.  That is true.

2          Anyone else?

3          Thank you so much.

4          MR. BERMAN:  Thank you, your Honor.

5          THE LAW CLERK:  All rise.

6                          o0o

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25